**Representative Agreement**

Submitted to:

**Christian Power Equipment**

EXHIBIT

*B*

PENGAD 800-631-6989



*Representative Agreement*

---

This agreement, made this 18th day of February by and between Victory Energy Operations, LLC (hereinafter referred to as "VEO") and Christian Power Equipment (hereinafter referred to as "Representative").

### WITNESSETH:

WHEREAS, VEO is in the business of selling certain steam generating equipment and services relating thereto (hereinafter referred to as the "Products") and

WHEREAS, VEO desires Representative to represent VEO as more particularly set forth herein; and

WHEREAS, Representative desires to provide such representation,

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1. **Territory**

   VEO grants to Representative the right to sell the Products during the life of this Agreement in the following territory (hereinafter referred to as "Territory"):

   California:     Counties North of:  San Luis Obispo, Fresno, and Inyo.

   Entire States of:  Alaska, Idaho, Nevada, Oregon, and Washington

2. **Responsibility for Sales Representation**

   (a)     Representative agrees to provide sales representation in the Territory.  Said representation shall include, but not be limited to, thoroughly canvassing the Territory for potential customers, utilizing all reasonable effort to solicit orders for the Products and properly representing VEO with its customers.

   (b)     Upon request, Representative shall assist VEO in securing collections, obtaining information on the credit worthiness of potential customers, and helping to resolve trouble jobs.

   (c)     Representative shall, on a periodic basis, visit the sites where Products are in use within the Territory so as to adequately service existing customers.

# VICTORY ENERGY ✦ *Representative Agreement*

3. **Sales Office**
   (a) Representative agrees to maintain in its name, or other approved name, an office in a location approved by VEO.
   (b) Representative's signs or printed matter must designate that it is the representative of VEO in a manner that is approved by VEO.

   (c) Sub-sales Representative offices may be established by the Representative within the Territory, but only with VEO's written approval. Agreements between Representative and his Sub-Representative are personal in nature and nothing therein shall provide for or be construed to provide for liability by VEO in connection with such agreements.

   (d) Representative shall have full responsibility for any and all taxes due on commissions paid, any and all business taxes, and the filing of any required business forms with local, state, or federal authorities.

4. **Sales Expense**
   Representative shall be responsible for all expenses that are incurred in maintaining said office as well as any other expenses that it incurs in providing representation, including, but not limited to, rent, office and traveling expense, postage, telephone, telegraph, etc.

5. **Sales Materials**
   VEO shall furnish catalogs, price lists, order forms and other printed materials, which will inform and assist the Representative in soliciting orders for Products. Said materials shall be treated as confidential and shall remain the property of VEO. Representative shall utilize the materials only with respect to its efforts on behalf of VEO hereunder and shall return all materials to VEO upon request.

6. **Transfer of Information**
   Each party shall promptly forward to the other all inquiries or other information received which relates to potential sales in the Territory.

7. **Direct Contact with Customers**
   (a) Any customer or potential customer in the Territory may communicate directly with VEO concerning any aspect of the Products. VEO shall keep Representative aware of any such communications.

   (b) VEO shall have the right to contact or deal directly with customers or potential customers in the Territory.

# VICTORY ENERGY ☀ *Representative Agreement*

(c)     VEO may sell to any customer within the Territory who deals directly with VEO. Representative shall receive a commission on every such sale, as herein set forth.

(d)     VEO shall have the right to send technical or sales personnel into the Territory to assist in contacting customers, promoting sales, or otherwise performing its contracts. VEO shall keep Representative advised of such activities.

**8.   Exclusive Representation**

(a)     Representative shall not handle, sell, distribute or otherwise associate itself with any equipment that is similar to or competes in any way with the Products.

(b)     Representative shall not handle, sell, or distribute any used equipment without VEO's express written consent.

(c)     Representative shall furnish VEO with a complete list of companies and equipment it presently represents and agrees to continually notify VEO of any changes in that representation.

**9.   Compensation**

(a)     Representative's sole compensation hereunder shall be a commission as set forth in the then effective Commission Schedule. VEO shall have the sole right to modify said Commission Schedule from time to time. The Commission Schedule applicable to a particular project shall be that Commission Schedule in effect upon the date when VEO first issues its proposal upon which the Final Pricing for a particular sale is based. Final Pricing is herein defined as the price that is agreed upon between VEO and its customer at the time of contract formation, prior to any additions or deletions by change order.

(b)     Representative's commission shall be based solely upon the portion of the Net Project Value (as defined in the then effective Commission Schedule) which is actually received by VEO. VEO shall not be liable to Representative for commissions on projects that are canceled, except to the extent that commissions are included in the cancellation charges.

(c)     VEO shall have the absolute right to determine the sales price for Products.

(d)     When two or more Representatives participate in the same sale, the commission for such sale shall be allocated according to the guidelines set forth in the then effective Commission Schedule. VEO shall consult with the Representatives involved prior to such allocation, however, after such consultation, VEO's decision on the allocation of any such commission shall be final.

(e)     VEO shall send monthly statements, on or about the fifteenth day of each month, showing the status of Representative's account. Representative shall indicate its approval in the appropriate space and return the required document to VEO. VEO shall tender the pro-rata commission due on or about the

# *VICTORY ENERGY*     *Representative Agreement*

twenty-fifth day of the month following that during which Representative's approval is received. In the event of any overpayment by VEO or erroneous payments for any reasons, commissions paid by VEO to Representative with respect to such sales shall be deducted from the next commission payment. In the event that no further commission payment is due to Representative, Representative shall repay VEO the amount of such overpayment.

**10.**    **Independent Contractor**

     (a)     Representative shall be an Independent Contractor and not an agent or employee of VEO.

     (b)     Representative shall have no authority whatsoever to make purchases nor to bind VEO to any contract of any nature. Representative agrees to indemnify and hold harmless VEO from any claims that may arise in any manner from Representative's breach of its obligations under this provision.

     (c)     Representative's role is to solicit orders that are subject to the sole approval of VEO.

     (d)     In order to secure uniformity of relations with all Representatives, VEO reserves the right to require conformity with procedures, which may be established from time to time concerning issues such as internal reporting, handling of sales proposals, or other matters dealing with general administration.

     (e)     The District Sales Representative agrees to abide by all Codes of Fair Practice as well as all local, state, or federal regulations.

     (f)     VEO agrees to provide "Additional Insured - Vendor" coverage to Representative in accordance with the terms and conditions of the Commercial General Liability Insurance Program.

 **VICTORY ENERGY** *Representative Agreement*

---

11. **Complete Agreement**
This Agreement constitutes a final written expression of all of the terms of the agreement between VEO and Representative and is a complete and exclusive statement of these terms. Any modification of these terms must be in writing, signed by VEO.

12. **Cancellation**
   (a)   This contract is subject to cancellation upon thirty (30) days written notice by either party. Upon cancellation, Representative shall, at its expense, return to VEO all price lists, catalogs, customer lists, orders and correspondence and copies thereof, and any and all other papers relating to the business of VEO whether prepared by VEO or by Representative.

   (b)   Following the effective date of termination, Representative shall be entitled to commission for orders received up to 90 days after termination, for firm quotations prior to the final day of termination.

   (c)   Representative agrees that VEO may, at its option, terminate this Agreement in the event that (i) Representative assigns its rights to a third party without VEO's consent, or (ii) Representative undergoes a change in ownership or control.

13. **Applicable Law**
This Agreement shall be enforced and interpreted in accordance with the laws and court decisions of the Commonwealth of VEO.



**VICTORY ENERGY**               *Representative Agreement*

Signed in duplication this 18th day of February 2003.

**Company Name**

Date   7/15/03

By   _____
     John C. Viskup, Jr.

Title   President
        President

**Company Name**

Date   7/11/03

By   _____

Title   Owner

 **VICTORY ENERGY**          *Commission Schedule*

◻Effective Date:

This Commission Schedule supersedes all other commission schedules and will be utilized on all quotations as of the above Effective Date.

1.  **Basis of Commission**
    Representative's commission shall be based solely upon the Net Project Value of Products.  The Net Project Value is herein defined as the Final Pricing of Products excluding:

    ( Freight and handling charges.

    ( Bonds and letters of credit.

    ( Taxes and duties of any nature, and

    ( Per Diem charges for field or engineering services that are not included in the Final Pricing of Products.

2.  Commission Schedule

| Net Project Value | Standard Commission |
|---|---|
| less than $25,000 | 5% |
| $25,001 to $100,000 | $1,250 plus 4.0% of amount over $25,000 |
| $100,001 to 500,000 | $4,250 plus 3.0% of amount over $100,000 |
| $500,000 to $1,000,000 | $16,250 plus 2.0% of amount over $500,000. |
| $1,000,000 to $5,000,000 | $26,250 plus 1.0% of amount over $1,000,000. |
| $5,000,000 to $10,000,000 | $66,250 plus 0.75% of amount over $5,000,000 |
| Over $10,000,000 | $103,750 plus 0.5% of amount over $10,000,000. |



**Commission Schedule**

This schedule shall apply for:

　ロ( VEO fabricated and purchased equipment, spare parts, and services
　　including Engineering and Field Services that are offered as part of
　　Final Pricing.  No commission shall be paid on Field Services,
　　ordered by a customer following contract formation.

　　( VEO Field Erection Supervision or Consultation, Field Services, or
　　Engineering, which is proposed on a project basis, separate from an
　　equipment proposal.

3.  Commission Adjustments

A.  Increase of Contract Scope
　　In the event the scope of a contract is increased by change order after
　　contract formation, Representative shall also receive a commission on
　　the resulting increase in the Net Project Value.  Said commission shall
　　be calculated in accordance with the then effective Commission Schedule
　　beginning at the incremental rate determined from the Net Project Value.

　　Example:

| | | | | |
|---|---|---|---|---|
| Net Project Value | = | $5,000,000 | Commission = | $ 66.250 |
| Change Order | = | 50,000 @ 0.75% | Commission Adder = | 375 |
| | | | Total Commission | $ 66.625 |



*Commission Schedule*

---

C.   **Reduction of Contract Scope**
   ▫ In the event the scope of a contract is reduced by change order after
   contract formation. Representative will receive a reduced commission as a
   result of a corresponding reduction in the Net Project Value. The amount
   of commission reduction shall be the difference between the commission
   due on the Net Project Value prior to the change order and the commission
   due on the reduced Net Project Value.

4.   **Commission Allocations — General Orders for New Equipment**
   All commissions shall be allocated in the same manner with amounts determined in accordance
   with the above Schedule. Commissions shall be specifically allocated using the following
   guidelines.

   A.   **Pre-Order Influence: 75%**
      This allocation will be divided equitably among the Representatives in accordance with their
      relative effectiveness on the basis of effort, time, and achievement. Pre-order influence is
      exerted on:

      i.   **The User**
         a.   at local plant/mill level
         b.   at headquarters level

      ii.   **Consulting Engineer**
         The commission for pre-order influence shall be apportioned as follows:

         a.   15%   For influence exerted prior to the issuance of the inquiry.

         b.   60%   For the sales effort expended after receipt by VEO of the inquiry.

   B.   **Purchase Order: 10%**
      10% of the total commission will accrue to the Representative within whose geographic
      territory the negotiation and award of the contract occurs.

 **VICTORY ENERGY** *Commission Schedule*

**C.  Post-Order Engineering: 5%**
5% of the total commission will accrue to the Representative within whose geographic territory occurs the responsibility of obtaining all details and drawings and other approvals.

In the absence of this responsibility, this percentage shall be added to the amount for pre-order influence, making a total of 80%.

**D.  Destination: 10%**
10% of the total commission will accrue to the Representative within whose geographic territory the project equipment is originally installed.  This commission credit will be paid after evidence has been submitted to VEO that the Representative has visited the project site during and after start-up and rendered service as to:

- Providing any required assistance regarding delivery and installation of the Products.

- Promoting further use of VEO's equipment.

- Determining spare parts requirements and sales.

- Advising VEO as to key customer contacts.

- Providing VEO with a report as to plant status and customer satisfaction level.

**5.  Allocation of Commissions— Aftermarket / Customer Service**

**A.  Aftermarket Equipment Sales Commissions**
Commissions shall be allocated as shown below for all orders outside of General Orders consisting of off-the-shelf spare part products sold and for engineered products and Field Service sold.  VEO's determination of the allocation shall be final, however, VEO will discuss the allocation when multiple Representatives are involved in a single sale to assure an equitable split of commission among the Representatives.

| | |
|---|---|
| 1.  Annual visits / communication with the customer | 25% of total commission |
| 2.  Inquiry obtained as a result of the visits/communications | 35% of total commission |
| 3.  Pre-order influence | 15% of total commission |
| 4.  Close order | 15% of total commission |
| 5.  Post order follow-up at destination | 10% of total commission |

     *Commission Schedule*

---

**B.    Field Service**
A sales commission will be paid to VEO's domestic sales Representatives for Field Service orders specifically sold by Representative and contracted by the customer within two months of the written offer.  The commission will amount to a flat rate of $150.00 per full-paid contract day.  Direct calls for service from the customer to VEO are not eligible for the commission.  This incentive will run for calendar year 2003 and will be reviewed at year-end for any modification.

A full-paid contract day is defined as a full day worked (minimum of 8-hours) and is paid at the contract per diem rate.  No commission will be paid for less than a full day worked nor for any day worked that is chargeable to VEO such as for warranty, courtesy calls, or part of a negotiated settlement.

**6.    Disputes**
VEO's decision as to the allocation of commissions shall be final as detailed in paragraph 9, Compensation, as set forth in the Sales Representation Agreement.

 **VICTORY ENERGY**                    *Product Schedule*

**Product Schedule:**

    1. The following products are included within this agreement:

      Keystone Water Tube boilers: 8 M – 22M (29,000 PPH – 150,000 PPH)

      VEO HRSG's (Heat Recovery Steam Generator) Systems – All sizes

## Representative Agreement

Submitted to:

Power Systems, Inc.



EXHIBIT

C

 **VICTORY ENERGY** *Representative Agreement*

This agreement, made this 18th day of February by and between Victory Energy Operations, LLC (hereinafter referred to as "VEO") and Power Systems, Inc. (hereinafter referred to as "Representative").

## WITNESSETH:

WHEREAS, VEO is in the business of selling certain steam generating equipment and services relating thereto (hereinafter referred to as the "Products") and

WHEREAS, VEO desires Representative to represent VEO as more particularly set forth herein; and

WHEREAS, Representative desires to provide such representation,

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1.  **Territory**
    VEO grants to Representative the right to sell the Products during the life of this Agreement in the following territory (hereinafter referred to as "Territory"):


    State of Michigan

2.  **Responsibility for Sales Representation**
    (a)    Representative agrees to provide sales representation in the Territory.  Said representation shall include, but not be limited to, thoroughly canvassing the Territory for potential customers, utilizing all reasonable effort to solicit orders for the Products and properly representing VEO with its customers.

    (b)    Upon request, Representative shall assist VEO in securing collections, obtaining information on the credit worthiness of potential customers, and helping to resolve trouble jobs.

    (c)    Representative shall, on a periodic basis, visit the sites where Products are in use within the Territory so as to adequately service existing customers.

# VICTORY ENERGY ☀ *Representative Agreement*

3. **Sales Office**

   (a)   Representative agrees to maintain in its name, or other approved name, an office in a location approved by VEO.

   (b)   Representative's signs or printed matter must designate that it is the representative of VEO in a manner that is approved by VEO.

   (c)   Sub-sales Representative offices may be established by the Representative within the Territory, but only with VEO's written approval.  Agreements between Representative and his Sub-Representative are personal in nature and nothing therein shall provide for or be construed to provide for liability by VEO in connection with such agreements.

   (d)   Representative shall have full responsibility for any and all taxes due on commissions paid, any and all business taxes, and the filing of any required business forms with local, state, or federal authorities.

4. **Sales Expense**
   Representative shall be responsible for all expenses that are incurred in maintaining said office as well as any other expenses that it incurs in providing representation, including, but not limited to, rent, office and traveling expense, postage, telephone, telegraph, etc.

5. **Sales Materials**
   VEO shall furnish catalogs, price lists, order forms and other printed materials, which will inform and assist the Representative in soliciting orders for Products.  Said materials shall be treated as confidential and shall remain the property of VEO.  Representative shall utilize the materials only with respect to its efforts on behalf of VEO hereunder and shall return all materials to VEO upon request.

6. **Transfer of Information**
   Each party shall promptly forward to the other all inquiries or other information received which relates to potential sales in the Territory.

7. **Direct Contact with Customers**

   (a)   Any customer or potential customer in the Territory may communicate directly with VEO concerning any aspect of the Products.  VEO shall keep Representative aware of any such communications.

   (b)   VEO shall have the right to contact or deal directly with customers or potential customers in the Territory.

 **Representative Agreement**

(c)    VEO may sell to any customer within the Territory who deals directly with VEO. Representative shall receive a commission on every such sale, as herein set forth.

(d)    VEO shall have the right to send technical or sales personnel into the Territory to assist in contacting customers, promoting sales, or otherwise performing its contracts. VEO shall keep Representative advised of such activities.

**8.    Exclusive Representation**

(a)    Representative shall not handle, sell, distribute or otherwise associate itself with any equipment that is similar to or competes in any way with the Products.

(b)    Representative shall not handle, sell, or distribute any used equipment without VEO's express written consent.

(c)    Representative shall furnish VEO with a complete list of companies and equipment it presently represents and agrees to continually notify VEO of any changes in that representation.

**9.    Compensation**

(a)    Representative's sole compensation hereunder shall be a commission as set forth in the then effective Commission Schedule. VEO shall have the sole right to modify said Commission Schedule from time to time. The Commission Schedule applicable to a particular project shall be that Commission Schedule in effect upon the date when VEO first issues its proposal upon which the Final Pricing for a particular sale is based. Final Pricing is herein defined as the price that is agreed upon between VEO and its customer at the time of contract formation, prior to any additions or deletions by change order.

(b)    Representative's commission shall be based solely upon the portion of the Net Project Value (as defined in the then effective Commission Schedule) which is actually received by VEO. VEO shall not be liable to Representative for commissions on projects that are canceled, except to the extent that commissions are included in the cancellation charges.

(c)    VEO shall have the absolute right to determine the sales price for Products.

(d)    When two or more Representatives participate in the same sale, the commission for such sale shall be allocated according to the guidelines set forth in the then effective Commission Schedule. VEO shall consult with the Representatives involved prior to such allocation, however, after such consultation, VEO's decision on the allocation of any such commission shall be final.

(e)    VEO shall send monthly statements, on or about the fifteenth day of each month, showing the status of Representative's account. Representative shall indicate its approval in the appropriate space and return the required document

 *Representative Agreement*

to VEO. VEO shall tender the pro-rata commission due on or about the twenty-fifth day of the month following that during which Representative's approval is received. In the event of any overpayment by VEO or erroneous payments for any reasons, commissions paid by VEO to Representative with respect to such sales shall be deducted from the next commission payment. In the event that no further commission payment is due to Representative, Representative shall repay VEO the amount of such overpayment.

**10.     Independent Contractor**

(a)     Representative shall be an Independent Contractor and not an agent or employee of VEO.

(b)     Representative shall have no authority whatsoever to make purchases nor to bind VEO to any contract of any nature. Representative agrees to indemnify and hold harmless VEO from any claims that may arise in any manner from Representative's breach of its obligations under this provision.

(c)     Representative's role is to solicit orders that are subject to the sole approval of VEO.

(d)     In order to secure uniformity of relations with all Representatives, VEO reserves the right to require conformity with procedures, which may be established from time to time concerning issues such as internal reporting, handling of sales proposals, or other matters dealing with general administration.

(e)     The District Sales Representative agrees to abide by all Codes of Fair Practice as well as all local, state, or federal regulations.

(f)     VEO agrees to provide "Additional Insured - Vendor" coverage to Representative in accordance with the terms and conditions of the Commercial General Liability Insurance Program.

 *Representative Agreement*

**11.    Complete Agreement**
This Agreement constitutes a final written expression of all of the terms of the agreement between VEO and Representative and is a complete and exclusive statement of these terms. Any modification of these terms must be in writing, signed by VEO.

**12.    Cancellation**

(a)    This contract is subject to cancellation upon thirty (30) days written notice by either party.  Upon cancellation, Representative shall, at its expense, return to VEO all price lists, catalogs, customer lists, orders and correspondence and copies thereof, and any and all other papers relating to the business of VEO whether prepared by VEO or by Representative.

(b)    Following the effective date of termination, Representative shall be entitled to commission for orders received up to 90 days after termination, for firm quotations prior to the final day of termination.

(c)    Representative agrees that VEO may, at its option, terminate this Agreement in the event that (i) Representative assigns its rights to a third party without VEO's consent, or (ii) Representative undergoes a change in ownership or control.

**13.    Applicable Law**
This Agreement shall be enforced and interpreted in accordance with the laws and court decisions of the Commonwealth of VEO.

# VICTORY ENERGY

*Representative Agreement*

---

**Signed in duplication this 18th day of February 2003.**

**Company Name**

Date _March 12, 2003_    By _____
John C. Viskip, Jr.

Title _____
President

**Company Name**

Date _March 6, 2003_    By _Edward W. Eilt_

Title _President_

 **VICTORY ENERGY**                    *Commission Schedule*

---

**Effective Date:**

This Commission Schedule supersedes all other commission schedules and will be utilized on all quotations as of the above Effective Date.

1.   **Basis of Commission**
     Representative's commission shall be based solely upon the Net Project Value of Products. The Net Project Value is herein defined as the Final Pricing of Products excluding:

   - Freight and handling charges,

   - Bonds and letters of credit,

   - Taxes and duties of any nature, and

   - Per Diem charges for field or engineering services that are not included in the Final Pricing of Products.

2.   **Commission Schedule**

| Net Project Value | Standard Commission |
|---|---|
| less than $25,000 | 5% |
| $25,001 to $100,000 | $1,250 plus 4.0% of amount over $25,000 |
| $100,001 to 500,000 | $4,250 plus 3.0% of amount over $100,000 |
| $500,000 to $1,000,000 | $16,250 plus 2.0% of amount over $500,000. |
| $1,000,000 to $5,000,000 | $26,250 plus 1.0% of amount over $1,000,000. |
| $5,000,000 to $10,000,000 | $66,250 plus 0.75% of amount over $5,000,000 |
| Over $10,000,000 | $103,750 plus 0.5% of amount over $10,000,000. |

 **Commission Schedule**

This schedule shall apply for:

- VEO fabricated and purchased equipment, spare parts, and services including Engineering and Field Services that are offered as part of Final Pricing. No commission shall be paid on Field Services, ordered by a customer following contract formation.

- VEO Field Erection Supervision or Consultation, Field Services, or Engineering, which is proposed on a project basis, separate from an equipment proposal.

3. **Commission Adjustments**

A. **Increase of Contract Scope**
In the event the scope of a contract is increased by change order after contract formation, Representative shall also receive a commission on the resulting increase in the Net Project Value. Said commission shall be calculated in accordance with the then effective Commission Schedule beginning at the incremental rate determined from the Net Project Value.

*Example:*

| | | | | | |
|---|---|---|---|---|---|
| Net Project Value | = | $5,000,000 | Commission | = | $ 66,250 |
| Change Order | = | 50,000 @ 0.75% | Commission Adder | = | 375 |
| | | | *Total Commission* | | $ 66,625 |

 **VICTORY ENERGY**                    *Commission Schedule*

**C.  Reduction of Contract Scope**

In the event the scope of a contract is reduced by change order after contract formation, Representative will receive a reduced commission as a result of a corresponding reduction in the Net Project Value.  The amount of commission reduction shall be the difference between the commission due on the Net Project Value prior to the change order and the commission due on the reduced Net Project Value.

**4.  Commission Allocations — General Orders for New Equipment**

All commissions shall be allocated in the same manner with amounts determined in accordance with the above Schedule.  Commissions shall be specifically allocated using the following guidelines.

**A.  Pre-Order Influence: 75%**

This allocation will be divided equitably among the Representatives in accordance with their relative effectiveness on the basis of effort, time, and achievement.  Pre-order influence is exerted on:

**i.  The User**
    a.   at local plant/mill level
    b.   at headquarters level

**ii.  Consulting Engineer**
The commission for pre-order influence shall be apportioned as follows:

    a.   **15%**  For influence exerted prior to the issuance of the inquiry.

    b.   **60%**  For the sales effort expended after receipt by VEO of the inquiry.

**B.  Purchase Order: 10%**

10% of the total commission will accrue to the Representative within whose geographic territory the negotiation and award of the contract occurs.



*Commission Schedule*

**C.    Post-Order Engineering: 5%**
5% of the total commission will accrue to the Representative within whose geographic territory occurs the responsibility of obtaining all details and drawings and other approvals.

In the absence of this responsibility, this percentage shall be added to the amount for pre-order influence, making a total of 80%.

**D.    Destination: 10%**
10% of the total commission will accrue to the Representative within whose geographic territory the project equipment is originally installed.  This commission credit will be paid after evidence has been submitted to VEO that the Representative has visited the project site during and after start-up and rendered service as to:

- Providing any required assistance regarding delivery and installation of the Products.

- Promoting further use of VEO's equipment.

- Determining spare parts requirements and sales.

- Advising VEO as to key customer contacts.

- Providing VEO with a report as to plant status and customer satisfaction level.

**5.    Allocation of Commissions— Aftermarket / Customer Service**

**A.    Aftermarket Equipment Sales Commissions**
Commissions shall be allocated as shown below for all orders outside of General Orders consisting of off-the-shelf spare part products sold and for engineered products and Field Service sold.  VEO's determination of the allocation shall be final, however, VEO will discuss the allocation when multiple Representatives are involved in a single sale to assure an equitable split of commission among the Representatives.

| | | |
|---|---|---|
| 1. | Annual visits / communication with the customer | 25% of total commission |
| 2. | Inquiry obtained as a result of the visits/communications | 35% of total commission |
| 3. | Pre-order influence | 15% of total commission |
| 4. | Close order | 15% of total commission |
| 5. | Post order follow-up at destination | 10% of total commission |

 **Commission Schedule**

**B.  Field Service**

A sales commission will be paid to VEO's domestic sales Representatives for Field Service orders specifically sold by Representative and contracted by the customer within two months of the written offer.  The commission will amount to a flat rate of $150.00 per full-paid contract day.  Direct calls for service from the customer to VEO are not eligible for the commission.  This incentive will run for calendar year 2003 and will be reviewed at year-end for any modification.

A full-paid contract day is defined as a full day worked (minimum of 8-hours) and is paid at the contract per diem rate.  No commission will be paid for less than a full day worked nor for any day worked that is chargeable to VEO such as for warranty, courtesy calls, or part of a negotiated settlement.

**6.  Disputes**

VEO's decision as to the allocation of commissions shall be final as detailed in paragraph 9, Compensation, as set forth in the Sales Representation Agreement.

 *Product Schedule*

**Product Schedule:**

1. The following products are included within this agreement:

   Keystone Water Tube boilers: 8 M – 22M (29,000 PPH – 150,000 PPH)

   VEO HRSG's (Heat Recovery Steam Generator) Systems – All sizes