UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INDECK KEYSTONE ENERGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-00325 Erie |
| | ) | |
| VICTORY ENERGY OPERATIONS LLC, | ) | Judge Sean J. McLaughlin |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF MARTIN R. SWABB

I, Martin R. Swabb, give this Affidavit based on my personal knowledge of the subject matter described below.

1. I am the Field Service Manager of Indeck Keystone Energy LLC, which is the successor to Erie Power Technologies, Inc. ("EPTI") under a License Agreement that EPTI entered with Defendant Victory Energy Operations LLC ("VEO") for the manufacture of Keystone® industrial watertube package boilers. Before joining Indeck, I worked as an engineer with EPTI and certain of its predecessors. I was one of the engineers involved with the design and manufacture of Keystone® boilers with those companies.

2. I understand that Indeck sued VEO based on (among other things) VEO's use of the licensed Keystone® technology in boilers that were outside the scope of the License Agreement without the permission or consent of IKE.


EXHIBIT 2

PTDATA 295110_1

3. The License Agreement includes an Annex I, which contains certain design and operating information that Indeck and its predecessors consider to be confidential and proprietary and/or to represent trade secrets. The information on pages 20, 21, and 22 includes (but is not limited to) tube spacing in the boilers, the transverse spacing, the number of rows of convection tubes, and the effective convection surface, which represent aspects of the geometry of the boiler that affect the steam production and thermal performance. That information was developed by Indeck's predecessors over an extended period of time and represent design details that contribute to the quality and performance of the boilers.

4. Annex I also includes other information that is not confidential, such as the height, width, and length, steam capacity of the different models, and the front wall and rear wall schematics, which are "catalog"-type information made available to the public.

5. The information in Annex I contains some, but not all, of the confidential, proprietary, and/or trade secret information concerning the Keystone® boiler design.

6. Indeck designated its copies of Annex I confidential because it did not want Annex I disclosed to third parties outside the scope of this lawsuit.

7. Indeck does not believe that its predecessors publicly disclosed the information in Annex I that Indeck considers to be confidential, proprietary, and/or trade secrets.

8. Indeck does not want its competitors to learn the information in Annex I, which is why it wanted a protective order entered in this case. Indeck believed that VEO was abiding by the Protective Order and not disclosing documents that it or Indeck designated as confidential.

9. Indeck understands that VEO designated Annex I as confidential under the terms of the Protective Order and that VEO never objected to Indeck's designation of that document as confidential. Indeck agrees with VEO's designation of Annex I as confidential.

10. Indeck has become aware that VEO filed Annex I with the Court without ensuring any protection over the confidentiality of the information in that document.

11. Indeck asks the Court to order VEO to withdraw Annex I from the court file, to seal Annex I, or to take other measures to ensure that document is not publicly available.

12. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2006.

Martin R. Swabb