UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | CIVIL ACTION<br><br>NO. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
COUNTS II THROUGH V OF
<u>DEFENDANT'S SECOND AMENDED COUNTERCLAIM</u>**

　　　　Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, submits this Statement of Undisputed Facts in support of its Motion for Partial Summary Judgment on Counts II through V of the Second Amended Counterclaim filed by Defendant, Victory Energy Operations ("VEO").

<u>**VEO's Agreements with Sales Representatives**</u>

1. Each of the subject Sales Representative Agreements attached to VEO's Second Amended Counterclaim was terminable at-will and without cause by either party. (Exhibits B and C to VEO's Second Amended Counterclaim at ¶ 8(a)). Paragraph 12(a) of the Sales Representative Agreement provides that "This contract is subject to cancellation upon thirty (30) days written notice by either party." *Id.*

2. Such at-will provisions are common in the industry, appearing in over 80% of the contracts to which CPE is a party. (Exhibit C, Christian Dep., p. 118).

3. The Sales Representative Agreements each included a non-compete clause, which specifically provided that the "Representative shall not handle, sell, distribute or otherwise associate itself with any equipment that is similar to or competes in any way with the [subject] Products." (Exhibits B and C to VEO's Second Amended Counterclaim at ¶ 8).

4. Such non-compete provisions are contained in written sales representative contracts more than half of the time in the boiler sales industry. (Exhibit C, Christian Dep., p. 107). Even where a noncompete clause is not contained in a written representative agreement, it is nevertheless implied – "the intent of that clause is common in the industry." (*Id.*, at pp. 103 – 106).

5. IKE and VEO are business competitors, and at least two of VEO's identified sales representatives, in addition to representing VEO, also represented IKE for the sale of boilers and equipment. (VEO's Second Amended Counterclaim at ¶¶ 22, 28, and 37).

### The University of Notre Dame Contract

6. Paul A. Kempf, P.E., Director of Utilities for Notre Dame, awarded the boiler contract to VEO's competitor (English Boiler) on the merits of English's proposal, specifically including: (i) English's bid price, which was lower than VEO's, (ii) the fact that English's proposal guaranteed lower emissions than the proposal submitted by VEO, and (iii) the fact that English's proposed boiler was more efficient than the package proposed by VEO. (Exhibit A, Kempf Dep., pp. 68, 76-77, 84-85 and 89).

7. Any statements made by Mr. Coale were not considered by Notre Dame and had no impact on its decision to award the boiler contract to English, instead of VEO. (Kempf Dep., pp. 66-67 and 91-94). Mr. Kempf's undisputed testimony is that:

   - At the point in time when Jeff Coale allegedly made remarks about VEO, Notre Dame was "leaning towards [purchasing a boiler from] English and NATCOM, and so if that was going to be the end decision, [Coale's comments] really didn't matter" to him;
   - If Notre Dame had decided to purchase a boiler from VEO, it would have discussed Coale's statements with VEO, "but [Notre Dame] never got to that point... we didn't get to a point where we were seriously looking at [VEO]. . ."; and
   - Coale's alleged statements weren't "part of [Kempf's] decision process."

   (*Id.*, at pp. 66-67, 73 and 91-94).

8. VEO had no "right" to a contract with Notre Dame for the proposed boiler. Notre Dame reserved the right to reject any proposal, including the proposal submitted by the lowest bidder. (*Id.*, at p. 76).

**Christian Power Equipment, Power Systems, Inc., and THE**

9. Christian Power Equipment ("CPE") has never represented two competing manufacturers for the same product line simultaneously – except where it received express consent from Erie Power to CPE's representation of VEO for the licensed Keystone® boilers. (Exhibit C, Christian Dep., pp. 107 – 109).

10. The Sales Representative Agreement (at paragraph 8(c)) requires the sales agent to identify all companies it is representing and all equipment that it is attempting to sell, so that the manufacturer may determine whether a conflict of interest exists. (Exhibit C, Christian Dep., pp. 109 – 110).

11. IKE legitimately desired sales representatives who would be able to represent its entire product lines with undivided loyalty. (Exhibit C, Christian Dep., pp. 37-38 and 43-50).

12. CPE determined that it would be more profitable and was "the best business decision" for CPE to represent IKE's products exclusively. (*Id.*, at pp. 56, 199-20).

13. With respect to CPE or PSI, VEO is unable to quantify any sales opportunities that it actually lost as a result of the termination its Sales Representative Agreements. (Exhibit B, Viskup Dep., pp. 38-42).

14. At least eight other boiler sales representatives are active in the same territories in which CPE provided representation for VEO—most of whom are competent, and whose reputations range from good to excellent. (Exhibit C, Christian Dep., pp. 130-35).

15. VEO did nothing to persuade CPE to refrain from terminating its agreement with VEO and prior to IKE's request that CPE choose between IKE and VEO, VEO unilaterally modified its agreement with CPE, by reducing the size of the territory in which CPE represented VEO. (Exhibit C, Christian Dep., pp. 57, 121-24, 130-35).

16. With respect to Thermal and Hydraulic Equipment ("THE"), there was no termination of the Sales Representative Agreement with VEO. Nor did THE alter or modify its promotional activities for VEO's products and services as a result of any actions or statements by IKE. (VEO's Second Amended Counterclaim ¶ 44 and Exhibit B, Viskup Dep., pp 24, 40-42).

### VEO's Claim for Breach of Exclusivity

17. VEO's President and corporate designee, John Viskup, could not identify one boiler that IKE actually sold in violation of the exclusivity provision of the License Agreement. (Exhibit B., Viskup Dep., pp. 7, 28 and 34).

## VEO's Alleged Damages

17. VEO cannot identify any damages that were actually sustained by VEO as a result of IKE's conduct. (Exhibit B., Viskup Dep., p at pp. 7 and 36).

                Respectfully submitted,

                __/s/ John K. Gisleson__
                John K. Gisleson (Pa. ID No. 62511)
                Robert J. Williams (Pa. ID No. 76139)
                SCHNADER HARRISON SEGAL & LEWIS LLP
                Fifth Avenue Place
                120 Fifth Avenue, Suite 2700
                Pittsburgh, PA  15222-3001
                Telephone:  412-577-5200
                Facsimile:  412-765-3858

                Gerald F. DeNotto
                600 North Buffalo Grove Road, Suite 300
                Buffalo Grove, IL  60089
                Telephone:  847-520-3212
                Facsimile:  847-520-3235

                Attorneys for Plaintiff and Counterclaim Defendant
                Indeck Keystone Energy, LLC