UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INDECK KEYSTONE ENERGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-00325 Erie |
| | ) | |
| VICTORY ENERGY OPERATIONS LLC, | ) | Judge Sean J. McLaughlin |
| | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S CONCISE
STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Indeck Keystone Energy LLC ("Indeck"), by and through its undersigned attorneys, submits this Response to Defendant's Concise Statement of Material Facts in Support of the Motion of Defendant Victory Energy Operations LLC ("VEO") for Partial Summary Judgment ("VEO's Statement"). Indeck previously filed a Statement of Undisputed Facts in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of its Motion for Partial Summary Judgment ("Indeck Statement"). Indeck relies on its Statement, as a whole, in opposing VEO's Motion. For the convenience of the Court and VEO, Indeck submits this Response that correlates specific facts in its Statement to the specific provisions in VEO's Statement.

1.      Admitted.

2.      Admitted in part, denied in part. Indeck admits that for a period of time, the tangent-tube design was the predominate design and that EPTI designed and sold tangent tube boilers. Indeck denies the temporal reference as there are many tangent tube boilers currently in use. (IKE Statement at ¶¶ 5, 63-64)

PTDATA 295328_1

1

3.   Admitted that there is refractory in the boilers, but this is not a material fact to VEO's Motion, which focuses on the interpretation of the License Agreement.

4.   Admitted in part, denied in part. Indeck admits that EPTI developed its own welded wall design and denies the implication that all boilers offered for sale after 1980 had a different design than tangent tube. (IKE Statement at ¶¶ 7, 8,17, 18, 63-64)

5.   Admitted to the extent described in ¶ 7 of the IKE statement.

6.   Denied as stated. EPTI developed its own membrane walls. (IKE Statement at ¶ 7)

7.   Admitted. (IKE Statement at ¶¶ 17-18, 49-62)

8.   Admitted in part, denied in part. Indeck admits that full membrane design was offered for sale, but denies that tangent tube boilers were not also offered for sale or in use. (IKE Statement at ¶¶ 63-64, 139, 141-42)

9.   Admitted. (IKE Statement at ¶¶ 1-7)

10.   Admitted. (IKE Statement at ¶ 11)

11.   Admitted. (IKE Statement at ¶ 11)

12.   Denied. VEO participated in the sale, but the boilers were for a Heinz Plant, which was the end user. (IKE Statement at ¶¶ 11-12, 34)

13.   Denied. The sale of the Heinz boilers was temporally removed from the negotiation of the License Agreement. VEO also did not seek to license "O-style Keystone® boilers" and instead sought to license the M-Series. (IKE Statement at ¶¶ 11, 15-65)

14.   Admitted in part, denied. EPTI was focusing on HRSGs, but it still offered the Keystone® boilers for sale. (IKE Statement at ¶ 2, 5-10) EPTI's sales focus is not a material fact relevant to interpretation of the License Agreement.

15.    Denied.  VEO contacted EPTI.  (IKE Statement at ¶ 15)

16.    Admitted, but Mark White also was to work with the Engineering Department.
(IKE Statement at ¶¶ 16-17, 42-60)

17.    Admitted, but Mark White was instructed by Stephen Kang to coordinate with the
Engineering Department in negotiating and preparing the License Agreement.  (IKE Statement at
¶¶ 16-17, 42-60)

18.    Denied.  (IKE Statement at ¶¶ 17-18, 26, 30-34, 39-62, 65, 86-94, 96-99, 101-08,
111-15, 117-20, 122-27, 144-45, 149)

19.    Admitted, but the License Agreement includes Annex 1 that defines the licensed
Products.  (IKE Statement at ¶¶ 26, 32, 39, 41, 49-62, 68, 86-90, 96-108, 111-114, 117-20, 122-
24)

### The License Agreement

20.    Admitted as described in response to Paragraph 19, above.

21.    Admitted as described in response to Paragraph 19, above.

22.    Admitted.  The License Agreement Addendum states that EPTI "agrees to modify
**the Products as described in Annex 1 of the License Agreement**" as set forth in the
Addendum.  (IKE Statement at ¶¶ 67-68) (emphasis added)

23.    Admitted as described in response to Paragraph 19, above.

24.    Admitted, but the Products are also defined by the drawings in Annex 1.  (IKE
Statement at ¶¶ 26, 32, 39, 41, 49-62, 68)

25.    Admitted.  (IKE Statement at ¶¶ 49-61)

26.    Admitted.  (IKE Statement at ¶¶ 49-61)

PTDATA 295328_1

27.     Denied.  (IKE Statement at ¶¶ 15-18, 23, 25, 27, 29-34, 39-62, 68,86-91, 96-97, 103-08, 111-14, 117-18, 122, 126)

28.     Admitted, but the "Products" are more fully defined by Annex 1.  See response to Paragraphs 19, 24, 27.

29.     Admitted, but there were no modifications under Clause 8.  (IKE Statement at ¶¶ 20, 25, 93-94)

30.     Admitted, but there were no improvements under Clause 13.  (IKE Statement at ¶¶ 20, 25, 93-94)

### Transfer of the Licensed Technology

31.     Admitted.

32.     Admitted.

33.     Admitted.  Stephen Kang testified that he did not have actual knowledge of infringement or a breach of the License Agreement, but he did not review the correspondence between EPTI and VEO.  Other EPTI representatives notified VEO of its improper conduct.  (IKE Statement at ¶¶ 87, 86-91, 96-108, 122-24)

34.     Admitted.

### The Pleadings

35.     Admitted.  The Complaint speaks for itself.

36.     Admitted.  The Complaint speaks for itself.

37.     Admitted.  The Second Amended Counterclaim speaks for itself.

38.     Denied.  The Complaint describes the claims and does not "attempt to create a distinction."  Indeck relies on its Statement of Facts that describe the factual basis for Indeck's claims.  The Complaint speaks for itself.

39.    Denied.  Indeck incorporates by reference its response to Paragraph 38.

40.    Denied.  Indeck incorporates by reference its response to Paragraph 38.

<u>Parties' Performance Under the Agreement</u>

41.    Admitted, but see Indeck Statement at ¶¶ 1, 5-6, 8-10, 35-37, 66, 71-81, 122-24, 131-39, which address why that information was provided and the limitations on VEO's use of that information.

42.    Admitted, but see Indeck Statement at ¶¶ 71-77, 86-91, 96-108, 122-27, 131-149.

43.    Admitted.  See Indeck Statement at ¶¶ 71-77, 86-90, 96-108, 111-14, 117-20, 122-24.

44.    Admitted.

45.    Denied.  VEO sold boilers under the Keystone® name that were outside the scope of the product description in the License Agreement.  (Indeck Statement at ¶¶ 71-79, 86-91, 96-108, 109-120, 122-28)

46.    Denied. VEO utilized technical information in connection with boilers that were outside the scope of the product description in the License Agreement.  (Indeck Statement at ¶¶ 71-79, 86-91, 96-108, 109-120, 122-28)

47.    Admitted that every boiler used membrane technology in part or in full.

48.    Admitted.  Indeck incorporates by reference its response to Paragraph 43.

49.    Denied.  VEO has stated in this lawsuit that it did not make any "modifications" as provided in the License Agreement.  Indeck incorporates by reference its response to Paragraph 29.

50.    Admitted.  VEO did not disclose to IKE that it was selling boilers with membrane walls.  (Indeck Statement, ¶ 81)

51.    Admitted.  However, there was no separate sales manual for the M-Series, and EPTI was to provide VEO with "sales promotion material as used by Licensor" along with "typical sales proposal information …."  VEO refused to provide marketing and sales information to EPTI.  (Indeck Statement, ¶¶ 5, 10, 131-133, 137-38, 144-149)

52.    Admitted.  Indeck incorporates by reference its response to Paragraph 51.

53.    Denied.  Indeck incorporates by reference paragraph 51.

54.    Admitted, but that lack of knowledge is not material to the Motion.

55.    Admitted, but that lack of knowledge is not material to the Motion.

56.    Admitted in part, denied in part.  Indeck admits that VEO sold such boilers for a limited period of time with express consent that was subsequently revoked.  EPTI did advise VEO that VEO was marketing and/or selling boilers outside the scope of the Agreement.  (Indeck Statement, ¶¶ 71-78, 86-95, 96-108, 111-14, 117-18, 122-24, 137-38)

57.    Admitted.  Indeck incorporates by reference its response to Paragraph 33.

PTDATA 295328_1

58.    Admitted, but that fact is not material to interpretation of the License Agreement.

(Indeck Statement at ¶¶ 6-8)

Respectfully submitted,

/s/    John K. Gisleson_____
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Gerald F. DeNotto
600 North Buffalo Grove Road, Suite 300
Buffalo Grove, IL 60089
Telephone: 847-520-3212
Facsimile: 847-520-3235

Attorneys for Plaintiff and Counterclaim Defendant,
Indeck Keystone Energy, LLC

Dated:  March 30, 2006