**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 04-CV-325 (ERIE) |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | : : : : : : | Judge Sean J. McLaughlin |
| Defendant. | : | |

---

**PLAINTIFF'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT ON
DEFENDANT'S COUNTERCLAIMS**

---

Plaintiff Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby submits this Reply Memorandum of Law in support of its Motion for Partial Summary Judgment on the Second Amended Counterclaim filed by Defendant, Victory Energy Operations, LLC ("VEO").

**I.    INTRODUCTION**

Presently pending before this Honorable Court, *inter alia*, is IKE's Motion for Summary Judgment on VEO's counterclaims for alleged breach of the exclusivity provision of the parties' written License Agreement and for alleged intentional interference with contractual relations (i.e., Counts II and III of VEO's Second Amended Counterclaim, respectively).  IKE's Motion

also requested summary judgment on VEO's counterclaims for alleged violation of the California Business and Professional Code and for alleged interference with prospective economic advantage (i.e., Counts IV and V of VEO's Second Amended Counterclaim, respectively). However, in response to IKE's Motion, VEO has voluntarily withdrawn those counterclaims.

IKE is entitled to judgment in its favor on VEO's claim for alleged breach of the exclusivity provision of the License Agreement, because there is no evidence that IKE ever sold any Keystone® boiler that VEO had the exclusive right to manufacture. Even if IKE had breached the so-called exclusivity provisions of the License Agreement (which is denied), there is no evidence that such alleged conduct actually caused VEO to sustain any damages.

In response to IKE's Motion, VEO does not challenge the fact that IKE never sold any Keystone® boiler that VEO had the exclusive right to manufacture. Instead, VEO claims that the License Agreement also gave it the exclusive right *to market* Keystone® boilers, and that IKE interfered with that right by: (i) publishing its own marketing materials, which apparently included certain Keystone® boilers that VEO had the exclusive right to manufacture, and (ii) communicating its opinion that the Keystone® boilers that VEO had an exclusive license to manufacture did not include boilers with membrane walls. VEO further asserts that the aforementioned conduct caused it to "los[e] sales opportunities". *See* VEO's Memorandum of Law in Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims, Doc. No. 72, at pp. 1-3 and 6-7.

VEO's response to IKE's Motion fails to create any genuine issues of material fact, or to otherwise undermine IKE's right to judgment in its favor on VEO's counterclaim for breach of contract. As set forth in greater detail below, VEO simply misreads the License Agreement –

which grants VEO the exclusive right to *manufacture* certain Keystone® boilers, but <u>not</u> the

exclusive right to market or use the Keystone® name and trademark.  Even if that were not the

case, VEO's only evidence that the alleged breach caused it to sustain damages is the

unsubstantiated opinions and legal conclusions of its President, John Viskup, which are wholly

inadequate and unreliable as proof of damages.  Accordingly, IKE's Motion for Summary

Judgment on Count II of VEO's Second Amended Counterclaim should be granted.

Similarly, IKE is entitled to judgment in its favor on VEO's claim for alleged

interference with contractual relations, because the alleged "interference" was simply legitimate

business competition of the kind set forth in section 768 of the RESTATEMENT OF TORTS (which

has been adopted by the Pennsylvania courts).  Section 768 provides that a business which

induces a third-party to terminate an *at-will* contract with its competitor will <u>not</u> be liable to the

competitor therefor, if:  (i) the relation concerns a matter involved in the competition between the

actor and the other, (ii) the actor does not employ wrongful means, (iii) the action does not create

or continue an unlawful restraint of trade, and (iv) his purpose is at least in part to advance his

interest in competing with the other.  As set forth in greater detail in IKE's principal brief (Doc.

No. 54, pp. 9-13), those elements are fully satisfied in this action.  Furthermore, even if VEO

could establish that the alleged interference was actionable, it cannot prove that such conduct

actually caused it to sustain damages.

VEO's response to IKE's Motion contends that the elements of section 768 of the

RESTATEMENT have not been satisfied.  In particular, although it repeatedly has admitted and

affirmatively averred (in no less than three separate documents that have been filed with the

Court) that IKE and VEO <u>are</u> business competitors, VEO now attempts to qualify that admission

by asserting that it and IKE are not really competitors, because they did not compete for sales of

the particular Keystone® boilers that VEO was licensed to manufacture.  VEO also claims

(without citation to any legal authority) that IKE's refusal to contract with any sales agent who

simultaneously represented VEO was an "improper" means of competition.  Finally, VEO relies

upon the same conclusory and unsupported opinion testimony from its President that VEO "lost

sales opportunities" as evidence that it sustained damages.  *See* VEO's Memorandum of Law in

Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims, Doc. No.

72, at pp. 2-4 and 9-16.

     For obvious reasons, VEO's response to IKE's Motion for summary judgment on the

improper interference claim is as infirm as its response to IKE's request for summary judgment

on VEO's breach of contract claim.  As set forth in greater detail below, a party may not

contradict its own repeated admissions, simply to defeat a motion for summary judgment, as

VEO is attempting to do with its eleventh-hour claim that it and IKE are not really competitors

for boiler sales.  Furthermore, under section 768 of the RESTATEMENT, the mere fact that one's

competitive activity harms another does <u>not</u> render that activity wrongful.  Here, while IKE

*might* have known that termination of VEO's agreements with certain sales representatives could

harm VEO, there is no evidence whatsoever that IKE was motivated solely by a desire to harm

VEO.  To the contrary, IKE was simply trying to secure the undivided loyalty of the best sales

representatives in the industry.  The legitimacy of that motive is itself established by VEO's own

admission that **none** of its sales representatives have ever simultaneously represented VEO and

any of VEO's competitors.[1]  Finally, VEO's unsupported opinion evidence that it "lost sales

opportunities" is insufficient and inadequate to create any issue of material fact.  Thus, IKE also

---

[1] *See* deposition transcript of Mark White, at p. 170 (Exhibit No. 7 to VEO's Appendix of Exhibits in
Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims).

PTDATA 296474_1

is entitled to summary judgment on VEO's improper interference with contractual relations

claim.

## II.    <u>ARGUMENT</u>

**(A)    Summary Judgment Should Be Granted in IKE's Favor on Count II of VEO's Second Amended Counterclaim, Because VEO's Claim That It Had an Exclusive Right *to Market* Keystone® Boilers Misapprehends the Parties' License Agreement**

In its opposition to IKE's Motion, VEO claims that the License Agreement gave it the

exclusive right *to market* Keystone® boilers.  However, VEO conspicuously fails to include or

discuss the specific contract language upon which that assertion is based.  Instead, VEO merely

claims that it "was granted the exclusive license to manufacture, market and sell the Products . . .

with limited exceptions that IKE does not argue are applicable here."  *See* VEO's Memorandum

of Law in Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims,

Doc. No. 72, at p. 6.

The actual terms of the License Agreement do not support VEO's argument.  While the

License Agreement did grant VEO the exclusive license to manufacture certain Keystone®

boilers, it did <u>not</u> grant VEO the exclusive right to market Keystone® boilers or use the

Keystone® name and trademark.  The operative language of the License Agreement (at clause

2(a)) specifically grants VEO "the exclusive license to manufacture the Products and to offer,

sell, and install the Products so manufactured…"  Thus, it is only the <u>license</u> <u>to</u> <u>manufacture</u> the

specified boilers that is exclusive; the right to use the Keystone® name and trademark is <u>not</u>

expressly made exclusive by any contract language.  For example, clause 2(a) of the License

Agreement further provides that the "Licensor [i.e., IKE] reserves the right to itself to offer, sell,

manufacture, and install the Products in the Exclusive Territory" where requested by the client or

VEO is incapable of meeting the client's standards.  Similarly, clause 15 of the License

PTDATA 296474_1

Agreement granted VEO the right "to use the [Keystone® trademark] royalty-free on the Products manufactured". However, that clause clearly did not give VEO the *exclusive* right to use the Keystone® name and trademark, nor does any other provision of the License Agreement convey such an exclusive marketing right.

Accordingly, VEO's right to market and use the Keystone® name and trademark was non-exclusive. Because the License Agreement did not grant VEO an exclusive marketing right, VEO's claim that IKE breached the License Agreement simply by marketing Keystone® boilers and using the Keystone® name and trademark must fail as a matter of law. Accordingly, IKE is entitled to summary judgment in its favor on Count II of VEO's Second Amended Counterclaim.

    **(B)    Even if IKE's Alleged "Marketing" Activities Could Support VEO's Claim for Breach of the License Agreement's Exclusivity Provisions, VEO Nevertheless Has Failed to Come Forward With Evidence That Such Conduct Actually Resulted in the Loss of Any Boiler Sales**

Even if IKE's alleged marketing activities could be construed as a breach of the License Agreement, VEO nevertheless has failed to produce evidence that IKE caused VEO to lose any boiler sales. The only evidence of alleged damages that VEO has identified in its response to IKE's Motion is the testimony of its President, John Viskup. *See* VEO's Memorandum of Law in Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims, Doc. No. 72, at p. 7. Specifically, Mr. Viskup testified that IKE's alleged conduct caused VEO to "miss opportunities" to bid on and obtain contracts to manufacture boilers for the Michigan Correctional Facility and the Hereford project.

It is well-settled that, when ruling on a summary judgment motion, the Court should not accept legal conclusions or unsubstantiated opinion testimony. *Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993)("[W]ith respect to a motion for summary judgment, questions of law are for the court."); *Basto v. Millwrights' Local 1102 Supplemental Pension Fund*, No. 2:04-

CV-258, 2006 U.S. Dist. LEXIS 16280 at *2 (W. D. Mich. Mar. 24, 2006)("The court, however, 'need not accept as true legal conclusions or unwarranted factual inferences.'")(citations omitted); *Henley v. Barnes*, No. 7:05cv00663, 2006 U.S. Dist. LEXIS 24278 at *10 (W.D. Va. Mar. 23, 2006)(Court need not accept "sweeping legal conclusions cast in the form of factual allegations")(citations omitted); *Turner v. District of Columbia*, 383 F.Supp.2d 157, 166 (D.D.C. 2005)(nonmoving party may not rely solely on conclusory statements, but instead, must present specific facts)(citations omitted).  It is equally well-settled that a claimant must prove with reasonable certainty that its damages were actually caused by the alleged breach.  *Martino v. Transport Workers' Union of Phila.*, 480 A.2d 242, 248 (Pa. 1984); *Wilcox v. Regester*, 207 A.2d 817, 822 (Pa. 1965).

Here, Mr. Viskup's testimony that IKE caused VEO to "miss out" on certain sales opportunities is nothing more than unsubstantiated opinion and improper legal conclusions – all of which should be disregarded by this Court.  VEO utterly and completely lacks any evidence that it actually would have been awarded contracts for the manufacture of boilers on the projects so-identified by Mr. Viskup, or that IKE's alleged conduct had any impact whatsoever on those project owners' decisions not to award boiler contracts to VEO.  In particular, VEO has not provided any documents or testimony from owners of the identified projects, which establishes that those owners would have awarded boiler contracts to VEO, but for IKE's alleged interference.  Furthermore, Mr. Viskup himself conceded that VEO is awarded contracts to manufacture boilers only on approximately 30% of the projects for which it actually submits proposals.  *See* Exhibit No. 4 to VEO's Appendix of Exhibits in Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims, at p. 160.  Thus, there is insufficient

PTDATA 296474_1

evidence upon which to base even an inference that IKE caused any owner to refrain from awarding any boiler contract to VEO.

The inadmissibility and unreliability of Mr. Viskup's legal conclusions and unsubstantiated opinions are further demonstrated by the actual evidence of record in this matter. Although presently withdrawn, VEO also has claimed that IKE caused the University of Notre Dame to refrain from awarding a boiler contract to VEO. As set forth in greater detail in IKE's principal brief (Doc. No. 54, at pp. 6-8), however, IKE did not actually interfere with the contract award process. Instead, Notre Dame contracted with one of VEO's competitors based solely upon substantive factors, such as price, emissions guarantees, and boiler efficiency. *Id.* Such evidence makes it abundantly clear that Mr. Viskup's naked opinion that IKE caused VEO to "miss opportunities" for boiler sales is inadmissible and insufficient to prove that VEO actually sustained any damages. As such, IKE is entitled to judgment in its favor on Count II of VEO's Second Amended Counterclaim.

    **(C)     Summary Judgment Also Should Be Granted in IKE's Favor on Count III of VEO's Second Amended Counterclaim, Because VEO Has Admitted That It and IKE Are Business Competitors**

As set forth above, VEO disputes that IKE has established all of the elements of section 768 of the RESTATEMENT OF TORTS, which provides that a business which induces a third-party to terminate an *at-will* contract with its competitor will not be liable to the competitor therefor. In particular, VEO now claims that it and IKE are not really business competitors, because they did not compete for sales of the particular and discrete subset of Keystone® boilers that VEO was previously licensed to sell under the License Agreement. However, VEO already has repeatedly admitted and affirmatively averred that it and IKE are business competitors.

PTDATA 296474_1

For example, at paragraph 22 of its (first) Amended Counterclaim (Doc. No. 14), VEO states that "VEO and IKE are competitors in the design, manufacturing and sale of steam generating equipment, including industrial boilers."   VEO later repeated the exact same fact at paragraph 22 of its Second Amended Counterclaim (Doc. No. 42).  Finally, in its response to IKE's Statement of Facts in Opposition to VEO's Motion for Partial Summary Judgment and in Support of Motion for Partial Summary Judgment, VEO makes the unqualified admission that it and IKE are "competitors for the sale of watertube boilers."  *See* Doc. No. 75, at ¶ 14.

A party may not contradict its prior admissions and averments, simply to avoid the entry of summary judgment.  *See General Construction Co. v. Hering Realty Co.*, 201 F.Supp. 487, 493 (D.S.C. 1962)(appeal dismissed, 312 F.2d 538).  In that case, defendant admitted in its answer that a balance was due and owed to the plaintiff.  However, in order to avoid summary judgment, defendant attempted to qualify his prior admission, by contending that contract work was incomplete and no balance was owed to plaintiff.  The Court rejected defendant's claim, and held that it was bound by the admissions set forth in its earlier pleadings.  *Id.*

In accordance with *General Construction*, therefore, VEO's eleventh-hour attempt to claim that it and IKE are not competitors should be rejected, and VEO should be bound by its prior repeated admissions and allegations to the contrary.

Even if this Court does not hold VEO to its prior admissions and averments, Courts construing and applying section 768 of the RESTATEMENT simply do not endorse the restrictive and unreasonable view of the "competition" element that is espoused by VEO.   For example, *Amerinet, Inc. v. Xerox Corp.* involved an improper interference claim by the re-seller of used office equipment against the manufacturer of new office equipment.  The Court applied the competitor's privilege of section 768 in that case, even though the plaintiff and defendant did not

PTDATA 296474_1

directly compete for the sale of the exact same products.  972 F.2d 1483, 1505-07 (8th Cir. 1992).

Similarly, plaintiff industrial hygiene consulting firm and nuclear weapons manufacturer were

deemed to be "competitors" in the market for employment of industrial hygienists, even though

their respective businesses did not directly compete with one another.  *Occusafe, Inc. v. EG & G

Rocky Flats, Inc.*, 54 F.3d 618 (10th Cir. 1995).  In so holding, the Court of Appeals reasoned,

"The competitor's privilege set out in section 768(1) applies when the parties compete in **any**

**way**: 'The rule stated in [section 768] applies whether the actor and the person harmed are

competing as sellers or buyers or **in any other way, and regardless of the plane on which they**

**compete.**'"  *Id.* at 623 (citing RESTATEMENT OF TORTS § 768, cmt. c.)(emphasis added).  Yet

another Court reached a consistent conclusion in *Matrix Essentials, Inc. v. Cosmetic Gallery,

Inc.*, 870 F.Supp. 1237, 1248 (D.N.J. 1994)("Although Matrix and defendants do not compete

directly, the interests at issue here are largely the same as those at issue between direct

competitors.").[2]

Thus, it is clear that IKE and VEO *are* competitors for purposes of the privilege set forth

in section 768 of the RESTATEMENT.  As such, IKE is entitled to application of that privilege as a

meritorious defense to VEO's improper interference claim, as well as judgment in its favor and

against VEO as a matter of law.

### (D)  Summary Judgment Should Be Granted in IKE's Favor on Count III of VEO's Second Amended Counterclaim, Also Because VEO Has Failed to Establish That IKE Competed "Improperly"

In its efforts to avoid application of the competitor's privilege as a defense to its

interference claim, VEO also contends that IKE acted improperly, essentially by "intending" to

---

[2] In support of its position that the competitor's privilege does not apply where the parties are not actual competitors, VEO cites *Techno Corp. v. Dahl Assoc. Inc.* and *Data Based Systems, Int'l. Inc. v. Hewlett-Packard Co.*  However, those cases are factually inapposite to the instant matter, because they involve claims between a manufacturer and its own sales agent.

PTDATA 296474_1

harm VEO through its refusal to contract with any sales agent who was also simultaneously representing VEO. Once again, VEO is simply wrong.

First, VEO has no evidence whatsoever that IKE refused to contract with sales representative who also represented VEO, solely to harm VEO. At most, the evidence cited by VEO establishes only that IKE was aware that its conduct *could* cause harm to VEO. From that evidence alone, VEO draws the inference that IKE intended harm.

However, that inference is patently improper and inappropriate as a matter of law.[3] First, the essence of the competitor's privilege under section 768 is the absolution of liability for interference with contracts, *despite the harm that it has caused to the other party.* As set forth in IKE's principal brief, "The issue in each case is . . . whether the conduct should be permitted without liability, despite its effect of harm to another." *Adler*, 393 A.2d at 1184 (*citing* RESTATEMENT OF TORTS (Second) §767, cmt. b. (1977)). Secondly, the evidence of record in this matter established that IKE was acting in a manner consistent with the prevailing practice in the industry – which is also followed by VEO itself, and which provides that sales representatives do not represent competing boiler manufacturers simultaneously. *See* deposition transcript of Mark White, at p. 170 (Exhibit No. 7 to VEO's Appendix of Exhibits in Opposition to IKE's Motion for Partial Summary Judgment on VEO's Counterclaims). As such, there is no evidence or basis to infer that IKE was motivated solely by the intent to harm VEO.

Secondly, as a matter of law, it is not wrongful or improper competition for one company to persuade another person to deal with it, and not its competitor. *Reazin v. Blue Cross and Blue*

---

[3] VEO cites absolutely no authority in support of its apparent position that intent may be inferred solely from evidence that IKE knew that certain sales representatives had been representing VEO. *See* Doc. No. 72, at p. 9.

*Shield of Kansas, Inc.*, 663 F.Supp. 1360, 1492 (D. Kan. 1987)("One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors.")(citing RESTATEMENT OF TORTS § 768 cmt. b). In fact, in order for interference to be "wrongful", it must be independently actionable, i.e., the subject of its own independent cause of action. *National Data Pymt. Systems, Inc. v. Meridian Bank*, 212 F.3d 849 (3d Cir. 2000). Here, VEO has completely failed to provide any authority to suggest that IKE's alleged attempts to persuade sales agents to represent IKE, and not VEO, is actionable under any statute or common law.[4] Thus, the competitor's privilege applies to IKE's alleged conduct, and IKE is entitled to judgment in its favor on Count III of VEO's Second Amended Counterclaim.[5]

---

[4] Once again, VEO does not cite to any legal authority in support of its conclusion that IKE's alleged conduct was improper. *See* Doc. No. 72, at pp. 13-14.

[5] As set forth in IKE's principal brief, even if the competitor's privilege did not apply to IKE's alleged conduct, VEO nevertheless cannot prove that it actually sustained any damages as a result thereof. In response to that argument, VEO has proffered the unsubstantiated opinion testimony and legal conclusions of its President, John Viskup. For the reasons set forth more fully in this Memorandum, at section II(B), Mr. Viskup's testimony is inadmissible and inadequate to prove that VEO actually sustained any damages as a result of IKE's alleged interference with VEO's sales representative agreements. For that reason, in addition to the reasons set for in sections II(C) and (D), *supra*, IKE is entitled to judgment in its favor on Count III of VEO's Second Amended Complaint.

PTDATA 296474_1

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff Indeck Keystone Energy LLC asks the Court to enter

judgment in its favor and against Defendant Victory Energy Operations, LLC, on Counts II and

III of VEO's Second Amended Counterclaim.

Respectfully submitted,


___/s/___Robert J. Williams_____
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Gerald F. DeNotto
600 North Buffalo Grove Road, Suite 300
Buffalo Grove, IL 60089
Telephone: 847-520-3212
Facsimile: 847-520-3235

Attorneys for Plaintiff and Counterclaim Defendant,
Indeck Keystone Energy, LLC

Dated:  May 2, 2006

PTDATA 296474_1