

**INDECK. KEYSTONE**
E N E R G Y

5300 KNOWLEDGE PKWY, STE 200
ERIE, PA 16510-4660 U.S.A.
PHONE 814-452-6421 – FAX 814-897-1089

October 29, 2004

Kelley Drye & Warren LLP
Attn: Mr. Christopher Sheean
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

Victory Energy Operations
Attn: Mr. Mark White
302 E. 5th Avenue, Unit D
Owasso, OK 74055

Via Email — Mark J. White, General Manager, Victory Engineering Operations, mwhite@victoryenergyinc.com

Via Email — Christopher Sheean, Kelley, Drye & Warren LLP, csheean@kelleydrye.com

Dear Mark and Chris:

I am responding both to Mark's Unit Sale Notification in his October 23 letter to Bob Gdaniec and to Chris' October 25 letter because the letters address related issues.

As you know, Indeck Keystone Energy, LLC acquired the License Agreement between Erie Power Technologies, Inc. and Victory Energy Operations, LLC when Indeck acquired certain assets from CMI EPTI LLC. We previously provided excerpts to you from the Asset Purchase Agreement demonstrating that Indeck acquired the License Agreement. Nevertheless, you still have suggested that the License Agreement was not properly assigned to Indeck. We are asking CMI's outside counsel to promptly provide you with confirmation that Indeck acquired the License Agreement.

In Chris' October 25 letter, he states that VEO did not consent to the assignment and objects to the transfer of any confidential information of VEO. Both of you should be aware that under the License Agreement (Clause 18), EPTI did not have an obligation to obtain VEO's consent prior to assigning the Agreement. The only time consent is required is if VEO wanted to assign the Agreement. As you probably are aware, the assignment of the License Agreement was approved by the Bankruptcy Court. To our knowledge, VEO did not provide any confidential information to EPTI under the License Agreement. We requested that you specifically identify any confidential information that you provided to EPTI, but you have not done so.

As to the Notification, it refers to three "Keystone Boilers" being sold to J.C. Higgins Corp. but does not provide the specific model or any performance data concerning the boilers. We therefore ask that you provide that information for the boilers. The licensor is entitled to that information under Clause 7 of the License Agreement, which permits the licensor to inspect and copy the "records, books and files of all Products and orders for Products, including the identifying data required in the Semi-Annual Statement." If you do not agree to voluntarily provide that information, Indeck will invoke its right to audit under Clause 7. I am copying Bob Gdaniec on this letter and ask that, if you do not agree to provide the requested information to me, you provide it directly to Bob Gdaniec.

**EXHIBIT**
tabbies
_53_

V 00229
CONFIDENTIAL



**INDECK.** **KEYSTONE** **ENERGY**

5300 KNOWLEDGE PKWY, STE 200
ERIE, PA 16510-4660 U.S.A.
PHONE 814-452-6421 – FAX 814-897-1089

Indeck certainly expects that VEO will comply with the License Agreement and that, as stated by Chris, VEO "has not violated the license agreement by selling 'unauthorized products' outside the scope of the license." However, Chris' description of the scope of the license is incomplete. Although he quotes the first sentence of Clause 1(a), he ignores the second sentence, which provides that "Products shall include but not be limited to the items set forth in Annex 1." Annex 1 confirms, in the "Description of Products," "Design", and specification sections, that the "Products" that are the subject of the license are limited to the "M" Series Keystone® water tube boilers. Those are the allotted parameters for the license. The correspondence between EPTI and VEO further shows that the license applies only to the "M" Series boilers. Because VEO's exclusive license applies only to the "M" Series Keystone® water tube boilers, Indeck may market Keystone® boilers for product lines other than the "M" Series.

Finally, Indeck is willing to meet with VEO to discuss any items of concern. It would be useful to have a proposed agenda from you in advance of the meeting, as well as to know whether you believe outside counsel should attend the meeting. If there is a proposal you wish to make, I suggest you do so before the meeting so that Indeck is prepared to discuss it at the meeting.

Please call me with any questions.

Sincerely,

Chris Petcos

General Manager

Indeck Keystone Energy LLC

Cc: Bob Gdaniec

V 00230
CONFIDENTIAL