## Sheean, Christopher

| | |
|---|---|
| **From:** | Sheean, Christopher |
| **Sent:** | Tuesday, March 07, 2006 10:05 AM |
| **To:** | 'Gisleson, John' |
| **Cc:** | 'Williams, Robert' |
| **Subject:** | RE: IKE v. VEO |

John,

I will review the exhibits and let you know by the end of the day if we have any objections to the filing of the exhibits. I will also look for the 30(b)(6) binders later this week.

I received documents from Power Systems which I will forward to you today.

Two other outstanding issues - you have not yet responded to my objection to IKE redacting the pricing information on Christian Power sales. These are directly relevant to our damages on our counterclaims, and are necessary information. This is particularly true given that IKE has not yet produced the documents relating to sales made through Christian Power and Power Systems. Please advise as to IKE's position on those issues.

Chris

Christopher T. Sheean
**Wildman, Harrold, Allen & Dixon LLP**
225 West Wacker Drive
Suite 2800
Chicago, Illinois 60606
T: (312) 201-2997
F: (312) 201-2555
sheean@wildmanharrold.com

> -----Original Message-----
> **From:** Gisleson, John [mailto:JGisleson@schnader.com]
> **Sent:** Tuesday, March 07, 2006 8:35 AM
> **To:** Sheean, Christopher
> **Cc:** Williams, Robert
> **Subject:** IKE v. VEO
>
> Chris --
>
> You should have received by email from the court our filings yesterday, which include a separate statement of facts. I haven't filed the exhibits yet because I wanted to make sure you didn't have a problem with any of them. As you know, virtually all documents and transcripts have been marked confidential. None of hte exhibits refer to the Voyager issue, and the focus is on discussions/emails/documents exchanged on contract issues rather technical issues that arguably is not confidential. There are Unit Sale Notifications, but I don't see any problem since the contract has ended and VEO presumably will not be selling Keystone boilers again. Let me know if you have any concerns with our exhibits. If not, I'll go ahead and file them.
>
> I still owe you the binders and have not forgotten. I've been underwater with this, other cases, and the lawsuit against my school district. They will go out this week.
>
>                                                       John
>
> John K. Gisleson

Schnader Harrison Segal & Lewis LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Email: JGisleson@Schnader.com
Phone: 412-577-5216
Cell: 412-302-7323
Private Fax: 412-577-5188
General Fax: 412-765-3858

www.schnader.com

THIS EMAIL (INCLUDING ANY ATTACHMENTS) IS INTENDED SOLELY FOR THE ADDRESSEES AND FOR THE PURPOSES DESCRIBED HEREIN.  ALL RIGHTS WITH RESPECT TO PRIVILEGED OR CONFIDENTIAL INFORMATION AND IN ALL EVENTS ARE RESERVED.  PERSONS RECEIVING THIS EMAIL BY MISTAKE SHOULD RETURN IT TO THE SENDER AND DESTROY ANY COPIES.

## Sheean, Christopher

| | |
|---|---|
| **From:** | Gisleson, John [JGisleson@schnader.com] |
| **Sent:** | Friday, April 28, 2006 1:32 PM |
| **To:** | Sheean, Christopher; Williams, Robert |
| **Subject:** | RE: IKE v. VEO |

I'll follow up again with IKE.  I have someone here going through the CPE documents now, which we've been receiving piecemeal. I'll have those to you at the beginning of the week.

You may want to check Exhibit 1 to your supplemental appendix.  The cites to the White dep in your Additional Affirmative Matter don't match what is in the appendix.

I'll check with Bob on the exhibits.  I need to check them as well.

                                   John

-----Original Message-----
From: Sheean, Christopher [mailto:sheean@wildmanharrold.com]
Sent: Thursday, April 27, 2006 5:43 PM
To: Gisleson, John; Williams, Robert
Subject: IKE v. VEO

John & Bob,

I am following up on a few earlier inquiries I made.  First, at the 30(b)(6) deposition of IKE, in response to my inquiry regarding sales made to customers of Christian Power and/or Power Systems, Inc., you indicated IKE would produce documents.  In response to a subsequent request, John indicated the client was gathering the relevant documents..  To date I have received no such documents.  Can you please update me on the status of that request?

Second, you indicated that the documents responsive to VEO's subpoena would be reviewed by Schnader and produced to me, in order to insure proper identification of confidential documents.  To date I have not received any documents.

Finally, on April 12th I sent you copies of the documents we propose to file with the Court in support of VEO's response/reply to the pending motions for Summary Judgment.  Have you had the opportunity to review those documents, and if so, are you amenable to my filing them with the
Court?  Given the court's decision to move up the argument date on the pending motions to May 10th, I would truly like to get the documents filed soon.

Thank you in advance for your prompt response.

Christopher T. Sheean
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, Illinois 60606
T: (312) 201-2997
F: (312) 201-2555
sheean@wildmanharrold.com


DISCLAIMER:
This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are

1

hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. This communication does not form any contractual obligation on behalf of the sender or Wildman, Harrold, Allen & Dixon LLP.  Unless expressly stated otherwise, any tax advice in this message is not intended or written to be used, and cannot be used by a taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.  Please consult your tax attorney regarding the form of tax advice that may be relied upon to avoid penalties under the Internal Revenue Code.

## Sheean, Christopher

| | |
|---|---|
| **From:** | Williams, Robert [RWilliams@Schnader.com] |
| **Sent:** | Wednesday, August 23, 2006 2:48 PM |
| **To:** | Sheean, Christopher |
| **Cc:** | Gisleson, John |
| **Subject:** | Re: VEO/IKE |

Chris:

I was tied up in proceedings on an emergency motion in another matter yesterday and this morning. I am in a CLE class this afternoon. I have a deposition in another case tomorrow morning.

I will respond to your email tomorrow afternoon.

Bob


-----Original Message-----
From: Sheean, Christopher <sheean@wildmanharrold.com>
To: Williams, Robert <RWilliams@Schnader.com>; Gisleson, John <JGisleson@schnader.com>
Sent: Tue Aug 22 11:21:24 2006
Subject: VEO/IKE

Bob & John,

I wanted to confirm that we have reached agreement on the following expert schedule:

9/12 for each side to disclose experts for their respective claims;
9/26 to identify rebuttal experts;
10/13 to complete discovery of experts;
11/1 for IKE to submit its proposed pretrial statement; and
11/20 for VEO to submit its pretrial statement.

Assuming this is correct, I think we should submit this as an agreed order to the Court. As it currently stands, our pretrial statements are due earlier than the above dates, and the schedule provides no dates for expert discovery. Please let me know if you agree.

Also, we still have received no documents from IKE regarding sales made by IKE of products to customers of PowerSystems and/or customers of Christian Power, as promised at Chris Petcos' deposition in February. Given the short amount of time until expert disclosures, I will have no choice but to seek the court's assistance in obtaining that information, unless it is provided this week.

Finally, please advise as to the status of the documents from IKE's 30(b)(6) deposition. At the deposition IKE agreed to make available the documents provided by IKE's counsel for use by Mr. Petcos in answering questions. We have still not yet received the documents in those binders.

Regards,

Chris
Christopher T. Sheean


9/29/2006

Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, Illinois 60606
T: (312) 201-2997
F: (312) 416-4659
sheean@wildmanharrold.com

DISCLAIMER:
This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. This communication does not form any contractual obligation on behalf of the sender or Wildman, Harrold, Allen & Dixon LLP. Unless expressly stated otherwise, any tax advice in this message is not intended or written to be used, and cannot be used by a taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. Please consult your tax attorney regarding the form of tax advice that may be relied upon to avoid penalties under the Internal Revenue Code.

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

9/29/2006

## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Friday, August 25, 2006 3:00 PM
**To:** Sheean, Christopher
**Cc:** Gisleson, John
**Subject:** IKE/VEO

Chris:

Following up on your email from earlier this week, please be advised of the following:

First, your recitation of our agreed-upon dates for principal expert witness disclosure, rebuttal witness disclosure, closure of expert witness discovery and filing of pretrial statements is accurate. We also agree that a consent motion/order should be submitted to the court. Will you handle that, or would you like us to prepare it?

Secondly, I understand from John Gisleson's assistant that various documents and exhibits from the Petcos 30(b)(6) deposition were sent to you earlier this week. Please let me know if you have not received them, of if you otherwise believe there is a problem therewith.

Finally, we object to VEO's request for information regarding sales of products by IKE through Christian Power and/or Power Systems. As a matter of law, the damages recoverable on a claim for tortious interference with contract are: (a) the pecuniary loss of the benefits of the contract *by the claimant*; (b) consequential losses suffered *by the claimant* for which the alleged interference is a legal cause; and (c) emotional distress or actual harm to reputation *of the claimant*, if they are reasonably to be expected to result for the alleged interference. Accordingly, any sales made by IKE through Christian Power and/or Power Systems simply have nothing to do with the damages that may be recoverable if VEO can prevail on its tortious interference claim. Nevertheless, without waiver of that objection, and in an effort to avoid motion practice, IKE states that neither Christian Power, nor Power Systems had any involvement in the sale of any Keystone boilers for IKE. Information regarding sales of Keystone aftermarket parts and accessories by Christian Power and Power Systems is set forth in the documents that are attached to this email.

Bob

**Robert J. Williams**
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5291
Fax:    (412) 765-3858

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

<<    IKE 9589-9590.pdf (23.4KB)

9/29/2006

## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Friday, September 01, 2006 3:31 PM
**To:** Sheean, Christopher
**Subject:** IKE/VEO

Chris:

I am writing to follow up on your August 25 email regarding VEO's request for information about sales generated by Christian Power and Power Systems for IKE between February 2004 and January 2006. While we continue to stand by our objections, we are still interested in a reasonable resolution of the request.

Upon further inquiry to IKE, I can confirm that neither sales agent sold *any* boilers for IKE during the stated time period -- HRSGs, fire tube or Keystones. Furthermore, as you can see from the sales data already provided, the only parts sold by or through those agents pertained solely to IKE-owned designs -- which VEO did not sell or have any license to sell. Accordingly, there is absolutely no basis or evidence for even an inference that IKE diverted any sales from VEO through the use of those agents. If it will help, I am certain that I can provide you with an affidavit or declaration attesting to those facts. Please let me know.

On the topic of production of documents and information *by VEO*, I have not yet had an opportunity to fully review the thousands of pages of profit/cost information that you have forwarded to us in the last week. However, I presume from your July 5 email and representation that VEO will not produce any profit information for boilers that sold while EPTI was the licensor, that no such information is included in VEO's recent production. We believe that profit information for boilers sold by VEO while EPTI was the licensor is relevant and discoverable, and would like to resolve that issue without resorting to the court. As a compromise, instead of production of all such information, we propose as a compromise that VEO produce the requested information for only 3 or 4 boilers. If that is acceptable to VEO, please let me know, and I will get back to you with an identification of the boilers.

If I don't hear from you before the end of the day, have a nice holiday weekend.

Bob

**Robert J. Williams**
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5291
Fax:    (412) 765-3858

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Tuesday, September 12, 2006 2:54 PM
**To:** Sheean, Christopher
**Subject:** IKE/VEO

Chris:

I am not in the office today. However, my assistant has advised me of your September 12 letter and its contents.

I will not comment on the obvious posturing, but am compelled to respond to your mischaracterizations of fact. First, IKE has not "refused" to comply with VEO's discovery requests. The subject discovery requests are improper, and IKE has asserted appropriate objections. I have explained those objections on several occasions. Under a reservation of those objections, I nevertheless produced information about sales relating to Keystone Boilers, in an attempt to resolve the matter. I even offered to provide an additional certification regarding that information. Those circumstances certainly do not constitute a "refusal" to comply with discovery requests.

As for the records subpoenaed from Christian Power, they were not produced to us in an expeditious manner. When we did receive them, they were in an electronic format that required significant effort to access. We have been working on production, and believe we can have those materials to you by the end of the week. Although we do not accept blame for those circumstances, I will acknowledge that a reasonable extension is appropriate.

I trust this sufficiently addresses your concerns regarding today's deadline. However, if it does not, I will be in the office tomorrow and believe we should confer via telephone at that time.

Bob

**Robert J. Williams**
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5291
Fax:   (412) 765-3858

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

9/29/2006

# Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Wednesday, September 27, 2006 4:38 PM
**To:** Sheean, Christopher
**Subject:** RE: VEO/IKE

Chris:

First, with respect to the CPE documents, I did not withhold any documents pertaining to sales of IKE products or equipment. You have copies of everything that we received from CPE in that regard. As I indicated in my cover letter to you last week, I did redact pricing information and customer identities, because none of the sales that IKE made through involved products that VEO sells. While my determination that the products sold did not compete with VEO may have been "unilateral" as you suggest, it is telling that you do not claim my determination to be inaccurate or incorrect. However, if you can provide me with proof that VEO has ever sold any of the products that are identified in the subject documents, we will certainly reconsider our position.

Secondly, your position on the IPEC documents is unfounded. As I previously reminded you, VEO's subpoena does not even request production of any IPEC sales information. Had VEO's original subpoena actually requested such documents, IPEC would have moved for a protective order before that subpoena was served. I have been advised by IPEC's counsel that if VEO insists upon production of documents that are neither discoverable nor actually within the scope of the subpoena as issued, IPEC will move for a protective order.

Your contention that IPEC sales information is relevant because IKE may have sold competing products through IPEC is equally unavailing. As I indicated, I did not withhold any documents pertaining to IKE's sales -- whether those sales were to IPEC or any other company. And that takes us right back to my prior point -- if you can demonstrate that VEO actually sold any of the products identified in the CPE documents that have been produced, we will be happy to reconsider our position.

As for the IKE's expert report on VEO's profit, you are being unreasonable. VEO dumped thousands of pages of profit-related documents on us, both in the days immediately prior to the expert disclosure deadline, as well as AFTER the deadline. I was impressed and grateful for your recognition of those circumstances by agreeing to extend the deadline and by expressing a willingness to consider a stipulation as to those profits.

But instead of continuing to resolve at least that one issue amicably, VEO now refuses to provide us with the amount of its profits, so we can actually hammer out that stipulation. I would be surprised if VEO didn't have that information at its fingertips, as most companies keep pretty close tabs on that kind of data. Your asserted basis for refusing to provide us with VEO's actual profit numbers is that it's IKE's burden of proof. But adding insult to injury, VEO has not even provided IKE with information sufficient to make that determination on its own!

In particular, VEO has failed to produce certain documents pertaining to profit. (I will provide you with a list of those documents tomorrow.) On top of that, just last Friday, VEO produced profit documents that were stamped "Highly Confidential" -- which I am prohibited by the Protective Order from forwarding to IKE's profit expert, without 14 days advance notice to VEO! Do you honestly believe that it is appropriate to badger me about production of an expert report on profit, where VEO's production of profit documents is incomplete, and VEO has produced relevant profit documents as recently as three business days ago, but I am not allowed to forward those documents to IKE's expert?

Obviously, I can't force VEO to stipulate to profit numbers, even if such a stipulation is in the best interests of both parties. Please let me know if VEO will reconsider its refusal to provide its actual profit numbers for purposes of a stipulation. In the interim, please be advised that IKE's profit expert is Bill Liebel. Kindly advise as to whether VEO consents to the disclosure of "Highly Confidential" information to Mr. Liebel.

Bob


-----Original Message-----
From: Sheean, Christopher [mailto:sheean@wildmanharrold.com]
Sent: Monday, September 25, 2006 6:40 PM
To: Williams, Robert
Subject: RE: VEO/IKE

Bob,

I am reviewing the CPE documents, but see several problems with the amount of redacting and withholding. A cursory review reveals no documents with any pricing information whatsoever. Moreover, it appears that you have unilaterally determined those items that VEO does not sell, and withheld such documents. Similarly, I dispute that documents relating to sales of items to/from Indeck Power Equipment are not relevant. We know from testimony adduced in this case that other Indeck subsidiaries sell IKE products, and vice versa, making sales of IPEC products through CPE directly relevant. I do not believe that your determination of what is relevant is in any way consistent with the scope of permissible discovery under the federal rules. IKE's obstruction of VEO's documents has resulted in an unnecessary delay in VEO's ability to provide a report of its damages for IKE's tortious interference with VEO's sales representatives. If you are unwilling to make a complete production of the documents produced by CPE on April 25, 2006, nearly five months ago, we will have no choice but to seek the court's assistance.

On the issue of IKE's claim for damages, as you are aware, it is IKE's burden to demonstrate both that it is entitled to damages, and the amount of those potential damages. It is possible that after reviewing IKE's expert's report, VEO would be willing to stipulate to the amounts identified as VEO's profit on the 11 boilers sold while IKE was the licensor. However, without seeing the report, it is not possible to make such an agreement. My concern here is that you are nearly 2 weeks past the time to issue a report. Although VEO's rebuttal report is due tomorrow, absent a report from IKE on its damages, VEO has nothing to rebut. Accordingly, VEO will not be able to issue a rebuttal report on damages tomorrow.

Chris

-----Original Message-----
From: Williams, Robert [mailto:RWilliams@Schnader.com]
Sent: Thursday, September 21, 2006 4:10 PM
To: Sheean, Christopher
Subject: RE: VEO/IKE


Chris:

I became tied up with a filing deadline in another case earlier this
week,
which prevented me from finalizing the production of the CPE docs.  I
apologize.  Barring any other emergencies or unforseen problems, I
promise
that they will go out the door to you tomorrow.  If it helps, I will be
happy
to send them for Saturday delivery.  Just let me know.

Incidentally, I wouldn't say that I acknowledged any of the conclusions

2

that
you set forth below.  I did nothing more than agree to an extension, but
don't think it's worth our time to argue about that issue.

I told you in one of my recent email that we never received anything
from PSI
in response to VEO's subpoena, so I don't currently have anything to
forward
to you from them.  When IKE served a subpoena on PSI for documents
relating
to VEO, I think the only thing PSI produced was a single copy of a VEO
sales
brochure.  I didn't get the impression that PSI was a particularly
meticulous
records custodian, so I'm not altogether surprised that PSI didn't
provide
anything in response to VEO's subpoena.

As for IKE's damages expert, I thought we were exploring the possibility
of a
stipulation, which might eliminate discovery and costs for both parties.
In
my September 15 email to you, I suggested that VEO's profit appeared to
be a
simple calculation of sales price minus various costs.  Your response
indicated that I had omitted labor costs, even though I had specifically
included them.  Again, that's something else that's neither here nor
there.

The bottom line is that I agree with you that we should be able to reach
a
stipulation on those profit numbers.  Can you provide me with the
profits
that VEO calculated for each of the subject boilers?  If so, I can shoot
that
over to IKE.  If IKE agrees, we can stipulate to it.  If not, I can
press our
expert to complete his review and commit to a deadline for his report.
However, VEO produced about 5,000 pages of documents related to profits
in
the last 2-3 weeks.  If we can reach a stipulation on VEO's profit
numbers,
I'd really like to avoid pushing my expert to further expedite his
review of
such a large number of documents.  Please let me know.

I also agree that it's a good idea to schedule depositions now.  I am
not
available on October 9 or 10, but am available and will hold October 11,
12
and 13.  I'd request that we conduct the depositions here in Pittsburgh.

Thanks.

Bob



-----Original Message-----
From: Sheean, Christopher [mailto:sheean@wildmanharrold.com]
Sent: Thursday, September 21, 2006 12:51 PM
To: Williams, Robert
Cc: Gisleson, John
Subject: VEO/IKE

Bob,

3

I have still not received any documents reflecting sales made through Power
Systems or Christian Power.  Please advise when I can expect to receive those
documents.  As you previously acknowledged in agreeing to extend VEO's time
to identify a damages expert, without those documents, VEO cannot provide an
expert report on VEO's damages caused by IKE's tortious interference.

Also, I asked you last week if we could reach an agreement on when IKE would
produce its report of its damages expert, but to date, have received no
response.  Under the agreed scheduling order, the date to identify rebuttal
experts is Tuesday, Sept. 26th, just 5 days from now.
Please advise when your expert disclosure and report will be available.


Finally, given the October 13th deadline to complete depositions of experts,
I think it would be prudent to schedule the depositions of Mr.
Seibel and Mr. Miller.  If you are amenable, I suggest we schedule the
depositions for consecutive days in one city.  It might be easiest to arrange
for the depositions in Chicago or Pittsburgh.  Please advise of your
preference.  I am currently unavailable on October 9th, for certain, but
should be able to resolve any other conflicts.

Regards,

Chris

Christopher T. Sheean
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, Illinois 60606
T: (312) 201-2997
F: (312) 416-4659
sheean@wildmanharrold.com

DISCLAIMER:
This communication, along with any documents, files or attachments, is
intended only for the use of the addressee and may contain legally privileged
and confidential information. If you are not the intended recipient, you are
hereby notified that any dissemination, distribution or copying of any
information contained in or attached to this communication is strictly
prohibited. If you have received this message in error, please notify the
sender immediately and destroy the original communication and its attachments
without reading, printing or saving in any manner. This communication does
not form any contractual obligation on behalf of the sender or Wildman,
Harrold, Allen & Dixon LLP.  Unless expressly stated otherwise, any tax
advice in this message is not intended or written to be used, and cannot be
used by a taxpayer, for the purpose of avoiding penalties that may be imposed
on the taxpayer.  Please consult your tax attorney regarding the form of tax
advice that may be relied upon to avoid penalties under the Internal

Revenue
Code.

5