UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 04-CV-325 (ERIE) <br><br> Judge Sean J. McLaughlin |

**PLAINTIFF'S MOTION TO COMPEL
AND FOR A PROTECTIVE ORDER**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby submits the following Motion to Compel and for a Protective Order:

**Motion to Compel Production of VEO Profit Information**

1. As set forth in greater detail in the Complaint, IKE is the licensor of certain watertube package boiler technology (the "Old-Style Boilers") to Defendant, Victory Energy Operations, LLC ("VEO").

2. Among other things, IKE claims that all of the boilers designed and sold by VEO during the term of the License Agreement contained features and/or technology that exceeded the scope of that agreement.

3. Should IKE prevail at trial on that claim, it will be entitled to recover from VEO as damages the profits VEO earned on each of the boilers that was outside the scope of the License Agreement.

4. Accordingly, IKE requested that VEO produce all information necessary to calculate the profits it earned on all boilers sold during the term of the license agreement.

5. VEO refused to produce *any* documents relating to profits that it earned on sales of boilers during the period for which IKE's predecessor (Erie Power Technologies, Inc. or "EPTI") was the licensor. In support of its refusal to produce that information, VEO asserted that it was not relevant, simply because IKE would not be entitled to recover those profits, even if it were successful on its claims at trial.

6. In the three (3) week period immediately preceding the expert witness disclosure deadline (i.e., September 12, 2006), VEO produced approximately 5,000 pages of information relating to VEO's boiler sales during the period for which IKE was the licensor.

7. VEO appropriately acknowledged that it would be impossible for IKE's profit expert to evaluate so many documents in so little time, and agreed to give IKE an extension of time to produce an expert report on profits.

8. However, IKE's expert has evaluated the profit and expense documents produced by VEO, and found that there are substantial deficiencies that render it impossible to reasonably calculate profit. A true and correct copy of IKE's expert's letter identifying those deficiencies is attached hereto as Exhibit "A".

9. On September 18 and 21, VEO did supplement its production of profit-related documents, but because VEO marked several of those documents "Highly Confidential", the

Protective Order entered in this action <u>prohibits</u> IKE from actually forwarding those documents to its expert, unless and until VEO has given its express consent.

10. Nevertheless, VEO is now accusing IKE of being dilatory in its production of an expert report on profits and demanding that IKE commit to a deadline for production of said report – even though VEO has not produced sufficient documentation to calculate profits and IKE has not yet been permitted to disclose several of the documents to its expert.

11. Accordingly, VEO should be compelled to cure the deficiencies in its production and to tender its consent to the disclosure of "Highly Confidential" information to IKE's profit expert. Furthermore, IKE should be given ten (10) days from the date on which VEO's production is <u>complete</u>, before it is required to provide any written expert report on profits.

12. Furthermore, VEO's claim that profit information for boilers it sold while IKE's predecessor was the licensor is irrelevant is simply not true. In particular, such information is directly relevant and likely to lead to the discovery of admissible evidence on the following issues, for example:

(a) Whether VEO made any modifications in its accounting or financial reporting procedures for the improper purposes of defeating or mitigating IKE's claims against it;

(b) Whether VEO began to underreport its boiler sales prices, for the improper purpose of minimizing the royalties it owed under the License Agreement once IKE acquired ownership of the subject boiler technology; and

(c) Whether VEO maintained appropriate and customary productivity and efficiency levels in its boiler production, or allowed such measures to slip for the purpose of harming IKE and mitigating IKE's claims against VEO.

13. In an attempt to reach a compromise on VEO's relevance objection, IKE offered to accept profit data relating to only three of the many boilers it sold while EPTI was the

licensor. However, VEO refused to accept IKE's proposed compromise, or to propose any other compromises or alternatives.

14.     Accordingly, VEO should be compelled to produce all information necessary for IKE to calculate VEO's profits for all boilers during the term of the License Agreement.

## Motion for Protective Order for Information Relating to Sales Through Outside Agents

15.     VEO has filed a counterclaim in this action for alleged tortious interference with its contracts with outside sales representatives, such as Christian Power Equipment ("CPE") and Power Systems, Inc. ("PSI").

16.     In order to prevail on that counterclaim, VEO must prove, *inter alia*, that: (i) CPE and PSI sold products for IKE, and (ii) that the customers who purchased those products from IKE actually would have purchased them *from VEO*, had IKE not engaged in the alleged tortious interference.

17.     VEO served subpoenas upon CPE and PSI, seeking documents relating to sales that those companies arranged for IKE.[1] A true and correct copy of VEO's subpoena to CPE is attached hereto as Exhibit "B".

18.     VEO also asked IKE directly for the same type of information.

19.     However, **none** of the products that were sold by IKE through CPE or PSI are actually manufactured or sold by VEO. Because IKE did not sell any competing products through CPE or PSI, IKE could not possibly be liable to VEO for tortious interference with

---

[1] Although VEO's subpoena does not request production of documents pertaining to sales that CPE or PSI arranged for Indeck Power Equipment Company ("IPEC"), VEO now takes the position that such information also should be produced. However, not only did VEO fail to request IPEC sales information from CPE and PSI, but IPEC is a separate entity from IKE and is not a party to this action. Thus, VEO's current position is patently unreasonable. IKE

contractual relations, and the information requested by VEO is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence.

20. Specifically, all of the sales made by IKE through CPE and PSI pertained to replacement or aftermarket boiler parts and accessories for custom boiler lines and brands that are made exclusively by IKE (or its predecessors), which are not generally manufactured or sold by VEO. Significantly, VEO has not disputed that fact.

21. Nevertheless, VEO insists upon conducting this fishing expedition, to harass IKE and to obtain sensitive information pertaining to IKE's customers, sales and sales margins.

22. In an effort to resolve this discovery dispute, IKE offered to certify, under oath, that it did not sell through CPE or PSI any products that are or could have been sold by VEO. However, VEO refused IKE's offer and accommodation.

23. In a further effort to resolve this dispute, IKE caused the sales information in its possession to be produced to VEO.[2] The materials that IKE produced contained an identification of the products that were sold, but customer names and pricing information was redacted.

24. IKE advised VEO that if VEO could demonstrate that it actually has sold or manufactured any of the same aftermarket parts or components for the same boiler lines that are identified in the CPE documents, IKE would reconsider its position.

---

understands that if VEO persists with such requests, IPEC will intervene in this action and move for its own protective order.

[2] CPE has only three representatives/employees: its principal, Alan Christian, his wife, and Rita Peppin. Because CPE does not have the resources to respond to VEO's burdensome subpoenas, and because CPE was concerned with its own potential liability to IKE for disclosure of sensitive information, CPE asked IKE if it could produce the responsive information through IKE. IKE assented to CPE's request, and over a period of several months, CPE slowly made several piecemeal productions to IKE.

25. However, once again, VEO refused IKE's offer and accommodation.

26. Under the circumstances, VEO's discovery requests are unduly burdensome, harassing and vexatious. Accordingly, a protective order should be entered, prohibiting VEO from seeking or obtaining the information it has requested about sales made by IKE through CPE and PSI.

27. As set forth in greater detail above, IKE has conferred and attempted in good faith to resolve these discovery disputes with VEO, to no avail. A discovery dispute certificate is attached hereto as Exhibit C.

WHEREFORE, IKE respectfully requests that this Honorable Court enter an Order in the form attached hereto.

Respectfully submitted,

  /s/   Robert J. Williams
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC

Dated:  October 2, 2006

PTDATA 301579_1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : : CIVIL ACTION : : NO. 04-CV-325 (ERIE) : : Judge Sean J. McLaughlin : : : : : |
| Plaintiff, | |
| v. | |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | |
| Defendant. | |

**CERTIFICATE OF SERVICE**

    I do hereby certify that the foregoing **PLAINTIFF'S MOTION TO COMPEL AND FOR A PROTECTIVE ORDER** was served on the following parties by ECF, this 2nd day of October, 2006:

Christopher T. Sheean, Esquire
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606-1229
sheean@wildmanharrold.com


G. Jay Habas, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1001 State Street, Renaissance Center, Suite 1400
Erie PA 16501
jhabas@mdwcg.com


/s/ Robert J. Williams