UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>Plaintiff<br><br>v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>Defendant. | CIVIL ACTION<br><br>No. 04-CV-325E<br><br>Judge Sean J. McLaughlin |

**VICTORY ENERGY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER**

I.  **VEO's Response to IKE's Motion for Protective OrderRelating to Sales Through Outside Agents**

**Introduction**

Counsel for Indeck Keystone Energy LLC ("IKE") improperly intercepted documents subpoenaed by VEO from a third party, Christian Power Equipment ("CPE"). IKE intercepted these documents over VEO's expressed objection, and without seeking any authorization from the court to do so. Compounding IKE's wrongful conduct, after a delay of several months, IKE provided VEO with only a subset of the documents produced by CPE, and unilaterally redacted vast portions of those documents. In its motion, IKE claims that it redacted pricing information, but a review of the documents produced shows that far more than pricing was redacted. IKE has yet to explain this conduct or to provide a justification or authorization.

Instead, IKE has filed what amounts to a cross-motion, claiming that it needs a protective order barring VEO access to the documents it rightfully subpoenaed. Importantly, IKE has not demonstrated that the information contained in the CPE documents is so sensitive that it must be shielded from VEO. Nor has IKE shown how the protections available under the

Agreed Protective Order would fail to protect the information. IKE argues that the information contained in the documents is irrelevant, despite the fact that the quotations and related documents between CPE, IKE and customers relates specifically to the amount of sales CPE generated for IKE after IKE tortiously interfered with VEO's contractual relationship with CPE. Accordingly, the information is relevant and should have been produced to VEO in February of this year, when it was subpoenaed from CPE. IKE's interference with VEO's subpoena was improper and should not be tolerated by this court.

## ARGUMENT

IKE had a legitimate recourse it could have pursued if it truly believed VEO's subpoena sought information that was overly broad or unlikely to lead to the discovery of admissible evidence – IKE could have filed a motion for a protective order in February, when VEO issued the subpoena to CPE. Following a proper course of conduct would have avoided the delay and not deprived VEO of its opportunity to pursue follow up discovery. VEO did not receive the CPE documents until September 25, 2006. Because discovery closed on September 6, 2006, VEO requests leave of court to pursue any follow up discovery necessitated by IKE's conduct.

Moreover, the redacted documents strongly suggest a motive behind IKE's counsel's decision to intercept, selectively withhold and redact the documents from CPE. Although it is difficult to confirm given the incomplete and redacted nature of the documents, it appears as though IKE quoted several Keystone boilers to CPE customers that fell within the exact range of VEO's license agreement with IKE, during the period that the license agreement was in force. Document CPE 501-502 is dated March 28, 2005, and is a redacted performance prediction for proposal no. 1883 for a 16M Keystone boiler, one of the very models identified in

Annex I of the License Agreement.[1]  Document CPE 634-643 is a series of diagrams for proposal K4-023 for a Keystone boiler dated May 11, 2005.  CPE 644-648, dated November 8, 2005, provides details of IKE Proposal No. K5-085 for a 125,000 pph Keystone boiler.  CPE 649-652, dated October 20, 2005, references a proposal for a 125,000 pph Keystone boiler to Madeira, CA.[2]  Each of these documents references boilers that, pursuant to the terms of the License Agreement, VEO was supposed to have exclusive rights to design, market, manufacture and sell in North America from January 7, 2003 to January 7, 2006.  IKE was granted summary judgment on VEO's counterclaim for breach of the exclusivity provision based expressly on the lack of evidence.  The fact that IKE has never produced these documents on its own is highly suspicious, but the fact that it has chosen to produce only portions of the documents 7 months after the subpoena was issued goes beyond suspicion to concrete evidence of improper conduct.

        IKE argues in its motion for protective order that documents between CPE and IKE's sister Indeck companies are not responsive and not relevant.  There are at least two problems with this analysis.  First, IKE has taken it upon itself to act as the sole arbiter of relevance, in direct contravention of the Federal Rules of Civil Procedure.  CPE collected the documents it deemed responsive to VEO's subpoena and forwarded them to IKE's counsel.  It is not for IKE to ascertain which of these documents meets a relevancy standard  Second, partial documents produced from CPE in response to the subpoena demonstrate the possibility that IKE itself was deflecting potential opportunities for boiler sales to its sister companies, perhaps as a

---

[1] The CPE documents are not attached as exhibits, due to the fact that they have been designated as "confidential" under the protective order.  VEO will submit the CPE documents identified herein under seal for the Court's review.

[2] IKE erroneously asserts that VEO does not dispute that VEO does not manufacture or sell the products identified in the CPE documents.  In fact, VEO vehemently disputes this point, but was unwilling to engage in a prove up with IKE in order to obtain the documents that IKE improperly intercepted.  VEO clearly manufactured Keystone boilers during the term of the license, and manufactured and/or sold the parts and related items described in the CPE documents.  For further information, see the affidavit of Mark J. White, Exhibit 1, at ¶¶ 3-11).

3

means of circumventing the prohibition on marketing and selling Keystone boilers in competition with VEO during the term of the License Agreement.  For instance, on document CPE 647 dated November 8, 2005, IKE employee Gary Blazek sent a request for proposal to Jeff Coale, then employed by Indeck Power Equipment Co. ("IPEC"), indicating that IKE was not currently quoting a boiler with a pressure of 650 psig and temperature of 750 degrees out of Erie, and requesting that IPEC respond to the request for proposal.  In addition, CPE 668 is an email dated October 14, 2005, from a CPE employee to Jeff Coale regarding a boiler quote.  These documents strongly suggest a direct connection between IKE and IPEC regarding sales of Keystone boilers to CPE's customers.

      Additional facts in this case support the possibility that IKE may be working with or hiding behind IPEC to sell boilers through CPE.  Jeff Coale and IKE's Chris Petcos admitted at their depositions that Mr. Coale was present at meetings with IKE and sales representatives where IKE insisted the representatives terminate their relationship with VEO in order to represent IKE and Indeck products. (Dep. of Jeffrey Coale, pp. 88-89; Dep. of Chris Petcos, pp. 35-36).  Alan Christian of CPE testified that Jeff Coale of IPEC was present when Chris Petcos told him that CPE would have to terminate its agreement with VEO to continue to sell Keystone aftermarket parts. (Dep. of Alan Christian, p. 46-48, 56-57).  Finally, last week at the deposition of IKE's rebuttal expert, Martin Swabb, a current IKE employee, Mr. Swabb testified that IKE currently has several projects it is coordinating with IPEC.  IKE's unwillingness to produce the documents from CPE relating to IPEC or any other Indeck company appears unfounded and highly dubious, particularly given the fact that the parties agreed to a protective order to assuage concerns that sensitive information would be publicly disclosed or used for purposes beyond this litigation.

The partial production of heavily redacted documents demonstrates that the CPE documents are relevant. Moreover, IKE has demonstrated no legitimate reason to withhold or redact the documents. By contrast, VEO has a clearly defined purpose for seeking the documents – they go to the heart of VEO's damages claim. IKE tortiously interfered with VEO's representative agreement with CPE and Power Systems, Inc. ("PSI"), and those companies subsequently terminated their relationships with VEO. The sales that IKE has made through CPE or PSI since they terminated their representation agreements with VEO are the clearest measure of VEO's damages. By redacting the sales amounts or withholding the documents that provide the amount of the sale, IKE has deprived VEO of the most relevant portion of the documents. Accordingly, IKE should be compelled to produce all of the documents it intercepted from CPE, in their original form, as well as all of IKE's correspondence and related documents to or from CPE or PSI regarding the actual or potential sale of goods from January 2005 to the present.

**II.        VEO's Response to IKE's Motion to Compel**

### Introduction

In a further attempt to focus this Court's attention away from its own sanctionable conduct, IKE has moved to compel documents relating to the profits or losses incurred by VEO in conjunction with the sale of boilers, both before and during the time that IKE was the licensor under the license agreement. IKE makes the request for all documents relating to profits VEO earned on boilers sold before IKE became licensor, despite the fact that IKE has admitted it is not seeking damages for the sale of boilers before IKE became the licensor. That fact alone clearly demonstrates the highly dubious nature of IKE's request, and strongly suggests IKE is seeking these documents not because they may possibly lead to the discovery of admissible evidence, but to harass VEO and force VEO to expend additional time and resources in this

dispute.  IKE is also claiming it needs additional documents to calculate the profits VEO has earned (or losses incurred) on the sale of boilers during the time IKE was the licensor.  However, IKE has failed to provide any credible basis for the documents it seeks.  VEO has provided all the documents a credible and qualified accountant would need to determine VEO's damages.  As such, IKE's motion to compel should be denied.

    1.    **VEO Has Gone To Great Efforts To Produce Documents Relating To Income And Expenses For The Subject Boilers.**

IKE claims that VEO should be compelled to make a complete production of the documents necessary to calculate VEO's profits on the boilers VEO sold while IKE was the licensor.  In point of fact, VEO has made a complete production of those documents.  As IKE has pointed out, VEO has produced "over 5,000 pages of documents" related to the cost of building and income received for these boilers.[3]  Those documents took VEO several weeks to compile and copy, as they were not maintained by VEO on a job by job basis, and had to be culled from several different sources.  Included in the documents were the purchase orders, invoices, back charges, miscellaneous charges and shipping costs for each of the 11 boilers sold while IKE was the licensor.  In addition, VEO provided detailed records from its accounting system including the hours worked by each shop employee on the specific projects, known as direct labor costs, a complete record of all monies received and spent on each project, and a detailed analysis of the company's allocated overhead expense relative to each project.

    2.    **VEO Has Produced The Documents A Qualified Expert Would Need To Determine The Profits On The Subject Boilers.**

VEO has provided IKE with the documents necessary to calculate profits.  VEO has provided all of the information to IKE that it has provided to its own damages expert, Scott

---

[3] VEO produced the vast majority of the documents, VEO 9698-13814, on August 18, 2006.  Subsequently, VEO forwarded VEO 13867-14647 on August 31, 2006, VEO 14648-14895 on September 11, 2006, and VEO 15201-15251 on September 21, 2006.

6

Stringer, a Certified Public Accountant with UHY Advisors. Mr. Stringer has reviewed the documents produced by VEO and confirms that they are more than sufficient to allow a qualified expert sufficient time to calculate the amount of profit VEO earned for the relevant projects. (Affidavit of Scott Stringer, a copy of which is submitted herewith as Ex. 2, at ¶ 4). Moreover, Mr. Stringer is prepared to offer a report detailing precisely what VEO's profits and losses were on the boilers VEO sold while IKE was the licensor. (Stringer Aff., Ex. 2, at ¶ 5). Accordingly, the documents VEO has produced are sufficient, and IKE's motion to compel should be denied.

    3.    **The Documents IKE's Damages Expert Seeks That Have Not Been Produced Are Wholly Irrelevant And/Or Duplicative.**

    In support of its motion to compel, IKE has submitted a letter from Bill Liebel, IKE's purported damages expert. Mr. Liebel is not a Certified Public Accountant, but is being proffered as an expert to determine the profit VEO allegedly earned on package boilers while IKE was the licensor. A copy of Mr. Liebel's Curriculum Vitae is attached as Exhibit 3. In his letter, Mr. Liebel identifies three general types of documents he claims are needed to calculate profits: a) original sales estimate budgets; b) the customer's final purchase orders showing pricing; and c) a breakdown of actual shop manhours by operation. A copy of the September 25, 2006 letter from Mr. Liebel to IKE's counsel, Robert Williams, is attached as Exhibit 4. However, Mr. Liebel fails to provide any basis or explanation for his claimed need to review the documents identified.

    a.    **Original Sales Estimates Are Irrelevant To A Determination of Profit.**

    Original sales estimates are wholly irrelevant to a determination of what it costs VEO to actually fabricate a given boiler. (Stringer Aff., Ex. 2, at ¶ 6). An original sales estimate, by definition, is an estimate of what the company will pay for the component parts, labor, shipping, and other costs. It has no relevancy at the end of a project to the amount of

7

profit VEO earned. Accordingly, VEO's budgets are not relevant, and not responsive to IKE's request for documents necessary to calculate VEO's profit on a job.

    **b.  The Customers' Final Purchase Orders Showing Pricing Are Irrelevant To A Determination Of Profit.**

Mr. Liebel also identifies final customer purchase orders as a document he needs in order to calculate VEO's profits on the boilers sold while IKE was the licensor. The final purchase orders from VEO's customers, however, are wholly unnecessary for a calculation of profits. VEO has provided detailed documentation on all amounts VEO has actually received from its customers for each of the projects. The actual income received for a boiler, rather than the stated amount identified by the customer, would be the relevant figure to use to ascertain actual profit on the sale of a boiler. (Stringer Aff., Ex. 2, ¶ 7). In fact, it is entirely possible that the customer's purchase order will fail to include any additional charges for items added on by the customer at the end of the project. Moreover, the invoice may fail to include subsequent changes in the product that cause a reduction in the price of the boiler. Finally, the customer's purchase order fails to reflect any difficulty VEO may have encountered in collecting the amount due. Accordingly, there is nothing to be gained by mandating that VEO produce the customer purchase orders, and it will further increase the time and expense that VEO is forced to spend.

    **c.  VEO Has Produced All Of The Documents In Its Possession Regarding Actual Shop Man Hours For The Boilers.**

Mr. Liebel states that he requires a breakdown of the actual shop manhours incurred by operation in order to calculate profits. In point of fact, VEO has provided a complete breakdown by project of the manhours incurred for each project, including regular hours and overtime hours, at documents VEO 15233-237. Those computer printouts provide the information needed for direct labor costs to allow a qualified accountant to calculate profits earned on the given projects. (See the Stringer Aff., Ex. 2, at ¶ 8). Moreover, VEO does not

maintain any separate type of record relative to the hours spent or the direct labor costs for a given project. (White Aff., Ex. 1, at ¶ 12).

Mr. Liebel seeks shop labor hours for Job 282. In fact, the labor hours for that project are set forth on VEO 15236. VEO does not have any further or different documents in its possession related to the direct labor costs incurred for Job 282. Mr. Liebel also inquires regarding VEO Job 313, a project for boilers to Worcester Polytechnic Institute. VEO inadvertently included Job 313 in its earlier document productions of projects booked during the time IKE was the licensor. However, Job 313 was actually obtained on April 9, 2004, several months before IKE became the licensor. (A copy of the purchase order between VEO and J.C. Higgins for Job 313 is attached as Ex. 5). IKE's has admitted in its papers and past hearings that it does not seek damages for any boilers VEO sold before IKE became licensor. Given that VEO and J.C. Higgins reached agreement on the boiler in April 2004, that boiler falls outside the scope of IKE's damages claims and was properly excluded from VEO's more recent production relating to profits on boilers sold while IKE was the licensor.

The remaining discrepancies identified in the September 25, 2006 letter from William Liebel are addressed in the affidavit of Scott A. Stringer, Ex. 2, at ¶¶ 9-11.

        **d.**    **VEO Has Consented To Allowing IKE's Expert, William Liebel, Access To VEO's Highly Confidential Documents.**

IKE states in its motion that VEO has refused to grant IKE's expert, Mr. William Liebel, access to documents marked Highly Confidential. The documents in question are VEO's Financial Statements for 2004, 2005, and the first half of 2006. VEO's counsel received a request to allow Mr. Liebel access to the highly confidential documents from IKE's counsel on September 27, 2006. On that same day, VEO's counsel responded to IKE's counsel, and requested a copy of Mr. Liebel's résumé, in order to ascertain any problems with disclosing

VEO's highly confidential documents to Mr. Liebel. IKE's counsel forwarded Mr. Liebel's résumé late Sunday, October 1, 2006. IKE filed the instant motion first thing Monday morning, October 2, 2006, before VEO's counsel had an opportunity to review the résumé and respond to IKE's counsel. VEO's counsel contacted IKE's counsel on October 3, 2006, and indicated that VEO has no objection to granting Mr. Liebel access to VEO's highly confidential documents.

    4.    **IKE Has Failed To Make Any Showing That Profits VEO Earned Prior To IKE Becoming The Licensor Are Relevant.**

IKE asserts that VEO should be compelled to produce the documents pertaining to its sales of boilers from January 8, 2003 through September 8, 2004, the period when Erie Power Technologies, Inc. was the licensor, despite the fact that IKE has admitted it seeks no profits or damages for boilers sold while EPTI was the licensor. IKE suggests that VEO could have modified its accounting or reporting procedures for the improper purpose of defeating or mitigating IKE's damages claims. There are at least three flaws with IKE's suggestion. First, IKE fails to identify what sort of accounting or financial procedures VEO could have "modified" to defeat VEO's claims. This underlines the fact that IKE has no reasonable basis to suspect any wrongdoing occurred, and is merely on a fishing expedition to increase the financial and logistical burden on VEO. Second, IKE assumes that VEO has actually tracked the profit earned on each of the boilers it has sold. In point of fact, VEO does not keep records on profits on a job by job basis. (White Aff., Ex. 1, at ¶ 13). Third, VEO has produced all of the documents to IKE that it provided to EPTI during the time EPTI was the licensor regarding the boilers it sold, including notices of sale, royalty calculations, invoices, and related documents. Accordingly, IKE has the amounts VEO received for each boiler, as well as the relevant royalty calculation.

    Forcing VEO to produce documents relating to boilers sold before IKE was licensor would be grossly unfair to VEO, as it would force VEO to divert company employees'

time to locate documents, spend company money copying the documents, and spend company money to copy voluminous records that will ultimately provide no information on any relevant issue in this case. The request calls for the production of thousands of pages of additional documents that would take weeks to locate and copy. IKE has failed to give a compelling reason as to why this Court should order VEO to undergo this costly endeavor.

   IKE asserts that it needs the documents on VEO's earlier boiler sales to determine whether VEO "began to underreport its boiler sales prices." IKE's argument fails to recognize that VEO has provided more than just its reports of sales, but also its internal accounting documents that demonstrate all income received on each of the subject boilers. Moreover, the amounts charged and received on earlier boilers would shed no light whatsoever on whether VEO has underreported for boiler sold during the relevant period. IKE has failed utterly to explain how the amount of money earned or lost on a given boiler would provide any relevant information on whether VEO has underreported its earnings on a subsequent boiler.

   The third basis given is perhaps the most outlandish. IKE claims that it needs the documents from the earlier sales in order to ascertain whether VEO "maintained appropriate and customary productivity and efficiency levels in its boiler production, or allowed such measures to slip for the purpose of harming IKE." It is ludicrous for IKE to suggest that VEO would jeopardize its relationship with its customers and its reputation in the industry by failing to meet customer deadlines. VEO is not in the business of intentionally falling short of customer expectations. Moreover, VEO could very well have incurred liquidated damages or similar penalties for projects where it failed to meet delivery or similar dates. IKE has provided with no documents, testimony, or other evidence to support its speculation that VEO deliberately dropped efficiency on its production.

Accordingly, it is utterly without merit for IKE to claim that it needs to see voluminous records on sales that are admittedly outside the scope of IKE's claimed damages, simply because IKE claims it may provide evidence of allegedly questionable conduct on VEO's part. In addition, IKE has failed to make any showing as to how VEO's past sales would properly inform IKE or its expert on the profits VEO earned during the time IKE was the licensor.

Dated: October 18, 2006                                           Respectfully submitted,


                                                                  /s/Christopher T. Sheean
                                                                  One of the Attorneys for Defendant,
                                                                  VICTORY ENERGY OPERATIONS, LLC
                                                                  Christopher T. Sheean
                                                                  Wildman Harrold Allen & Dixon LLP
                                                                  225 W. Wacker Drive, 28th Floor
                                                                  Chicago, IL 60606
                                                                  (312) 201-2997
                                                                  F: (312) 416-4659