# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>  Defendant. | CIVIL ACTION<br><br>NO. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO COMPEL

Plaintiff Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, submits this Response in opposition to the Motion of Defendant, Victory Energy Operations, LLC ("VEO") to compel production of information relating to certain product sales.

**I.     INTRODUCTION**

VEO has filed a counterclaim for tortious interference with sales representative agreements it had with Christian Power Equipment ("CPE") and Power Systems, Inc. ("PSI"). Specifically, VEO alleges that IKE caused CPE and PSI to terminate their respective sales representative agreements with VEO, which caused damages to VEO in the form of lost product sales. Even if VEO can prove that IKE acted improperly, as a matter of law, it cannot recover

any damages unless it also proves that the customers who purchased equipment from IKE during the relevant time period actually would have purchased that same equipment from VEO.

The discovery deadline in this case passed without VEO serving any formal discovery upon any of its or IKE's customers. Accordingly, VEO has not obtained any evidence directly from any *customers,* establishing that they would have actually bought anything from VEO, had it not been for IKE's alleged interference. Instead, VEO has asked IKE, CPE and PSI to produce information relating to <u>all</u> sales from February 2005 through January 2006, including descriptions of the products sold, customer identities, sales prices and profits.

However, the <u>only</u> products sold by IKE through CPE and PSI during the stated time period were replacement parts for custom boilers and Travagrate® stokers that were designed and manufactured by IKE's predecessors many years ago – <u>which VEO does not sell or have any license to sell</u>. Because VEO does not sell those particular replacement parts, the customers who purchased the same from IKE could not possibly have bought them from VEO, and those sales are completely irrelevant to any damages that may be recoverable by VEO. Thus, as a matter of law, the information that VEO seeks to compel IKE to produce is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence. Furthermore, because the requested materials include sensitive and private information about customer identities and profit margins, VEO's discovery requests serve only the purpose of harassing IKE. Accordingly, VEO's motion to compel should be denied.

II. **ARGUMENT**

    (A) **Information Regarding Sales of Replacement Parts That VEO Does Not Sell Is Neither Relevant, Nor Reasonably Calculated to Lead to The Discovery of Admissible Evidence**

As a matter of law, "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1182 (Pa. 1978)(citing RESTATEMENT OF TORTS (Second) §766 (1977)). Accordingly, in order to prevail on a claim for intentional interference with contractual relations, *inter alia,* a claimant must establish the occasioning of actual damage resulting from the defendant's conduct. *Thompson Coal Co.,* 412 A.2d at 417 (citing *Glenn v. Point Park College,* 272 A.2d 895, 898 (Pa. 1971)).

As set forth above, VEO must prove that the customers who purchased equipment from IKE during the relevant time period actually would have purchased that same equipment from VEO. However, the only products sold by IKE through CPE and PSI during the stated time period were replacement parts for custom boilers and Travagrate® stokers that were designed and manufactured by IKE's predecessors many years ago. In fact, many of the aforementioned replacement parts that IKE sold in CPE's and PSI's respective territories between February 2005 and January 2006 were actually orders for more of the same replacement parts that IKE or its predecessors had *already* sold to those customers *prior* to February 2005. *See* Declaration of Chris Petcos, attached hereto as Exhibit "A", at ¶¶ 7 and 10. Furthermore, because the aforementioned replacement parts pertained to customized boilers and Travagrate® stokers that

were designed and manufactured by IKE's predecessors many years ago, IKE is likely the only entity in possession of drawings, designs and templates necessary for fabrication.  *Id*. at ¶ 9.

VEO does not sell or have any license to sell replacement parts for custom Keystone® boilers and Travagrate® stokers.  *Id*. at ¶¶ 8 and 11.  Because VEO does not sell those parts, the customers who were parties to those transactions would not have purchased those parts from VEO, and those sales could not possibly represent damages recoverable by VEO on its tortious interference claim.  Thus, the materials and information sought by VEO are neither relevant, nor reasonably likely to lead to the discovery of admissible evidence.

As VEO concedes, IKE caused over 800 pages of materials to be released from CPE. Although customer identification and pricing information was redacted from those materials, they did include information regarding the products that were sold by IKE.  In an earnest effort to resolve this discovery dispute, IKE asked VEO to provide some proof that it has ever sold any of the same replacement parts that IKE sold to any customer in the geographic regions served by CPE and PSI.  IKE further indicated that if VEO could provide such proof, IKE would reconsider its position and objections.  *See* copies of email from IKE's counsel to VEO's counsel, attached hereto as Exhibit "B".  Significantly, VEO not only failed and refused to provide such proof, but it has never contradicted or denied IKE's assertion that VEO did not sell any of the same replacement parts that were sold by IKE in CPE's and PSI's territories during the stated time period.

As such, VEO has not established any reasonable entitlement to the discovery it seeks to compel.  Moreover, production of the requested information would harm IKE, by resulting in the disclosure of sensitive customer, pricing and profit data – without serving any legitimate discovery purpose.  Where necessary to prevent unnecessary intrusions into legitimate business

interests, this Court has broad discretion to deny or limit discovery. *In re: Sealed Case*, 381 F.3d 1205, 1216 (D.C. Cir. 2004)(citing *Pearson v. Miller,* 211 F.3d 57, 64 (3d Cir. 2000)). Under the facts and circumstances present in this matter, the Court should deny VEO's motion to compel.

### (B)    VEO's Motion to Compel Contains False and Misleading Statements

In its Motion to Compel (at ¶ 4), VEO states that IKE failed to produce any documents pertaining to sales or communications between it and CPE or PSI. That is absolutely untrue. As of the date on which VEO filed its motion, IKE had already produced two separate spreadsheets, at Bates Nos. IKE9589 and IKE 9590. Those spreadsheets contain dates of sales and gross profit data for sales of replacement parts for Keystone® package boilers (i.e., the very equipment at issue in this lawsuit). IKE produced those spreadsheets as a demonstration of good faith and in an attempt to resolve this discovery dispute amicably. However, as set forth above in greater detail, VEO has failed and refused to meet IKE "half way", by providing any evidence to support its claim that the subject discovery is relevant or reasonably calculated to lead to the discovery of admissible evidence.

Similarly, VEO contends (at ¶ 6 of its motion) that IKE's counsel agreed to provide VEO with all of the information requested about sales in CPE's and PSI's respective territories during the stated time period. Again, that statement is false. To the contrary, IKE's counsel agreed only to "confer with IKE" about the request. *See* relevant pages from C. Petcos' Rule 30(b)(6) deposition transcript, attached collectively hereto as Exhibit "C", at p. 188. As promised, IKE's counsel conferred with IKE and determined that VEO does not sell the same replacement parts that IKE sold in PSI's and CPE's respective territories between February 2005 and January 2006. Accordingly, and for the reasons set forth above, IKE stands by its relevance objections.

Finally, VEO accuses IKE of quoting a Keystone® package boiler that it was precluded from selling under the terms of the parties' License Agreement, because VEO had exclusive rights to sell the Products defined thereunder. *See* VEO's motion, at ¶ 13. Once again, that statement is false and misleading. The only Keystone® package boiler that IKE quoted through CPE was a boiler that had a final steam temperature of 900º F –which was well outside the scope of the parties' License Agreement, even if one were to accept the scope of the definition of Products that has been advanced by VEO in this action. *See* Petcos Declaration, Exhibit "A", at ¶ 13. Thus, IKE's actions with respect to this discovery dispute have been straightforward and designed to resolve this matter in a fashion that is consistent with the spirit and the letter of the Federal Rules of Civil Provedure. Despite VEO's attempts to make IKE look bad, at the end of the day, it is actually VEO that has failed and refused to establish any reasonable basis or entitlement to the requested discovery.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff Indeck Keystone Energy, LLC respectfully requests that the Court deny VEO's Motion to Compel.

                                              Respectfully submitted,

                                                  /s/     Robert J. Williams_
                                              John K. Gisleson (Pa. ID. No. 62511)
                                              Robert J. Williams (Pa. ID. No. 76139)
                                              SCHNADER HARRISON SEGAL & LEWIS LLP
                                              Fifth Avenue Place
                                              120 Fifth Avenue, Suite 2700
                                              Pittsburgh, PA  15222-3001
                                              Telephone: 412-577-5200
                                              Facsimile: 412-765-3858

                                              Gerald F. DeNotto
                                              600 North Buffalo Grove Road, Suite 300
                                              Buffalo Grove, IL 60089
                                              Telephone: 847-520-3212
                                              Facsimile: 847-520-3235

                                              Attorneys for Plaintiff and Counterclaim Defendant,
                                              Indeck Keystone Energy, LLC

Dated:  October 18, 2006