## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Friday, August 25, 2006 3:00 PM
**To:** Sheean, Christopher
**Cc:** Gisleson, John
**Subject:** IKE/VEO

Chris:

Following up on your email from earlier this week, please be advised of the following:

First, your recitation of our agreed-upon dates for principal expert witness disclosure, rebuttal witness disclosure, closure of expert witness discovery and filing of pretrial statements is accurate. We also agree that a consent motion/order should be submitted to the court. Will you handle that, or would you like us to prepare it?

Secondly, I understand from John Gisleson's assistant that various documents and exhibits from the Petcos 30(b)(6) deposition were sent to you earlier this week. Please let me know if you have not received them, of if you otherwise believe there is a problem therewith.

Finally, we object to VEO's request for information regarding sales of products by IKE through Christian Power and/or Power Systems. As a matter of law, the damages recoverable on a claim for tortious interference with contract are: (a) the pecuniary loss of the benefits of the contract *by the claimant*; (b) consequential losses suffered *by the claimant* for which the alleged interference is a legal cause; and (c) emotional distress or actual harm to reputation *of the claimant*, if they are reasonably to be expected to result for the alleged interference. Accordingly, any sales made by IKE through Christian Power and/or Power Systems simply have nothing to do with the damages that may be recoverable if VEO can prevail on its tortious interference claim. Nevertheless, without waiver of that objection, and in an effort to avoid motion practice, IKE states that neither Christian Power, nor Power Systems had any involvement in the sale of any Keystone boilers for IKE. Information regarding sales of Keystone aftermarket parts and accessories by Christian Power and Power Systems is set forth in the documents that are attached to this email.

Bob

**Robert J. Williams**
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5291
Fax:    (412) 765-3858

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

<<       IKE 9589-9590.pdf (23.4KB)

9/29/2006

## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Friday, September 01, 2006 3:31 PM
**To:** Sheean, Christopher
**Subject:** IKE/VEO

Chris:

I am writing to follow up on your August 25 email regarding VEO's request for information about sales generated by Christian Power and Power Systems for IKE between February 2004 and January 2006. While we continue to stand by our objections, we are still interested in a reasonable resolution of the request.

Upon further inquiry to IKE, I can confirm that neither sales agent sold *any* boilers for IKE during the stated time period -- HRSGs, fire tube or Keystones. Furthermore, as you can see from the sales data already provided, the only parts sold by or through those agents pertained solely to IKE-owned designs -- which VEO did not sell or have any license to sell. Accordingly, there is absolutely no basis or evidence for even an inference that IKE diverted any sales from VEO through the use of those agents. If it will help, I am certain that I can provide you with an affidavit or declaration attesting to those facts. Please let me know.

On the topic of production of documents and information *by VEO*, I have not yet had an opportunity to fully review the thousands of pages of profit/cost information that you have forwarded to us in the last week. However, I presume from your July 5 email and representation that VEO will not produce any profit information for boilers that sold while EPTI was the licensor, that no such information is included in VEO's recent production. We believe that profit information for boilers sold by VEO while EPTI was the licensor is relevant and discoverable, and would like to resolve that issue without resorting to the court. As a compromise, instead of production of all such information, we propose as a compromise that VEO produce the requested information for only 3 or 4 boilers. If that is acceptable to VEO, please let me know, and I will get back to you with an identification of the boilers.

If I don't hear from you before the end of the day, have a nice holiday weekend.

Bob

**Robert J. Williams**
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5291
Fax:    (412) 765-3858

IRS Circular 230 Disclosure. To ensure compliance with requirements imposed by the IRS, we inform you that the federal tax advice (if any) contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

9/29/2006

## Sheean, Christopher

**From:** Williams, Robert [RWilliams@Schnader.com]
**Sent:** Wednesday, September 27, 2006 4:38 PM
**To:** Sheean, Christopher
**Subject:** RE: VEO/IKE

Chris:

First, with respect to the CPE documents, I did not withhold any documents pertaining to sales of IKE products or equipment. You have copies of everything that we received from CPE in that regard. As I indicated in my cover letter to you last week, I did redact pricing information and customer identities, because none of the sales that IKE made through involved products that VEO sells. While my determination that the products sold did not compete with VEO may have been "unilateral" as you suggest, it is telling that you do not claim my determination to be inaccurate or incorrect. However, if you can provide me with proof that VEO has ever sold any of the products that are identified in the subject documents, we will certainly reconsider our position.

Secondly, your position on the IPEC documents is unfounded. As I previously reminded you, VEO's subpoena does not even request production of any IPEC sales information. Had VEO's original subpoena actually requested such documents, IPEC would have moved for a protective order before that subpoena was served. I have been advised by IPEC's counsel that if VEO insists upon production of documents that are neither discoverable nor actually within the scope of the subpoena as issued, IPEC will move for a protective order.

Your contention that IPEC sales information is relevant because IKE may have sold competing products through IPEC is equally unavailing. As I indicated, I did not withhold any documents pertaining to IKE's sales -- whether those sales were to IPEC or any other company. And that takes us right back to my prior point -- if you can demonstrate that VEO actually sold any of the products identified in the CPE documents that have been produced, we will be happy to reconsider our position.

As for the IKE's expert report on VEO's profit, you are being unreasonable. VEO dumped thousands of pages of profit-related documents on us, both in the days immediately prior to the expert disclosure deadline, as well as AFTER the deadline. I was impressed and grateful for your recognition of those circumstances by agreeing to extend the deadline and by expressing a willingness to consider a stipulation as to those profits.

But instead of continuing to resolve at least that one issue amicably, VEO now refuses to provide us with the amount of its profits, so we can actually hammer out that stipulation. I would be surprised if VEO didn't have that information at its fingertips, as most companies keep pretty close tabs on that kind of data. Your asserted basis for refusing to provide us with VEO's actual profit numbers is that it's IKE's burden of proof. But adding insult to injury, VEO has not even provided IKE with information sufficient to make that determination on its own!

In particular, VEO has failed to produce certain documents pertaining to profit. (I will provide you with a list of those documents tomorrow.) On top of that, just last Friday, VEO produced profit documents that were stamped "Highly Confidential" -- which I am prohibited by the Protective Order from forwarding to IKE's profit expert, without 14 days advance notice to VEO! Do you honestly believe that it is appropriate to badger me about production of an expert report on profit, where VEO's production of profit documents is incomplete, and VEO has produced relevant profit documents as recently as three business days ago, but I am not allowed to forward those documents to IKE's expert?

Obviously, I can't force VEO to stipulate to profit numbers, even if such a stipulation is in the best interests of both parties. Please let me know if VEO will reconsider its refusal to provide its actual profit numbers for purposes of a stipulation. In the interim, please be advised that IKE's profit expert is Bill Liebel. Kindly advise as to whether VEO consents to the disclosure of "Highly Confidential" information to Mr. Liebel.

Bob

-----Original Message-----
From: Sheean, Christopher [mailto:sheean@wildmanharrold.com]
Sent: Monday, September 25, 2006 6:40 PM
To: Williams, Robert
Subject: RE: VEO/IKE

Bob,

I am reviewing the CPE documents, but see several problems with the amount of redacting and withholding. A cursory review reveals no documents with any pricing information whatsoever. Moreover, it appears that you have unilaterally determined those items that VEO does not sell, and withheld such documents. Similarly, I dispute that documents relating to sales of items to/from Indeck Power Equipment are not relevant. We know from testimony adduced in this case that other Indeck subsidiaries sell IKE products, and vice versa, making sales of IPEC products through CPE directly relevant. I do not believe that your determination of what is relevant is in any way consistent with the scope of permissible discovery under the federal rules. IKE's obstruction of VEO's documents has resulted in an unnecessary delay in VEO's ability to provide a report of its damages for IKE's tortious interference with VEO's sales representatives. If you are unwilling to make a complete production of the documents produced by CPE on April 25, 2006, nearly five months ago, we will have no choice but to seek the court's assistance.

On the issue of IKE's claim for damages, as you are aware, it is IKE's burden to demonstrate both that it is entitled to damages, and the amount of those potential damages. It is possible that after reviewing IKE's expert's report, VEO would be willing to stipulate to the amounts identified as VEO's profit on the 11 boilers sold while IKE was the licensor. However, without seeing the report, it is not possible to make such an agreement. My concern here is that you are nearly 2 weeks past the time to issue a report. Although VEO's rebuttal report is due tomorrow, absent a report from IKE on its damages, VEO has nothing to rebut. Accordingly, VEO will not be able to issue a rebuttal report on damages tomorrow.

Chris

-----Original Message-----
From: Williams, Robert [mailto:RWilliams@Schnader.com]
Sent: Thursday, September 21, 2006 4:10 PM
To: Sheean, Christopher
Subject: RE: VEO/IKE


Chris:

I became tied up with a filing deadline in another case earlier this week,
which prevented me from finalizing the production of the CPE docs. I apologize. Barring any other emergencies or unforseen problems, I promise
that they will go out the door to you tomorrow. If it helps, I will be happy
to send them for Saturday delivery. Just let me know.

Incidentally, I wouldn't say that I acknowledged any of the conclusions

2