185

```
1  information after the Bob Gdaniec letter of March 26,
2  2004, and the fact that VEO wasn't disclosing the detailed
3  design information once IKE took -- acquired the
4  ownership, then that would lead IKE to believe that VEO
5  would not bring those opportunities to IKE.
6  Q      Anything else?
7  A      Not at this time.
8  Q      Other than your belief that VEO would not bring
9  these opportunities to IKE, do you have any evidence that
10 IKE actually lost opportunities as a result of any alleged
11 attempt by Victory Energy to market a boiler above 150,000
12 pounds per hour of steam during the time that IKE was the
13 licensor?
14 A      For the specific proposals that were submitted by
15 VEO above 150, if IKE sales engineers were in direct
16 contact with the end licensee early on, IKE would have had
17 a good opportunity of securing the orders, yes.
18 Q      We already talked about Victory Energy did not have
19 an obligation to provide those opportunities to IKE so I'm
20 talking about actual lost opportunities that you have
21 knowledge of.
22        MR. GISLESON:  Objection to the preamble.
23 A      I don't know.
```

186

```
1  Q      Do you have any evidence of any text, document or
2  other evidence from any potential customer to the effect
3  that they would not purchase from IKE as a result of
4  Victory Energy's marketing boilers above 150,000 pounds
5  per hour steam?
6  A      Not at this time.  Discovery is continuing and we
7  will add to that.
8  Q      Identify all consumer goodwill that IKE alleges it
9  lost as a result of VEO's conduct.  And if its the same as
10 what you just testified to with regard to lost
11 opportunities, you can tell me that.
12 A      Yes, its the same.
13 Q      Identify all revenue IKE alleges it lost as a
14 result of VEO's conduct.
15 A      Its the same.
16 Q      Identify all market share that IKE alleges it lost
17 as a result of VEO's conduct.
18 A      I can't quantify at this time.
19 Q      Identify any competitive advantage that it alleges
20 it lost as a result of VEO's conduct.
21        MR. GISLESON:  Asked and answered.
22 A      It's the same as what I said.
23 Q      Okay.  Because I had broke it down as I explained
```

187

```
1  at the outset.  Okay.
2         Please identify for me any profits IKE has earned
3  through Christian Power Equipment since Christian Power
4  terminated its License Agreement in February of 2004.
5  A      There are no profits inasmuch as Christian Power
6  has not sold any Keystone orders for IKE.
7  Q      My question was not related solely to Keystone
8  boilers.  It was any profits of any kind.
9         MR. GISLESON:  That's how we interpreted the
10 request, the topic.
11 BY MR. SHEEAN:
12 Q      Has Christian Power made any sales since February
13 of 2004 for Indeck Keystone Energy?
14 A      I don't know without looking into it.
15 Q      Has IKE obtained any profit as a result of any of
16 the sales that Christian Power has made since February of
17 2004?
18 A      I don't know without looking into it.
19        MR. SHEEAN:  I don't understand how this was
20 interpreted to be only Keystone boilers, John.  There's no
21 reference anywhere in it to Keystone boilers.  I mean,
22 what I think makes sense for 27 and 28 is if you're going
23 to tell me you made the same interpretation for 28 --
```

188

```
1         MR. GISLESON:  Which we did.
2         MR. SHEEAN:  -- that you agree to supplement
3  it with documents.
4         MR. GISLESON:  Or to do what VEO did, which
5  is simply to give you a general profit number.  Do you
6  have the same kind of information we got?
7         MR. SHEEAN:  I also asked for the sales
8  themselves, the underlying sales.
9         MR. GISLESON:  Where is that?
10        MR. SHEEAN:  I think I'm entitled to know
11 the sales as well as the profit.
12        MR. GISLESON:  I'll confer with IKE and
13 consistent with whatever the information was that VEO
14 provided with respect to its profits we will do it in a
15 similar format.
16        MR. SHEEAN:  I think this is a pretty
17 straightforward request and given the fact that you really
18 haven't come up with anything as a result, I'm going to,
19 on the Record, indicate that I think you are woefully
20 short of what was required by this topic and, you know, if
21 we need to reconvene the Deposition at a later time in
22 order to get this information, I'll reserve our right to
23 do that.
```

**Page 189**

```
 1            MR. GISLESON:  I disagree.  We will
 2   supplement.  The case is about water tube boiler.
 3            MR. SHEEAN:  We also have a claim with for
 4   interference with contract and we're entitled to pursue
 5   our damages as a result of those claims, which we're
 6   trying to do, so its not just a case about water tube
 7   boilers.
 8            Why don't we take a five-minute break.
 9            (Thereupon, a recess was taken).
10            MR. SHEEAN:  I just have a few wrap up
11   questions.
12   BY MR. SHEEAN:
13   Q    One of the documents that you cited earlier today,
14   Mr. Petcos, as the basis for IKE's interpretation of the
15   License Agreement was the Rosetti agreement.
16        Do you recall that?
17   A    Yes.
18   Q    When did IKE obtain a copy of the Rosetti
19   agreement?
20   A    I don't recall.
21            (Thereupon, Deposition Exhibit No. 12 was
22   marked for identification).
23   BY MR. SHEEAN:
```

**Page 190**

```
 1   Q    Handing you what we have marked as Exhibit 12, for
 2   the Record its IKE 8250.  It is an E mail from Bob Gdaniec
 3   to Chris Petcos.  It says, Bob, thanks for locating the
 4   Rosetti document, Chris.
 5        Do you see that?
 6   A    Yes.
 7   Q    Does this refresh your recollection as to when IKE
 8   obtained a copy of the Rosetti License Agreement?
 9   A    Yes.
10   Q    Do you know why it wasn't produced to Victory
11   Energy in the course of the litigation?
12   A    No.
13            MR. GISLESON:  I'll answer that.  Because it
14   wasn't specifically requested.
15            MR. SHEEAN:  I dispute that.
16   BY MR. SHEEAN:
17   Q    I was asking before about the efforts by IKE to
18   revise the KPSC program.  Do you recall that, those
19   questions?
20   A    Yes.
21            MR. SHEEAN:  Let's mark these three
22   Exhibits.
23            (Thereupon, Deposition Exhibit Nos. 13, 14
```

**Page 191**

```
 1   and 15 were marked for identification).
 2   BY MR. SHEEAN:
 3   Q    Handing you what we have marked as Exhibits 13, 14,
 4   15; 13 is November 12, 2004, E mail from Bob Gdaniec to
 5   Neil Bradwell with a cc to Bob Gdaniec, 14 is IKE 8314,
 6   and that's a January 24, 2005, E mail to -- from Chris
 7   Petcos to Bob Gdaniec and Neil Bradwell and 15 is a
 8   February 10, 2005, E mail, IKE 8211 and I think that 8214
 9   is actually the attachment to 8211 that's referenced in
10   the E mail from Bob Gdaniec to Chris Petcos, but I'm going
11   to start with 14 which says, from Chris to Bob, Bob, as
12   discussed please proceed with the following and the
13   subject is VEO action items.
14        1, remove the option to rate/design the D boiler;
15        2, copy all of Mark White's E mails to discs.  Use
16   tape backup prior to Mark deleting his E mails;
17        3, proceed with up loading new program as soon as
18   possible.
19        Do you see that?
20   A    Yes.
21   Q    Do you recall sending this E mail to Mr. Gdaniec?
22            MR. GISLESON:  Objection.  This is beyond
23   the scope of the Notice.  He's here as IKE's designee.
```

**Page 192**

```
 1   You already had a chance to depose him in his personal
 2   capacity.
 3            MR. SHEEAN:  I disagree.  What I have asked
 4   about is IKE's efforts to provide the software and the
 5   hardware and this goes to the efforts IKE made to revise
 6   the software in February of 2005.
 7            MR. GISLESON:  I'll give you a little bit of
 8   latitude.
 9   BY MR. SHEEAN:
10   Q    Do you recall sending the E mail, sir?
11   A    I believe so.
12   Q    Okay.  Does this relate to your efforts to revise
13   the UNIX work station that had been sent by Victory
14   Energy?
15   A    Not necessarily.
16   Q    Does it relate to efforts to revise the KPSC
17   program that was being provided to Victory Energy,
18   specifically with regard to topic No. 1, remove the option
19   to rate and design the D boiler; that relates to the KPSC
20   program; right?
21   A    Specifically that topic, yes.
22   Q    Okay.  And proceed with uploading the new program
23   as soon as possible.  That relates to the KPSC program;
```