UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-325 Erie |
| ) | |
| VICTORY ENERGY OPERATIONS ) | Judge Sean J. McLaughlin |
| LLC, ) | |
| ) | |
| Defendant ) | |
| ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO RECONSIDER**

**Introduction**

According to the ruling on the record, this Court denied Defendant Victory Energy Operations LLC's ("VEO") Motion to Compel documents from Plaintiff Indeck Keystone Energy LLC ("IKE") relating to Christian Power Equipment, Inc. ("CPE"), on the grounds that IKE had sufficiently demonstrated that the documents withheld from VEO were not relevant nor likely to lead to the discovery of admissible evidence. The Court indicated that its ruling was without prejudice to VEO's bringing a Motion to Reconsider, in the event that VEO found a basis to rebut the affidavit of Alan Christian proffered by IKE for the first time at the October 26, 2006 hearing. VEO hereby avails itself of the Court's invitation to seek reconsideration of the ruling.

According to IKE, the only products sold by IKE through CPE from February 2005 through February 2006 were aftermarket parts, and CPE did not sell aftermarket parts for VEO. VEO submits with its motion, a counter-affidavit and corresponding documentary proof

that rebuts the affidavit of Alan Christian and demonstrates that VEO sold much more than just Heat Recovery Steam Generators ("HRSGs") through CPE to customers in CPE's territory. In fact, VEO has sold aftermarket parts, appurtenant equipment and field services nationwide to customers for equipment that VEO did not manufacture or originally sell to the customer.

Moreover, the redacted documents IKE produced that originated from CPE show that IKE was offering for sale, and possibly selling, far more than just "aftermarket parts," as IKE claims. IKE has failed to explain the documents that reference boiler proposals in 2005. IKE's submission of proposals to potential customers for the sale of Keystone O style boilers between 29,000 pph and 150,000 pph during the time that VEO was the licensee, are violations of the license agreement's grant to VEO of the exclusive right to market and sell Keystone boilers in that capacity range. It is telling that in its response to VEO's Motion to Compel, IKE does not deny that it submitted such proposals, but merely claims that it never actually sold any such boilers. Whether a sale actually took place does not render IKE's conduct irrelevant, and certainly does not render the documents withheld by IKE as unlikely to lead to the discovery of admissible evidence.

Accordingly, the Court should strike its October 26, 2006 ruling and grant VEO's Motion to Compel IKE to produce the CPE documents, as well as all documents in its possession responsive to VEO's Request No. 12 in VEO's First Set of Discovery Requests.

**Argument**

1. **The Court Erred In Relying Upon The Statements Of Alan Christian That CPE Did Not And Would Not Sell Parts From VEO.**

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Generally, a motion for reconsideration will only be granted on one of the following three grounds: (1) there has been an intervening change in

controlling law; (2) new evidence, which was not previously available, has become available; or (3) it is necessary to correct a clear error of law or to prevent manifest injustice. *O'Connor v. Trans Union Corp.*, 1998 U.S. Dist. LEXIS 17321 at *3 (E.D. Penn. 1998) (internal citations omitted). VEO submits that the Court should reconsider and grant VEO's Motion to Compel based on the newly available affidavit of Mark J. White that is being submitted with the instant motion, and because this court erred in finding that the documents sought by VEO are neither relevant nor likely to lead to the discovery of admissible evidence.

The purpose of the modern discovery rules is to allow the parties to obtain the fullest possible knowledge of the issues and facts before trial. *Continental Life Insurance, Co. v. Shearson Lehman Hutton, Inc.*, 1990 U.S. Dist. LEXIS 17037 at *7 (E.D. Penn. 1990). The federal rules permit broad discovery into all relevant, non-privileged matters, even when not admissible at trial, so long as the information is reasonably calculated to lead to admissible evidence. *Hall v. Harleysville Insurance Co.*, 1995 U.S. Dist. LEXIS 18905, **3-4 (E.D. Penn 1995). The standard for discoverability is whether the discovery is likely to lead to admissible evidence. *Rhone-Poulenc Rorer, Inc. v. Armour Pharmaceutical Co.*, 1991 U.S. Dist. LEXIS 14791 at *17 (E.D. Penn. 1991).

VEO counterclaimed against IKE alleging, as one of its counterclaims, that IKE had tortiously interfered with VEO's contractual relations with several of its sales representatives. As outlined in its Motion to Compel, VEO sought information relevant to IKE's tortiously interfering with VEO's contractual relationship with CPE in three separate ways: a) VEO propounded its First Set of Discovery Requests on VEO on March 23, 2005, seeking all documents sent to or received from CPE and Power Systems, Inc. ("PSI"); b) VEO identified as a topic in its 30(b)(6) deposition subpoena, information on profits IKE received as a result of

sales made by or through CPE and/or PSI; and (c) by serving CPE with a subpoena for documents reflecting communications between CPE and IKE. IKE has produced only a handful of documents relating to documents relating to its profits earned on sales through CPE and PSI, but has admitted to withholding and refusing to produced many more documents on the grounds of relevance. The CPE documents are relevant and likely to lead to the discovery of admissible evidence on VEO's tortious interference and breach of contract claims.

Based on the statements made in its ruling, this Court relied heavily upon the affidavit of Alan Wayne Christian, produced for the first time at the October 26, 2006 hearing, in finding that the documents withheld by IKE are neither relevant nor likely to lead to the discovery of admissible evidence. However, many of the statements made by Mr. Christian in his affidavit are inaccurate and misleading. (See the Affidavit of Mark J. White, submitted herewith as Exhibit 1, at ¶ 5). Mr. Christian notes that there are only two lines of products identified in the Product Schedule attached to the Representative Agreement between Christian Power Equipment ("CPE") and VEO. However, Mr. Christian incorrectly asserts that VEO only retained CPE to market and sell those two product lines, HRSGs and Keystone Water Tube boilers 8M-22M (29,000-150,000 pph). (*Id.*, see also Ex. A to the White Aff.)

The Agreement does not in any way limit or preclude CPE from selling products beyond those identified in the Product Schedule. Contrary to Mr. Christian's statements in his declaration, Mr. Christian was aware that VEO expected CPE to market and sell aftermarket equipment and service in its territory. (*Id.*) Mr. Christian ignores the fact that the commission schedule to the Representative Agreement between VEO and CPE specifically provides in paragraph 5 for a separate schedule for the sale of aftermarket equipment and services. (*Id.* at ¶ 6). He also ignores the information he received at the annual sales meeting VEO held in 2003

and 2004, wherein VEO explained to each representative that VEO expected aftermarket parts and service to be a significant part of each representative's sales efforts. (White Aff., Ex. 1, at ¶7, and Ex. B to the White Aff., copies of the training materials from VEO's sales meetings in 2003 and 2004).

Moreover, Mr. Christian's statement ignores the parts and related equipment offered for sale and actually sold by VEO to CPE's customers in CPE's territory. For instance, VEO sold feedwater economizer systems, PLC control systems, ductwork and stack systems, diverter dampers and bypass stack silencers to Harbor Pacific Contractors in Renton, Washington. (White Aff., Ex. 1, ¶ 9. See also a copy of Proposal VE-1866r.5, is attached to the White Aff. as Exhibit C). VEO sold additional parts to King County subsequently. (White Aff., Ex. 1, at ¶ 9. See also a copy of the invoice reflecting the sale of a gaskets to King County, submitted with Mark White's Affidavit, as Exhibit D).

Similarly, contrary to Mr. Christian's claim, VEO offered for sale a 200 HP firetube boiler, together with a deaerator with storage tank, a make-up water valve with level controls, feed water pumps complete with recirculating orifices, valving and strainers, steam supply connections and a control panel to the Ivanpah Energy Center in Clark County, Nevada in October 2004. (White Aff., Ex. 1, at ¶ 10. See also a copy the proposal to Ivanpah Energy Center, attached as Exhibit E to the White Affidavit).

Mr. Christian asserts that CPE would not have purchased aftermarket parts from VEO even if CPE had not terminated its representative agreement with VEO, in part because CPE had contracted with IKE to sell aftermarket parts. (Christian Aff., ¶ 9). However, CPE offered, in at least one instance, products of a similar nature from competing manufacturers. Mr. Christian notes that he was a representative to VEO for HRSGs and Keystone boilers. (Christian

Aff., at ¶ 4). In addition, IKE offered HRSGs from ATS Express LLC. (White Aff., Ex. 1, at ¶11). Moreover, his listing of the manufacturers CPE represented identified IKE as the supplier of "Zurn Boilers" and not aftermarket parts, and simply listed Victory Energy as the supplier for "package boilers." (*Id.*, see also a copy of CPE's listing of manufacturers from 2004, attached to the White Aff. as Ex. F).

Mr. Christian also claims that equipment owners looking to purchase aftermarket or replacement parts consistently purchase those parts directly from the original equipment manufacturer. However, for many years VEO and several other companies in the steam generation industry have successfully sold aftermarket parts for equipment that was originally designed and sold by a different manufacturer. (White Aff., Ex. 1, at ¶¶ 13-14). In fact, VEO purchased parts for boilers from IKE, including fuel oil gun tubes, and chevrons and vortexes to be used for superheated steam applications. (White Aff., Ex. 1, at ¶ 15. See also copies of invoices and purchase orders between VEO and IKE for various parts, attached to the White Aff. as Exhibit G).

Mr. White's affidavit directly contradicts the assertions made by Mr. Christian, and at a minimum, places into issue whether the sales generated by CPE after it terminated its agreement with VEO were opportunities that would have gone to VEO, but for IKE's tortious interference. More directly to this motion, Mr. White's affidavit provides more than sufficient evidence to show that the documents sought in VEO's Motion to Compel are both relevant and likely to lead to the discovery of admissible evidence.

2. **The CPE Documents Are Clearly Relevant In That They Show IKE Quoted Boilers During The Time Of The License Agreement.**

The scope of Federal Rule of Civil Procedure 26(b)(1) is quite broad and allows information, even with a remote connection to the issues at hand, to be discoverable, whether or

not the information will be admissible at trial. *Gould, Inc. v. A & M Battery & Tire Service*, 1996 U.S. Dist. LEXIS 12151 at *28 (M.D. Penn. 1996). The broad conception of discovery in general, and relevance in particular requires that where relevance is in doubt, the court should be permissive in allowing discovery. *Gould, Inc. v. A & M Battery & Tire Service*, 1996 U.S. Dist. LEXIS 12151 at *29 (M.D. Penn. 1996) (internal citations omitted).

   Even without taking into account the affidavits of either Alan Christian or Mark White, the CPE documents redacted and withheld by IKE are directly relevant. The CPE documents demonstrate that IKE may have violated the License Agreement by offering for sale boilers that fell within the range of products VEO had the exclusive right to market and sell. The documents produced by IKE from CPE show that IKE was quoting boilers to potential customers. Document CPE 501-502 is dated March 28, 2005, and is a redacted performance prediction for proposal no. 1883 for a 16M Keystone boiler, one of the very models identified in Annex I of the License Agreement. (White Aff., Ex. 1, at ¶ 17). The fact that IKE assigned a proposal number to the performance prediction indicates that a proposal was submitted to a potential customer. (White Aff., Ex. 1, at ¶ 16).

   Document CPE 634-643 is a series of diagrams for proposal K4-023 for a Keystone boiler dated May 11, 2005. (White Aff., Ex. 1, at ¶ 18). Without the corresponding proposal documents it is impossible to determine whether this boiler proposal fell within VEO's exclusive range of products. However, on its face the document shows that IKE prepared yet another proposal for a Keystone boiler that was sent to CPE in 2005. Similarly, CPE 644-648, dated November 8, 2005, provides details of IKE Proposal No. K5-085 for a 125,000 pph Keystone boiler. (White Aff., Ex. 1, at ¶ 19).

VEO has been unfairly prejudiced as a result of IKE's refusal to comply with its discovery obligations and unilateral determination of what portions of the CPE documents to redact and which documents to withhold. In addition, forcing IKE to produce the CPE documents as well as its own documents responsive to VEO's Document Request No. 12 would place no undue burden on IKE. Furthermore, any concerns about confidentiality or commercially sensitive information should be alleviated by the Agreed Protective order, which limits access to the documents and specifically provides that information produced in this case may only be used for purposes of the instant litigation.

The Court should also take into account the manner in which IKE took possession of the CPE documents, held on to them for several months, and then ultimately produced only a subset with a large amount of information redacted. Given IKE's questionable conduct, it would seem clear that the balancing of the equities tips in VEO's favor and mandates production.

### Conclusion

Defendant/Counter-Plaintiff Victory Energy Operations LLC requests that this court enter an order striking its October 26, 2006 ruling denying VEO's Motion to Compel, and order Plaintiff Indeck Keystone Energy LLC to produce, within 28 days, 1) all documents in its possession from Christian Power Equipment, without any redaction or alteration, 2) all documents in its possession responsive to VEO's original Document Request No. 12; and 3) all documents demonstrating or relating to any profits IKE earned as a result of sales made to or through the efforts of either Christian Power Equipment or Power Systems, Inc. VEO further requests that this court extend VEO's deadline to produce an expert report on its damages relating to its counterclaim for tortious interference until 14 days after IKE makes a complete production of the documents requested herein.

Dated: November 2, 2006                               Respectfully submitted,

                                                      /s/ Christopher T. Sheean
                                                      Christopher T. Sheean
                                                      Wildman, Harrold, Allen & Dixon LLP
                                                      225 West Wacker Drive
                                                      Suite 3000
                                                      Chicago, Illinois 60606-1229
                                                      Attorneys for Defendant,
                                                      Victory Energy Operations, LLC
                                                      Telephone: 312-201-2997
                                                      Facsimile: 312-201-2555

9