UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : : |
| Plaintiff, | : CIVIL ACTION : : NO. 04-CV-325 (ERIE) |
| v. | : : Judge Sean J. McLaughlin |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | : : : : |
| Defendant. | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO
RECONSIDER**

Plaintiff Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, submits this Response in opposition to the Motion of Defendant, Victory Energy Operations, LLC ("VEO") to reconsider the Court's October 26, 2006 discovery Order in this matter.

**I.    INTRODUCTION**

In support of its claim that IKE tortiously interfered with Sales Representative Agreements ("SRAs") between VEO and certain of its independent sales agents, VEO moved to compel production of information regarding all sales that Christian Power Equipment, Inc. ("CPE") made on behalf of IKE subsequent to the date on which CPE terminated its SRA with VEO (*i.e.*, March 9, 2005). However, as a matter of law, the requested information is relevant only if VEO actually would have made those sales, and not IKE, but for the alleged tortious

conduct.¹ The Court previously denied VEO's motion to compel and granted IKE's cross-motion for a protective order because there is absolutely no evidence to suggest that any of the sales made by CPE for IKE would have been made on behalf of VEO. In fact, the only sales that CPE made on behalf of IKE during the relevant time period were aftermarket/replacement parts for boilers and equipment <u>that were originally manufactured by IKE's own predecessors</u> several years ago (the "Zurn Products"). VEO has not produced **any** evidence – either with its original motion, or the pending motion for reconsideration – that it has ever sold any parts for Zurn Products through CPE. As such, the requested information is not relevant or discoverable as a matter of law.

Nevertheless, VEO now moves the Court to reconsider its original ruling, based upon "newly available" evidence in the form of another affidavit from VEO's General Manager, Mark White.² Although Mr. White's affidavit purports to contradict the evidence upon which the Court relied for its prior ruling, the affidavit is really nothing more than a collection of clever mischaracterizations, personal attacks upon CPE's President, Alan Christian, and inflammatory, baseless, accusations of "questionable conduct" by IKE.³ VEO's motion for reconsideration should be denied.

---

¹ The legal authority regarding causation and damages recoverable for a claim of tortious interference with contractual relations is set forth in IKE's Response to VEO's original Motion to Compel (Doc. No. 101), which is incorporated herein by reference.

² Mr. White previously gave an affidavit in connection with VEO's response in opposition to IKE's cross-motion for protective order (Doc. No. 100).

³ VEO's continuing attempts to disparage IKE and its counsel are unfounded and unprofessional, especially with respect to VEO's claims of improprieties surrounding VEO's subpoena for CPE's documents. As stated on the record and in Mr. Christian's Declaration (filed as an Exhibit to Doc. No. 101 and Exhibit "A" hereto), it was CPE that asked to send responsive documents directly to IKE's counsel. IKE's counsel contemporaneously advised VEO of CPE's request, and for over seven months, VEO did not object to that procedure. Had VEO voiced any objection, IKE immediately would have moved for a protective order. Similarly, IKE did not delay production of the documents it received from CPE. To the contrary, CPE did not complete its production of documents until approximately four

II. **ARGUMENT**

    **(A)  Mark White's Affidavit Does Not Contradict Alan Christian's Testimony That VEO Never Sold Replacement Parts for Zurn Products Through CPE.**

In support of its contention that the information VEO requested from both IKE and CPE is not relevant or discoverable, IKE previously produced a declaration from the President of non-party CPE, Alan W. Christian.[4]  The following testimony by Mr. Christian is most relevant to the issues presently before this Court:

- "[T]he only sales that CPE has made or earned commissions on from IKE since March 9, 2005 were aftermarket or replacement parts for the Zurn Products."

- CPE never sold *any* aftermarket or replacement parts for VEO, and furthermore, would have rejected any request by VEO to start selling parts for the Zurn Products.

*See* Christian Declaration, Exhibit "A", at ¶¶ 5-6, 10, and 13-14 (emphasis added).

First and foremost, Mark White's Affidavit, which is the basis for VEO's Motion to Reconsider, does not even attempt to claim that VEO ever sold any aftermarket or replacement parts for Zurn Products through CPE.  *See* White Affidavit, *passim*.  If VEO never sold parts for Zurn Products through CPE, then nothing IKE allegedly did to interfere with the SRA between VEO and CPE possibly could have caused VEO to lose parts sales for Zurn Products.  And if the alleged tortious interference by IKE did not cause VEO to lose any sales of parts for Zurn Products, then information about IKE's sales of parts for Zurn Products is not relevant or discoverable as a matter of law.

---

    months after receipt of VEO's subpoena.  Again, and as previously stated on the record, VEO's counsel was apprised of these facts, but did not voice any objection to such procedure until more than half a year later.

[4] For the Court's convenience, a true and correct copy of Mr. Christian's Declaration is attached hereto as Exhibit "A".

Since VEO never sold any parts for Zurn Products through CPE, VEO relies upon collateral and indirect arguments to support its motion, such as purported impeachment of Mr. Christian. For example, Mr. Christian testified that VEO contracted with CPE to sell only certain Keystone® Water Tube boilers and VEO Heat Recovery Steam Generators ("HRSGs"). *See* Christian Declaration, Exhibit "A", at ¶¶ 4-6. Mr. White attempts to contradict that testimony, by claiming that: (i) the commission schedule to the SRA identifies commissions on the sale of parts, (ii) VEO disseminated various information about parts sales to its outside sales representatives, including CPE, and (iii) CPE sold "feedwater economizer systems, PLC control systems, ductwork and stack systems, diverter dampers and bypass stack silencers" for VEO, for which replacement parts were subsequently sold. *See* White Affidavit, at ¶¶ 4-9. While a cursory reading of Mr. White's affidavit may appear to contradict Mr. Christian's testimony, a closer reading of Mr. White's affidavit demonstrates that there is no contradiction or inconsistency.

First, the SRA between VEO and CPE is a written document that speaks for itself. Pursuant thereto, CPE had an obligation to sell only the "Products", which as Mr. Christian correctly testified, were specifically defined as certain Keystone® boilers and VEO HRSGs. *See* Christian Declaration, Exhibit "A", at ¶¶ 3-6. There is no evidence that the SRA between VEO and CPE was ever modified to include aftermarket or replacement parts as "Products", nor would the mere dissemination of information about parts effectively modify the SRA, which required (at clause 11) any amendments to be in writing and signed by the parties. In fact, if VEO had requested such a modification from CPE, CPE would have refused. *Id.* at ¶ 14.

Furthermore, Mr. White's claims are belied by the exhibits to his own affidavit. Specifically, all of the other equipment that Mr. White claims CPE sold for VEO was actually

part of a single HRSG system, which Mr. Christian readily confirmed CPE sold for VEO. *Compare* Exhibit "C" to White Affidavit, to Christian Declaration, Exhibit "A" hereto, at ¶ 6. Moreover, those items of equipment were not *aftermarket* or *replacement* parts for pre-existing equipment (*i.e.*, the subject of the pending discovery dispute), because they were components of a brand-new, complete HRSG system.[5] Finally, to the extent that the sale of that complete HRSG system subsequently generated the sale of any replacement or aftermarket parts, those parts were not sold by CPE, because the sale concluded on March 9, 2006 – an entire year after CPE terminated its SRA with VEO. *See* Exhibit "D" to White Affidavit.

Thus, nothing in Mr. White's affidavit establishes that CPE sold any aftermarket or replacement parts for VEO or undermines any of the evidence upon which this Court's original ruling was based. Because VEO never sold aftermarket or replacement parts through CPE, information about CPE's sales of aftermarket and replacement parts for IKE is neither relevant nor discoverable as a matter of law. Accordingly, VEO's Motion to Reconsider should be denied.

**(B)   Mr. White is Not Competent to Contradict the Testimony of Alan Christian or Chris Petcos.**

In a further attempt to impeach Mr. Christian, Mr. White identifies a client list from CPE, which indicates that CPE represents IKE for the sale of "Zurn Boilers", as evidence that Mr. Christian's testimony that CPE represented IKE for the sale of aftermarket parts is false or inaccurate. *See* White Affidavit, at ¶ 11. Then Mr. White turns his attack directly upon IKE and its General Manager, Chris Petcos, by claiming that: (i) CPE documents produced thus far include proposals for boilers; (ii) the fact that IKE generated a proposal for a boiler means that

---

[5] Exhibit "C" to Mr. White's affidavit provides, "The [HRSG] system will be complete and includes the following…"

IKE actually made an offer to sell a boiler; and (iii) the foregoing evidence "directly contradicts Mr. Petcos' claim that IKE did not quote any M Series boilers during the time of the VEO license agreement." *See* White Affidavit, at ¶¶ 16-20. Mr. White's erroneous assertions are not based upon direct, personal knowledge, and he is not competent to testify about such matters.

An affiant is not competent to testify about matters beyond his personal knowledge. *Fitzpatrick v. National Mobile Television*, 364 F.Supp. 2d 483, 495 (M.D.Pa. 2005)(citing Fed. R. Evid. 603). Hence, mere beliefs or speculation from a fact witness is not competent evidence. *Fix My PC, L.L.C. v. N.F.N. Associates, Inc.*, 48 F.Supp. 2d 640, 643 (N.D.Tx. 1999).

Here, Mr. White is not an employee of CPE or IKE. Thus, he has no direct or personal knowledge, and he is not competent to testify about whether those two companies had any agreement regarding the sale of aftermarket parts for Zurn Products. The only competent evidence of record about the scope of products sold by CPE, *i.e.*, Alan Christian's Declaration, establishes that CPE was selling aftermarket and replacement parts for Zurn Products on behalf of IKE. *See* Christian Declaration, Exhibit "A", at ¶¶ 8-9.

Similarly, Mr. White was never an employee of IKE, and thus, has no direct or personal knowledge as to whether IKE actually submitted each and every proposal that it generated. Even if Mr. White were competent to testify on that issue, his affidavit is wrong and mischaracterizes the record evidence. Mr. Petcos never testified that IKE did not quote *any* M series boilers during the term of the license agreement with VEO. To the contrary, Mr. Petcos testified that IKE <u>did</u> quote M series boilers during that time period, but that such boilers <u>were outside the scope of the license agreement with VEO</u>. *See* Petcos Declaration, attached as Exhibit "A" to IKE's Response in Opposition to Defendant's Motion to Compel (Doc. No. 101), at ¶¶ 12-13.[6]

---

[6] The Court has already ruled that evidence of boiler proposals by IKE that allegedly breached the exclusivity provisions of the license agreement with VEO are irrelevant unless they actually resulted in

Thus, VEO's and Mr. White's attacks upon the testimony of Messrs. Christian and Petcos fail, both because he is not a competent witness, and because he is just plain wrong.

**(C)     VEO Has Not Met the Standard for Reconsideration of the Court's Order.**

Courts do not look favorably upon motions for reconsideration. In fact, such relief is granted sparingly. *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.,* No. 94-7408, 2001 U.S. Dist. LEXIS 11488 at *2-3 (E.D.Pa. May 1, 2001). *See also, Center for Biological Diversity v. Hamilton*, No. 1:04-CV-2573-JTC, 2005 U.S. Dist. LEXIS 18470 at *2 (N.D. Ga. Aug. 24, 2005)("[T]he grant of a motion to reconsider is an extraordinary remedy employed sparingly."). Mere dissatisfaction with the Court's initial ruling or determination is insufficient. Accordingly, it is inappropriate to use a motion for reconsideration to assert arguments that could have been made originally, or to present evidence that was available at the time of the Court's initial determination. *Brogdon v. Nat'l. Healthcare Corp.,* 103 F.Supp. 2d 1322, 1338 (N.D. Ga. 2000).

Even if VEO's motion for reconsideration effectively contradicted Mr. Christian's declaration or otherwise established that the requested information is relevant and discoverable, which it does not, VEO has not met the applicable standard. In particular, the information set forth in Mr. White's Declaration is not "newly discovered", and VEO cannot credibly claim that it failed to anticipate the need during the October 26, 2006 argument for evidence about VEO's aftermarket parts sales. In an effort to resolve this discovery dispute amicably, undersigned counsel asked VEO to provide proof that VEO had sold replacement parts for Zurn Products through CPE. *See* various email, attached hereto collectively as Exhibit "B". VEO

---

a sale. *See* Transcript of May 10, 2006 argument on Cross Motions for Summary Judgment, Doc. No. 97, at pp. 76-77 and 121. Insofar as it is undisputed that IKE has not sold any M series boilers, Mr. White's hearsay testimony would be collateral and irrelevant, even if he were competent to speak to that matter.

acknowledged IKE's request, but refused to voluntarily provide any such evidence to IKE: "VEO vehemently disputes [the contention that VEO does not manufacture or sell the products identified in the CPE documents], but was unwilling to engage in a prove up with IKE in order to obtain the documents. . ." *See* VEO's Memorandum of Law in Opposition to Plaintiff's Motion to Compel and for Protective Order (Doc. No. 100), p. 3 fn. 2 (filed on October 18, 2006).

Thus, VEO clearly knew, well in advance of the original October 26 hearing, that it should demonstrate that it previously sold parts for Zurn Products through CPE. VEO, however, did not provide that evidence at the October 26 hearing, and it has not done so now because VEO never sold any parts for Zurn Products through CPE. Furthermore, VEO always has been in possession of evidence regarding exactly what products it did and did not sell through CPE, meaning that Mr. White's testimony could not possibly have been "newly discovered" by VEO.

**(D)     Under the Circumstances, the Requested Information Properly Was, and Should Remain, the Subject of a Protective Order.**

Because VEO never sold any parts for Zurn Products through CPE, the production of information about CPE's sales for IKE would harm IKE through the disclosure of sensitive customer, pricing and profit data without any legitimate discovery purpose. When warranted to prevent unnecessary intrusions into legitimate business interests, this Court has broad discretion to deny or limit discovery. *In re: Sealed Case*, 381 F.3d 1205, 1216 (D.C. Cir. 2004)(citing *Pearson v. Miller,* 211 F.3d 57, 64 (3d Cir. 2000)).

This Court always has been sensitive to the need to protect the parties' confidential business information. For example, the Court previously denied IKE's motion to compel production of information about the internal features of VEO's HRSGs, despite IKE's good faith belief that VEO had incorporated IKE's proprietary technology therein and undisputed evidence that it was technologically feasible. In so ruling, the Court considered both the fact that IKE had

no "hard evidence" that VEO actually had incorporated IKE's technology into its HRSGs, as well as the fact that the requested information was propriety to VEO. *See* Transcript of July 15, 2005 Hearing, Doc. No. 26-1, at p. 50.

The present dispute is comparable to that dispute. Here, despite having several opportunities to do so, VEO has not produced any "hard evidence" that information about CPE's sale of parts for Zurn Products -- which is confidential and proprietary to IKE -- is relevant or discoverable. Accordingly, IKE should not be compelled to produce such information, and the Protective Order granted by this Court on October 26 should remain in place.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff Indeck Keystone Energy, LLC respectfully requests that the Court deny VEO's Motion to Reconsider.

Respectfully submitted,

   /s/   Robert J. Williams
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Gerald F. DeNotto
600 North Buffalo Grove Road, Suite 300
Buffalo Grove, IL 60089
Telephone: 847-520-3212
Facsimile: 847-520-3235

Attorneys for Plaintiff and Counterclaim Defendant,
Dated: November 24, 2006         Indeck Keystone Energy, LLC