UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : <br> : <br> : <br> : <br> : CIVIL ACTION <br> : <br> Plaintiff, : <br> : NO. 04-CV-325 (ERIE) <br> v. : <br> : Judge Sean J. McLaughlin <br> : <br> VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, : <br> : <br> : <br> Defendant. : |

**PLAINTIFF'S *SECOND* MOTION TO COMPEL
DISCOVERY RESPONSES FROM DEFENDANT**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby submits the following Second Motion to Compel Discovery Responses from Defendant, Victory Energy Operations, LLC ("VEO"):

**Background**

1. As set forth in greater detail in the Complaint, IKE was the licensor of certain watertube package boiler technology (the "Old-Style Boilers") to VEO.

2. Among other things, IKE claims that all of the Old-Style Boilers designed and sold by VEO during the term of the License Agreement contained features and/or technology that exceeded the scope of that agreement.

3.   IKE also contends that VEO misappropriated proprietary information regarding the Old-Style Boilers and other technology/information owned by IKE, *inter alia*, for use in the design and sale of VEO's recently created "Voyager" line of watertube boilers.

4.   Should IKE prevail at trial on those claims, it will be entitled to recover as damages the profits VEO earned on each of the boilers that was outside the scope of the License Agreement, as well as the profits that VEO earns or is expected to earn on the sale of its Voyager boilers.[1]

5.   Accordingly, back in 2005, IKE requested VEO to produce various boiler design materials, and information related to the profits it earned on all boilers sold during and subsequent to the term of the License Agreement.

6.   Specific documents or categories of documents that are responsive to IKE's discovery requests include:

   (a)   Written calculations, projections and estimates of the costs and profit associated with designing, manufacturing and fabricating each boiler (the "Estimates");

   (b)   Written proposals and/or offers to design, manufacture and sell watertube boilers, submitted to project owners and/or their representatives (the "Proposals");

   (c)   Written contracts between VEO and the owner or the owner's representative for the sale of watertube boilers and/or purchase orders issued to VEO by the project owner or its representative (the "Owner POs");

   (d)   Written designs, drawings and schematics for such watertube boilers (the "Drawings"); and

---

[1] VEO has sold and is under contract to deliver at least 47 Voyager boilers. VEO provided to IKE a summary of Voyager contracts (attached hereto as Exhibit "A"), which identified 45 Voyager boilers. VEO apparently omitted from that summary the Voyager boilers it sold to Lifeline Foods and Kansas Ethanol, which appear on a Project Reference List that VEO submitted to a potential customer, MECS, Inc. ("MECS")(attached hereto as Exhibit "B"). IKE obtained that Project Reference List by subpoena.

(e) Written documentation identifying actual costs incurred (e.g., materials costs, labor costs, shipping costs, overhead, etc.) and profits earned on the sales of boilers (the "Cost Information").

7. As set forth in greater detail below, despite having been *twice* ordered by this Court to produce the information requested by IKE, VEO has failed to comply or to fully comply with those Orders and IKE's discovery requests.

**The Estimates**

8. IKE first moved to compel VEO to produce its Estimates on October 2, 2006 (Doc. No. 99).

9. On October 26, 2006, the Court heard argument on IKE's motion to compel. Among other things, the Court ordered VEO to produce the Estimates for the Keystone® boilers it sold while IKE was the licensor. Because the parties had not adequately met and conferred about VEO's lack of production of Estimates for Voyager boilers, the Court deferred its ruling thereupon. *See* transcript of Order (Doc. No. 108), attached hereto as Exhibit "C", at pp. 3-4.

10. The Estimates are important for at least three reasons. First, they provide a contemporaneous estimate of the profit VEO intended to earn on each boiler as of the time the project began. That Estimate can then be compared to the actual incurred costs to evaluate accuracy of the cost information and ascertain what aspects of a project caused it not to achieve the anticipated profit. Second, VEO claims that it does not generate any project-specific profit and loss statements to determine profits, which has caused IKE to undertake the extremely laborious and time-intensive process of reviewing individual purchase orders and other detailed cost documents pertaining to the construction costs for each boiler. Again, the Estimates assist in identifying the projected costs and serve as a comparator to actual costs. Third, VEO has sold 47 Voyager boilers, but only five have been completed and shipped to customers. The Estimates

for the remaining 42 boilers are necessary to assist IKE in identifying the profits that VEO expects to earn for purposes of identifying damages on those boilers.

11. When IKE contacted VEO about its failure to comply with the Court's October 26 Order, VEO initially claimed that no Estimates existed for the Keystone® boilers it sold while IKE was the licensor. In an email to undersigned counsel, VEO's counsel wrote:

> The court ordered VEO to produce the documents – to the extent VEO had such documents in its possession. VEO has conducted a search and has no budget estimates . . . for the boilers VEO sold while IKE was the licensor.

A true and correct copy of Attorney Sheean's December 1, 2006 email is attached hereto as Exhibit "D".

12. VEO's claim that it has no documents estimating or projecting its costs and profits for the Keystone® boilers is incredible, given the facts that the boilers consist of over a thousand parts, involve multiple suppliers and fabricators, and require thousands of man-hours to assemble. It is simply impossible to estimate the cost of designing and manufacturing a boiler with any reasonable accuracy, without the use of written calculations, notes and/or estimates.

13. In fact, VEO's claim that it has no Estimates for the Keystone® boilers is directly contradicted by its own General Manager, Mark White, who testified that VEO creates internal documents titled "Price Summary Sheets" to estimate its costs and profits on projects.[2] (2/1/06 Dep. at pp.73-75). According to Mr. White, "Price summary sheet is ... basically it's our estimate, how we estimate the project." (2/1/06 Dep. at pp.73-76). Given that VEO created detailed estimates for the Keystone® boilers, IKE believes that such estimates exist for the Voyager as well.

---

[2] VEO designated the portion of Mr. White's transcript containing this testimony as "Highly Confidential", pursuant to the terms of the Confidentiality Agreement and Protective Order entered in this action. Should the Court wish to view that transcript, IKE will file it under seal, fax it directly to chambers, or take any other appropriate action to provide the Court with a copy of the same.

14. VEO's claim that it has no Estimates for the Keystone® boilers is further contradicted by the fact that VEO employs an individual whose job duties specifically include estimating project costs and profits, and whose job title or capacity is "Chief Estimator". A copy of the relevant pages from VEO's response to a shop audit by a customer is attached hereto as Exhibit "E". That shop audit occurred in connection with VEO's proposed sale of Voyager boilers, so VEO should be creating detailed Estimates with respect to the Voyager, as it did with the Keystone®.

15. On December 7, 2006, IKE contacted VEO in an attempt to resolve VEO's failure to produce any Estimates for the Voyager boilers. A copy of IKE's counsel's December 7, 2006 email is attached hereto as Exhibit "F".

16. In response, VEO's counsel claimed that VEO's obligation to provide any profit and cost information, including Estimates, was suspended by virtue of the fact that the Court had bifurcated the liability and damages phases of this case for trial purposes. A copy of VEO's counsel's December 8, 2006 email is attached hereto as Exhibit "G". Once again, VEO's position was incredible and unreasonable, especially given the fact that nothing in the Court's bifurcation order even remotely suggested that VEO's obligations to respond to discovery and comply with prior discovery orders had been suspended.

17. VEO's failures to adequately respond to discovery and to produce its Estimates were again addressed during a December 15, 2006 status conference. At that time, VEO did not claim that it has no documents reflecting estimates or projections of costs and profits. Instead, as the Court will recall, VEO simply claimed that the nature of its own internal filing system made it burdensome and laborious to retrieve the requested materials.

18. During the December 15 status conference, *inter alia*, the Court *again* ordered VEO to produce any and all documents responsive to IKE's discovery requests, including the Estimates. A copy of the Court's minute entry, directing VEO to produce the requested materials within sixty days, i.e., by February 13, 2007, is attached hereto as Exhibit "H".

19. The License Agreement expired on January 7, 2006, and therefore, VEO has not prepared any Estimates for Keystone® boilers for over a year. According to VEO's summaries and reference lists for Voyager sales (Exhibits "A" and "B" hereto), the most recent sale of a Voyager boiler was January 26, 2007. Thus, both the Estimates for the Keystone® boilers it sold while IKE was the licensor, as well as Estimates for all of the Voyager boilers, would have existed and been in VEO's possession as of the Court's February 13, 2007 deadline.

20. In an attempt to resolve this issue yet again, IKE's counsel contacted VEO's counsel by electronic mail on February 20, 2007. However, VEO has failed to respond specifically to IKE's inquiry about the Estimates.[3] A copy of IKE's February 20, 2007 electronic mail is attached hereto as Exhibit "I".

21. Notwithstanding IKE's repeated attempts to obtain VEO's Estimates, and this Court's prior orders compelling production of the same, VEO has failed to produce any Estimates for the Keystone® boilers it sold while IKE was the licensor, or for the 47 Voyager boilers it has sold.

---

[3] By letter dated February 20, 2007, VEO's counsel did reply to certain recent discovery inquiries made by IKE. However, Mr. Sheean's February 20 letter does not contain any response to IKE's inquiries about the Estimates, Proposals or complete sets of Voyager Drawings. A copy of Mr. Sheean's letter is attached hereto as Exhibit "J".

## The Proposals

22.     Upon information and belief, VEO created a Proposal for each Voyager boiler it has sold, *inter alia*, to describe the features of the Voyager boiler and to communicate VEO's proposed/estimated sales price to the project owner or its representative.

23.     IKE obtained from MECS by subpoena a copy of a VEO proposal for the sale of a Voyager boiler. The language used in that proposal to describe the Voyager boiler is in several respects <u>verbatim identical</u> to the language used to describe Keystone® boilers in a specimen proposal that was given to VEO by IKE's predecessor during the term of the License Agreement. Compare relevant pages from Voyager proposal, attached hereto as Exhibit "K", to specimen copy of Keystone® boiler proposal, attached hereto as Exhibit "L".

24.     Thus, VEO's Proposals for Voyager boilers are relevant to demonstrate VEO's misappropriation of materials that were given to it for use only in selling Keystone® boilers during the term of the License Agreement.

25.     Furthermore, VEO's Proposals, which contain descriptions of the Voyager boiler that are in several respects <u>verbatim identical</u> to the descriptions of Keystone® boilers, also are probative on the issue of whether VEO copied various Keystone® boiler designs and details that were given to it in confidence and for use during the term of the License Agreement.

26.     As set forth above, the most recent sale of a Voyager boiler was January 26, 2007. Thus, as of the Court's February 13, 2007 production deadline, VEO was in possession of the Proposals for all 47 Voyager boilers it has sold.

27.     IKE's counsel attempted to resolve VEO's failures to comply with discovery requests and this Court's Order, by contacting VEO's counsel by letter on February 1 and by

electronic mail on February 20. *See* Exhibit "I" and copy of February 1, 2007 letter, attached hereto as Exhibit "M".

28. However, VEO has not responded specifically to IKE's inquiries about the Proposals for the Voyager boilers, nor has VEO produced any of the same. *See* Mr. Sheean's letter, Exhibit "J".

### The Owner POs

29. As set forth in greater detail above, VEO previously contended that its obligations to comply with the Court's October 26, 2006 Order and to produce profit and cost information about the Voyager boilers were suspended by virtue of the Court's bifurcation of the liability and damages claims at trial. *See* Exhibit "G". On December 15, 2006, the Court again ordered VEO to produce the requested information, within sixty days, or by February 13, 2007.

30. IKE contacted VEO on February 20 about its failure to produce all cost and profit information for the Voyager boilers. *See* Exhibit "I".

31. In response, VEO claimed that it had "produced the documents IKE needs to calculate VEO's profit on the boilers it has shipped out." *See* Exhibit "J".

32. However, contrary to VEO's assertion, VEO has <u>not</u> produced any of the Owner POs for any of the Voyager boilers it has already delivered to customers.

33. VEO also has <u>not</u> produced any of the Owner POs for Voyagers that have been sold, but not yet delivered to the customers. Those sales are sufficiently definite that VEO listed them in its Project Reference List that shows Voyager boilers sold by VEO, so there must exist documentation confirming the terms of sale. *See* Exhibit B, Project Reference List. Owner POs (and VEO's Estimates) for Voyager boilers that are not yet complete are relevant and necessary to calculate the projected or anticipated profits for those Voyager boilers.

34. Because the last date on which VEO sold any Voyager boilers was January 26, 2007, VEO has or should have had in its possession by the Court's February 13, 2007 deadline copies of all Owner POs for the 47 Voyager boilers it has sold.

35. Notwithstanding the foregoing, VEO has not produced any Owner POs for any of the 47 Voyager boilers it sold.

## The Drawings

36. By its own admission, VEO has been producing Drawings of the Voyager boiler boilers on a piecemeal or "rolling basis." *See* copy of Mr. Sheean's February 20, 2007 letter, Exhibit "J".

37. By letter dated February 1, 2007, IKE advised VEO that VEO has failed to produce <u>complete</u> sets of Drawings for each Voyager boiler that has been completed and delivered to VEO's customers. IKE's counsel further explained that complete sets of Drawings for each completed Voyager boiler are relevant and discoverable, because each Voyager may be customized for a particular customer. Thus, the features and designs that VEO copied from the Keystone® boiler to design one Voyager boiler, may not be the same features and designs that VEO copied from the Keystone® boiler to design another Voyager boiler for a different customer. *See* Exhibit "M".

38. In its response to IKE's counsel's February 1 letter, VEO did not dispute the fact that it has not produced complete sets of Drawings for each completed Voyager boiler. VEO also did not dispute that each of the completed Voyager boilers has been customized "to meet customer needs." Instead, VEO claimed that customization does not necessarily mean that all of the Voyager boilers are different. *See* Exhibit "J".

39.  For the reasons set forth above, <u>all</u> Drawings for <u>all</u> completed Voyager boilers are relevant and discoverable. In the absence of an agreement or a protective Order, neither of which exist in this case or would be appropriate, VEO does not have the right to unilaterally withhold production of relevant documents.

### The Cost Information

40.  As set forth above, VEO's claim that it has "produced the documents IKE needs to calculate VEO's profit on the [Voyager] boilers it has shipped out" (*see* Exhibit "J") is simply false.

41.  For example, with respect to the Keystone® boilers that VEO sold while IKE was the licensor, VEO has produced copies of five categories of cost documents: (i) purchase orders that VEO issued to parts suppliers and fabricators, (ii) purchase orders, invoices, receipts and/or bills of lading for shipping costs, (iii) job billing history reports, (iv) job transaction detail reports, and (v) reports and/or summaries of man hours allocated and expended on the project.

42.  With respect to five of the six Voyager boilers that VEO completed and delivered prior to this Court's February 13 deadline, VEO has produced copies of purchase orders it issued to fabricators, job billing history reports, and job transaction detail reports, but <u>has</u> <u>not</u> produced any documents regarding shipping costs or reports of man hours allocated and expended on each project.

43.  Furthermore, with respect to the Voyager boiler that VEO delivered to Premiere Ethanol on February 2, 2007, VEO has not produced *any* Cost Information whatsoever, including any of the categories or types of documents identified in paragraph 41, above.

44.  VEO also has failed to produce any cost information for Keystone® Project No. 313, which had a boiler price per royalty of $816,800.

45. VEO's failure to comply with the Court's December 15, 2006 Order and produce all of the Cost Information for the Voyager Boilers was the subject of IKE's February 20 email to VEO's counsel. *See* Exhibit "I".

46. However, VEO's response was the inaccurate claim that it has "produced the documents IKE needs to calculate VEO's profit on the [Voyager] boilers it has shipped out."

## Relief Requested

47. The Court's December 15, 2006 Order compelling VEO again to produce all of the information responsive to IKE's discovery requests also directed IKE to supplement its pretrial statement within twenty (20) days after February 13, 2007, and set a firm trial date of May 7, 2007.

48. In consideration of the fast-approaching May 7 trial date, the fact that IKE first requested the subject materials from VEO approximately two years ago, and the fact that this Court has twice ordered VEO to produce all materials responsive to IKE's discovery requests, VEO should be ordered to produce all of the above-described missing documents within five (5) business days. IKE respectfully submits that VEO should not be given any more time than that, and the May 7 trial date should not be continued. Otherwise, VEO will benefit from its own dilatory and vexatious discovery conduct.

49. IKE further submits that it should have twenty (20) days from the date on which VEO finally produces all of the requested material to file a further supplemental pretrial statement.

50. Finally, by failing to satisfy its discovery obligations and to comply with two separate discovery Orders entered by this Court, VEO has caused IKE to incur needless fees and costs, including, but not limited to, the cost of drafting and filing two discovery motions, the

costs associated with IKE's counsel's efforts to resolve this discovery dispute outside of motion practice, and the additional costs associated with IKE's expert witnesses having to review materials in a piecemeal fashion and to author supplemental reports based upon such piecemeal production. Accordingly, IKE submits that VEO should be sanctioned in any amount the Court deems appropriate.

WHEREFORE, Plaintiff, Indeck Keystone Energy, LLC respectfully requests that the within Second Motion to Compel Discovery Responses from Defendant be granted, and that an Order be entered in the form attached hereto.

Respectfully submitted,

/s/   Robert J. Williams
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for Plaintiff and Counterclaim Defendant,
Indeck Keystone Energy, LLC

Dated:  March 6, 2007