UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>            Plaintiff<br><br>v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>            Defendant. | CIVIL ACTION<br><br>No. 04-CV-325E<br><br>Judge Sean J. McLaughlin |

**VICTORY ENERGY'S MEMORANDUM OF LAW IN OPPOSITION TO INDECK'S SECOND MOTION TO COMPEL**

**Introduction**

      Plaintiff Indeck Keystone Energy LLC ("IKE") makes numerous inflammatory statements against Defendant Victory Energy Operations LLC ("VEO") that are long on invective but short on substance. IKE alleges that VEO has failed to comply with discovery requests in violation of Rule 37 of the Federal Rules of Civil Procedure, but never once identifies the discovery requests VEO allegedly failed to satisfy. IKE claims that VEO has violated two of this Court's prior orders, but misstates the scope of the orders. VEO has gone above and beyond what it was obligated to produce, and has given IKE the cost and income documents relating to both the boilers sold during the term of the License Agreement, and the Voyager® boiler projects VEO has completed since the expiration of the License Agreement. The thoroughness of VEO's production is belied by IKE's expert report. IKE's damages expert was able to render a report and calculate what he believes to be the profits VEO earned on those projects. Unsatisfied, IKE rejects VEO's good faith representation that it has not created or maintained "estimates" on its sales of the boilers in question, without any showing to support its claims.

      Boiling IKE's motion down to its most fundamental level, the documents IKE

seeks that VEO is withholding in good faith are the proposals generated by VEO to customers for the Voyager® boilers it has sold since the expiration of the license agreement, and the customers' corresponding purchase orders confirming the scope of the project.  VEO is withholding these documents for two very good reasons – they are unnecessary and superfluous to documents already produced regarding the calculation of VEO's profit or loss on the sale of Voyager® boilers, and they provide VEO's adversary with a clear road map on how to successfully price water tube package boilers.  Since the expiration of the license agreement, VEO has entered into contracts with customers to provide 45 Voyager® water tube package boilers.  The discovery to date demonstrates IKE has failed to make a single sale of a Keystone boiler despite their claims that the Keystone technology is superior.  Even under the existing protective order, VEO fears that IKE will utilize the information to compete against VEO.  Given the evidence adduced to date on VEO's counterclaims against IKE for tortious interference and defamation, VEO's fears are based on more than mere speculation.  VEO submits it would be grossly unfair and inequitable to require VEO to produce those documents when IKE has failed to show they are even necessary to calculate profit.

      IKE also alleges that VEO has failed to produce "each and every" drawing prepared in manufacturing the five Voyager® boiler projects completed to date.  IKE apparently disregards the fact that VEO had previously produced complete drawings of every model of boiler completed to date, insisting that VEO must produce what are in essence, duplicate drawings.  Rather than continue to fight over this point, VEO made production of the final few drawings, and has represented to IKE that it has produced a complete set of all of the drawings in its possession regarding the Voyager® boiler projects completed to date, despite no actual discovery request seeking those documents.

IKE's Second Motion to Compel is unfounded. There simply is no good faith dispute remaining on discovery issues. Accordingly, IKE's motion to compel and for sanctions should be denied.

1. **IKE's Discovery Requests Do Not Support Its Motion.**

Throughout its motion, IKE makes sweeping claims that VEO has failed to comply with a pair of this Court's orders, as well as IKE's discovery requests. These allegations are untrue and unsupportable. IKE alleges that VEO failed to produce any estimates of expenses and profits prepared relating to boilers sold during the license period, as well as proposals, owner purchase orders, and drawings relating to the Voyager® boilers sold following the expiration of the license agreement.[1] However, IKE does not and cannot identify the requests that VEO supposedly failed to satisfy. IKE's First Set of Discovery Requests did not seek any of the documents IKE now claims VEO has failed to produce. IKE's Second Set of Discovery Requests do not support IKE's claim that it has requested and is entitled to the these documents.

There is only one request in IKE's Second Set of Discovery Requests that even tangentially relates to profit, and none that relate to the cost documents sought in IKE's motion to compel. Request No. 7 sought:

> Any and all documents that evidence, support, establish, refer to or otherwise relate in any way to the profit that [VEO] earned on each and every boiler that [VEO] manufactured and/or sold, either pursuant to the License Agreement or which involved the use of any information or technology that [VEO] acquired in connection with the License Agreement.

IKE's Second Set of Discovery Requests, Ex. 1, at p. 7).

---

[1] IKE alleges that if it prevails on its claims, IKE is entitled to recover any profits that VEO has earned on the sale of boilers VEO sold using technology acquired under the License Agreement. IKE's assertion, however, fails to recognize that disgorgement of profits is the most extreme of remedies this Court could award, completely dismissing that this Court could instead award a reasonable royalty (such as 4% of the boiler price, as agreed to in the License Agreement), or even an award equal to the value of the technology allegedly misappropriated, which in this case is less than $500,000.

3

VEO responded to Request No. 7 as follows:

> VEO has only used or incorporated technology and information it obtained in connection with the License Agreement to manufacture and sell boilers pursuant to the License Agreement, and all such sales are therefore authorized and VEO's profits from the sales of said boilers is not relevant nor likely to lead to the discovery of admissible evidence.

(VEO's Responses to IKE's Second Set of Discovery Requests, Ex. 2, at p. 5). VEO has not manufactured or sold any boiler outside of the License Agreement that involved the use of any information or technology acquired in connection with the License Agreement. As such, VEO responded that it had no documents responsive to IKE's request. Moreover, even if the request applied to the Voyager® boilers VEO has sold, it did not seek the detailed cost data now sought by IKE. No matter how IKE tries to purse the discovery, its claim that VEO should produce cost data is quite recent and is not subsumed by any actual discovery requests.

2.   **The Court Never Ordered VEO To Produce Estimates, Proposals or Purchase Orders Relating To Its Sale of Voyager® Boilers.**

Following a good faith dispute as to what IKE's damages expert needed to calculate VEO's profits and losses on the sale of boilers during the time of the License Agreement, IKE filed a motion to compel, and the Court entered an order on October 26, 2006 requiring that VEO produce copies of any proposals, estimates and a breakdown of actual shop man hours by operation for the Keystone boilers VEO had sold during the time IKE was the licensor under the License Agreement, "to the extent the information is within the possession, custody or control of the defendant." VEO produced the lone proposal it had not previously produced, and confirmed for IKE that it had no estimates or a breakdown of the actual shop man hours by operation.

Also at the October 26, 2006 hearing, IKE raised for the first time its belief that VEO had an obligation to produce documents relating to its sale of Voyager® boilers. After IKE

acknowledged that it had never sought to "meet and confer" with VEO's counsel regarding the Voyager® profit documents, the Court deferred ruling on the matter and advised IKE to file a new motion to compel if necessary. On November 3, 3006, the Court entered an order that "the liability and if necessary damages aspect of this case shall be bifurcated for purpose of trial." Based on this ruling, and the fact that VEO did not receive any communications from IKE on the Voyager® profits until December 1, 2006, VEO believed that discovery on Voyager® profits would be tabled until such time as necessary, depending on the outcome of the trial on liability.

When IKE's counsel first contacted VEO about the Voyager® profits documents, VEO expressed its belief that profits discovery was stayed pending the outcome of the liability trial, but suggested the parties seek a conference with the Court to clarify the impact of the Court's bifurcation order. (See the Email from Christopher T. Sheean to Robert Williams and John Gisleson dated December 8, 2006, Ex. 3). Following VEO's counsel's suggestion, the parties arranged a conference with the Court, and on December 15, 2006, the Court clarified that discovery on the Voyager® profits should proceed. Specifically, the Court held that "60 days from today Defendant shall respond to the Document Request."[2] The Court did not address the type of documents VEO was to produce, in any respect.

    3.    **<u>VEO Has No Estimates Relating to Boilers</u>**

IKE asserts that VEO is withholding documents by failing to produce estimates of the boilers VEO sold during the License Agreement period. However, as VEO related to IKE in November 2006, VEO does not create or maintain records of estimates. (Affidavit of Mark J. White, Exhibit 4, at ¶¶2-4). IKE is unwilling to accept VEO's representation, asserting that it is

---

[2] Contrary to IKE's assertion in its Motion to Compel, this Court did not "twice" order VEO to produce the documents IKE seeks in the motion. As set forth above, this Court has never ordered VEO to produce the drawings, estimates, proposals or owner purchase orders for the Voyager® boilers that IKE is seeking. Accordingly, IKE's assertion is nothing more than an effort to trump up its claims of withholding to bolster its unjustified request for sanctions.

inconceivable said records do not exist. Despite the seriousness of IKE's accusation, IKE offers no persuasive evidence to counter VEO's good faith representation. Rather, IKE points to a third party auditor's report that purports to show VEO employs a "Chief Estimator." Again, IKE is wrong. VEO has never employed a "Chief Estimator." (White Aff., Ex. 4, at ¶¶5-6). VEO has no control over how a third party auditor chooses to classify its employees, and IKE's reliance on such a classification is unfounded.

IKE also cites the testimony of Mark White regarding "price summary sheets" as a basis for its claim that VEO has withheld estimates for its boiler sales from its production to IKE. The testimony in question came from the deposition of Mr. White on February 1, 2006, wherein Mr. White answered as follows:

> Q. Was the price summary sheet provided to VEO's clients?
>
> A. No. That's a confidential document. Price summary sheet is -- is a list of -- basically it's our estimate, how we estimate the project.

While Mr. White's testimony seems to support the notion that VEO does create and maintain documents for estimating projects, the fact is that VEO does not.

Mr. White misspoke when he referred to the price summary sheets as estimates. The price summary sheets are simply printouts from VEO's accounting system of the amounts VEO invoiced to and received from its customers, along with the cost of items used to build the boilers. (White Aff., Ex. 4, at ¶¶7-8). Those records have been produced to IKE for the boilers sold during the License Agreement period, as well as for the five boilers VEO has shipped out since the expiration of the Agreement. As previously stated, VEO does not maintain records that reflect estimates of the cost or the projected profit of a project. (*Id.* at ¶¶2-4).

4. **IKE Has Never Served VEO With A Document Request Relating To The Voyager® Boilers.**

As noted above, IKE has never served VEO with a document request for the

6

Voyager® profit documents. This is problematic for two reasons. First, it demonstrates the improper nature of IKE's claim that VEO has failed to comply with its discovery obligations under the federal rules. Second, it forced VEO to make a good faith determination as to what was called for by IKE. Rather than fight about the absence of an actual request for production of the Voyager® profit documents, VEO again made a good faith determination that it should produce the documents necessary to calculate profits and losses for the boilers it has sold, and has done so.

5. **IKE Has The Documents It Needs To Calculate Profit On The Boilers VEO Has Completed And Delivered.**

IKE has all of the information required to calculate profits and losses on the 5 Voyager® boilers VEO has sold to date, and all of the documents responsive to the Court's orders.[3] This fact is specifically demonstrated by IKE's damages expert, William Liebel, who has calculated VEO's profit on the Voyager® boilers sold to date in his report dated March 5, 2007. The financial records relating to the Voyager® boilers took VEO several weeks to compile and copy, as they were not maintained by VEO on a job by job basis, and had to be culled from several different sources. Included in the documents were the purchase orders VEO issued to its suppliers, a printout of all monies paid out and received by VEO for the project, and a detailed record of the dollars spent on materials, shipping, labor and overhead for each of the 5 boilers sold while IKE was the licensor. IKE incorrectly asserts that VEO has failed to produce records relating to shipping and man hours. A review of the Job Transaction Detail Reports for each project shows that, in fact, all of the relevant information relating to the income received and costs for each project have been produced. In all, VEO has produced over 700 pages of

---

[3]   IKE incorrectly asserts that VEO has sold 47 Voyager® boilers, based on an outdated project list. VEO has contracts for the sale of 45 boilers, but only 5 projects were completed as of the time VEO produced its records relating to the Voyager® sales.

documents relating to the profits and losses on the 5 Voyager® boilers completed to date.

IKE now claims it needs VEO's proposals to its customers and the customers' corresponding purchase orders in order to test the veracity of VEO's actual amounts expended and received on the 5 boiler projects. IKE's argument stands logic on its head by suggesting that the amount VEO forecast it would cost the customer for the complete boiler package could somehow be used to determine whether VEO has somehow "hidden the ball" in its ultimate records reflecting VEO's actual experience in designing and building the boilers. IKE provides no explanation as to how VEO's forecasted bottom line cost will shed light on the amounts VEO actually spent and received for the Voyager® boilers.

In recognition of the paucity of logic to its argument that the proposals are needed to calculate profit, IKE claims that it needs the proposals VEO sent to its customers for the Voyager® boilers as they are relevant to show "VEO's misappropriation of materials." IKE's argument is troubling for several reasons, not the least of which is that there is no cause of action that can be stated for blanket "misappropriation of materials." IKE's claim that VEO copied verbatim language used to describe Keystone boilers is not relevant to any of IKE's claims. By IKE's own admission, EPTI and its predecessors have disseminated proposals for Keystone boilers for the past several years to prospective customers without any effort to maintain the information contained in the proposals as confidential.[4] IKE's predecessors did not consider their proposals to be confidential or proprietary (*Id.*). Therefore, any information on the proposals is not a trade secret and cannot be deemed unfair competition. IKE has no claim for copyright infringement, and IKE has identified no trademark that has been infringed in the

---

[4] Martin Swabb, IKE's Manager of Field Services and its rebuttal expert, testified as such at pp. 169-170 of his deposition, which IKE has designated as confidential. VEO will provide a copy of Mr. Swabb's testimony to the Court should the Court deem it necessary.

proposals.

    IKE's claim that VEO has "misappropriated materials" is a symptom of an overall flaw in its case.  IKE would like this Court to believe that any aspect of the boiler industry identified, utilized or otherwise incorporated in boilers sold by IKE and its predecessors in interest constitutes IKE's proprietary information.  The case law simply does not support IKE's misguided view.  Pennsylvania courts have long recognized that where information is disseminated publicly without an effort to maintain its confidentiality, that information cannot be deemed protectable as a trade secret.  *See Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 266-7 (Pa. S. Ct., 1965); *Multitherm Corp. v. Fuhr*, 1991 U.S. Dist. Lexis 10475 at 57 (3d Cir.); *SI Handling Systems, Inc. v. Heisly*, 753 F.2d 1244 (3d Cir. 1985).  Because IKE cannot show any wrongful use by VEO of confidential information not already in the public domain, all that is left of its claim is its assertion that Victory copied portions of design drawings and promotional materials.  To the extent that IKE's claim is based solely on its allegation that VEO reproduced or distributed copies of IKE's original material, the claim is pre-empted by federal Copyright Act, 17 U.S.C. 301; *see also Harper & Row, Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2nd Cir. 1983); *Pytka v. Van Alen*, 1992 U.S. Dist. LEXIS 7956, * 6 (E.D. Pa. 1992).  Accordingly, IKE's claims that it needs VEO's proposals for the Voyager® boilers are disingenuous at best.

  **6.**  **VEO Has Produced All Drawings For The 5 Voyager® Boilers Delivered To Date.**

    In addition to financial documents, IKE's motion alleges that VEO has failed to timely produce all of the drawings it created in manufacturing the 5 Voyager® boiler projects delivered to date.  Once again, however, IKE cannot identify a single request that actually calls for the production of the Voyager® drawings.  The only document request that comes close is

Request No. 8 in IKE's Second Set of Discovery (Ex. 1), which seeks:

> Any and all documents that evidence, support, establish, refer to or otherwise relate in any way to VEO's ability to design, manufacture and or assemble any direct-fired water tube boiler, component and/or accessory thereof, *without* using, incorporating, depending upon, relying upon and/or referring in any way to any information that was provided to [VEO] in connection with the License Agreement.

(IKE's Second Set of Discovery Requests, Ex. 1, at p. 5). In response, VEO agreed to produce any non-privileged responsive documents. (VEO's Responses to IKE's Second Set of Discovery Requests, Ex. 2, at p. 7).

Despite being unable to identify a single request that is on point, IKE asserts that VEO has been delinquent in producing drawings for the Voyager® boilers completed to date. VEO takes issue with this accusation, and notes that it has been extremely diligent in producing drawings of its Voyager® boilers as they become available. In fact, to date VEO has produced over 1800 pages of Voyager® drawings. IKE complains in its motion that it is not enough that VEO has produced drawings representative of each and every boiler it has completed to date. As counsel for VEO explained in its response to IKE's demands, several of the boilers VEO has made to date are identical in nearly every respect. For instance, the boilers VEO built for Sioux River Ethanol and Iowa Ethanol were both model VS-4-68, and as such, will have the same tube configuration and furnace size. Similarly, the Voyager® boilers built for Abengoa Bio Energy and Yuma Ethanol were both VS-6-92. At the time IKE was demanding additional Yuma Ethanol drawings, IKE had in its possession the Abengoa Bio Energy drawings that it could use to show its expert for purposes of the litigation. However, IKE insists that VEO must produce all drawings for the completed Voyager® drawings. IKE has failed to identify any legitimate reason why it needs every drawing for every boiler. Nevertheless, to avoid any further expense and aggravation on this issue, VEO has made a final production and can represent that to the best

of its knowledge, VEO has produced to IKE a complete set of the drawings for each of the five boiler projects completed to date.

      7.    **<u>IKE's Motion Contains Inappropriate Misstatements and Misinformation.</u>**

Unfortunately, IKE makes several inaccurate statements, several of which have previously been corrected for IKE. For instance, IKE asserts that VEO has failed to produce the underlying accounting records for Job No. 313, the Worcester Polytechnic Institute/J.C. Higgins project. As was explained in VEO's Opposition to IKE's First Motion to Compel, that project falls outside the time period when IKE was the licensor. VEO inadvertently included Job 313 in its earlier document productions of projects booked during the time IKE was the licensor. However, Job 313 was actually obtained on April 9, 2004, several months before IKE became the licensor. (A copy of the purchase order between VEO and J.C. Higgins for Job 313 is attached as Ex. 5). IKE has admitted in its papers and past hearings that it does not seek damages for any boilers VEO sold before IKE became licensor. Given that VEO and J.C. Higgins reached agreement on the boiler in April 2004, that boiler falls outside the scope of IKE's damages claims and was properly excluded from VEO's more recent production relating to profits on boilers sold while IKE was the licensor. Moreover, IKE sought the accounting records related to VEO's sale of boilers under the License Agreement before IKE became licensor, and this Court denied that motion in its October 26, 2006 order.

IKE incorrectly asserts that VEO has sold 47 Voyager® boilers since the expiration of the License Agreement. As was specifically detailed for IKE in a chart produced in mid-February, VEO has sold 45 boilers. The Project Reference List IKE attached to its complaint contained two projects that did not result in the sale of Voyager® Boilers, Kansas Ethanol and Lifeline Foods. The Kansas Ethanol project was cancelled before any work began

11

on it. (White Aff., Ex. 4, at ¶9). The Lifeline Foods Project did not involve the sale of a Voyager® boiler. Rather, VEO sold Lifeline Foods a reconditioned Johnston Boiler. (*Id.* at ¶10) and VEO has produced drawings of that boiler as further proof of information available in the public domain. Accordingly, that project cannot be considered part of the Voyager® project list.

Similarly, IKE alleges that VEO has failed to produce the accounting records for the Premier Ethanol project. However, as is reflected in the Chart of Voyager® Boiler sales (Exhibit 6), VEO had not made delivery of that complete project as of the date of its production. As this Court recognized at the hearings on July 15, 2005 and October 26, 2006, VEO cannot provide profit and loss information on projects before they are complete. IKE's attempt to lump Premier Ethanol in with the completed Voyager® projects is therefore improper.

## Conclusion

For the foregoing reasons, Victory Energy Operations LLC respectfully requests that Plaintiff's Second Motion to Compel be denied.

Dated: March 19, 2007                                Respectfully submitted,

/s/Christopher T. Sheean
One of the Attorneys for Defendant,
VICTORY ENERGY OPERATIONS, LLC
Christopher T. Sheean
Wildman Harrold Allen & Dixon LLP
225 W. Wacker Drive, 28th Floor
Chicago, IL 60606
(312) 201-2997
F: (312) 416-4659

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of *Victory Energy's Memorandum of Law in Opposition to Indeck's Second Motion to Compel* was served upon the following counsel of record by the CM/ECF electronic filing system on the 19th day of March, 2007:

    John K. Gisleson
    Schnader Harrison Segal & Lewis LLP
    Fifth Avenue Place
    120 Fifth Avenue, Suite 2700
    Pittsburgh, PA  15222-3001

                                          /s/ Christopher T. Sheean