UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>    Plaintiff<br><br>v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>    Defendant. | CIVIL ACTION<br><br>No. 04-CV-325E<br><br>Judge Sean J. McLaughlin |

### AFFIDAVIT OF MARK J. WHITE

I, Mark J. White, being duly sworn on oath, depose and state in support of Victory Energy Operations LLC's Opposition to Indeck Keystone Energy LLC's Motion for Partial Summary Judgment on Defendants' Counterclaims:

1.    I have been the General Manager at Victory Energy Operations, LLC ("VEO"), since August 2003. I have personal knowledge of the matters contained in this affidavit.

2.    VEO does not maintain records of estimates for its water tube package boilers.

3.    VEO sales engineers are responsible for preparing bids for prospective boiler projects.

4.    In the course of preparing those bids, the sales engineers consult with VEO's management on a desired or proposed profit margin target. The sales engineers are then responsible for preparing the bid, incorporating in the bid the underlying anticipated costs of the boiler and the desired profit margin. The sales engineers are not required or expected to prepare or maintain a written estimate or record reflecting the breakdown of estimated cost and profit for a given project.



EXHIBIT 4

5.  I have reviewed the shop audit prepared by Parrish Inspection and attached to IKE's Motion to Compel, and I am aware that the audit claims that Don Jackson is our "Chief Estimator."

6.  Don Jackson is not VEO's Chief Estimator. For the period of time I have been employed at VEO, VEO has not employed anyone with the title "estimator" or "chief estimator."

7.  I am further aware that during my deposition on February 1, 2006, I referred to VEO's price summary sheets, and indicated that the price summary sheet constitutes an estimate for a boiler project. I misspoke during my deposition when I referred to price summary sheets as estimates.

8.  VEO maintains accounting records on its computer database that show the amounts paid out and received on a boiler project. I have referred to computer printouts of amounts spent and received on a given project as the "price summary sheet." The price summary sheet is not, and has never been, an estimate of cost and/or profit for a project. The price summary sheet, as I have used that term, refers to a calculation of the overall amounts expended and received for a project after completion. Records such as these have been provided to IKE in this litigation as the Job Billing History and Job Cost Detail Reports.

9.  I am aware that Kansas Ethanol was listed as two separate projects on the Project Reference List provided to MECS, Inc. and included as an exhibit to IKE's Motion. As of the time that list was provided to MECS, it was accurate. However, the second Kansas Ethanol contract was subsequently cancelled and no work was initiated on the project.

10. I am aware that on the same Project Reference List, Lifeline Foods is shown as a project. However, that project does not relate to the sale of a VEO Voyager boiler. Rather, VEO is selling Lifeline Foods a reconditioned boiler from Johnston Boiler.

11.     To the best of my knowledge, as of March 14, 2007, VEO has made a full and complete production of all of the drawings in its custody, control or possession used to manufacture the boilers for VEO Voyager projects 443, 444, 445, 504 and 515. the Voyager® projects completed as of that date.

Further affiant sayeth not.  I affirm, under the penalties for perjury, that the foregoing representations are true.

_____
Mark J. White

SUBSCRIBED AND SWORN TO
before me this 15 day of March, 2007.


_____
Notary Public

