UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INDECK KEYSTONE
ENERGY, LLC, a Delaware limited liability company,

      Plaintiff,

v.

VICTORY ENERGY
OPERATIONS, LLC, a Delaware limited liability company,

      Defendant.

: CIVIL ACTION
:
: No. 04-CV-325 (ERIE)
:
: Judge Sean J. McLaughlin

### RESPONSE TO VEO'S MOTION FOR RULING THAT EPTI'S CONDUCT IN PERFORMING THE CONTRACT COULD NOT BE DEEMED A WAIVER THAT WAS SUBJECT TO REVOCATION

Indeck Keystone Energy LLC ("IKE") submits this Response to the motion by Defendant Victory Energy Operations for a ruling that the conduct of IKE's predecessor licensor (Erie Power Technologies, Inc. or "EPTI") could not be deemed a waiver that was subject to revocations.

1.    EPTI and VEO entered a License Agreement in 2003 for the sale of industrial watertube boilers under the Keystone® trademark. EPTI was to provide Technical Information to VEO that enabled VEO to manufacture and sell the boilers.

2.    EPTI and IKE have at all times believed that the scope of the Agreement is limited to Standard M-Series boilers, which are a subset of the overall Keystone® boiler line.

The Standard M-Series is specifically identified in Annex I to the Agreement, both in text and in a drawing, as having tangent tube walls and other older design features.

3. VEO has asserted in this lawsuit that the Agreement permitted it to sell Keystone® boilers that included more modern designs beyond Annex I, including (without limitation) membrane walls.

4. IKE will present evidence at trial that EPTI provided modern designs outside the scope of the Agreement for a particular project at the inception of the Agreement and that VEO thereafter continued using those designs for the first year of the Agreement with EPTI's consent.

5. Even during the time that EPTI gave express consent to deviate from the Agreement, EPTI on various occasions reiterated to VEO that the scope of the Agreement was the Standard M-Series without any dispute by VEO.

6. EPTI sent VEO a letter dated March 26, 2004, that revoked EPTI's prior consent to sell boilers outside the scope of the Agreement. (Exhibit P-182 at 1861) According to EPTI,

> **VEO currently licenses only the M series product line which has a very specific geometry and characteristics. ….** In review of some of the VEO recent projects and proposals, **it appears that the majority of projects that VEO is pursuing or has completed <u>have been outside the definition of the license agreement</u>. … <u>VEO will need to redirect their attention on the sales/marketing and execution of the products that are defined in the license agreement.</u>** (Annex 1 of the current agreement provides a clear definition of the M-Series design with product size, dimensional data for the different size ranges, typical cross-section of the boiler and overall boiler construction which includes refractory front and rear walls, tangent furnace and outer wall tubes and pressure casing design.)

2

       VEO in turn responded that

> [t]he **Agreement does provide specific geometry and characteristics** but also allows for improvements, refer to Clause 13. **As such, VEO has made improvements** which are necessary to offer/provide a Keystone® boiler that is technically compliant with our customers requirements, is inline with that of our competitors offerings and as we deem necessary to enhance our overall success. The Oxyvinyls Project includes two (2) 15M Series Keystone® boilers **each of which include membrane furnace and outer walls, watercooled front and rear and an upper drum size of 60" ID. These features are outside the geometry and characteristics of the License but are clearly improvements.**
> (Exhibit P-191 at 1908) (emphasis added)

7.    White's statement that the Agreement "does provide specific geometry and characteristics" referred to Annex 1 of the Agreement.[1] VEO thus admitted that Annex I contained "specific geometry and characteristics" and that "membrane furnace and outer walls, watercooled front and rear" are "outside the geometry and characteristics of the License." Moreover, VEO admitted that a change in the size of the upper drum (which is set forth in Annex I) also was "outside the geometry and characteristics," further confirming that the intent of the Agreement was to sell boilers with the configuration described in Annex I.

8.    The same VEO letter states that "to date no changes have been made [to the Keystone® boilers] without EPTI's knowledge." (Exhibit P-191 at 1909)

9.    Immediately upon IKE becoming licensor after acquiring the Keystone® technology, IKE advised VEO that VEO may sell only the Standard M-Series boiler. (Exhibit P-220 at 2159) "We are still awaiting a response and confirmation that Victory Energy will

---

[1] During this lawsuit, White testified that he was mistaken in describing membrane walls as an "improvement" and testified further that there were no improvements by VEO during the term of the Agreement.

3

comply with all of the terms and conditions of the license agreement by marketing the specific "M" Series product line. Specifically, following the product size, dimensional data for the different size ranges, typical cross-section of the boiler and overall boiler construction which includes refractory front and rear walls, tangent furnace and outer wall tubes and pressure casing design." (Exhibit P-223 at 2163) IKE never authorized VEO to deviate from the scope of Annex I.

10. VEO argues in its Motion that "EPTI could not have 'waived a known right" because the Court has determined that the License Agreement is ambiguous as to what the licensed product was. (VEO Motion at ¶ 7)

11. As an initial matter, whether there was a waiver is factual issue, not a legal issue, and IKE will present evidence that the non-conforming designs were provided to VEO for use with a specific project and not for general use.

12. Moreover, the evidence will show that EPTI at all times believed (as shown by the correspondence above and other exhibits) that the License Agreement covered only the Standard M-Series boiler. While the Court found that there is a factual issue for the jury to determine as to what product the parties intended to license, <u>EPTI</u> at all times believed the licensed product was limited to the Standard M-Series. Because that was EPTI's belief at all times, EPTI could knowingly and temporarily waive the requirement that the licensed product be limited to the Standard M-Series.

13. The Pennsylvania Supreme Court has made clear that "course of performance is *always* relevant in interpreting a writing." *Atlantic Richfield Co. v. Razumic*, 90 A.2d 736, 741

4

n.6 (Pa. 1978) (emphasis added); *see also Regscan, Inc. v. Con-Way Transp. Servs.*, 875 A.2d 332, 339 (Pa. Super. Ct. 2005) ("any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement"). Thus, a contract, including a license agreement, need not be ambiguous "in order to justify consideration of the parties' post-agreement conduct." *Pennsylvania Eng'g Corp. v. McGraw-Edison Co.*, 459 A.2d 329, 332 (Pa. 1983); *cf. Langer v. Monarch Life Ins. Co.*, 879 F.2d 75, 81 & n.8 (3d Cir. 1989) (same, applying Pennsylvania law); Restatement (Second) of Contracts, § 202 of the Restatement ("[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given *great weight* in the interpretation of the agreement.") (emphasis added).

14.   In addition, "[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with . . . any relevant course of performance . . . ." 5 RESTATEMENT (SECOND) OF CONTRACTS § 202(5). IKE will present evidence consistent with EPTI's providing consent to deviate from Annex I:esent evidence including (among other things) the following: EPTI reiterated to VEO (and to White while he was employed by EPTI) throughout the time that EPTI was licensor that the scope was limited to

---

5 Section 203 of the Restatement provides that a contract's "express terms are given greater weight than course of performance." RESTATEMENT (SECOND) OF CONTRACTS § 203(b); *Giampolo v. Somerset Hosp. Ctr. for Health*, No. Civ.-95-133J, 1998 U.S. Dist. LEXIS 14388, at *41 (W.D. Pa. May 29, 1998) (Smith, J.) (while course of performance is relevant even when contract language is not ambiguous, such course of performance evidence "must still be weighed in the light of the terms of the agreement itself."), *aff'd*, 189 F.3d 464 (3d Cir. 1999); *Intermetal Mexicana, S.A. v. Insurance Co. of N. Am.*, No. Civ.-84-6179, 1986 U.S. Dist. LEXIS 20369, at *8 (E.D. Pa. Sept. 16, 1986) (Pollak, J.) ("The approach of the Restatement (Second) of Contracts does not require that the unambiguous language of a contract be set aside whenever one party produces evidence of a contradictory course of performance.").

the Standard M-Series; EPTI worked with VEO on the sale of non-conforming boilers before sending the revocation letter; VEO in its response to the revocation letter stated that the geometry and characteristics of the license excluded membrane walls and certain other features included in boilers sold during the first year, including that EPTI had knowledge of VEO's changes to the boilers; and VEO, when attempting to purchase the Keystone® line, expressly acknowledged the distinction between the Standard M-Series, on the one hand, and more customized designs outside of the M-Series, on the other hand.

15. Contrary to VEO's argument that "conduct of the parties may be evidence of an agreed modification or of a waiver by one of the parties" (VEO Motion at ¶ 9), course of performance alone will not constitute evidence of a modification of the agreement. "'Course of dealing' may supplement or qualify terms of an agreement, whereas 'course of performance' may be used only to interpret a contract." *J.W.S. Delavau, Inc. v. Eastern Am. Transport & Warehousing, Inc.*, 810 A.2d 672, 684 (Pa. Super. Ct. 2002) (citation omitted), *appeal denied*, 573 Pa. 704, 827 A.2d 430 (2003).

16. Moreover, Clauses 21 and 24 of the Agreement prohibited a modification unless in writing.

17. Finally, VEO's alleged right to "modify" or "improve" the boiler does not preclude revocation of consent. VEO has admitted in this lawsuit that it did not develop any modifications or improvements of its own. In any case, any improvement must be "developed while this Agreement is in effect." (Exhibit P-1, License Agreement, at 15) EPTI developed the non-conforming designs prior to the date that the Agreement was executed such that the designs

at issue cannot be considered improvements. And as to Clause 3(e), that simply provides as follows:

> Upon Licensee's reasonable request, Licensor shall provide, without any additional payment to Licensor, reasonable technical assistance to Licensee by written or telephone response relating to the application and interpretation of the Technical Information furnished by Licensor under this Agreement.

(Exhibit P-1, License Agreement, at 7) Given the parties' March 2004 correspondence in which VEO admitted that membrane walls and other deviations were outside the "scope and geometry" of the Agreement, as well as the other occasions in which EPTI told White and VEO that the scope was limited to the Standard M-Series, any technical assistance by EPTI cannot be considered irrevocable consent.

WHEREFORE, the Court should deny Defendant's Motion because the conduct by Erie Power Technologies, Inc. can be deemed a waiver subject to revocation.

Respectfully submitted,

/s/   John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
Jennifer A. Callery (Pa. ID. No. 91421)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

*Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

Dated:  April 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Response to Motion for Ruling that EPTI's Conduct in Performing the Contract Could Not Be Deemed a Waiver That Was Subject To Revocation** was served upon the following counsel of record by the CM/ECF electronic filing system on the 24th day of April, 2007:

Christopher T. Sheean, Esquire
Matthew Garrett, Esquire
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, IL 60606

/s/   John K. Gisleson