UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>No. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PRETRIAL FINDING THAT THE UNIFORM TRADE SECRETS ACT IS INAPPLICABLE**

Plaintiff Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, submits this memorandum in opposition to the Motion for Pretrial Finding That The Uniform Trade Secrets Act Is Inapplicable Or, Alternatively, Striking Plaintiff's Claims For Unfair Competition And Unjust Enrichment filed by Defendant Victory Energy Operations, LLC ("VEO"). The Motion is wholly without merit and should be denied.

**I.   Introduction**

1.　　As set forth in greater detail in IKE's Complaint, this action arises out of VEO's alleged misuse and misappropriation, *inter alia*, of certain proprietary detailed design drawings and other technical data (collectively, the "Keystone® Technology") that was licensed to VEO pursuant to a written License Agreement dated as of January 7, 2003. This action is "based upon

acts and conduct by VEO that are *wholly outside of, and unrelated to any rights* that VEO may have under ... the License Agreement." Complaint at ¶ 19 (emphasis added).

2.   In its current Motion, VEO asserts that the Pennsylvania Uniform Trade Secrets Act ("PUTSA") does not apply because the alleged misappropriation occurred prior to the Act's effective date. Alternatively, VEO argues that if PUTSA does apply, then plaintiff's unfair competition and unjust enrichment claims should be dismissed "to the extent they are premised upon the alleged misappropriation of trade secrets because they are preempted by PUTSA." *See* Defendant's Motion at p. 2. Both of these arguments are without merit.

**II.   The Pennsylvania Uniform Trade Secrets Act Applies To Plaintiff's Trade Secret Claims.**

3.   Plaintiff's trade secret claims are governed by PUTSA, which applies to all acts of misappropriation occurring after April 19, 2004. 12 Pa. C.S.A. § 5301 (as amended section 4 of 2004, Feb. 19, P.L. 143, no. 14)("This act shall not apply to misappropriation occurring prior to the effective date of this act [April 19, 2004], including a continuing misappropriation that began prior to the effective date of this act... and which continues to occur after the effective date of this act.").

**III.   All Acts Of Misappropriation Occurred After April 19, 2004**

4.   All acts of misappropriation by defendant in connection with (i) the sales of boilers outside the scope of the license agreement and (ii) the development of the Voyager line of boilers occurred *after* April 19, 2004. PUTSA defines misappropriation as, among other things, "the disclosure *or use* of a trade secret of another without express or implied consent by a person who ... *at the time of* the disclosure or *use*, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy *or limit its use.*" 12 Pa. C.S. § 5302 (emphasis added).

5. Here, plaintiff alleges that the misappropriation – the wrongful use of detailed design drawings to fabricate boilers after consent to use those drawings was revoked -- occurred after April 19, 2004. Defendant did not "use" plaintiff's trade secrets "without express or implied consent" until after the March 26, 2004 letter from EPTI to defendant revoking its consent to sell boilers that deviated from the License Agreement. In this regard, on April 1, 2004, the defendant received an order for boilers, and subsequently accepted the order. VEO then provided EPTI with notice of the sale on April 23, 2004. The boilers, though, were not to be delivered until approximately five months later on September 17, 2004, after the effective date of PUTSA. In this situation, the misappropriation occurs when the construction of the boilers began (*i.e.* there was a *use* of the trade secret.). Defendant should have sought permission from EPTI for that sale or negotiated an amendment to the License Agreement for this technology on new terms, which is precisely what it had the opportunity to do in the Spring of 2004. Instead, defendant chose to ignore EPTI's instruction that VEO limit its activities to the Standard M-Series, and defendant proceeded to use the detailed designs at some point after April 19, 2004 to construct the boilers.

6. This was the first act of misappropriation because VEO properly came into possession of the detailed designs when EPTI consented to defendant's use of those designs and in fact provided them to defendant. The Act defines misappropriation as the "*use* of a trade secret of another without express or implied consent by a person who ... *at the time of ...use,* knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to ...*limit its use.*" 12 Pa. C.S. § 5302 (emphasis added). The "time of use" occurred after consent was withdrawn and after April 19, 2004 effective date

3

of PUTSA. Moreover, defendant has argued that EPTI consented throughout the time it was licensor, which time did not end until September 2004. PUTSA therefore applies.

### IV. Defendant Committed A Separate And Distinct Act Of Misappropriation After April 19, 2004 In Developing The Voyage Line of Boilers.

7. Defendant committed a separate and distinct act of misappropriation when it developed the Voyager boiler line.

8. IKE became licensor in September 2004 when it acquired the Keystone® Technology. Immediately upon becoming licensor, IKE notified defendant that defendant may not sell boilers other than the Standard M-Series. The evidence is undisputed that IKE never permitted defendant to deviate from the scope of the License Agreement.

9. When VEO learned that IKE had become licensor, VEO began to develop the Voyager boiler line in the Fall 2004 -- well after April 19, 2004. Use of the Keystone® Technology in the Voyager boiler was new and wholly separate from use of the Keystone® Technology in Keystone® boilers.

10. Moreover, the "use" of the detailed designs in developing the Voyager boiler line was more extensive than the use of trade secrets outside the scope of the license agreement because defendant used additional drawings than those prohibited from use in the non-conforming Keystone® boilers (*i.e.*, defendant improperly copied some Keystone® drawings that were within the scope of the Agreement). As a result, the development of the Voyager line of boilers is not a "continuing misappropriation" of the misappropriation that occurred with respect to the sale of boilers outside the scope of the license agreement. *See Emergency Care Research Inst. v. Guidant Corp.*, No. 06-1898, 2006 U.S. Dist. LEXIS 88416 at *13 (E.D. Pa. Dec. 5, 2006) (holding no continuing misappropriation under PUTSA where "different trade secrets and combinations of trade secrets are being obtained and disclosed").

11. Accordingly, even if the Court were to determine that the sale of boilers outside the license agreement was not governed by PUTSA, plaintiff's separate claim of misappropriation based on the development of the Voyager boiler line would still be covered by PUTSA as it is not a "continuing misappropriation."

12. Finally, in the event the Court determines that PUTSA does not apply to some or all of plaintiff's claims, plaintiff requests that the Court rule that plaintiff's Complaint sufficiently states a misappropriation of trade secrets claim under the common law, or, alternatively, allow plaintiff to amend the Complaint to state a misappropriation of trade secrets claim under the common law.

13. The elements of a Pennsylvania common law trade secret claim are: (1) the existence of trade secret; (2) that the alleged communication of the trade secret was pursuant to a confidential relationship; (3) that defendant used the alleged trade secret in violation of that confidence; and (4) harm to plaintiff. *See Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003). These common law elements are currently plead in the Complaint at paragraphs 41-47. Therefore the Complaint effectively pleads a common law trade secret misappropriation claim in addition to a statutory claim under PUTSA . *See Equal Employment Opportunity Comm'n v. Ross*, 04-cv-4126, 2006 U.S. Dist. LEXIS 17935 at *17 (E.D. Pa. Apr. 10, 2006). (refusing to dismiss misappropriation of trade secrets counterclaim that "properly alleged misappropriation of trade secrets under both the common law and the UTSA.")

V. **Plaintiff's Unfair Competition and Unjust Enrichment Causes Action Are Not Prempted By PUTSA Because They Are Not Based Solely On Defendant's Misappropriation Of Trade Secrets.**

14. Defendant argues that plaintiff's unfair competition and unjust enrichment causes of action are preempted by PUTSA because they are "premised, in part, upon VEO's

misappropriation." However, PUTSA does not preempt "civil remedies that are not based upon misappropriation of a trade secret." 12 Pa.C.S.A. § 5308(b)(2). Courts only dismiss other claims on preemption grounds where they are based "*solely* upon Defendants' theft of the Trade Secrets." *First Trust Bank v. Didio*, 2005 WL 2001105 at *1 (Pa. Com. Pl. July 29, 2005) (emphasis added). Furthermore it is inappropriate to dismiss a PUTSA claim before the Court has had the opportunity to determine if the information misappropriated is in fact a trade secret. *See Cenveo Corp. v. Slater*, 06-cv-2632, 2007 U.S. Dist. LEXIS 9966 at *10 (E.D. Pa. Feb. 12, 2007) (holding "[PUTSA] does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret."); *Roger Dubois N. Am. v. Thomas*, 3:05-cv-2566, 2006 U.S. Dist. LEXIS 65674 at *10 (M.D. Pa. Sept. 14, 2006) (refusing to entertain preemption argument as premature "[b]ecause it cannot be established at this juncture ... whether the confidential information at issue in this case is a trade secret, the Court cannot find that [Plaintiff's] claims are preempted [by the UTSA]").

15. Plaintiff's unfair competition and unjust enrichment claims are based on the misuse and appropriation of the following categories of information: (a) Keystone® detailed design drawings and information from the Keystone® Design Guide, (b) the Keystone® Trademark, and (c) Keystone® proposals. *See Complaint* ¶¶ 20-22, 49, 52. In short, defendant began during the term of the License Agreement to hold itself out as owning and/or having developed the Keystone® designs. It then used those designs in developing the Voyager, and began marketing the Voyager boiler immediately upon the termination of the License Agreement – even though the design was far from complete – based on having held itself out as owning and/or controlling O-boiler designs, having developed the Keystone® designs, and then copying certain Keystone® designs into the Voyager because defendant did not have the time or ability to

6

develop its own designs. In short, VEO treated the licensed technology as its own both during the term of the License and then when it developed the Voyager boiler. Defendant also incorporated into the Voyager certain designs that were within the scope of the License (such as the lifting lugs). As these claims are not based "solely" on defendant's use of trade secrets, but instead are also based on the use of other evidence, they are not preempted by PUTSA.

## Conclusion

16. For the reasons stated above, VEO's motion should be denied.

Respectfully submitted,

/s/ John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
Jennifer A. Callery (Pa. ID. No. 91421)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA 15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

*Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

Dated: April 24, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Indeck Keystone Energy, LLC's Memorandum In Opposition to Defendant's Motion For Pretrial Finding that the Uniform Trade Secrets Act is Inapplicable** was served upon the following counsel of record by the CM/ECF electronic filing system on the 24th day of April, 2007:

    Christopher T. Sheean, Esquire
    Matthew Garrett, Esquire
    Wildman, Harrold, Allen & Dixon LLP
    225 West Wacker Drive
    Suite 2800
    Chicago, IL 60606

                                                /s/  John K. Gisleson