UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>   Plaintiff,<br><br>v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>   Defendant. | CIVIL ACTION<br><br>No. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RULING DENYING AND STRIKING IKE'S REVERSE PASSING OFF CLAIMS**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby opposes Defendant's Motion for Ruling Denying and Striking IKE's Reverse Passing Off Claims.

**I.   INTRODUCTION**

IKE asserts two independent bases for liability under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). First, IKE asserts that, by selling boilers designed using specifications from IKE's predecessor licensor (Erie Power Technologies, Inc. or "EPTI"), under the "Victory" or "Voyager" names, Victory Energy Operations, LLC ("VEO") has violated 15 U.S.C. § 1125(a)(1)(A) by using

> in commerce [a] word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such

>person with another person, or as to the origin, sponsorship, or
>approval of his or her goods, services, or commercial activities by
>another person.

Additionally and separately, by advertising the boilers as "VEO Designs," when, in fact, they are Keystone® designs, VEO has violated 15 U.S.C. § 1125(a)(1)(B) by using

>in commerce [a] . . . false or misleading description of fact, or false
>or misleading representation of fact, which . . . in commercial
>advertising or promotion, misrepresents the nature, characteristics,
>qualities, or geographic origin of his or her or another person's
>goods, services, or commercial activities

Although both acts give rise to liability under Section 43(a), they are separate bases and must be evaluated separately. VEO's motion is erroneous on the first basis, and completely ignores the second. It should be denied.

## II. ARGUMENT

### A. By Selling Boilers Under VEO Trademarks Instead Of The Keystone® Trademark, VEO Falsely Designated the Origin of the Boilers.

Pursuant to a contractual relationship between EPTI and VEO, EPTI disclosed detailed design information to VEO rising to the level of trade secrets. This information was to be used by VEO to manufacture boilers to be sold under the Keystone® trademark, which is confirmed by Clause 15(a) of the License Agreement: "For the duration of this Agreement, Licensee shall be permitted to use the Mark royalty-free on the Products manufactured by Licensee. The Mark shall be affixed to a plate appearing on each Product supplied by Licensee upon which there shall be an indication that the Products were supplied by Licensee under license from Licensor." However, instead of using the Keystone® trademarks, VEO manufactured the boilers using the Keystone® designs but sold them under the "Victory" name, which it painted on the boilers in large letters. Because VEO falsely designated itself, rather than

IKE, as the origin of the boilers, VEO is liable for reverse passing off under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

VEO asserts that it can escape a finding of reverse passing off, under § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), because it physically manufactured the goods that were marketed under the "Victory" name, and at various times marketed as "VEO designs."[1] VEO's application of the Supreme Court precedent in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) is inapposite.

In *Dastar*, the Supreme Court held that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar* at 32. However, the Court in *Dastar* was not examining a case involving two parties with an extensive contractual relationship as the parties in the instant case. In *Dastar*, the defendant/petitioner Dastar took a public domain television series, obtained it independently of plaintiff/respondent Fox, re-edited it, and sold it, without proper credit to the original series. The Supreme Court held that no credit was required under the Lanham Act.

The instant case is different. Here, VEO did not obtain the design details of its boilers from public domain sources, or copy or reverse-engineer a commercially-available boiler. Instead, VEO took the proprietary detailed designs and know-how of IKE, as a part of a contractual relationship whereby IKE's predecessor disclosed the designs to VEO. EPTI provided VEO with detailed descriptions of the design of the products, and the process for making them, so that VEO could manufacture the products and market them under the

---

[1] Certain VEO sales proposals used the Keystone® trademark, although they implied that VEO owned and/or developed the technology. Other sales proposals omitted any reference to

Keystone® trademark as required by the License Agreement. VEO used the detailed roadmap provided to it by EPTI to build the product, but did not place the trademark on the product as it was required to do.

VEO, as a licensee of IKE's obligated to use the Keystone® trademark, cannot be said to be the "origin" of the goods, despite having physically manufactured them. EPTI developed the Keystone® designs, and VEO simply executed the Keystone® designs without ever developing any modifications or improvements to those designs. In short, EPTI did everything related to those goods up to the physical manufacture, including drawing the plans and transmitting them to VEO. Under the agreement, VEO ultimately acted merely as a foundry for the goods in question - physically manufacturing the goods under the direction of the detailed design drawings.

VEO was physically manufacturing the goods only to the extent that any employee of any manufacturer, who works on the assembly line, can be said to be physically manufacturing the goods. It is the employee's physical hands operating the machine that made the goods, but the employee operates the machine under the aegis of the manufacturing company. Every manufacturing company has employees who physically manufacture goods in its name. It is indisputable, however, that the company, and not the employee, is the "source" of the goods under Section 43(a) of the Lanham Act. Similarly, designers of goods routinely outsource their assembly. Even the Supreme Court in *Dastar* allowed for expansion of its definition of "origin" of goods to cover not only the physical manufacturer, but also the person who commissions the manufacture of the physical goods. *Dastar*, 539 U.S. at 31-32 ("The concept might be stretched (as it was under the original version of § 43(a)) to include not only

---

Keystone® and instead held VEO out has owning and/or developing the technology, referring to

the actual producer, but also the trademark owner who commissioned or assumed responsibility for ("stood behind") production of the physical product.") (footnote omitted). IKE and its predecessor are the persons who commissioned the manufacture of these boilers, pursuant to their contract with VEO.

VEO's role is analogous, for Lanham Act purposes, to that of an employee or a foundry. VEO received the plans for manufacturing the boiler, and its contractual obligation was to manufacture and market the boilers under the Keystone® trademark. Numerous manufacturers of various types of goods from industrial equipment to consumer electronics outsource their physical assembly to other companies. That manufacturing has been outsourced to a foundry does not permit the foundry to claim credit for the goods by marketing them under the foundry's name. The Lanham Act recognizes that it is not the foundry that is the origin of the good for trademark purposes; it is the manufacturer who hired the foundry. The Supreme Court's footnote in *Dastar* confirms this.

### B. Advertising Boilers as "VEO Designs," "VEO Boilers," and "Victory Boilers" Is A False Statement As to the Nature of the Goods.

Additionally, VEO's description of the boilers in its marketing materials and sales proposals as "VEO designs," "VEO boilers," and "Victory boilers" is a deliberately false statement as to the "nature, characteristics, [or] qualities" of the goods, because the goods were not designed by VEO. Lanham Act § 43(a)(1)(B) (15 U.S.C. § 1125(a)(1)(B)). When VEO marketed the boilers as "VEO Designs," "VEO boilers," and "Victory boilers," it knew that the boilers were not VEO designs, but were, in fact, designed by IKE's predecessors in interest as Keystone® boilers. In fact, the evidence will show that EPTI entered the Agreement to get more exposure for the Keystone® name. The Supreme Court in *Dastar* explicitly left open the

---

the boilers as "Victory boilers" or "VEO boilers."

possibility that, by falsely describing the goods in marketing materials, Dastar could be liable under § 43(a)(1)(B), despite the Court's holding that Dastar was not liable under § 43(a)(1)(A). *Dastar*, 539 U.S. at 38 ("If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action . . . for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)").

VEO's citation to *Westcode, Inc. v. Daimler Chrysler Rail Sys.*, 123 F. Supp. 2d 819, 825 (W.D. Pa. 2000) is inapposite. In *Westcode*, the court held that certain contracts between the parties may pre-empt plaintiff's claims, and denied plaintiff's motion for preliminary injunction on that basis. It does not mention or suggest that Lanham Act claims with respect to brochures are "pre-empted by the Copyright Act," as suggested in Defendants' Motion. VEO's citation to other cases stating that the Copyright Act pre-empts state law claims a) are inapposite to IKE's claims under the Lanham Act,[2] and b) ignore the nature of IKE's claims with respect to the brochures. (IKE's predecessors also did not copyright any of the drawings.) IKE's Section 43(a)(1)(B) claims are not about VEO's unauthorized use of IKE's drawings, but about VEO's false public claims, in sales and marketing materials, that VEO created the drawings and "designed" the boilers advertised in the brochures and proposals.

---

[2] Although there is no conflict between Section 43(a) of the Lanham Act with respect to false statements in advertising, and the Copyright Act, it is worth noting that VEO's cases discussing the "pre-emption" of state unfair competition claims are not relevant to IKE's Lanham Act claims. The term "pre-empt," as ordinarily used, refers to when a federal law trumps a state law under the Supremacy Clause of the U.S. Constitution. *See, e.g., Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) (The Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, 29 U.S.C. §1001 *et seq.*, pre-empts a Washington statute that provides that the designation of a spouse as the beneficiary of a nonprobate asset is revoked automatically upon divorce, to the

To claim that, because VEO may hold a copyright in its brochure, and/or because IKE has not asserted a copyright claim on the brochure, VEO may, without penalty, make false and misleading statements in that brochure about the product advertised in the brochure, is simply absurd. Section 43(a)(1)(B) speaks directly to statements made in "commercial advertising or promotion." Section 43(a)(1)(B) relates not to the intellectual property in the statements made or drawings used in the advertising, but in the truth or falsity of those statements with respect to the goods. Because the statement that the boilers in the brochure were designed by VEO "misrepresents the nature, characteristics, qualities" of the boilers advertised therein by falsely stating the identify of their designer, VEO is liable for such false statement under Section 43(a)(1)(B) of the Lanham Act.

## III.   CONCLUSION

VEO is liable for reverse passing off under Section 43(a) of the Lanham act, both for using its trademarks on boilers manufactured under complete direction from EPTI and IKE, and for misleading the public into believing it designed the boilers it advertised for sale.

Respectfully submitted,

/s/   John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
Jennifer A. Callery (Pa. ID. No. 91421)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Dated:  April 24, 2007            *Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

---

extent the statute applies to ERISA plans). It does not refer to the case when (as VEO incorrectly asserts here) two federal laws conflict.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Opposition to Defendant's Motion for Ruling Denying and Striking IKE's Reverse Passing Off Claims** was served upon the following counsel of record by the CM/ECF electronic filing system on the 24th day of April, 2007:

        Christopher T. Sheean, Esquire
        Matthew Garrett, Esquire
        Wildman, Harrold, Allen & Dixon LLP
        225 West Wacker Drive
        Suite 2800
        Chicago, IL 60606

                                                  /s/   John K. Gisleson