06/06/2001 WED 14:28 FAX 1 918 274 0059 VICTORY ENERGY                    002/006



VICTORY ENERGY OPERATIONS, LLC · 302 E. 3ʳᵈ Avenue · OWASSO, OKLAHOMA 74055
918/274-0038 · FAX 918/274-0059

June 4, 2001

**Aalborg Industries**
5300 Knowledge Parkway,  Ste. 200
Erie, Pa  16510

Attention:    Mr. John Barnes
              VP Customer Development

Subject:      Victory Energy PO # 3343
              Two (2) Aalborg Industries Keystone Saturated Boilers

Dear Mr. Barnes,

Attached is one (1) copy of Victory Energy's Purchase Order # 3343 for the supply of two (2) Aalborg Industries' Keystone boilers.  The boilers are to be provided in accordance with the following documents in this order of precedence:

1.    Victory Energy's Purchase Order # 3343 with award date of June 4, 2001 and executed by Victory Energy's John C. Viskup, Jr. June 4, 2001.
2.    Aalborg's Proposal # 2000-0371 Rev 1 dated May 17, 2001 and faxed to Victory Energy on May 29, 2001.
3.    Aalborg's Terms and Conditions of Sale dated 10/19/99 and e-mailed to Victory Energy on May 25, 2001.

Please acknowledge your receipt and acceptance of this Purchase Order by signing below and returning this to our office by Wednesday June 6, 2001.

Sincerely,
Victory Energy Operations, LLC


John C. Viskup, Jr
President

Seller's Acceptance:


John E Barnes                              or      David W. Zara
Vice President Customer Development                 Vice President Finance
Aalborg Industries, Inc                            Aalborg Industries, Inc


Date    6/6/01

EXHIBIT
_9M # 17_
_cm_

013115

PLAINTIFF'S
EXHIBIT
**P-31C**
04-CV-325        PM000996



# VICTORY ENERGY

**Victory Energy Operations, LLC**
**P.O. Box 638**
**Owasso, OK  74055**

| | |
|---|---|
| **To:** | ~~Mr. Phil Meehan~~ |
| **Company:** | Aalborg Industries |
| **Phone:** | |
| **Fax:** | 814-897-1089 |
| | |
| **From:** | John C. Viskup Jr. |
| **Phone:** | (918) 274-0023 |
| **Fax:** | (918) 274-0059 |
| | |
| **Date:** | June 6, 2001 |
| **Total Pages Sent:** | 6 |

**Comments:**                    email: jviskup@victoryenergyinc.com

Please see the attached as requested.

013116

PM000997



**AALBORG**
I N D U S T R I E S

**MEMO**

| To: | John Barnes | From: | Philip Meehan  Mgr CS |
|---|---|---|---|
| Subject: | Victory Energy PO Sign off | | pmeehan@ai-eri.com |
| | | Direct tel. | 814-897-7242 |
| | | Direct fax | 814-897-1089 |
| | | Date: | June 6, 2001  (W) |
| Dist: | jbarnes26.1 VEO | Cc: | |

John,

Attached is Victory Energy's Purchase Order incorporating our negotiated comments and using AI's Ts & Cs as the governing terms. I have reviewed this PO & acceptance cover sheet and they are acceptable. Please sign off and date so I can fax back to John Viskup of Victory.

Regards,   *Phil Meehan*   6/6/01 (w)

Phil Meehan
Mgr Contract Negotiations

Page: 1

013117

PM000998



# VICTORY ENERGY

## Victory Energy Operations, LLC
### P.O. Box 638
### Owasso, OK  74055

|  |  |
|---|---|
| **To:** | **Vince Sands** |
| **Company:** | **Aalborg** |
| **Phone:** |  |
| **Fax:** | **814-897-1092** |

|  |  |
|---|---|
| **From:** | **John C. Viskup Jr.** |
| **Phone:** | **(918) 274-0023** |
| **Fax:** | **(918) 274-0059** |

|  |  |
|---|---|
| **Date:** | **May 18, 2001** |
| **Total Pages Sent:** | **5̶ 4** |

**Comments:**                              email: jviskup@victoryenergyinc.com

Please find the revised P.O. incorporating the payment terms and your May 17th proposal.  Please call me should you have any questions.

I made a commitment to get GA dwgs. Out by May 25th.  I need your help in accomplishing this goal.

Also, I need the revised boiler performance and most importantly the economizer design information so I can get this equipment on order.

Thanks.

013118

PM000999

05/18/2001 FRI 17:12 FAX 1 918 274 0059 VICTORY ENERGY                    @002/004

# VICTORY ENERGY

P.O. Box 638
Owasso, OK 74055

# Purchase Order

| DATE | P.O. NO. |
|------|----------|
| 5/4/2001 | 3349 |

| Vendor | SHIP TO |
|--------|---------|
| Aalborg Industries<br>5300 Knowledge Parkway<br>Erie, Pennsylvania, 16510-4660<br>Attn: Mr. Vince Sands | Armstrong Service, Inc.<br>c/o Heintz - Muscatine<br><br>Muscatine, Iowa |

| TERMS | SHIP VIA | FOB | JOB ORDER # |
|-------|----------|-----|-------------|
| Per Contract | Customer Pickup | Factory | J-VE-1093-149 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| 75,000 PPH Aalborg "Keystone" Saturated Steam Generators in accordance with the Aalborg proposal dated May 17, 2001. | 2 | 302,500.00 | 605,000.00 |
| Aalborg proposal as referenced above shall be made part of this purchase order. As agreed, the boiler trim shall be specified and engineered by Aalborg, shown on all Aalborg boiler engineering drawings, however Victory Energy shall be responsible for the purchasing of the boiler trim. | | 0.00 | 0.00 |
| The boiler shall be shipped to the project site by September 14, 2001. | | 0.00 | 0.00 |
| Payment Terms for this project shall be as follows: | | 0.00 | 0.00 |
| PAYMENT SCHEDULE: | | | |
| $ 60,500 (10%) Upon Issuance of this purchase order. | | | |
| $ 121,000 (20%) Upon issuance of engineering drawings. | | | |
| $ 60,500 (10%) With order of materials | | | |
| $ 60,500 (10%) Receipt of Major Materials | | | |
| $ 60,500 (10%) Upon 50% Fabrication completion | | | |
| $ 121,000 (20%) Hydrotest | | | |
| $ 121,000 (20%) Units readiness to ship | | | |
| $ 0.00 (0%) Start up | | | |
| All payments will be wire transferred to Aalborg Industries within 72 hours of receipt of VEO's payment from our client. | | | |
| 10% of the order will be provided in a form of a letter of credit. The letter of credit will be provided by American National Bank and Trust. This information has been provided to V. Sands. | | | |
| All engineering drawings shall be developed in an electronic format using AutoCad R.14, and six (6) copies of all drawings | | | |

Approved By: John C. Viskup, Jr.

**Total**

013119

PM001000

05/18/2001 FRI 17:12 FAX 1 918 274 0059 VICTORY ENERGY                    ☑003/004

# VICTORY ENERGY

P.O. Box 638
Owasso, OK 74055

# Purchase Order

| DATE | P.O. NO. |
|------|----------|
| 5/4/2001 | 3343 |

**Vendor**

Aalborg Industries
5300 Knowledge Parkway
Erie, Pennsylvania. 16510-4660
Attn: Mr. Vince Sands

**SHIP TO**

Armstrong Service, Inc.
c/o Heinz - Muscatine

Muscatine, Iowa

| TERMS | SHIP VIA | FOB | JOB ORDER # |
|-------|----------|-----|-------------|
| Per Contrac | Customer Pickup | Factory | J-VE-1093-149 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| and engineering documentation shall be submitted.<br><br>Aalborg Industries is released to proceed with the purchasing of all boiler materials, this includes, but not limited to, drums, tubes, casings, etc..<br><br>Aalborg Industries, at shipment, shall provide six (6) copies of O & M manuals, including (1) copy shall be provided in an electronic format to VEO.<br><br>VEO will require the following "Hold Points" for approval:<br><br>- Hydro Testing of the boilers.<br>- Final boiler inspection prior to shipment.<br>- Other as deemed necessary.<br><br>VEO shall have the right to tag the boiler with a VEO logo. Additionally, VEO shall have the right to inspect the boiler during the manufacturing process.<br><br>All shipments shall be coordinated with J.Viskup at VEO.<br><br>The burner selected by VEO shall be mounted onto the Aalborg boiler in the manufacturing facility prior to shipment. | | | |
| Approved By: John C. Viskup, Jr. | | | |

**Total**

Page 2

013120

PM001001

05/18/2001 FRI 17:13 FAX 1 918 274 0059 VICTORY ENERGY                    @004/004

# VICTORY ENERGY

P.O. Box 638
Owasso, OK 74055

# Purchase Order

| DATE | P.O. NO. |
|------|----------|
| 5/4/2001 | 3343 |

| Vendor | SHIP TO |
|--------|---------|
| Aalborg Industries<br>5300 Knowledge Parkway<br>Erie, Pennsylvania. 16510-4660<br>Attn: Mr. Vince Sands | Armstrong Service, Inc.<br>c/o Heinz - Muscatine<br><br>Muscatine, Iowa |

| TERMS | SHIP VIA | FOB | JOB ORDER # |
|-------|----------|-----|-------------|
| Per Contrac | Customer Pickup | Factory | J-VE-1093-149 |

| DESCRIPTION | QTY | RATE | AMOUNT |
|-------------|-----|------|--------|
| | | | |

Approved By: John C. Viskup, Jr.

| | Total | $605,000.00 |
|--|-------|-------------|

Page 3

013121

PM001002



# Proposal

# KEYSTONE "O" TYPE WATERTUBE PACKAGE BOILER PROPOSAL

VICTORY ENERGY

FOR

ARMSTRONG SERVICES
HEINZ  USA

MUSCATINE, IA

KEYSTONE "O" BOILER



AALBORG INDUSTRIES, INC.
PROPOSAL NO, 2000-0371 Rev 1

Date May 17, 2001

Aalborg Proposal No. 2000-0371          May 17, 2001

013122

PM001003



# Proposal

## PRICE SUMMARY

## AALBORG INDUSTRIES, INC.

### PROPOSAL NO. 2000-0371

| _Description_ | _Date_ | _Price (USD)_ |
|---|---|---|
| **Base Price**<br>Two (2) Keystone Watertube Boilers | May 4, 2001 | $ 605,000 |

**_Options_**

No options have been offered at this time

Aalborg Proposal No. 2000-0371          **May 17, 2001**

013123

PM001004



# Proposal

### GENERAL INFORMATION

Aalborg Industries, Inc. proposes to furnish a custom steam generating system to Victory Energy being utilized by Armstrong Services/Heinz USA in Muscatine, IA, with the following characteristics:

- Quantity:                           Two (2) Boilers
- Gross Capacity                      75,000 lbs/hr Saturated Steam
- Design Pressure:                    200 PSIG
- Operating Pressure:                 150 PSIG
- Operating Temperature:              366 °F at the drum outlet
- Feedwater Temperature:              286 °F from economizer (economizer by others)
- Primary Fuel:                       Natural Gas
- Primary Fuel Input                  90.4123 Mbtu/hr
- Secondary Fuel:                     #2 Fuel Oil
- Secondary Fuel Input                86.5660 Mbtu/hr
- Boiler Location:                    Indoors

013124

PM001005



# Proposal

## GENERAL INFORMATION (CONT'D)

*The following documents have been received and incorporated in preparing this proposal:*

| Description | Specification No. | Revision No. | Date |
|---|---|---|---|
| 1. NatCom Burner Diameter | | | |
| 2. Victory Energy Request for Quotation | | | |

013125

PM001006



# Proposal

## SCOPE OF SUPPLY

| Supply | | ITEM | Installation | |
|---|---|---|---|---|
| AI | Buyer | | AI | Buyer |
| X | | Boiler (Shop Assembled) | | X |
| | N/A | Hot Stand-By Steam Coil | | N/A |
| | N/A | Mud Drum Feedwater Heating Coil | | N/A |
| | X | Trim | | X |
| | X | Burner System: | | |
| | X |     Burner and Windbox | | X |
| | X |     Fuel Train | | X |
| | X |     Fuel PRV's | | |
| | X |     Atomizing Steam Line from Drum to Fuel Train | | |
| | X |     Burner Management System (BMS) | | X |
| | X | Combustion Control System | | X |
| | X | Forced Draft Fan | | X |
| | X | Forced Draft Fan Drive | | X |
| | X | Economizer with Support Steel | | X |
| | X | Ducting and Expansion Joints | | X |
| | X | Duct Insulation and Lagging | | |
| | X | Stack | | X |
| | N/A | Sootblowers ( Boiler, Boiler and Economizer) & Piping | | |
| | X | Platforms and Walkways | | X |
| | X | Interconnecting Piping within Terminal Points | | |
| | X | Interconnecting Piping Insulation and Lagging | | |
| | X | Piping External of Terminal Points | | |
| | X | Safety Valve Vent Stacks with Drip Pan Elbows | | |
| | X | Safety Valve and Drum Vent Silencers | | |
| | X | Foundation, Anchor Bolts, Concrete, Grout | | |
| | X | Slide Plates and Bearing Plates | | |
| | X | Chemical Feed Storage and Feed Pump | | |
| | X | Feedwater Treatment System | | |

013126



PM001007



**AALBORG**
**I N D U S T R I E S**

# Proposal

## SCOPE OF SUPPLY (CONT'D)

| Supply | | ITEM | Installation | |
|---|---|---|---|---|
| AI | Buyer | | AI | Buyer |
| | X | Blow Down Tanks | | |
| | X | Deaerator & Feedwater Pump(s) with Drives | | |
| | X | Fuel Oil Pump and heater Set with Motor Drive | | |
| | X | Spare Parts | | |
| | X | Special Tools | | |
| | X | Economizer By-Pass System | | |
| | N/A | Desuperheater | | |
| | X | Sample Cooler System | | |
| | X | Steam Coil Air Heater | | |
| | X | Loading Equipment at Shop | | |
| | X | Unloading Equipment at Jobsite | | |
| | X | Boil-Out Chemicals | | |
| | X | Site Disposal of Chemicals and Water | | |
| | X | Boiler Room/Site Modifications | | |
| | X | Site Storage Prior to Installation | | |
| | X | Environmental Permit | | |
| | X | Erection and Start-Up Labor | | |
| | X | Field Balancing and Alignment of Rotating Equipment | | |
| | X | Electrical Power Supply and Lighting Protection | | |
| | X | Interconnecting Wiring or Cabling | | |
| | X | Erection Consultant | | |
| | X | Class Room Training | | |
| | X | Field Testing Labor, Equipment and Consumables | | |
| X | | Start-Up Consultant (See Attached Rate Chart) | | |
| X | | Documentation | | |
| X | | O & M Manuals (boiler only) | | |

013127
PM001008

**FIELD SERVICE TERMS AND CONDITIONS**



Aalborg Industries, Inc. will provide a Field Service Consultant under the following terms and conditions within the United States and its territories, Canada and Mexico.

**DEFINITIONS**
*Customer* - The party contracting with Aalborg Industries, Inc. for Field Service.
*Aalborg Industries* - Aalborg Industries, Inc., 5300 Knowledge Pkwy., Ste. 200, Erie, PA 16510-4660
*Field Service Consultant* - An Aalborg Industries Field Service Consultant who travels to the jobsite to advise and consult during such services as operator training, equipment start-up, testing, operation and maintenance.
*Jobsite* - The Customer's plant where services are performed.
*Supervisor* - The Customer's representative to whom the Field Service Consultant reports.

**CONTRACT TERMS**
These terms and conditions shall govern the contract by which Aalborg Industries agrees to provide a Field Service Consultant, except when Aalborg Industries agrees in writing to additional or different terms.

**RATES**
The charge for one normal 8-hour work or travel day or less is $950.00 (U.S.)/day which includes local transportation and living expenses. Cost for transportation between Erie, Pennsylvania, U.S.A., the Field Service Consultant's home station, or other assignment and the jobsite will be billed as an additional charge. (Air travel will be coach class, when available.) Overtime shall be charged at $180 (U.S.)/hour.

**TAXES**
The above daily and hourly rates include only the Consultant's personal financial liabilities for U. S. Federal Withholding, F.I.C.A., state and local withholding taxes, etc. The daily and hourly rates do not include any other sales or use taxes, levies, withholdings, imposts, charges, fees, dues, and social insurance contributions imposed on the Consultant or Aalborg Industries or their property in connection with the performance of the services under this contract. All of the aforementioned charges, not included in the above daily and hourly rates, shall be paid by the Customer, and Aalborg Industries shall have no responsibility thereafter.

**WORK HOURS AND WORK DAYS**
Normal working time will be 8 a.m. to 5 p.m. local time, with one hour for lunch, Monday through Friday. Saturday, Sunday, Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving, the day after Thanksgiving, December 24, 25, 31 and January 1, are not Aalborg Industries normal work days and are considered holidays.

**TRAVEL TIME**
All Field Service Consultant travel time is chargeable. Travel time is time spent traveling between Erie, Pennsylvania, U.S.A., the Field Service Consultant's home station, or other assignment and the jobsite. Travel will be during normal working hours unless the Customer requests otherwise. Travel time on weekends, holidays, or in excess of a normal eight (8) hour work day will be charged at the overtime hourly rate.

**OVERTIME**
Overtime is work or travel time in excess of eight (8) hours per day, Monday through Friday; work time outside of normal working hours; work time on Saturday, Sunday, and holidays; and travel time on Saturday, Sunday, and holidays when requested by the Customer.

**DELAYS**
Field Service Consultant's time will be charged when the Field Service Consultant is at the jobsite but is unable to perform services requested or delayed at the jobsite while waiting for equipment availability.

**DURATION**
A Field Service Consultant will work (or standby) for two weeks, after which he will be permitted to travel to his home station and return on the third day after leaving. If continuous Field Service is required, a second Field Service Consultant may be required.

*1462-01.02*
AALBORG INDUSTRIES, INC.
5300 Knowledge Pkwy., Ste. 200
Erie, PA, U.S.A. 16510-4660

Phone:    814/897-7000
Fax:      814/897-1099
Email:    info@ai-en.com

Page 1 of 2
A member of the
AALBORG INDUSTRIES
Group

013128

PM001009

## FIELD SERVICE TERMS AND CONDITIONS (CONTINUED)

**STANDBY**

The normal per diem rate will be charged should the Field Service Consultant's services not be required during normal work days, Saturday, Sunday or holidays, and during which the Field Service Consultant is not required at the jobsite, but is required by the Customer to standby for subsequent work.

**SCHEDULING**

Aalborg Industries will attempt to schedule a Field Service Consultant visit per the Customer's request, when given as much advance notice as possible. Usually two (2) weeks notice is adequate. To arrange service, call Aalborg Industries Field Service: (814) 897-7236 or (814) 897-7173. Fax: (814) 897-1089.

**SUPPORT LABOR**

All labor including, but not limited to, standby labor, initial check-out, start-up, and testing required to assist the Field Service Consultant at any time, shall be supplied by the Customer.

**SUPERVISOR**

The Customer shall name a Supervisor to whom the Field Service Consultant shall report while on the jobsite. The Supervisor shall direct the work and shall be responsible for operation of all equipment and appurtenances and the safety and the protection of all persons and all property. The Supervisor shall also witness and sign-off that the Field Service Consultant has performed services requested.

**LIMITED LIABILITY**

- Field Service Consultants are authorized only to advise and consult with the Customer and are not authorized or licensed to operate the equipment.
- The Customer shall indemnify and hold harmless Aalborg Industries from all claims, losses, and damages to persons and property in contract or in tort imposed upon it by third persons, including, but not limited to, employees of the Customer, arising in any manner from the service to be provided hereunder, unless the negligence or willful misconduct of a Field Service Consultant was the sole cause of the damage.
- In no event shall Aalborg Industries be liable for consequential, incidental, special, or indirect damages of any kind, whether a claim is asserted for breach of contract, tort, or strict liability. The limitation of damage provision shall survive completion of performance.
- Aalborg Industries total liability under this Contract shall not exceed the payment due for the services furnished hereunder.

**PAYMENT**

Payment of charges shall be made in full within fourteen (14) days of receipt of invoice. Aalborg Industries reserves the right to charge interest of 1% per month on past due balance.

**INSURANCE**

The Customer shall provide and maintain "all risk" property insurance covering all equipment at the jobsite, including that equipment supplied by Aalborg Industries. The Customer waives the right of subrogation against Aalborg Industries under said policies, as well as under any policy procured by the Customer which covers loss of use.

**VENDOR SERVICE**

Auxiliary Equipment Vendor Services can be supplied by Aalborg Industries at the Vendor's terms and at the Vendor's per diem and expense charge rates. Aalborg Industries will add a 15% handling charge to Vendor's service charges.

**ACCEPTANCE**

An order for Field Service should reference Field Service Terms and Conditions as revised November 1998. Aalborg Industries will schedule Field Service upon either receiving an order or receiving a fax copy and the original by mail of these Terms and Conditions signed by an authorized representative of the Customer.

AGREED & ACCEPTED:

_____     _____     _____     _____
(Company)                              (Name)                          (Title)                  (Date)

AALBORG INDUSTRIES, INC.          Phone:   814/897-7000          A member of the
5300 Knowledge Pkwy., Ste. 200    Fax:     814/897-1089          AALBORG INDUSTRIES
Erie, PA, U.S.A. 16510-4660       Email:   info@ai-erl.com       Group

013129

PM001010


**AALBORG**
**I N D U S T R I E S**

# Proposal

## SCOPE OF SUPPLY (CONT'D)

**Erection Scope**
All site erection is excluded from this proposal.

013130

PM001011



**AALBORG**
**I N D U S T R I E S**

# Proposal

### TERMINAL POINTS

Aalborg shall furnish all equipment and material which is required within the following terminal points (excluding interconnecting piping, tubing and wiring):

**Steam**
- Outlet of Steam Drum
- Safety Valve Outlets on Steam Drum
- Vent Valve Outlet on Steam Drum
- Water Column Connection on Steam Drum
- Auxiliary Water Column Connection on Steam Drum
- Steam Gauge Connection on Drum

**Water**
- Chemical Feed Connection at Lower Drum
- Continuous Blowdown Connection on Steam Drum
- Blowoff Connection at Lower Drum
- Inlet of Steam Drum Feedwater Connection
- Water Column Connection on Steam Drum
- Auxiliary Water Column Connection on Steam Drum

**Fuel**
- No fuel equipment provided

**Electrical**
- No electrical equipment provided

**Air**
- Rear Observation Port Connections

**Structural**
- Boiler Structural Steel Base (Bearing Plates, Grout, and Foundations by Others)

**Flue Gas**
- Stack Outlet

013131

PM001012



**AALBORG**
INDUSTRIES

# Proposal

## BOILER

**Heating Surfaces, Design Pressure and Size**
- Furnace Radiant Heating Surface            609 Sq. Ft.
- Boiler Heating Surface                     4,249 Sq. Ft.
- Total Heating Surface                       4,858  Sq. Ft.
- Furnace Volume                              984 Cu. Ft
- Overall Width                               11'-6"
- Overall Height                              13'-11 ¼"
- Weld Line Length                            20'-10"
- Design Pressure                             200 PSIG

**Drums** *
Submerged arc automatic welded and stress relieved with radiographed welded seams
- Drum material shall be SA-516 Gr. 70 or equal
- Tubes are rolled, expanded, and internally seal welded to the drum
- Drums are provided with a 12" x 16" hinged manway access in each drum head

**Upper (Steam) Drum**
< Inside diameter is 42 inches
< External connections consist of the main steam outlet (Studding outlet), water column (SW) auxiliary low water cut-off (SW), steam gauge (SW), vent (SW), safety valve (studding outlet), feedwater (flanged), and continuous blowdown (SW).
< The upper drum includes a feedwater distribution pipe and a blowdown collection pipe.

**Lower (Mud) Drum**
< Inside diameter is 24 inches
< External connections consist of chemical feed (SW) and intermittent blowdown (SW)
< The intermittent blowdown connection is at the lowest point for draining of the unit
< The lower drum includes a chemical distribution pipe

**Tubes***
- All tubes enter the drum radially with full parallel bearing through the drum plate
- All tubes are full diameter tubes with no swaging
  < Front Wall                        2" O.D., 0.150" M.W., SA-178 Grade A
  < Rear Wall                         2" O.D., 0.150" M.W., SA-178 Grade A
  < Furnace Floor, Sides & Roof       2" O.D., 0.150" M.W., SA-178 Grade A
  < Convection:                       2" O.D., 0.105" M.W., SA-178 Grade A
  < Outer Side Wall:                  2" O.D., 0.150" M.W., SA-178 Grade A

\* All pressure parts subject to contract check.  Materials shall be ASTM or equivalent.

013132

PM001013



# Proposal

## BOILER (CONT'D)

### Boiler Wall Construction *

The outer lagging of the boiler is designed for an average surface temperature of 140°F with an ambient temperature of 80°F with 2 MPH wind velocity. The Keystone ® boiler walls include the following:

- The furnace sides, roof and floor consists of a tube and membrane design. The wall is constructed with 2" O.D. tubes with 1" wide by ¼" thick steel membranes welded to each tube.

- The front wall consists of a tube and membrane design. The first layer is 2" O.D. tubes with 2" exposed width by ¼" thick carbon steel membranes welded to the tubes. The second layer is 3" of 1200°F board insulation. The outer surface is 22 ga hot dipped galvanized.

- The rear wall consists of a tube and membrane design. The first layer is 2" O.D. tubes with 2" exposed width by ¼" thick carbon steel membranes welded to the tubes. The second layer is 3" of 1200°F board insulation. The outer surface is 22 ga hot dipped galvanized.

- The outer boiler side wall consists of a tube and membrane design. The first layer is 2" O.D. tubes with 1" wide by ¼" thick carbon steel membranes welded to the tubes. The second layer is 3" of 1200°F board insulation. The outer surface 22 ga hot dipped galvanized lagging properly stiffened.

- The drum will be insulated with 2" of 1200°F blanket insulation. The outer lagging shall be 16 ga. hot dipped galvanized flat.

013133


PM001014



**AALBORG**
INDUSTRIES

# Proposal

## BOILER (CONT'D)

### Boiler Access and Observation Ports
The Keystone ® furnace is accessible through one (1) 12" x 16" rear wall access door. The rear wall also includes one (1) 3" diameter self closing, air purged observation port.

### Steam Purification
The Keystone ® upper (steam) drum includes steam purifiers. These steam purifiers include a dry pan and a baffle.

### Structural Base
The Keystone ® includes a rigid structural steel base frame designed to distribute the loads onto a flat concrete foundation. The boiler is designed to be anchored at the front (anchor bolts are required and supplied by others) with thermal expansion towards the rear.

### Painting
Preparation and painting will be done in accordance with System A charts as shown on the following this page.

### Auxiliary Equipment
No auxiliary equipment is included.

### Piping, Trim and Accessories
No trim is included

013134

PM001015



**AALBORG**
**I N D U S T R I E S**

# Proposal

## BOILER (CONT'D)

### Preparation and Painting Standards

| Components | System "A"  Moderate Duty | System "B"  Severe Duty |
|---|---|---|
| Drum Openings: | | |
| Flanged | Coat w/ Rust Inhibitor | Coat w/ Rust Inhibitor |
| Screwed | Capped | Capped |
| Welded | Weldable Rust Inhibitor | Weldable Rust Inhibitor |
| Drum | No Paint | No Paint |
| Drum Heads (Un-Insulated) | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum |
| Super Heaters: | | |
| Headers | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum |
| Exposed Tubes | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum |
| Superheater Openings | | |
| Flanged | Coat w/ rust Inhibitor | Coat w/ rust Inhibitor |
| Screwed | Capped | Capped |
| Weld | Weldable Rust Inhibitor | Weldable Rust Inhibitor |
| Base Frame | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Exposed Casing | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Flue Gas Outlet | SSPC-SP-3 w/ 2 Mils – High Temp Aluminum | SSPC-SP-3 w/ 2/Mils-High Temp Aluminum |
| Windbox/ Burner | Vendor Standard Minimum – Red Oxide Primer | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Lagging: | | |
| Sides | 22 Ga. Box Ribbed, Galvanized (Rail shipped boilers-12Ga Hot Dipped Galvanized Flat) | 22 Ga. Box Ribbed, Galvanized (Rail shipped boilers-12Ga Hot Dipped Galvanized Flat) |
| Roof | 10 Ga. Hot Dipped Galvanized Flat | 10 Ga. Hot Dipped Galvanized Flat |
| Drum | 16 Ga. Hot Dipped Galvanized Flat | 16 Ga. Hot Dipped Galvanized Flat |
| Head Covers | 22 Ga. Hot Dipped Galvanized | 22 Ga. Hot Dipped Galvanized Flat |
| Trim Piping – Subassemblies | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum | SSPC-SP-3 w/ 2 Mils High Temp. Aluminum |
| Fuel Piping/Rack | Vendor Standard | Vendor Standard |
| Ducts (Exterior) | | |
| Insulated | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer |
| Uninsulated | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Stacks- Exterior | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Economizers: | | |
| Exposed Press Parts | SSPC-SP-3 w/ 2/Mils-High Temp Aluminum | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Lagging | 29 Ga. Corrugated Galvanized | 29 Ga. Corrugated Galvanized |
| Support Steel | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | Hot Dipped Galvanized |
| Grating | Hot Dipped Galvanized | Hot Dipped Galvanized |
| Stairs | | |
| Treads | Hot Dipped Galvanized | Hot Dipped Galvanized |
| Stringers | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | Hot Dipped Galvanized |
| Ladders | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | Hot Dipped Galvanized |
| Hand Rails | SSPC-SP-3 w/ 2 Mils – Red Oxide Primer | Hot Dipped Galvanized |
| Fans | Vendor Standard Minimum Red Oxide | SSPC-SP-6 w/ 2 Mils -Inorganic Zinc Primer |
| Motors | Vendor Standard | Vendor Standard |
| Valves & Instruments | Vendor Standard | Vendor Standard |

013135

PM001016



# Proposal

**TRIM LIST**

**NO TRIM INCLUDED**

013136

PM001017



# Proposal

**AALBORG**
**I N D U S T R I E S**

## PERFORMANCE GUARANTEES

A)    Steam Flow- The maximum continuous rating (MCR) will be 75,000 lbs/hr 150 PSIG firing natural gas or #2 fuel oil.

B)    Steam Temperature – Not Applicable for a saturated steam boiler

C)    Emissions – No emissions guarantees are offered

These guarantees are based upon the following conditions:

1. Feedwater temperature entering the boiler from the economizer is 286 °F.
2. Ambient air temperature of 80 °F.
3. Relative humidity of 60 °F.
4. Blowdown rate of 1.0 % feedwater flow.
5. System is located at 1,000 feet elevation.
6. The boiler is designed for indoor installation.
7. Equipment arrangement as per Aalborg Proposal Drawing referenced in Section A., Page 1.
8. Testing shall be in accordance with "General Performance Terms"
9. Heating surface area calculations based on 10% Excess Air and 15% FGR

013137

PM001018



**AALBORG**
**I N D U S T R I E S**

# Proposal

## GENERAL PERFORMANCE & TECHNICAL CONDITIONS

### 1. Conditions
The performance data are based on the conditions as stated in the following paragraphs:

A. The equipment shall have been erected in accordance with the Seller's plans and specifications, properly maintained and operated by the Buyer and /or Owner, and shall be in operating condition satisfactory to the Seller. The heat absorbing surfaces shall be clean inside and out.

B. The forced draft fan capacity shall be sufficient to provide the necessary air quantity and pressure at the forced draft fan outlet to overcome all of the resistance through the unit including breeching and stack. Means shall be provided to control furnace pressure and air supply throughout the load range.

C. The $CO_2$ and/or excess air in gas leaving the furnace shall be determined by sampling uniformly across the width of the boiler, or economizer outlet, or the stack. There shall be no delayed combustions beyond the furnace outlet. The draft loss through the boiler is the draft loss from the convection pass entrance to the exit of the boiler gas discharge outlet.

D. The allowable concentration in the boiler water shall not exceed recommended ABMA and ASME guidelines for boiler water quality. Chemical used for internal treatment should be supplied to the boiler preferably through a separate boiler connection, used exclusively for that purpose, and in such a manner so as to prevent deposits on drum internals which would interfere with proper operation. The allowable concentrations above are minimal for the boiler water control and in no way shall be construed as the controlling criteria for any specific installation. Feedwater and boiler water control for any specific installation shall be the responsibility of the equipment operator and /or their feedwater consultant. Treatment should be such as to prevent deposits on the heating surfaces of the boiler as well as the drum internals. Internal treatment should be supplied to the boiler through a separate boiler connection, used exclusively for that purpose.

013138

PM001019

# Proposal

**AALBORG**
**I N D U S T R I E S**

## GENERAL PERFORMANCE & TECHNICAL CONDITIONS

**II. Tests**

A.　　Performance test (if required) shall be run within thirty (30) days after the Buyer shall have received notice from the Seller that the equipment furnished is ready for testing, it being understood that the Seller may require preliminary tests. Tests shall be conducted only on one representative unit mutually agreed upon by the Buyer and the Seller. The Buyer, at Buyer's expense, shall make all preparations furnish all operating and testing personnel and incur all expenses connected with such test, and shall give to Seller at least fifteen (15) days notice of the date or dates on which tests will be made.

B.　　Material, labor, fuel, utilities and supervision to conduct performance test shall be furnished by Buyer.

C.　　The Seller's representative shall have access to the records at all times, and the test shall be conducted in a manner to satisfy the Seller that the specified performance conditions are being maintained. A complete copy of test data and results shall be furnished by the Seller.

D.　　The equipment shall be considered as accepted if tests show that the guarantees, if made, have been fulfilled, or if the Buyer fails to have said equipment tested within period mentioned. In case of failure to meet performance guarantees, the Seller reserves the right to change or replace the equipment furnished so that guaranteed performance will be obtained.

E.　　The determination of the fuel or fuels high heating value must be made in accordance with the applicable ASTM Standard.

013139

PM001020



# Proposal

## GENERAL PERFORMANCE & TECHNICAL CONDITIONS

**II. Tests**

    A.      No labor provided by Aalborg

    B.      Equipment must be in like-new condition at the time of the test. Seller shall be afforded reasonable access to perform preliminary testing with balance of plant available to support operation of the equipment over varying capacities.

    C.      If test are not completed within 90 days from shipment of the boiler , Aalborg guarantees will be deemed to have been met.

**III.   Responsibility**

    A.      The treatment of feedwater and the conditioning of boiler water are beyond the control of Seller. Seller shall not be responsible for damage due to the presence of oil, grease, scale, or deposits on the internal surfaces of the Equipment, or for damage resulting from foaming caused by chemical conditions of the water or for damage resulting form corrosion or caustic embrittlement.

    B.      The Seller is not responsible for corrosion, erosion, catalyst poisons or fouling due to corrosive agents or non-combustion residue (ash) in the fuels or maintenance resulting from combustion of the fuel. The Buyer should exercise diligence in this regard, checking fuel analysis with supplier, investigating possibility of using helpful additives, and operating soot blowing equipment if required for the time periods as outlined in the maintenance manual or dictated by operation. Seller shall not be responsible for damage resulting from conditions of heat transfer medium such as, deposits on internal and external surface, thermal shock, water hammer and explosion.

013140

PM001021



# Proposal

## GENERAL PERFORMANCE & TECHNICAL CONDITIONS (CONT'D)

III. **General**

A. It is recognized that the performance of the equipment covered in this proposal cannot be exactly predicted for every possible operating condition. In consequence, any predicted performance data submitted are intended to show probable operating results which may be closely approximated but which cannot be guaranteed except as expressly stated in the guarantee clause or clauses in this proposal. Any performance curves submitted are for the Buyer's convenience and the performance indicated thereon is not offered by the Seller, nor to be construed by the Buyer, as a proposal of contract obligation. Heating surfaces and tube thickness shown in the proposal are preliminary information and will be verified during contract execution.

B. The Keystone ® saturated pressure parts are constructed in accordance with the requirements in A.S.M.E. Code, Section I for stationary boilers in effect at the date of the purchase order. A hydrostatic test of the saturated pressure parts will be preformed at one and one half times the design pressure of the boiler per ASME Code requirements.

C. The flue gas side will receive our standard shop smoke bomb test to verify proper sealing of the flue gas system.

D. The latest edition of the following codes and standards shall be used for the subject offering: ABMA, AISC, AWS, ANSI B31.1, ASTM, SSPC, NEMA, UL, OSHA, NFPA, ISA. Please note applicable components shall be UL & FM approved; however, the system is not UL & FM approved.

E. The wind loads are based on ASCE 7-95, 90 MPH, exposure C&I = 1.0. The seismic loads are based on UBC-94, Zone 2B & I=1.0.

013141

PM001022



# Proposal

## GENERAL PERFORMANCE & TECHNICAL CONDITIONS (CONT'D)

### VI. Allowable Terminal Point and Nozzle Loads
A. The following table defines the allowable terminal point and nozzle loads:

| Nozzle Size (Inches) | Axial Loads (Pounds) | Tangential Loads (Pounds) | Bending Moments (Foot-Pounds) |
|---|---|---|---|
| 1 | 52 | 24 | 80 |
| 1.5 | 127 | 59 | 196 |
| 2 | 252 | 117 | 388 |
| 2.5 | 439 | 202 | 673 |
| 3 | 743 | 343 | 1,142 |
| 4 | 1,371 | 633 | 2,109 |
| 6 | 2,898 | 1,337 | 4,458 |
| 8 | 5,105 | 2,356 | 7,855 |
| 10 | 8,448 | 3,898 | 12,995 |
| 12 | 12,699 | 5,889 | 19,530 |
| 14 | 15,967 | 7,369 | 24,565 |
| 16 | 22,341 | 10,288 | 34,235 |
| 18 | 30,098 | 13,891 | 46,305 |

### VII. Material Substitution
A. Material selected for non-pressure part and non-load carrying components shall be of an established identity and shall be suitable in other respects for the intended service of the component. In general, these materials shall be certified to the applicable ASTM standards, however, material substitutions may be made at Seller's discretion provided that the material meets the mechanical and physical properties of the nearest equivalent ASTM standard.

B. Materials selected for pressure part and load carrying components shall in general be certified to applicable ASTM standards. Materials certified to other published standards, such as JIS or BS, may be substituted at Seller's discretion provided that the materials meet the full requirements of the nearest equivalent ASTM Standard with regard to mechanical and physical properties, compositional limits for all constituents, manufacturing process and testing requirements.

013142

PM001023



# Proposal

## COMMERCIAL QUALIFICATIONS

### SCHEDULE (DELIVERY & DRAWINGS)

**Delivery Schedule**
Per purchase order

**Drawing Schedule**
Three (3) sets of the following drawings/documents will be provided per the defined schedule:

| Item | Weeks ARO |
| --- | --- |
| Boiler Arrangement and Terminal Points | 2 - 3 |
| Boiler Foundation Load | 3 - 5 |
| O & M Manuals | at boiler shipment |

Information shall be provided with American units.

**Notes:**

1    Delivery schedule is based upon no customer approval of drawings.

3    Should a document submittal date fall on a holiday or a weekend, the submittal due date shall be the next business day.

4    The price includes loading onto your truck only ex-works.

Proposal Submitted by _____

Date    _1 June 01_____

013143

PM001024

**Sands, Vincent**

| | |
|---|---|
| **From:** | Meehan, Phil |
| **Sent:** | Friday, May 25, 2001 5:01 PM |
| | 'jviskup@victoryenergyinc.com' |
| **Cc:** | Sands, Vincent; Meehan, Phil |
| **Subject:** | Victory Energy  PO #3343 & Al's Ts & Cs |

Dear Mr. Viscup,

Per our telephone conversation of Thursday May 24, 2001, attached are the Purchase Order and Al's Ts & Cs documents for your review.

I took your Purchase Order faxed to us on May 18, 2001 (F) and typed it into a word document to be able to make clarifications.  I added a note in Item 1 to let you know that our Mr. Vince Sands will be updating his proposal to reflect the as sold boiler.   The Terms and Conditions were also modified to add arbitration language.

Please review these clarifications and provide me with any comments you may have.  You may make your comments using the track changes.

We thank you for your Purchase Order and look forward to working with you on this project.

Purchase Order.doc

Victory
FinalSales-terms-cons&...

Regards,

Phil Meehan
Sr. Contract Negotiations

Aalborg Industries, Inc          5300 Knowledge Pkwy   Erie, Pa.  USA  16510-4660
Tel: 814-897-7242               Fax:  814-897-1089    Email:  pmeehan@ai-ert.com

1

013144

PM001025



# *Terms and Conditions of Sale*

**AALBORG**
**INDUSTRIES**

1. **DEFINITIONS**
   A. **SELLER:** Aalborg Industries, Inc., 5300 Knowledge Pkwy, Ste 200, Erie, PA, U.S.A 16510-4660
   B. **BUYER:** The Party contracting with Seller.
   C. **The Equipment:** All or any part of the goods, work, and services specifically offered in Seller's proposal and to be provided under the Contract.
   D. **The Contract:** The agreement between Seller and Buyer whereby Seller shall furnish Buyer with the Equipment. Said agreement shall specifically include and be limited to Buyer's specifications if directly incorporated, Seller's proposal, Seller's exceptions and clarifications to Buyer's specifications, Seller's Terms and Conditions of Sale (unless other terms are agreed to in writing by Seller), and all other specifically incorporated documents bearing upon the duties of the parties.
   E. **Notice:** A written statement sent by registered or first class mail to Seller's address in Erie, Pennsylvania effective upon receipt.

2. **EXECUTION OF CONTRACT**
   Seller's proposal is an offer stating the terms and conditions under which Seller will enter into a contract with Buyer to provide the Equipment. This offer expressly limits acceptance to the complete technical and commercial terms stated herein. Additional or different terms which Buyer submits to Seller, either in a purchase order, letter of authorization, or other communication of acceptance, will have no force and effect unless specifically agreed to in writing by Seller. An offer by Buyer can only be accepted in writing by an authorized officer of Seller. In no event shall Seller's performance constitute acceptance of any terms and conditions different from those set forth in Seller's proposal. Any performance by Seller is only as an accommodation to Buyer.

3. **LIMITATION OF PROPOSAL**
   Seller's proposal is valid for thirty (30) days from proposal date, unless otherwise agreed.

4. **INFORMATION TO BE FURNISHED BY SELLER**
   A. Seller shall furnish Buyer with three (3) sets of the general arrangement drawings in accordance with which the Equipment shall be fabricated. Such drawings remain in the property of Seller, which reserves all rights therein. Buyer shall check and promptly return one set of the drawings with its approval in writing noted thereon.

   B. Seller shall also furnish Buyer three (3) copies of operating and maintenance manuals.

5. **SHIPPING DATE**
   Shipment of the Equipment shall start (TBD) months after award subject to final approval of all drawings and Contract details, whichever is later. The proposed shipping date is based upon present shop space and available material, which are subject to prior allocation.

6. **TRANSPORTATION CHARGES**
   A. Transportation charges from point of shipment to point of free delivery of common carrier shall be paid by Buyer. All equipment shall be provided F.O.B. point of manufacture.

   B. Buyer shall bear the expense of changes in transportation rates, taxes, or routing requirements after contract formation (prior to delivery).

   C. The type of transportation and routing shall be controlled by Buyer.

   D. Seller does not warranty that a clearance is available to ship the Equipment by any specific mode of transportation.



013145

PM001026



# *Terms and Conditions of Sale*

**AALBORG**
INDUSTRIES

---

**7. PAYMENT**

**A.** This Contract is subject to progress billing in accordance with the "Price and Terms" form in Seller's proposal. Seller reserves the right to change the terms of payment to site-draft, COD, or confirmed irrevocable letter of credit if, in Seller's judgment, the financial condition of Buyer has changed prior to or at the time of shipment. Seller may charge interest at the rate of 2% per month on any balance thirty (30) days past due.

**B.** Any Contract requiring payment from outside the United States shall be accompanied by a confirmed irrevocable letter of credit drawn on an acceptable United States bank for sufficient value to cover the Contract. This letter of credit shall be opened by Buyer and is subject to acceptance by Seller.

**C.** If shipment of Equipment is delayed due to Buyer's failure to promptly inspect, to give shipping instructions, or to discharge any duty necessary for shipment, payment shall become due as if shipment had been made. In any such case, Buyer shall, in addition to the price, pay reasonable storage charges. Risk of loss during storage shall be borne by Buyer.

**D.** Title to the equipment shall pass upon tender of the final payment due under the Contract.

**E.** Payments shall continue during disputes with only the disputed amount, if any, being withheld.

**8. MATERIAL AND WORKMANSHIP WARRANTY**

**A. Sole Express Warranty:** Seller warrants that the Equipment conforms to Seller's proposal and any specifications directly incorporated into the Contract. Any express or implied references to plans and specifications outside of the specific scope of the Equipment furnished hereunder due as if in any way alter or enlarge Seller's responsibility under the contract. Equipment and/or services supplied by other vendors are excluded from Seller's warranty and only carry such warranty as provided by those vendors. Seller agrees to act as liaison for Buyer with those vendors.

**B. NO IMPLIED WARRANTY:** OTHER THAN TITLE, ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXCLUDED.

**C. Length of Warranty:** Equipment supplied by Seller is warranted against defects in material and workmanship for one (1) year from the date of shipment. Refractory or insulation furnished by Seller is warranted for ninety (90) days from the date of initial operation, excluding faulty installation by others.

**D. Exclusive Remedy:** In the event of a defect in material or workmanship, Seller's sole obligation is to repair or provide replacement parts for the Equipment at its option. All parts to be shipped F.O.B. point of manufacture. Removal and reinstallation expenses for replacement parts and transportation charges are for Buyer's account. Repair or replacement does not alter or extend limits on liability and warranty established at sale. The foregoing warranty is in lieu of all tort liability and all other warranties, representations, or rights of rejection, express or implied.

**E. Conditions of Warranty:** Seller's warranty is conditional upon the Buyer's (A) Giving Seller notice of the warranty breach within ten (10) days from discovery; (B) Giving Seller prompt and reasonable opportunity to inspect the equipment; (C) Operating the Equipment according to the manner prescribed by Seller without alteration or substitution to the equipment; and (D) Keeping adequate logs and records to establish proper Equipment operation. Proper operation includes, but is not limited to proper erection, proper start-up, proper Equipment maintenance, avoidance of damage from abrasion, corrosion, or excessive temperature and proper servicing of Equipment by Seller's personnel only. Failure to comply with any of the above conditions voids this warranty.

---

013146

PM001027



# *Terms and Conditions of Sale*

## AALBORG
### INDUSTRIES

---

G. **Warranty Exclusion:** Seller's warranty does not cover wear and tear or other results of Equipment operation, including; but not limited to (1) damage resulting from the treatment of feedwater and/or the conditioning of boiler water, such as damage due to the presence of oil, grease, scale or deposits, damage resulting from foaming caused by chemical conditions of the water, or damage resulting from corrosion or caustic embrittlement, or (2) damage or impaired performance which may result from corrosion, erosion, fouling, any chemical elements that reduce or eliminate the effectiveness of a catalyst when an SCR/CO system is included or other factors which may be due to corrosive agents, combustible residues, ash, or other constituents of the fuel. Buyer bears responsibility for verifying the fuel analysis, utilizing fuel additives where necessary and properly operating soot blowing equipment.

H. **Backcharges:** Buyer may not backcharge Seller for legitimate warranty claims without Seller's prior written consent since Seller has a duty to repair or provide replacement parts for the equipment.

## 9. SERVICING WARRANTY CLAIMS

A. Seller shall repair or replace within a reasonable time of inspecting the Equipment and reviewing necessary operational or test data in order to determine that a defect exists. Seller shall be fully compensated for the expenses and travel and job time (at the then prevailing per diem rates) of its service representatives who inspect non-warranty claims. Seller shall also be compensated for the time and expenses of its service representatives who travel to a jobsite and are denied necessary access to the Equipment for any reason or are delayed at the jobsite while waiting for Equipment availability.

## 10. PERFORMANCE GUARANTEE AND TESTING

A. Successful performance tests satisfy Seller's Contract obligation regarding Equipment design and operation, and, it is agreed, signify acceptance of the Equipment. Performance tests shall be run within thirty (30) days of the date of initial operation or shall be deemed to be satisfied. Buyer is fully responsible for ensuring that the Equipment is in like-new condition at the time of testing. Said tests shall be conducted and interpreted in strict accordance with the conditions and stipulations in the Standard General Performance Forms included in Seller's proposal. Subsequent to satisfactory completion of performance tests, Seller's responsibility shall be limited to the material and workmanship warranty established herein. In the event the Equipment consists of two or more identical units, satisfactory testing of one unit shall satisfy Seller's entire performance responsibility.

B. All boiler operators and standby labor, fuel, treated feedwater, utilities, and materials incident to start-up and conducting performance tests are the expense and responsibility of Buyer. If included in the Contract, Seller shall provide a service representative to advise and consult during start-up and/or testing.

## 11. LIMITATION OF LIABILITY

A. In no event shall Seller be liable for consequential, incidental, special or indirect damages of any kind, including, but not limited to, lost profits, increased cost of operation, financing costs, cost of replacement power, cost of fuel, cost of rental equipment, or delay. Said limitation shall apply regardless of whether a claim is asserted under a theory of negligence, strict liability, breach of contract or indemnity. This limitation of damage provision shall survive completion of performance.

B. Buyer agrees that should a court determine that Seller's warranty hereunder has failed its essential purpose, the damage exclusion set forth herein in section 11(A) shall remain in full force and affect as it represents the allocation of risk between the parties and the basis of the bargain.

C. Buyer shall indemnify and hold harmless Seller, its agents, representatives, and employees, from and against any and all suits, actions, legal or administrative proceedings, claims, demands, damages, liabilities, interest, attorney's fees, costs and expenses of any nature whether arising

---

013147

PM001028



# *Terms and Conditions of Sale*

**AALBORG**
**INDUSTRIES**

before or after completion of the work hereunder and in any manner directly or indirectly caused, occasioned, or contributed to in whole or in part, or claimed to be caused occasioned, or contributed to in whole or in part, by reason of any act, omission, fault, or negligence, whether active or passive, of Buyer or of anyone acting under its direction or control or on its behalf in connection with or incident to the performance of the contract. In no event shall Buyer's indemnity and hold harmless obligation apply to liability caused by the sole negligence or willful misconduct of Seller. Buyer shall at all times maintain such liability, property damage, and employee liability insurance as will protect Seller from any or all of the foregoing risks.

D. Buyer shall bind subsequent buyers or leasees of the Equipment to the terms of this contract such that said third parties shall have no further rights against Seller than does Buyer. Buyer agrees to notify said third parties of this provision and to make this a condition of any contract concerning the Equipment. Buyer shall designate Seller a third-party beneficiary of any such contract, whereby all rights and remedies arising out of the contract shall be enforceable by Seller as well as Buyer. In the event Seller is subjected to claims, losses, or damages beyond the limits set forth in the contract, Buyer shall indemnify and hold harmless Seller from all such claims, losses, or damages.

E. Seller's aggregate liability is limited to 100% of the Contract price.

F. Pursuant to Section 2-725(1) of the Uniform Commercial Code, the statute of limitations is limited to eighteen (18) months from the time a breach occurs.

G. Buyer agrees to waive subrogation rights against Seller under any insurance policies, which cover physical damage to or loss of use of the Equipment or other property at the same installation.

## 12. LIMITED LIABILITY OF SELLER FOR FIELD WORK

A. Seller's field service personnel are authorized only to advise and consult with Buyer or its representatives and are not authorized nor licensed to operate the Equipment.

B. At all times during which Seller's service representatives are performing services at the jobsite, whether related to preliminary operations, start-up, testing, or Equipment repairs, Buyer shall provide a supervisor to whom the representative shall report.

C. In the event Seller field erects the Equipment utilizing its own construction labor, Seller shall provide a supervisor to direct said labor. This supervisor shall report to and be directed by Buyer's project engineer, or comparable individual, at the jobsite.

## 13. COMPLIANCE AT THE JOBSITE

Seller does not warrant that the Equipment complies with laws, ordinances, regulations, insurance requirements, or local union rules or preferences in effect at the jobsite. Modifications to the Equipment which are required in order to comply with the same are at Buyer's expense. Seller accepts no responsibility for penalties or citations levied against Buyer by local, state or federal authorities.

## 14. PERMITS

Where laws or municipal ordinances require permits to install the Equipment or require the approval of the plans or specifications for the Equipment or its installation, Buyer assumes the responsibility and expense for securing the requisite permit or approval. The expense of any changes which are required to meet the approval of the state or municipal authorities is for Buyer's account.

## 15. CODES AND REGULATIONS

A. The Equipment shall be designed for a maximum working pressure in accordance with the rules of the ASME Code for Power Boilers.

013148

PM001029

## Terms and Conditions of Sale

**AALBORG**
I N D U S T R I E S

B. The pressure parts within the scope of the Seller's supply shall be designed and constructed in accordance with the current edition and addenda of the ASME Code, Section 1, Power Boilers, in effect on the original date of Seller's proposal.

C. The burner management system and combustion control system, if included in this Contract, will be furnished in compliance with the latest edition of the National Fire Protection Association (NFPA) Code Requirements. Insurance coverage and approval - FM, IRI (formerly FIA), and any other insurance company - shall be obtained by Buyer.

### 16. TAXES NOT INCLUDED
All federal, state, and local taxes are for Buyer's account and are in addition to the prices quoted in this Contract. It is the duty of Buyer to establish exemption to any taxes by providing a certificate of exemption and to indemnify Seller if such information is incorrect.

### 17. FORCE MAJEURE
Seller shall not be liable for failure to deliver or delays in delivery, erection, or other performance occasioned by causes beyond the control of Seller including, but not limited to, strikes, labor slowdowns, lockouts, fires, riots, accidents, unforeseen environmental risks, embargoes, war or other outbreak of hostilities, acts of government, acts of God, delay of carriers or suppliers, inability to obtain sufficient labor at the jobsite, and government regulations. In the event of any such delay, (1) the time for performance shall be reasonably extended, (2) Seller and Buyer shall take reasonable steps to reestablish the time table set out in the Contract, (3) an adjustment shall be made for additional costs to Seller. If the Force Majeure results in Contract termination, Buyer shall reimburse Seller for its costs plus 15% overhead and profit.

### 18. RISK OF LOSS
A. Equipment is provided F.O.B. point of manufacture and risk of loss shall pass upon tender of delivery to the carrier.

B. From the time risk of loss passes to Buyer until final payment, Buyer shall carry "all risk" insurance in the names of Buyer and Seller, as their interest may appear, in an amount equal to the total Contract price.

### 19. PATENTS
Seller shall defend at its own expense any suit or action brought against Buyer based on a claim that Equipment manufactured by Seller constitutes an infringement of any patent of the United States, if Seller is notified and given authority, information and assistance for defense. In no event shall Seller be liable for damages beyond unit price of any infringing Equipment. Seller shall pay costs awarded against Buyer in any such suit but shall bear no responsibility for any other costs, expenses, or damages incurred by Buyer.

### 20. CONFIDENTIAL INFORMATION OF SELLER
Any proprietary information received from Seller (including, but not limited to proposals, samples, designs, concepts and drawings) remains the property of Seller. Buyer shall maintain as secret and treat as confidential all proprietary information supplied by Seller and may not disclose such information to a third party without Seller's prior consent. Proprietary information shall not include that which is previously known by Buyer, public information, or information received from a third party under no obligation to Seller to hold the information as confidential. Buyer may not use any proprietary information received from Seller in performing other work for itself or any third party at any time. Buyer shall return to Seller all proprietary information upon demand and in no event later than the completion of the work under the Contract. Drawings supplied to Buyer for maintenance and installation purposes need not be returned to Seller at Contract completion.

### 21. SURFACE PREPARATION AND PAINTING

---

013149

PM001030



# Terms and Conditions of Sale

**AALBORG**
INDUSTRIES

Regardless of the type of surface preparation, the type of protective coating and the method of application, Seller has no control over and bears no responsibility for variables such as weather, handling, and environmental conditions after the Equipment leaves Seller's or supplier's shops. Any additional work required to correct the surface condition after shipment shall be for Buyer's account.

## 22. RESPONSIBILITY
The Buyer shall provide (when applicable) all fluid and gaseous fuels clean and free from debris and foreign matter, at Seller's point of connection to burner piping.

## 23. STEELWORK AND FOUNDATIONS
A. Supporting steel furnished by Seller shall be designed to support the Equipment proposed to be furnished by Seller and shall be designed in accordance with the latest Rules of the American Institute of Steel Construction. If Seller is required to increase the size or weight of its supporting structures to conform to additional rules or additional loadings imposed by Buyer, Buyer shall reimburse Seller for the additional steel required.

B. Seller shall provide Buyer with drawings showing the foundation loading due to the Equipment and the required anchor bolt location. Seller is not responsible for excavation, grouting, concrete work, depth of footings, size or adequacy of the foundations. Seller bears no responsibility for damage caused by settlement of the foundation.

## 24. INSPECTIONS AND TESTINGS
Seller is responsible only for those routine tests and inspections which it performs on its own premises during the manufacturing process. Any further tests or inspections required by Buyer shall be at Buyer's expense.

## 25. HYDROSTATIC TESTING
A. When drums and tubes are shop assembled into a completed unit, the entire vessel shall be hydrostatically tested in accordance with the ASME Boiler Code, when required, and properly stamped by Seller before shipment.
B. When the pressure vessel is assembled and erected by Seller in the field, it shall be hydrostatically tested and properly stamped by Seller but all materials and facilities necessary to heat water to 70 Degrees F. minimum and 150 Degrees F. maximum are the expense and responsibility of Buyer.
C. In the event the pressure vessel is assembled and erected by others in the field, Buyer shall bear the complete expense and responsibility for hydrostatic testing.

## 26. MANUALS AND WARNINGS
Buyer accepts complete responsibility for ensuring that Seller's instruction manuals, and those of Seller's vendors, are distributed to and utilized by the Equipment operators and that said individuals are properly trained to safely and competently operate the Equipment. Buyer agrees to indemnify and hold harmless Seller from any and all claims, losses, damages, or expenses arising from or in any way connected with Buyer's responsibility hereunder.

## 27. OSHA COMPLIANCE
The Equipment shall be designed to comply with the Occupational Safety and Health Act of 1970 and the regulations promulgated and in effect on the date of Seller's proposal, but only to the extent that said Act directly applies to the manufacturer of the Equipment. Seller shall not be responsible for any failure to comply with said Act which results from the location, operation, use, maintenance, or alteration of the equipment. Seller's responsibility with respect to such Act is limited to the modification of the Equipment so that it conforms to the applicable regulations. Seller makes no representation with respect to the ability of the Equipment to comply with any noise regulations and accepts no responsibility for any failure to so comply.

013150

PM001031

# *Terms and Conditions of Sale*

**AALBORG**
**I N D U S T R I E S**

---

28. **SETOFF**
    This Contract is not subject to a right of setoff by Buyer. Actual or alleged debts of Seller or any other Division of Aalborg Industries, Inc. to Buyer cannot be setoff against money owed to Seller under this Contract.

29. **ATTORNEY'S FEES**
    In addition to any other remedies provided by law, Buyer shall be liable for attorney's fees and litigation expenses which Seller reasonably incurs to enforce, interpret, or collect damages under any of the terms of the Contract.

30. **APPLICABLE LAW**
    This Contract is made in Erie, Pennsylvania and irrespective of the place of performance, or otherwise, the Contract shall be construed and interpreted in accordance with the laws and decisions of the Courts of the Commonwealth of Pennsylvania and any legal action which is instituted hereunder shall be brought in Erie, Pennsylvania.

31. **DISPUTE RESOLUTION**
    In the event of any dispute, controversy or claim between the parties arising out of or relating to this Purchase Order, or the breach, termination or invalidity thereof, the parties shall attempt in the first instance to resolve such dispute through friendly consultations between the parties. If such consultations do not result in a resolution of the dispute within thirty (30) days, then the dispute may be submitted by either party to binding Arbitration, irrespective of the magnitude thereof, the amount in dispute or whether such dispute would otherwise be considered justifiable for resolution by any court, by giving written notice thereof to the other party. The parties agree to attempt to resolve all dispute arising hereunder promptly equitably and in a good faith manner. Arbitration shall be conducted in accordance with the American Arbitration Association and the place of venue will be Erie, Pennsylvania.

32. **COMPLETE AGREEMENT; NO ORAL MODIFICATIONS; SEVERABILITY**
    A.  This Contract constitutes a final written expression of all the terms of the agreement between Seller and Buyer and is a complete and exclusive statement of those terms.

    B.  The terms of this Contract may not be modified or waived orally; any modification or waiver of any of its provisions must be signed by Seller.

    C.  In the event any provision, or part thereof, of this Contract is held to be unenforceable, the remaining provisions and parts thereof shall remain in full force and effect.

    D.  This Contract and all of its terms and conditions shall extend to and be binding upon the respective successors and assigns of the parties hereto.

33. **CHANGES**
    Any changes to the Terms and Conditions set forth herein may result in changes to Seller's price.

34. **BACKCHARGES**
    Any backcharges Buyer intends to recover from Seller must be presented to Seller within thirty (30) calendar days of the event including substantiating back-up material.

35. **CLEARANCES AND INTERFERENCES**
    The Buyer recognizes that Seller's equipment to be incorporated into Buyer/Owner's facility requires careful planning and calculation of clearances from other equipment and structures in the facility. Buyer's information including drawings, equipment layout and other structural dimensions identified in Buyer's specification and bid invitation are relied upon by Seller for their accuracy and completeness in order for Seller to supply equipment clear of costly interferences. All costs and expenses related to an

---

013151
PM001032



# *Terms and Conditions of Sale*

**AALBORG**
**INDUSTRIES**

interference or clearance requirement which was not completely and accurately identified to Seller prior to submittal of Seller's General Arrangement Drawings shall be paid by Buyer. An interference or clearance deficiency is that which causes Seller to redesign, modify or relocate Seller's equipment or cause the modification or relocation of structures, material or equipment of the Buyer, Owner or other contractors and suppliers.

013152

PM001033

would say that, you know, anybody is free to take a look at that and I don't want to say copy, but I'll say replicate, you know, various aspects of that, you know, at any point in time.

**If there are specific confidentiality provisions included in the purchase agreement for the Heinz boiler, you know, that would apply to those drawings or other information that were provided after, you know, VEO entered into a Confidentiality Agreement, then that would be subject to that Confidentiality Agreement** and I don't know if there was a Confidentiality Agreement specifically relative to the Heinz boiler or not."

(P. Miller Dep. at 87:13-88:11) (emphasis added)

VEO, through its President John Viskup, in fact executed a purchase order for the Heinz boilers that incorporated terms and conditions required by Aalborg. VEO sent a letter dated June 4, 2001 to Aalborg enclosing a VEO purchase order for the supply of the boilers and advising that the "boilers are to be provided in accordance with the following documents," which included "Aalborg's Terms and Conditions of Sale dated 10/19/99 and e-mailed to Victory Energy on May 25, 2001." (A true and correct copy of that letter and the referenced enclosures is attached hereto as Exhibit A.) The Aalborg Terms and Conditions included the following confidentiality provision:

"**CONFIDENTIAL INFORMATION OF SELLER**
*Any proprietary information received from Seller (including, but not limited to proposals, samples, designs, concepts and drawings)* remains the property of Seller. *Buyer shall maintain as secret and treat as confidential all proprietary information supplied by Seller* and may not disclose such information to a third party without Seller's prior consent. Proprietary information shall not include that which is previously known by Buyer, public information, or information received from a third party under no obligation to Seller to hold the information as confidential. *Buyer may not use any proprietary information received from Seller in performing work for itself or any third party at any time.* Buyer shall return to Seller all proprietary information upon demand and in no event later than the completion of the work under the Contract. Drawings supplied to Buyer for maintenance and installation purposes need not be returned to Seller at contract completion."

(*Id.* at PM 1030) (emphasis added)