UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| | :   CIVIL ACTION |
| INDECK KEYSTONE | : |
| ENERGY, LLC, a Delaware limited liability | : NO. 04-CV-325 (ERIE) |
| company, | : |
| | :Judge Sean J. McLaughlin |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| | : |
| VICTORY ENERGY | : |
| OPERATIONS, LLC, a Delaware limited | : |
| liability company, | : |
| | : |
| Defendant. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
TO PRECLUDE DEFENDANT'S EXPERT TESTIMONY THAT THE KEYSTONE®
DETAILED DESIGNS ARE IN THE PUBLIC DOMAIN**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, submits this memorandum of law in support of its Motion *in Limine* to preclude Defendant's expert testimony that IKE's trade secrets – namely its detailed design drawings for the Keystone® boiler -- are in the public domain.

## I.     INTRODUCTION

Defendant Victory Energy Operations LLC ("VEO") retained an engineer named Paul Miller ("Miller") who expressed an opinion that (among other things) the Keystone® designs are in the public domain. However, as outlined below, his testimony addresses the wrong issue and is based on faulty assumptions and facts not in evidence. Further, his testimony

lacks any probative value and will only confuse and/or mislead the jury. Therefore, his testimony should be precluded under Federal Rules of Evidence 702 and 403

## II.     STATEMENT OF FACTS RELEVANT TO PUBLIC DOMAIN TESTIMONY

In 2003, VEO entered a License Agreement with Erie Power Technologies, Inc. ("EPTI") for the Keystone® Standard M-Series water tube boiler. During the term of the Agreement, IKE purchased the technology underlying the Agreement and was assigned the Agreement and the Keystone® trademark. After learning that IKE had acquired the technology, and during the term of the Agreement, VEO began to develop its own watertube package boiler line known as the Voyager. VEO introduced the Voyager to the market only days after the License Agreement expired.

During the term of the Agreement, VEO received detailed design drawings pertaining to (among other design features) the Keystone® boiler's front and rear walls, the furnace walls, the outer side walls, and the upper and lower drum that were to be used solely for the manufacture and assembly of Keystone® boilers. IKE and its predecessor EPTI consider the detailed design drawings to be proprietary and confidential and to represent trade secrets inasmuch as they depict proven designs developed over time for a commercially valuable product that enable the product to be safely and efficiently manufactured and to perform in accordance with predicted performance.

To IKE's knowledge, EPTI and its predecessors did not publicly disseminate the detailed design drawings at issue in this lawsuit unless there was a confidentiality provision associated with the dissemination.

**A.    VEO's Proposed Expert Testimony**

Mr. Miller has two bases for his opinion that the Keystone® designs are in the public domain: (a) prior to execution of the License Agreement, a predecessor to IKE and EPTI (Aalborg Industries) had provided detailed design information to VEO in connection with the sale of two Keystone® boilers "without any expectation of privacy," thereby causing that information to enter the public domain; and (b) there are other designs of O-type boilers in the public domain.

**1.    The Heinz Drawings**

In comparing the Keystone® design to the Voyager design, Miller reviewed drawings for two boilers that Aalborg sold to VEO, prior to the License Agreement, for use at a Heinz plant in Muscatine, Iowa.  (P. Miller Dep. at 198:16-19)  Miller testified that Aalborg provided detailed design information[1] to VEO in connection with the sale of the Heinz boilers, which occurred prior to execution of the License Agreement.  (P. Miller Dep. at 15115-152:1)  In Miller's view, that information entered the public domain because Aalborg "distributed this without any expectation of confidentiality."  (P. Miller Dep. at 158:4-13)  However, Miller also testified:

> Q:    Did you believe that because VEO obtained the Heinz designs before the license was entered that VEO had the right to copy all or part of the designs for the Heinz boilers?
>
> A:    It depends on what point in time.  You know, certain specific drawings on the Heinz project, you know, were given to VEO.  Certainly any information provided, you know, as part of marketing information or whatever, you know, any of that information I

---

[1]    Aalborg did not supply a full set of the detailed design drawings to VEO for the Heinz boiler in connection with its sale.  Rather, Aalborg provided only those necessary to allow VEO to be able to install the burner.  As a result, this issue must focus on the specific drawings rather a blanket assertion that all drawings have been disclosed if there was disclosure of a single drawing.

would say that, you know, anybody is free to take a look at that and I don't want to say copy, but I'll say replicate, you know, various aspects of that, you know, at any point in time.

**If there are specific confidentiality provisions included in the purchase agreement for the Heinz boiler, you know, that would apply to those drawings or other information that were provided after, you know, VEO entered into a Confidentiality Agreement, then that would be subject to that Confidentiality Agreement** and I don't know if there was a Confidentiality Agreement specifically relative to the Heinz boiler or not."

(P. Miller Dep. at 87:13-88:11) (emphasis added)

VEO, through its President John Viskup, in fact executed a purchase order for the Heinz boilers that incorporated terms and conditions required by Aalborg.  VEO sent a letter dated June 4, 2001 to Aalborg enclosing a VEO purchase order for the supply of the boilers and advising that the "boilers are to be provided in accordance with the following documents," which included "Aalborg's Terms and Conditions of Sale dated 10/19/99 and e-mailed to Victory Energy on May 25, 2001."  (A true and correct copy of that letter and the referenced enclosures is attached hereto as Exhibit A.)  The Aalborg Terms and Conditions included the following confidentiality provision:

> **"CONFIDENTIAL INFORMATION OF SELLER**
> *Any proprietary information received from Seller (including, but not limited to proposals, samples, designs, concepts and drawings)* remains the property of Seller.  *Buyer shall maintain as secret and treat as confidential all proprietary information supplied by Seller* and may not disclose such information to a third party without Seller's prior consent.  Proprietary information shall not include that which is previously known by Buyer, public information, or information received from a third party under no obligation to Seller to hold the information as confidential.  *Buyer may not use any proprietary information received from Seller in performing work for itself or any third party at any time.*  Buyer shall return to Seller all proprietary information upon demand and in no event later than the completion of the work under the Contract.  Drawings supplied to Buyer for maintenance and installation purposes need not be returned to Seller at contract completion."

(*Id.* at PM 1030) (emphasis added)

4

2.     <u>**Other Information In The Public Domain**</u>

Miller further expressed an opinion that "virtually all the configurations and features and many of the particular features of a Keystone® boiler are in the public domain." (P. Miller Dep. at 21:5-10)   He performed research that included internet searches, looking at marketing information, and reviewing books. (P. Miller Dep. at 21:20-22:21)

Miller could not find "the complete package of drawings" for the Keystone® on the internet or in marketing brochures and catalogues. (P. Miller Dep. at 28:5-13)  Nor did he find any Keystone® detailed design drawings during his internet research. (P. Miller Dep. at 24:16-23)  He testified as follows:

> Q:     Is it your testimony that all the design details pertaining to the Keystone® are in the public domain?
>
> A:     *I'm not saying that all the design details for the Keystone® are in the public domain.*  I am saying that all of the information that is necessary to develop a complete drawing package and a complete design for a boiler – *an O type boiler comparable to the Keystone, you know, is available in the public domain* or available … based on information outside the license agreement." (P. Miller Dep. at 139:3-12) (emphasis added)
>
> \* \* \*
>
> Q:     The design details for the Keystone® O type water tube boiler are not in the public domain; correct?
>
> A:     "Not necessarily all of them, and *I have not made a specific determination of what particular design details may be in the public domain or not in the public domain. Actually, I'm more making – more of making a judgment of what design details are in the Voyager design that are available in the public domain.*"
>
> Q:     Did you, as part of your work in this lawsuit, compile a list of Keystone® design details that are in the public domain?
>
> A:     No, I did not, as previously answered.

(P. Miller Dep. at 139:17-140:11) (emphasis added)  His "focus was in trying to identify differences between the VEO Keystone® and the Voyager drawings." (P. Miller Dep. at 66:13-16)

Miller thus did not assess whether the specific detailed design drawings provided to VEO were "generally available" as set forth in Section 5(b) of the License Agreement and thus excluded from the confidentiality obligation in the parties' contract or otherwise in the public domain. Rather, his testimony focused only on whether the general features of the Keystone® -- as opposed to the detailed designs -- were found in other boilers in the marketplace.

> "Q:    Could you use those brochures and catalogues pertaining to the Keystone® that you reviewed in order to design a boiler that was identical to a Keystone® boiler?
>
> A:    I would say that there was adequate information available in the marketplace that a boiler similar to the Keystone® could be designed."

(P. Miller Dep. at 26:6-11) (emphasis added)  When he referred to "information available in the marketplace", he referred to information that applies to all watertube boilers and not just to the Keystone®. (P. Miller Dep. at 27:22-28:4)

* * *

> Q:    And what you're saying is that if you wanted to go out into the public domain and find a design for each of those features [identified by Chris Petcos of IKE as being a trade secret], you could find a design; correct?
>
> A:    I could find a design or I could develop independently a design without relying at all on the Keystone® information.
>
> Q:    Did you, for each of the items identified by Chris Petcos, review the associated Keystone® drawing for that design feature?
>
> A:    For each and every one of them?
>
> Q:    Yes.

A:     Not specifically, because many of them don't reference particular drawings.

Q:     And you did not take the time to ask VEO to provide you the drawings associated with each design feature so you could try to match it up to something in the public domain; correct?

A:     No, I didn't.

Q:     So what you're saying is that if you want to find an example of a feature or if you wanted to develop that particular feature, you can do so; correct?

A:     Yes.

Q:     Okay.  So what you're saying is that a particular concept, such as membrane walls, is in the public domain; right?  (P. Miller Dep. at 142:22-143:9)

A:     Yes, as well as design details that would go along with membrane walls is in the public domain.  (P. Miller Dep. at 142:7-143:14)

Although the general concept or feature may be in the public domain, Miller acknowledges that a particular manufacturer may develop its own designs for how to apply that concept or feature to its boiler.

Q:     When you say in your report that many of the items identified by Mr. Petcos [of IKE as being trade secrets] are commonly known concepts in the industry, do you agree that different manufacturers apply and practice different concepts differently?

A:     Sometimes and sometimes very, very similarly or identically.  (P. Miller Dep. at 144:22-145:5)

Neither Miller's report nor his deposition testimony nor the documents produced by Miller identify how the specific detailed design drawings provided by EPTI to VEO were generally available to the public or otherwise in the public domain.

## III.  **ARGUMENT**

### A.  **Standard**

Whether an expert may testify is entrusted to the trial judge's discretion. *Elcock v. Kmart Corp.*, 233 F.3d 734, 740-41 (3d Cir. 2000). Federal Rule of Evidence 702 reflects the district court's gate keeping role of evaluating expert testimony under *Daubert* and its progeny:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The threshold inquiry under Rule 702 is essentially a balancing test, centering on two factors: (1) the reliability of the scientific principles upon which the expert testimony rests, hence the potential of the testimony to aid the jury in reaching an accurate resolution of a disputed issue; and (2) the likelihood that introduction of the testimony may in some way overwhelm or mislead the jury. *United States v. Downing*, 753 F.2d 1224, 1226 (3d Cir. 1985).

The proponent of an expert must prove by a preponderance of the evidence that his or her testimony is reliable. *Padilas v. Stork-Gamco, Inc.,* 186 F.3d 412, 418 (3d Cir. 1999). The Supreme Court has emphasized that the test for reliability is an "exacting" one. *Weisgram v. Marley Co.*, 528 U.S. 440, 451 (2000). Moreover, the factual predicate of an expert's opinion must find some support in the record. *Pennsylvania Dental Ass'n v. Medical Service Ass'n of Pennsylvania,* 745 F.2d 248, 262 (3d Cir. 1984); *Borough of Olyphant v. PP&L, Inc.*, 2004 U.S. Dist. LEXIS 8958 (E.D. Pa. 2004). Experts' opinions must be based on "knowledge" rather than "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).

Further, admissibility of expert testimony turns not only on reliability, but also whether admitting the evidence would overwhelm, confuse, or mislead the jury. *Sparks v. Consolidated Rail Corp.*, 1995 U.S. Dist. LEXIS 6234 (E.D. Pa. 1995). Expert testimony, like other testimony, must endure a Rule 403 analysis. Federal Rule of Evidence Rule 403 provides that,

> "[although] relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

One factor the court must consider when balancing expert testimony is the danger that the evidence might confuse or mislead the jury through an unwarranted "aura of reliability." *United States v. Downing,* 753 F.2d 1224, 1239 (3d Cir. 1985).

Miller's proposed testimony that IKE's trade secrets, the Keystone® detailed designs, are in the public domain is not helpful to the jury, is unreliable, based on faulty assumptions, and contradicts the facts of the case. Moreover, allowing him to testify to his "public domain" theory would only confuse and mislead the jury.

**B. IKE's Trade Secrets Are Not In The Public Domain**

Under the Pennsylvania Trade Secret Act, a trade secret can be "[i]nformation, including a formula, <u>drawing, pattern, [or] compilation</u> including a customer list, program, device, <u>method, technique, or process</u>." 12 Pa.C.S.A. § 5302[2]. Plaintiff must show that the particular trade secret "(1) Derives independent economic value, actual or potential, from not

---

[2] Prior to the enactment of Pennsylvania's Trade Secret Act, Pennsylvania common law similarly defined a trade secret as "...any formula, pattern, device, or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know how to use it." *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273, 277 (Pa. 1976) (quoting *Van Prods. Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769, 775 (Pa. 1965)).

being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Id. See also Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273, 277 (Pa. 1976) ("...any formula, pattern, device, or compilation of information which is used in one's business, and gives him an opportunity to obtain an advantage over competitors who do not know how to use it."). Notably, a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation in unique combination affords a competitive advantage and is a trade secret. *Anaconda Co. v. Metric Tool & Die Co.*, 485 F. Supp. 410, 422 (E.D. Pa. 1980). A trade secret may be "no more than a slight mechanical advance over common knowledge and practice in the art." *Anaconda Co.*, 485 F. Supp. at 422.

The Keystone® detailed design drawings qualify as trade secrets because they are drawings that compile information on the design, manufacture, and assembly of Keystone® boilers. *See, e.g., DB Riley v. AB Eng'g Corp.*, 977 F. Supp. 84, 90 (D. Mass. 1997)(recognizing that it "is well settled that detailed manufacturing drawings ... are prima facie trade secrets"). Those design drawings have allowed the manufacturing of boilers safely and efficiently and to perform in accordance with predicted performance, including to allow guarantees to be made with respect to the boiler's performance.

One way to destroy a trade secret is to place it in the public domain. *Van Prods. Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769, 775 (Pa. 1965). As described above, Miller has opined that IKE's trade secrets are in the public domain in two contexts. The first context is when IKE provided design drawings ("Heinz drawings") to VEO prior to the execution of the licensing agreement. The second context is based only on the fact

that there are designs of O-type boilers in the marketplace. As outlined below, both of these "public domain" analyses are factually and legally flawed. Further, they are based on incorrect assumptions. His "expert testimony" does not meet the qualifications of Rule 702 and *Daubert*. Further, to allow his flawed and misguided testimony on this subject would only confuse and mislead the jury.

**1. The Heinz Drawings Are Not In The Public Domain.**

Miller's opinion that certain of the Heinz drawings were placed in the public domain because they were given to VEO prior to the execution of the License Agreement is factually and legally flawed.

First, Miller bases his "public domain" opinion on faulty assumptions. He testified that he did not know if there was a confidentiality agreement between the parties regarding the drawings. He further testified that if there was one, then the drawings in possession of VEO would be covered by the confidentiality agreement. As evidenced by the purchase order executed by VEO's President, the sale of the Heinz boilers was subject to a confidentiality agreement that was applicable to any design drawings (among other information) given to VEO in connection with the sale. Therefore, Miller bases his whole "public domain" opinion regarding the Heinz drawings on the incorrect assumption that there was not a confidentiality agreement in connection with the drawings. Under Rule 702, his testimony must be based on the facts of this case. Moreover, his opinion must have "some support in the record." Here, Miller's testimony does not meet those requirements.

Further, by allowing Miller to opine that the Heinz drawings were in the public domain based on a faulty assumption would confuse and mislead the jury more than provide any probative value. This testimony would also mislead the jury by giving factually flawed

information under the "aura of reliability" that VEO's expert may have.  Therefore, under Rule 403 this testimony must also be excluded.

Finally, the fact that there was a confidentiality agreement when the designs were provided to VEO is an appropriate means to maintain a trade secret.  *Highland Tank & MFG. Co. v.PS International, Inc.,* 393 F.Supp. 2d 348 (W.D. Pa. 2005).  To allow even an indicia of testimony that these documents were not confidential and in the public domain would run contrary to the case law as well.

Therefore, Miller's testimony that the Heinz drawings were in the public domain should be excluded because it does not meet the requirements of Federal Rules of Evidence 702 or 403.

### 2.  IKE's Detailed Design Drawings Are Not In The Public Domain.

Miller bases his "public domain" analysis on the incorrect assumption that IKE's trade secrets are the general features of its O-type boiler and that IKE is arguing that it is the only manufacturer who can supply a boiler with those features.  However, the trade secrets at issue here are not the general features of the Keystone® boiler per se and instead are the detailed design drawings that show the designs as developed and applied by IKE, including how the boiler is manufactured and assembled.  The drawings contain (among other things) exact design of parts, the relationship among parts, fabrication and assembly information, and sufficient detail to permit scaling of the product.  A trade secret may be "no more than a slight mechanical advance over common knowledge and practice in the art," *Anaconda Co. v. Metric Tool & Die Co.,* 485 F. Supp. 410, 422 (E.D. Pa. 1980), and the detailed design drawings here ensure provide the roadmap for the exact design and fabrication of the Keystone as refined and proven over time.

Although VEO argues that there can be no trade secret because the boiler is sold into the public, that argument ignores that the detailed designs are not disseminated. Even if a third party were to try to reverse engineer a Keystone® boiler (and there is no evidence that has occurred), the third party would need to create detailed design drawings showing how the boiler is designed, manufactured, and assembled. The drawings thus would start from scratch and would require interpretation and judgment by the author in an attempt to re-create not just the design and each of its constituent parts, but how the parts relate to each and the process for manufacture and assembly – all of which carries a huge margin for error. IKE already has the detailed drawings, which have been refined and proven over time and guaranteed to produce the specific boiler intended by the designs.

In *Anaconda*, the court held that plaintiff's machine that manufactured telephone cord armor was a trade secret, even though many components of the machine were common to the industry. *Anaconda*, 485 F. Supp. 422. To support its position that the machine was not a trade secret, the defendant offered evidence that other manufacturers produced strip-wound metal hose on P&W machines (plaintiff's machine was a P&W machine), that many of the components of plaintiff's machine were common to the industry, and that certain features of plaintiff's machine were similar to those of other machines which had been patented and therefore were open to public inspection. *Id.* at 422. The court held that, "it was the precise configuration, juxtaposition, and assemblage of components and features set forth in Appendix A, rather than the breaking of heretofore unknown ground, which made plaintiff's P&W machine unique. Since this degree of novelty is legally sufficient to constitute a trade secret, we reject defendant's contentions." *Id.*

13

In *Sweetzel* v. *Hawk Hill Cookies*, the Court rejected the defendant's argument that because the ingredients used in the recipe, and the order of magnitude of use, were public knowledge, then the recipe was in the public domain. 1995 U.S. Dist. LEXIS 13495, *32. The court held that the defendant failed to establish that the exact recipes the plaintiff developed were in the public domain. *Id.*

In many respects, detailed design drawings are the recipe for a boiler because they provide step-by-step instruction for design, manufacture, and assembly, including the precise ingredients (*i.e.*, parts), measurements (exact sizes of parts and design of particular features), steps to follow (assembly sequence), and mixing (*i.e.*, the relationship among the parts, including what seals or welds to use). The drawings are configured in a way in order to facilitate understanding as to the design and promote the ease of manufacture and assembly. It definitely provides a competitive advantage to have proven designs that a manufacturer knows will produce a boiler that performs as intended, which is evidenced by the fact that VEO itself sought to purchase the detailed designs from EPTI. Of course, if the detailed designs were in the public domain, VEO would not have sought to purchase them.

VEO's expert completely fails to establish how the specific Keystone® detailed designs are in the public domain. In fact, he even admits that he has, "...not made a specific determination of what particular design details may be in the public domain or not in the public domain." Pointing to verbal descriptions or general schematic (*i.e.*, non-detailed) pictures of a similar feature (such as a watercooled front wall) by other manufactures does not render IKE's detailed drawings of IKE's design and application of that feature in the public domain. The detailed designs themselves must be in the public domain.

Along the same vein, just because IKE's boilers are sold publicly does not automatically place the detailed design drawings in the public domain. *See Smith v. BIC Corporation*, 869 F.2d 194, 200-01 (3d. 1989). This is because even where an article's individual components are part of the prior art or are ascertainable by inspection of sold articles, there still may be a trade secret in the composite or in the manufacturing process. *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 266 n.16 (Pa. 1965).

A public domain analysis involving designs that are trade secrets focuses on whether the detailed designs themselves are in the public domain, not the product or other manufacturers' designs. *See DB Riley, INC. v. AB Engineering Corp.*, 977 F. Supp. 84 (D. Mass. 1997) (Court's public domain analysis for Plaintiff's boiler designs concentrated on whether Plaintiff's own designs were in public domain—the boilers themselves and other manufacturers designs were not considered by the court); *Combustion Engineering v. Murray Tube works*, 1984 U.S. Dist. LEXIS 191995 (E.D. Tenn. 1984) (Court considered only whether Plaintiff's own boiler designs were distributed into the public domain).

Miller's report and testimony fail to point to any evidence that IKE's specific design drawings are in the public domain. He has not even reviewed all of IKE's designs in order to make a public domain determination. Because he has not investigated whether the detailed designs are in the public domain, his opinion that other manufacturers have a similar design is neither helpful to the jury in assessing this issue nor reliable. There also is no factual support for his opinions that the detailed designs are in the public domain. Further, if this testimony is allowed, it would only confuse and mislead the jury because it distracts from the focus on the particular Keystone® drawings and would cause a jury to believe that all designs are the same.

Therefore, he should not be allowed to testify that IKE's trade secrets are in the public domain because there is no factual or legal support for his opinion.

### C. VEO's Exhibits Concerning Public Domain Materials Should Be Excluded.

For the same reasons, virtually all of VEO's exhibits that were not created by IKE or one of its predecessors should be excluded as irrelevant, misleading, confusing, and unfairly prejudicial because they do not bear on the issue of whether the Keystone® detailed designs are in the public domain. Those exhibits consist principally of marketing information from other manufacturers and articles concerning water tube boilers. IKE attaches as Exhibit B a listing of the exhibits from VEO's Exhibit List that should be excluded on these grounds.

### Conclusion

For the foregoing reasons, Indeck Keystone Energy LLC asks the Court to preclude any testimony from Paul Miller that IKE's trade secrets are in the public domain and to exclude the exhibits set forth on Exhibit B.

Respectfully submitted,

/s/     John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Gerald F. DeNotto
600 North Buffalo Grove Road, Suite 300
Buffalo Grove, IL 60089
Telephone: 847-520-3212
Facsimile: 847-520-3235

*Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

Dated:  April 27, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Memorandum of Law in Support of Plaintiff's Motion in *Limine* to Preclude Defendant's Expert Testimony That The Keystone® Detailed Designs Are In the Public Domain** was served upon the following counsel of record by the CM/ECF electronic filing system on the 27th day of April, 2007:

> Christopher T. Sheean, Esquire
> Matthew Garrett, Esquire
> Wildman, Harrold, Allen & Dixon LLP
> 225 West Wacker Drive
> Suite 2800
> Chicago, IL 60606

_____/s/  John K. Gisleson_____