UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : : CIVIL ACTION : : NO. 04-CV-325 (ERIE) : : Judge Sean J. McLaughlin : : : : : : |
| Plaintiff, | |
| v. | |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | |
| Defendant. | |

**PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE OF ALLEGEDLY
DEFAMATORY STATEMENTS AND TORTIOUS INTERFERENCE**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby moves to preclude Victory Energy Operations, LLC ("VEO") from introducing at trial any evidence of allegedly defamatory statements and/or tortious interference by IKE. In support of this Motion, IKE states the following:

**Background**

1. VEO's Second Amended Counterclaim initially asserted six causes of action, through seven separate counts: declaratory judgment (Counts I and VII), breach of the exclusivity covenant of the License Agreement (Count II), intentional interference with VEO's contractual relations with its sales representatives (Count III), violation of the California Business Code (Count IV), intentional interference with VEO's prospective contractual relationship with the University of Notre Dame (Count V), and defamation (Count VI).

2. IKE moved for summary judgment on Counts II through V of VEO's Second Amended Counterclaim.

3. In response to IKE's summary judgment motion, VEO voluntarily withdrew Counts IV and V of its Second Amended Counterclaim.

4. The Court granted summary judgment in IKE's favor on Count II of VEO's Second Amended Counterclaim.

5. Accordingly, only three (3) causes of action remain in VEO's Second Amended Counterclaim: declaratory judgment (Counts I and VII), intentional interference with VEO's contractual relations with its sales representatives (Count III), and defamation (Count VI).

**Evidence of IKE's Allegedly Tortious Interference With VEO's
Sales Representatives Would be Unfairly Prejudicial, Confusing to the Jury,
And a Waste of Time, Because VEO Has No Admissible Evidence of Damages**

6. VEO claims that IKE caused two of VEO's independent sales representative agencies to terminate their respective sales representative agreements with VEO, namely, Christian Power Equipment ("CPE") and Power Systems, Inc. ("PSI"). *See* VEO's Second Amended Counterclaim, at ¶¶ 23 – 41.[1]

7. In order to prevail on its claim for intentional interference with contractual relations, VEO must establish the following elements:

    (1)    an existing contract;

    (2)    the purpose or intent to harm the plaintiff by preventing the relation from occurring;

    (3)    the absence of privilege or justification on the part of the defendant; and

    (4)    the occasioning of <u>actual damage</u> resulting from the defendant's conduct.

---

[1] VEO attempts to make this claim against IKE, even though the sales representative agreements were terminable at-will by either party, and a business competition privilege is applicable to IKE's alleged conduct.

*Thompson Coal Co.,* 412 A.2d 466, 471 (Pa. 1979)(citing *Glenn v. Point Park College,* 272 A.2d 895, 898 (Pa. 1971))(emphasis added).

8. In the case at bar, therefore, VEO will have to prove not only that boilers and equipment were sold in the geographic territories formerly covered by CPE and PSI, but also that those customers actually would have bought those boilers and equipment *from VEO.*

9. During discovery, VEO's own President and corporate designee conceded that VEO is unable to quantify any sales opportunities that it actually lost as a result of the termination of its Sales Representative Agreements with CPE or PSI. *See* Viskup Deposition Transcript, Attached hereto as Exhibit "A", at pp. 38 - 42.

10. In its opinion denying summary judgment to IKE on VEO's tortious interference claim, the Court remarked that VEO's contention that it sustained damages from the loss of CPE and PSI as sales representatives "may have just narrowly cleared the non-speculative hurdle." *See* copy of Opinion/Transcript, attached hereto as Exhibit "B", at pp. 120-21.

11. However, the Court further indicated that it would "re-examine the issue of damages more carefully at a later and appropriate date, perhaps by way of appropriate motion at trial." *Id.*

12. On March 26, 2007, VEO filed its amended pretrial statement in this action, and has completely failed to identify any representatives of corporations or entities who will testify that they actually would have bought boilers or equipment from VEO, had CPE or PSI continued to serve as VEO's sales representatives. *See* VEO's Amended Pretrial Statement, Doc. No. 117, *passim.*

13. Instead of identifying any witnesses competent to testify that they would have bought such boilers and/or equipment from VEO, VEO indicates that its own General Manager,

3

Mark White, "will offer testimony at trial regarding the lost sales." *See* VEO's Amended Pretrial Statement, Doc. No. 117, at p. 27.

14. VEO further indicates that the basis for Mr. White's proffered testimony about lost sales will be: (i) documents evidencing the actual sale of aftermarket and replacement parts that IKE made through CPE[2] after CPE terminated its sales representative agreement with VEO, and (ii) documents evidencing offers that IKE made to sell boilers and parts through CPE after CPE terminated its sales representative agreement with VEO, which *did not* result in the sale of any boiler or parts. *Id.*

15. Federal Rule of Evidence 602 provides that, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

16. Mr. White is employed by VEO, not the customers who purchased parts from IKE, or to whom offers were made by IKE to sell boilers or parts. As such Mr. White has no personal knowledge as to whether any of those customers actually would have made any purchases from VEO, and his testimony to that effect would be nothing more than wild speculation – especially as to the instances where the offer or proposal did not even result in any sale.

17. Because VEO has absolutely no admissible and competent evidence that it actually would have made any sales through CPE or PSI, had those companies not terminated their sales representative agreements with VEO, VEO's tortious interference claim fails as a matter of law.

---

[2] VEO does not even attempt to claim that it has any admissible evidence that it would have made any sales through PSI, had PSI not terminated its sales representative agreement with VEO.

18.  Federal Rule of Evidence 603 provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

19.  The introduction of evidence regarding the voluntary termination by CPE and/or PSI of their respective sales representative contracts with VEO, or any alleged requests by IKE that CPE or PSI terminate such contracts, where VEO's tortious interference claim fails as a matter of law, would be unfairly prejudicial, confuse and mislead the jury, and needlessly delay the completion of a trial that involves complicated issues and technical details, and is expected to last at least two weeks.

20.  Accordingly, the Court should preclude VEO from offering or introducing any evidence at trial regarding the voluntary termination by CPE and/or PSI of their respective sales representative contracts with VEO, and any alleged requests by IKE that CPE or PSI terminate such contracts.

### Evidence of IKE's Allegedly Defamatory Statements Would be Unfairly Prejudicial, Confusing to the Jury, and a Waste of Time, Because VEO has No Admissible Evidence That IKE Caused It to Sustain Damages

21.  VEO's defamation claim is based upon an allegation that Jeff Coale told a representative of the University of Notre Dame ("Notre Dame"), to whom VEO had submitted a bid for the sale of a boiler, that VEO "lacked authority to sell an O type boiler" and "VEO lacked the engineering capability to complete the Notre Dame contract." *See* VEO's Second Amended Counterclaim, at ¶¶ 54, 59 - 60.

22.  Although VEO has not requested leave of Court to further amend its Counterclaim, its defamation claim apparently is also based upon an allegation that IKE's Chris

Petcos' statements to a representative of MECS, Inc., to whom VEO had submitted a bid for the sale of boilers, that "if VEO's proposal is based on technology licensed from IKE, VEO will not be able to fulfill its contract with MECS" and "IKE currently has a lawsuit against VEO for issues surrounding the misuse of Keystone[®] boiler technology." *See* VEO's Amended Pretrial Statement, Doc. No. 117, at p. 26.

23.     In order to prevail on its defamation claim, VEO will have to prove, *inter alia*, that it sustained "special harm" from the foregoing alleged statements. *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F.Supp. 2d 570, 579-80 (E.D. Pa. 1999)(citing 42 Pa.C.S.A. § 8343).

24.     Once again, however, VEO's Amended Pretrial Statement absolutely fails to identify any admissible evidence of any "special harm" resulting from the foregoing allegedly defamatory statements.

25.     To the contrary, Notre Dame's representative expressly testified that the alleged statements about VEO by Mr. Coale were not considered by Notre Dame and had no impact on its decision to award the boiler contract to one of VEO's competitors. *See* excerpts from deposition transcript of Paul Kempf, attached hereto as Exhibit "C".[3]

26.     Similarly, MECS representatives testified that the reason why MECS did not purchase any boilers from VEO is because the project owner decided not to proceed with the project. Furthermore, if the owner reconsiders its decision to refrain from proceeding with the

---

[3] At the time when Mr. Coale allegedly made such statements to Notre Dame, IKE *did not even exist*. Mr. Coale worked for a separate company (Indeck Power Equipment Company) and he allegedly made his statements in July and August 2004. However, IKE was not formed until September 2004. *See* Exhibit "C" and Pennsylvania Department of State Registration summary, attached hereto as Exhibit "D". As a matter of law and common sense, Mr. Coale's alleged statements cannot be imputed to a company that did not even exist at that time, and which has never ratified or adopted such statements.

project, MECS <u>will</u> purchase the boilers from VEO. *See* excerpts from deposition transcript of Caspar Kovarik, attached hereto as Exhibit "E".[4]

27. Because VEO has absolutely no evidence that IKE caused it to sustain "special harm", or any other recoverable damages, VEO's defamation claim fails as a matter of law.

28. The admission of any evidence regarding allegedly defamatory comments about VEO, where VEO's defamation claim fails as a matter of law, would be unfairly prejudicial, confuse and mislead the jury, and needlessly delay the completion of a trial that involves extremely complicated issues and technical details, and is expected to last at least two weeks.

29. Accordingly, the Court should preclude VEO from offering or introducing any evidence at trial regarding any alleged defamatory remarks about VEO.

---

[4] Moreover, Mr. Petcos' alleged statements are not defamatory, as a matter of law. In particular, it is true that if VEO's proposal is based on technology licensed from IKE, VEO will not be able to use that technology, and therefore, will not be able to fulfill its contract with MECS. Similarly, it is true that a lawsuit is pending against VEO for issues surrounding the misuse of Keystone[®] boiler technology.

8

WHEREFORE, Plaintiff, Indeck Keystone Energy, LLC respectfully requests that the within Motion *in Limine* granted, and that the Court preclude VEO from offering at trial any evidence of alleged tortious interference with contracts and defamatory statements.

                                       Respectfully submitted,

                                        /s/   Robert J. Williams
                                       John K. Gisleson (Pa. ID. No. 62511)
                                       Robert J. Williams (Pa. ID. No. 76139)
                                       SCHNADER HARRISON SEGAL & LEWIS LLP
                                       Fifth Avenue Place
                                       120 Fifth Avenue, Suite 2700
                                       Pittsburgh, PA  15222-3001
                                       Telephone: 412-577-5200
                                       Facsimile: 412-765-3858

                                       Attorneys for Plaintiff and Counterclaim Defendant,
                                       Indeck Keystone Energy, LLC

Dated:  April 27, 2007