UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : : : CIVIL ACTION |
| Plaintiff, | : : NO. 04-CV-325 (ERIE) |
| v. | : : Judge Sean J. McLaughlin |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | : : : : |
| Defendant. | : |

**PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE THAT DEFENDANT'S PROFITS SHOULD BE
REDUCED BY INDIRECT OR ALLOCATED OVERHEAD COSTS AND LOSSES**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby moves to preclude Victory Energy Operations, LLC ("VEO") from introducing at trial any evidence that its profits on the sales of Keystone® and Voyager boilers should be reduced by indirect or allocated overhead costs and losses. In support of this Motion, IKE states the following:

**Background**

1.   As set forth in greater detail in the Complaint, IKE was the licensor of certain watertube package boiler technology (the "Old-Style Boilers") to VEO.

2.   Among other things, IKE claims that all of the Old-Style Boilers designed and sold by VEO during the term of the License Agreement contained features and/or technology that exceeded the scope of that agreement.

3.  IKE also contends that VEO misappropriated proprietary information regarding the Old-Style Boilers and other technology/information owned by IKE, *inter alia*, for use in the design and sale of VEO's recently created "Voyager" line of watertube boilers.

4.  Should IKE prevail at trial on those claims, it will be entitled to recover as damages the profits VEO earned on each of the boilers that was outside the scope of the License Agreement, as well as the profits that VEO earns or is expected to earn on the sale of its Voyager boilers.[1]

### The Attempts by VEO to Subtract From Its Profits Both Indirect or Allocated Overhead Costs, As Well as Losses on Certain Projects, Violate Applicable Law

5.  VEO retained Scott A. Stringer to calculate its profit on the sales of the Keystone® and Voyager boilers that are at issue in this action. A true and correct copy of Mr. Stringer's report is attached hereto as Exhibit "A".

6.  In calculating VEO's profit, Mr. Stringer subtracts from revenues a *pro rata* share of VEO's "manufacturing overhead", which he defines as "manufacturing costs that cannot be directly associated with a job." *See* Exhibit "A", at p. 3.

7.  By subtracting the so-called manufacturing overhead from VEO's revenues, Mr. Stringer reduces his calculation of VEO's profit on Keystone® and Voyager boiler sales by $1,765,458 and $1,143,028, respectively. *See* Exhibit "A", at exhibits III and VII.

8.  Furthermore, with respect to the Keystone® boilers in particular, Mr. Stringer's subtraction of manufacturing overhead results in losses for six (6) of eleven (11) projects. Mr.

---

[1] *See* 15 U.S.C. § 1117(a) and *Banjo Buddies v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005)(defendant's profits are recoverable for trademark claims); 12 Pa.C.S.A. § 5304 (a)(defendant's profits are recoverable under the Pennsylvania Uniform Trade Secrets Act); and *Reinforced Molding Corp. v. General Electric Corp.*, 592 F.Supp. 1083, 1088 (W.D. Pa. 1984)(defendant's profits are recoverable under common law claims for misappropriation of trade secrets).

2

Stringer artificially reduces VEO's cumulative profit on the Keystone® projects further, by subtracting those six (6) losses from the aggregate profits earned on the five (5) profitable projects.[2]  *See* Exhibit "A", at exhibit III.

9. Under Pennsylvania law, a defendant is prohibited from subtracting from profit any "pro forma calculations and apportionments of general overhead and administrative expenditures not definitely and specifically concerned with th[e applicable] contracts."  To the contrary, a defendant may subtract from its revenues *only* the "direct, out-of-pocket expenditures directly and specifically attributable to the jobs in question."  *Safway Steel Scaffolds Co. v. Clayton*, 196 A.2d 378 (Pa. 1964).

10. Furthermore, a defendant may <u>not</u> use its losses on one project to offset or reduce its profits on other projects.  *Jones Apparel Group, Inc. v. Steinman*, 466 F.Supp. 560 (E.D. Pa. 1979).

11. The foregoing prohibitions on the use of indirect costs and losses to reduce defendant's profits are consistent with the policy that an aggrieved plaintiff should be made whole.  In that regard, the Third Circuit has observed that it even may be preferable for the plaintiff to receive a "windfall," because otherwise the defendant "would be unjustly enriched and other would-be infringers would be insufficiently deterred."  *Banjo Buddies v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005); *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982) ("the trial courts' primary function should center on making any violations of the Lanham act unprofitable to the infringing party.").

---

[2] Thus, Mr. Stringer understates VEO's profit on the Keystone® projects alone by a total of $2,249,461.  When added to the amount by which he has understated VEO's profits on the sales of Voyager boilers, Mr. Stringer has understated VEO's aggregate profit by a total of $3,392,489.  When Mr. Stringer's analysis of VEO's profit is corrected to conform to the law, VEO's total profit for the sales of all applicable boilers is at least $5,218,031.

12. Federal Rule of Evidence 603 provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

13. The introduction of any evidence regarding VEO's indirect or allocated manufacturing overhead costs and losses would be unfairly prejudicial and misleading to the jury, especially where applicable law specifically prohibits those items from being used to reduce the calculation of defendant's profit.

14. Accordingly, the Court should preclude VEO from offering or introducing any evidence at trial regarding VEO's indirect or allocated manufacturing overhead costs and losses.

WHEREFORE, Plaintiff, Indeck Keystone Energy, LLC respectfully requests that the within Motion *in Limine* granted, and that the Court preclude VEO from offering at trial any evidence of its indirect or allocated manufacturing overhead costs and losses.

Respectfully submitted,

   /s/   Robert J. Williams_
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC

Dated:  April 27, 2007