UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company, | : : : : : CIVIL ACTION : : NO. 04-CV-325 (ERIE) : : Judge Sean J. McLaughlin |
| Plaintiff, | |
| v. | |
| VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION *IN LIMINE*
TO PRECLUDE EVIDENCE THAT DEFENDANT'S PROFIT SHOULD BE REDUCED
BY INDIRECT OR ALLOCATED OVERHEAD COSTS AND LOSSES**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby submits the following Memorandum of Law in support of its Motion to preclude Victory Energy Operations, LLC ("VEO") from introducing at trial any evidence that its profits on the sales of Keystone® and Voyager boilers should be reduced by indirect or allocated overhead costs and losses:

**I.   BACKGROUND**

As set forth in greater detail in the Complaint, IKE was the licensor of certain watertube package boiler technology (the "Old-Style Boilers") to VEO. Among other things, IKE claims that all of the Old-Style Boilers designed and sold by VEO during the term of the License Agreement contained features and/or technology that exceeded the scope of that agreement. IKE

also contends that VEO misappropriated proprietary information regarding the Old-Style Boilers and other technology/information owned by IKE, *inter alia*, for use in the design and sale of VEO's recently created "Voyager" line of watertube boilers.

Should IKE prevail at trial on those claims, it will be entitled to recover as damages the profits VEO earned on each of the boilers that was outside the scope of the License Agreement, as well as the profits that VEO earns or is expected to earn on the sale of its Voyager boilers.[1] In an attempt to mitigate the damages recoverable by IKE, VEO subtracts from its profits certain indirect costs or allocated manufacturing overhead, as well as losses it claims to have incurred on certain projects. However, as set forth in greater detail below, applicable law prohibits VEO from subtracting those items from its profit. Accordingly, VEO should be precluded from introducing or offering at trial any evidence about its indirect costs or allocated manufacturing overhead and losses.

## II.    ARGUMENT

**VEO's Attempts to Subtract From Its Profits Both Indirect Costs, As Well as Losses on Certain Projects, Violate Applicable Law**

Under Pennsylvania law, a defendant is prohibited from subtracting from profit any "pro forma calculations and apportionments of general overhead and administrative expenditures not definitely and specifically concerned with th[e applicable] contracts." *Safway Steel Scaffolds Co. v. Clayton*, 196 A.2d 378 (Pa. 1964). Defendants in that case were plaintiff's former employees, who acquired during their employment sensitive and confidential information about plaintiff's business, and subsequently used it to unfairly compete against plaintiff. *Id*. at 379. As a

---

[1] *See* 15 U.S.C. § 1117(a) and *Banjo Buddies v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005)(defendant's profits are recoverable for trademark claims); 12 Pa.C.S.A. § 5304 (a)(defendant's profits are recoverable under the Pennsylvania Uniform Trade Secrets Act); and *Reinforced Molding Corp. v. General Electric Corp.*, 592 F.Supp. 1083, 1088 (W.D. Pa. 1984)(defendant's profits are recoverable under common law claims for misappropriation of trade secrets).

compromise, the parties agreed that defendants would disgorge their profits for three of the jobs at issue in the action. *Id*.

However, the parties' respective calculations of those profits were grossly disparate. In particular, defendants subtracted from their revenue not only their direct labor and equipment rental costs, but also "indirect operating expenses" consisting of allocated overhead costs, which created losses on all projects. *Id*. Conversely, plaintiff contended that only direct expenditures, i.e., direct labor and direct rental costs, should have been deducted from revenue. *Id.* at 380.

The Pennsylvania Supreme Court found that although both methods of accounting were technically sound, "the fair and proper manner of calculating profits here employed as a restitutional device is to disallow all but those costs directly incurred in completing the designated jobs." *Id.* at 381. Accordingly, the Court held that it is improper to subtract from profit any "pro forma calculations and apportionments of general overhead and administrative expenditures not definitely and specifically concerned with those contracts." *Id*. In so holding, the Court reasoned that "[n]o financial benefit or advantage may accrue to [defendants] by reduction in their fixed charges because of these jobs." *Id*.

Similarly, a defendant may <u>not</u> use its losses on one project to offset or reduce its profits on other projects. *Jones Apparel Group, Inc. v. Steinman*, 466 F.Supp. 560 (E.D. Pa. 1979). That case involved two sales of apparel, one which resulted in a profit and the other in a loss. When the loss was subtracted from the profit, the net or aggregate result was a loss. *Id.* at 562-63. The district court held that defendant was not entitled to offset its profitable apparel sale with the sale that resulted in a loss, stating that "such a result would appear to contravene [the Lanham Act's] postulate that a money judgment in a trademark infringement action is 'subject to the principles of equity'." *Id*.

Such prohibitions on the use of indirect costs and losses to reduce defendant's profits are consistent with the policy that an aggrieved plaintiff should be made whole. In that regard, the Third Circuit has observed that it even may be preferable for the plaintiff to receive a "windfall," because otherwise the defendant "would be unjustly enriched and other would-be infringers would be insufficiently deterred." *Banjo Buddies v. Renosky*, 399 F.3d 168, 178 (3d Cir. 2005); *see also Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982) ("the trial courts' primary function should center on making any violations of the Lanham act unprofitable to the infringing party.").

In the instant matter, VEO retained Scott A. Stringer to calculate its profit on the sales of the Keystone® and Voyager boilers that are at issue in this action. In calculating VEO's profit, Mr. Stringer subtracts from revenues a *pro rata* share of VEO's "manufacturing overhead", which he defines as "manufacturing costs that cannot be directly associated with a job." *See* Exhibit "A", at p. 3. By subtracting the so-called manufacturing overhead from VEO's revenues, Mr. Stringer reduces his calculation of VEO's profit on Keystone® and Voyager boiler sales by $1,765,458 and $1,143,028, respectively. *See* Exhibit "A", at exhibits III and VII.

Furthermore, with respect to the Keystone® boilers in particular, Mr. Stringer's subtraction of manufacturing overhead results in losses for six (6) of eleven (11) projects. Mr. Stringer artificially reduces VEO's cumulative profit on the Keystone® projects further, by subtracting those six (6) losses from the aggregate profit earned on the five (5) profitable projects.[2] *See* Exhibit "A", at exhibit III.

---

[2] Thus, Mr. Stringer understates VEO's profit on the Keystone® projects alone by a total of $2,249,461. When added to the amount by which he has understated VEO's profits on the sales of Voyager boilers, Mr. Stringer has understated VEO's aggregate profit by a total of $3,392,489. When Mr. Stringer's analysis of VEO's profit is corrected to conform to the law, VEO's total profit for the sales of all applicable boilers is at least $5,218,031.

In accordance with *Safway* and *Jones Apparel, supra,* VEO's attempts to reduce its profit with indirect costs, allocated manufacturing overhead and losses are wholly improper and impermissible. Federal Rule of Evidence 603 provides that, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The introduction of any evidence regarding VEO's indirect or allocated manufacturing overhead costs and losses would be unfairly prejudicial to IKE and misleading to the jury, especially where applicable law specifically prohibits those items from being used to reduce the calculation of defendant's profit. Accordingly, the Court should preclude VEO from offering or introducing any evidence at trial regarding VEO's indirect costs or allocated manufacturing overhead and losses.

### III.   CONCLUSION

For the foregoing reasons, the Court should preclude VEO from offering at trial any evidence of its indirect costs or allocated manufacturing overhead and losses.

Respectfully submitted,

   /s/   Robert J. Williams
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC

Dated:  April 27, 2007