UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>NO. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN *LIMINE*
TO EXCLUDE CERTAIN OPINIONS OF PAUL F. MILLER
AND ANY TESTIMONY RELATED THERETO**

Plaintiff, Indeck Keystone Energy, LLC ("IKE"), by and through its undersigned counsel, hereby submits this Memorandum of Law in Support of its Motion in *Limine* to exclude opinions and associated testimony pertaining to Section A, Section B, Section C and Section E of Paul F. Miller's expert report.

## INTRODUCTION

On or about November 8, 2004, IKE filed a Complaint against Victory Energy Operations, LLC ("VEO") alleging various causes of action principally stemming from a License Agreement that was entered into by Erie Power Technologies, Inc. ("EPTI"), plaintiff's predecessor, and VEO ("License Agreement"). Based on the express terms of the License Agreement, VEO was permitted to market and sell tangent tube, refractory wall boilers as

specifically described in Annex I of the License Agreement, as well as to the use of the Keystone® trademark in connection therewith.

Although the parties agree that the License Agreement included the tangent tube technology, the parties take differing positions as to the inclusion of membrane wall technology. Thus, as this Court is well aware, the scope of the License Agreement is the crux of the dispute between the parties. After hearing argument on this issue, the Court denied the parties' respective motions for partial summary judgment and found that there is an "inherent ambiguity" in the License Agreement. 5/10/06 Court Op. Transcp. 117:1-2.

Notwithstanding the fact that this Court ruled that the scope of the License Agreement is a factual determination to be made by the jury, VEO retained Paul F. Miller ("Miller"), an engineer, who authored a report containing his opinions ("Miller Report"). The Miller Report not only renders an opinion on the respective intentions of the parties under the License Agreement, but also on additional factual issues that invade the province of the jury or legal instructions for the Court to give. More specifically, Miller opines that, *inter alia*: a) the License Agreement that was entered into by EPTI and VEO granted VEO the right to manufacture and sell membrane wall O-style boilers; b) VEO had no obligation to use the Keystone® mark on the boilers sold under the License Agreement; c) IKE's design of the membrane wall technology was not a trade secret; and d) the VEO Voyager boiler does not misappropriate any proprietary design features from the Keystone® boiler.

The Court should exclude the portions of the Miller Report and any testimony related thereto because Miller's opinions: (1) invade the province of this Court in instructing the jury on matters of law; (2) supplant the jury's authority to determine the ultimate issue as to the scope of

the License Agreement and the parties' intentions thereunder; and (3) are not supported by facts based on personal knowledge. In sum, the opinions found in Section A, Section B, Section C and Section E of Miller's report and any testimony related thereto do not "assist" the trier-of-fact as required by Rule 702 of the Federal Rules of Civil Procedure and, accordingly, are not admissible.

## ARGUMENT

### I.     STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals.*, 509 U.S. 579 (1993) imposed upon district courts the role of a gatekeeper in order to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589. Accordingly, when "faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* at 592. This gatekeeping function of the district court extends beyond scientific testimony to

3

"testimony based on . . . 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Federal Rule of Evidence 702 provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence. *See Paldillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

The first requirement, whether the witness is qualified as an expert, has been interpreted liberally to encompass "a broad range of knowledge, skills, and training." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). The second requirement provides that the expert's testimony must be reliable. When the expert testifies to "scientific knowledge," the expert's opinions "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation;' the expert must have 'good grounds' for his or her belief." *Id.* at 742 (citing *Daubert*, 509 U.S. at 590).[1]

The final prong requires that the expert testimony "fit" the particular case by assisting the finder of fact. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000). "Admissibility thus depends in part upon the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Id.* (citations omitted).

---

[1] In considering whether there are "good grounds" for the expert's opinions, district courts should look at the following series of factors: (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness' testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. *Paoli*, 35 F.3d at 742 n.8.

Although Miller's credentials may satisfy the first prong of the Rule 702 analysis, however, his opinions are predicated upon subjective beliefs and unsupported speculation. Principles with respect to the requirement that the expert testify to scientific, technical, or other specialized knowledge are particularly pertinent here because Miller does not possess any specialized knowledge and/or training regarding the parties' respective intentions and understanding the License Agreement. Nor does Miller have any first-hand knowledge of the parties' intentions at the time the License Agreement was executed. As such, Miller's opinions regarding the intentions of the parties are nothing more than speculation and he cannot offer any specialized or scientific knowledge that assists the jury.

Federal Rule of Evidence 702 ensures that expert witnesses will not testify about "lay matters which a jury is capable of understanding and deciding without the expert's help." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541(S.D.N.Y. 2004). In other words, experts should not be permitted to supplant the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence. *Paoli*, 35 F.3d at 744. Factual narratives, interpretations of conduct and views as to the motivation of parties are examples of "expert" testimony that have been excluded on those grounds. *See e.g., Taylor v. Evans,* 1997 U.S. Dist. LEXIS 3907 (S.D.N.Y. April 1, 1997); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003).

Likewise, in deciding whether the proposed testimony will be helpful to the factfinder, district courts analyze the testimony to determine whether it usurps the role of the jury in applying that law to the facts before it. *Fantazzi v. Temple Univ. Hosp., Inc.*, 2003 U.S. Dist. LEXIS 9731, *5 (E.D. Pa. May 15, 2003). Thus, although an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or

communicate a legal standard -- explicit or implicit -- to the jury. *See Buerger v. Mays*, 176 F.R.D. 153, 156-57 (E.D. Pa. 1997).

Accordingly, Section A, Section B, Section C and Section E of the Miller Report and any testimony related thereto do not meet the threshold requirements of Rule 702 and should therefore be excluded from trial.

II. **THE OPINION IN SECTION A OF THE MILLER REPORT AND ANY TESTIMONY RELATED THERETO MUST BE EXCLUDED BECAUSE MILLER'S OPINION IS BASED UPON THE SUBJECTIVE INTENT OF THE PARTIES.**

Section A of the Miller Report is entitled "The License Agreement Granted VEO The Right To Manufacture And Sell Membrane Wall O-Style Boilers" whereby Miller states "[i]t is my belief and understanding that **the parties intended** to include welded or membrane wall construction as a feature of the products VEO was authorized to market, sell design and build." (Miller Report, p. 10) (emphasis added). Miller should be precluded from offering his opinion on this issue since this Court has already ruled that the scope of the License Agreement is an issue to be determined by the jury. 5/10/06 Court Op. Transcp. 118:16-20.

Permitting Miller to testify on the intention of the parties negates the role of the jury as the fact finder in this matter. More specifically, both IKE and VEO filed for partial summary judgment whereby each party argued that its respective position regarding the interpretation and scope of the License Agreement and that the License Agreement was clear and unambiguous. After hearing argument on the issue, this Honorable Court denied the parties' motions for summary judgment finding that there is an "inherent ambiguity" in the License Agreement.[2]

---

[2] The Court based its determination on: a) the License Agreement provided in part that: "'Products' shall mean natural circulation, industrial watertube package steam generators with a steam capacity range beginning at 29,000 pph up to and including 150,000 pph. Products shall include but not be limited to the items set forth in Annex I . . ."

6

5/10/06 Court Op. Transcp. 117:1-2. The Court's finding was based on factual evidence –

testimony and documents – that a jury can analyze without expert testimony.

The Court framed the core issue in this case as "whether VEO sold boilers which were outside the scope of the License Agreement entered into between EPTI, plaintiff's predecessor, and VEO." *Id.* 111:23-112:1. In so doing, this Court determined that:

> by examining the content of the annex, one could conclude that the product line was restricted to the M-Series boilers with the older refractory wall technology . . . . On the other hand, . . . the following language appeared in the License Agreement itself: 'Products shall include but not be limited to the items set forth in Annex I.' . . . In short, based upon the discussion above and in light of the previously-described case law, **I find that there is an inherent ambiguity in the agreement.**
>
> \* \* \* \* \*
>
> That said, it is inappropriate for the court to attempt to resolve the previously-described ambiguity in the contract . . . that is a **matter properly reserved for the 'fact finder'** after presentation of the extrinsic evidence. (citing *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993)).

5/10/06 Court Op. Transcp. 116:13-117:2, 118:16-20 (emphasis added).

Subsequently, VEO retained Miller who expressed an opinion that the parties intended to include welded or membrane wall construction as a feature of the products VEO was authorized to market, sell, design and build, despite the fact that this Court has specifically ruled that there is

---

5/10/06 Court Op. Transcp., at 112:20-24; b) Annex I included a description of products as EPTI's M-Series watertube boilers, to include 8M through 22M, which range up to 150,000 pph; *id.* at 113:1-3; c) Annex I was comprised of three separate drawings reflecting refractory wall, as opposed to membrane wall technology; *id.* 113:4-6; d) on February 27, 2003, the parties executed a License Agreement Addendum whereby IKE agreed to modify the products described in Annex I, to include higher pressures; *id.* 113:8-10; e)    subsequently, with the consent of EPTI, VEO sold Keystone® boilers with 100-percent membrane technology for a period of approximately 15 months; *id.* 113:11-13; f)  on March 26, 2004, a letter was sent from EPTI to VEO, wherein, EPTI informed VEO that it was only permitted to market the M-Series boilers; *id.* 113:14-16; and g) Mark White, as representative for VEO, responded by acknowledging that the License Agreement did provide the specific geometry and characteristics of the licensed boilers, but concluded that the feature of the boilers marketed by VEO, while outside the geometry and characteristics of the License Agreement, were "improvements" within the definition of the License Agreement. *Id.* 113:17-22.

7

an "inherent ambiguity" in the License Agreement as to the parties' intentions thereunder. *Id.* at 4-6; 5/10/06 Court Op. Transcp. 116:13-117:2, 118:16-20. Notwithstanding this Court's ruling, Miller attempts to advocate his interpretation of the License Agreement in place of the jury's determination. Specifically, Miller opines that:

> Nothing in the license agreement or any of the annexes or addenda precludes VEO from including membrane walls, also known as welded walls, in its boilers sold under the license agreement. Where a party to a license agreement in the boiler industry wishes to provide an exact specification as to what is not part of the licensed technology, it is incumbent upon the licensor to spell out in the agreement the item or method of manufacturing that the licensee is precluded from using.
>
> * * * * *
>
> [E]ven if it were the original intent of the parties here to license only tangent tube boilers to VEO, Clause 13 would mandate that EPTI provided VEO with the opportunity to use membrane walls.
>
> * * * * *
>
> If membrane walls were not part of what VEO was licensed to sell, there was no reason for EPTI to provide VEO with that information.

(Miller Report, § A, ¶¶ 3, 5 and 6).

Miller's opinions and/or any testimony relating thereto pertaining the intentions of the parties with respect to the License Agreement should be excluded on the basis that Miller's opinions invade the jury's authority to determine the ultimate issue of intent. The scope of the License Agreement and the parties' subjective intent thereunder are factually driven and requires the jury, not an expert, to review and weigh the evidence to determine the scope of the License Agreement. *See Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp. 2d 631, 647 (E.D. Pa. 2004).

Miller's expert discipline is engineering, yet Miller opines on the state of mind of the parties and the intentions of IKE under the License Agreement, which he is neither qualified nor

8

permitted to do. The courts in this circuit have concluded that "intent is not a proper subject for expert testimony." *In re Diet Drugs Prods. Liab. Litig.*, 2000 U.S. Dist. LEXIS 9037, *29 (E.D. Pa. June 20, 2000). As stated by the court in *Diet Drugs*, "the question of intent is a classic jury question and not one for experts." *Id.* (quoting *Voilas v. Gen. Motors Corp.*, 73 F.Supp.2d 452, 585 (D.N.J. 1999)). An expert simply is not in any better position than the jury to assess another's subjective intent. *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 422 (W.D. Pa. 2006).

Not only is Miller's opinion of intent not an appropriate topic for expert testimony, but also it does not meet the threshold standards of Rule 702. In particular, even if such an opinion was relevant, there are serious problems with the reliability of such opinions. Expert witnesses are qualified in particular scientific disciplines. These disciplines do not include knowledge or even experience in the manner in which corporations react, behave or think regarding their non-scientific goals of maintaining a profit-making organization. *Diet Drugs*, 2000 U.S. Dist. LEXIS 9037 at *28-29. Because Miller was not involved in the drafting or negotiation of the License Agreement and the information upon which his opinion is based was obtained from VEO, his opinion regarding intent is inherently unreliable in direct contravention with Rule 702.

The scope of the License Agreement and IKE's intentions thereunder is a factual determination, not one that requires scientific or technical knowledge. As such, Miller should be precluded from proffering opinion testimony on IKE's understanding of the scope of the License Agreement, much less offer his determination that the parties intended to include welded or membrane wall construction as a feature of the products VEO was authorized to market, sell and build. Moreover, Miller's opinions regarding the scope of the license and IKE's subjective intent thereunder is not helpful to the fact-finder. To the contrary, Miller's opinion and testimony

9

would be confusing, misleading and prejudicial and therefore should not be presented at trial. Accordingly, since Miller's opinions do not meet the threshold reliability requirement of Rule 702 and because such testimony invades the province of the jury in determining the ultimate issues in this case, Section A of the Miller Report and any testimony thereto should be excluded. *Diet Drugs*, 2000 U.S. Dist. LEXIS 9037 at *29.

### III. DEFENDANT VEO SHOULD BE PRECLUDED FROM OFFERING THE EXPERT REPORT AND TESTIMONY OF PAUL F. MILLER PERTAINING TO VEO'S OBLIGATION TO USE THE KEYSTONE® MARK.

In addition to opining on the products within the scope of the License Agreement, Miller also offers his opinion as to VEO's obligation to use the Keystone® mark on the boilers sold under the License Agreement. Specifically, Miller states "VEO had no obligation to include a plate on the boilers that included the use of the Keystone trademark." (Miller Report, § B, ¶ 1). Although Miller's area of expertise is engineering, Miller proffers his "expert" testimony in Section B as to the intentions of the parties with respect to the use of the Keystone® mark.

Miller's opinion is predicated upon nothing more than his interpretation of Clause 15 of the License Agreement. The speculative nature of Miller's opinion is evidenced by his complete disregard of Mark White's testimony that VEO had an obligation under Clause 15 to include a plate on all of the boilers sold under the License Agreement that included the use of the Keystone® trademark. More specifically, Mark White stated:

> **Q.** Looking back at White Exhibit 7, which is the executed copy of the license agreement, on Page VEO1185 under Clause 15, trademarks, Paragraph A, grant of license, it reads: "For the duration of this agreement, Licensee shall be permitted to use the mark royalty free on the products manufactured by Licensee. <u>The mark shall be affixed to a plate appearing on each product supplied by Licensee upon which there shall be an indication that the products were supplied by Licensee under license from Licensor</u>."

10

> Was it your understanding that under that clause, VEO did not
> have an obligation to include a reference to the licensor and to put
> the mark on a plate appearing on each product?
>
> \* \* \* \* \*
>
> **A.** Well, according to the license agreement, 15-A, <u>it would
> appear that it should have been put on the -- on the product</u>.

(10/14/05 M. White Dep., 146:19 – 147:17) (emphasis added).

Factual disputes concerning the interpretation of contracts are to be determined by the jury. Although, expert testimony can be used to explain scientific, technical, or other specialized knowledge to clarify terms of art, science, trade, or other industry-specific language, where scientific, technical, or other specialized explanation is unnecessary, expert opinion testimony offered to interpret contract language is inadmissible. *Scopia Mortgage. Corp. v. Greentree Mortgage Co., L.P.*, 184 F.R.D. 526, 531 (D.N.J. 1998) (citing *Int'l Paper Co. v. Standard Indus., Inc.*, 389 F.2d 99, 102 n.2 (10th Cir. 1968)).

In this case, Miller proffers testimony that VEO had no obligation to include the Keystone® mark on the boilers it sold under the License Agreement. Miller is not testifying about a technical term which requires scientific, technical, or other specialized knowledge. Rather, Miller is in no better position to interpret the meaning of Clause 15 than the jury since the interpretation is reliant upon a plain reading of the contract and the intention of the parties. *Gallatin Fuels*, 410 F. Supp. 2d at 422.

Further, the principal objection of contract interpretation is determining the intent of the parties at the time the contract was signed. *Winstar Corp. v. United States*, 64 F.3d 1531, 1540 (Fed. Cir. 1995) (*en banc*), *aff'd*, 518 U.S. 839 (1996). This analysis, however, focuses upon the parties' jointly held intent. The subjective, unexpressed intent of one party, or post-hoc "interpretation" of what a party believed when entering into a certain type of contract (especially

11

when offered by a third-party "expert") is irrelevant for interpreting the contract. *PLC Constr. Servs., Inc. v. United States*, 47 Fed. Cl. 745 (Fed. Cir. 2000). As previously noted, "the question of intent is a classic jury question and not one for experts." *Diet Drugs*, 2000 U.S. Dist. LEXIS 9037 at *29.

Miller's opinion that VEO had no obligation to use the Keystone® mark on the boilers sold under the License Agreement is a factual determination, not one that requires scientific or technical knowledge. As such, Miller should be precluded from providing opinion testimony on VEO's obligation (or lack thereof) to use the Keystone® mark. Moreover, Miller's opinions regarding IKE's subjective intent regarding VEO's obligation to use the Keystone® mark is not helpful to the fact-finder. To the contrary, Miller's opinion and testimony would be confusing, misleading and prejudicial and, therefore should not be presented at trial. Accordingly, since Miller's opinions do not meet the initial reliability requirement of Rule 702 and because such testimony invades the province of the jury in determining the ultimate issues in this case, Section B of the Miller Report and any testimony thereto should be excluded.

IV. **SECTION C OF THE MILLER REPORT AND ANY TESTIMONY RELATED THERETO MUST BE PRECLUDED BECAUSE THE EXISTENCE OF A TRADE SECRET IS A FACTUAL DETERMINATION TO BE MADE BY THE JURY, AND THE LEGAL NUANCES OF TRADE SECRET LAW ARE NOT APPROPRIATE TOPICS FOR EXPERT OPINION.**

   A. **Miller Should Be Precluded From Testifying About the Definition and Requirements of Trade Secret Law.**

Under Rule 702, the Court instructs the jury on legal principles. Fed. R. Evid. 702; *Hill v. NSB Niederelbe Schiffahrtsges MBH & Co.*, 2004 U.S. Dist. LEXIS 4837, *3 (E.D. Pa. Mar. 5, 2005). Miller invades this role in Section C of the Miller Report by referring to legal principles:

> I am aware of only three ways to protect a company's technology: patents, copyrights and trade secrets . . . [i]nformation can only be

12

> considered a trade secret where its holder has maintained the information as confidential. . . could only claim information was a trade secret where that information was not generally known or readily accessible by the company's competition or the public.[3]

(Miller Report, § C, ¶ 1).

The trial judge has broad discretion over the admissibility of expert testimony, including the matters about which an expert may testify. *Majestic Marine Co. v. Atkinson & Mullen Travel, Inc.*, 2005 U.S. Dist. LEXIS 4822, *7 (E.D. Pa. Mar. 2, 2005) (citing *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987) and *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)). Although Miller's opinion can embrace the ultimate issue to be decided by the jury, Miller cannot tell the jury what result to reach, and he cannot offer legal conclusions. *Id.*

> The definition of a trade secret and the protections required to maintain a trade secret exists are opinions expressed in the Miller Report. Section C of the Miller Report proffers not only legal principles, but also combines legal principles with factual conclusions. Miller's enunciation of legal principles and determination of factual conclusions usurp both the role of the trial judge and jury. *Fantazzi*, 2003 U.S. Dist. LEXIS 9731 at *5. Thus, although an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or communicate a legal standard -- explicit or implicit -- to the jury. *See Buerger*, 176 F.R.D. at 156-57. Thus, the portions of Section C of the Miller Report that express legal principles and factual conclusions based thereon, should be excluded since they impede upon the role of the Court.

---

[3] Additionally, Miller states "IKE has identified no patents applicable to the Keystone boiler . . . and no infringement by VEO of any patents . . ." (Miller Report, p. 7, § C, ¶ 1). This statement connotes a negative implication that IKE did something wrong by not patenting its designs. Further, Miller opines "it would be very difficult to obtain a valid patent on a design feature of an O style waterube package boiler . . ." *Id.* Miller has not been designated as a patent expert to testify on claim construction, infringement, and the status of IKE's boiler as a patented device. As such, Miller should be precluded from offering an opinion regarding patents since such testimony would be confusing and misleading to the jury, not to mention Miller's lack of expertise in the area of patent claims.

13

B.  **Miller Should Be Precluded From Testifying Whether IKE's Membrane Wall Technology Constitutes a Trade Secret.**

Section C of the Miller Report should be excluded on the basis that whether IKE's membrane wall technology constitutes a trade secret is a question of fact for the jury and not a determination to be made by Miller. Miller opines, "IKE has failed to identify any information or technology that could reasonably be considered either proprietary or unique to the Keystone boiler." (Miller Report, p. 10). Miller's proffered testimony regarding the existence of a trade secret is not a proper subject matter for expert testimony. Rather, the question of whether certain information constitutes a trade secret is a question of fact to be resolved by the jury or the trier of fact. *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 393 F. Supp. 2d 348, 354 (W.D. Pa. 2005); *West Mountain Poultry Co. v. Gress*, 455 A.2d 651, 652 (Pa. Super. Ct. 1982).

Further, expert testimony that merely tells the jury what result to reach is improper. Fed. R. Evid. 704, Advisory Committee Notes (1972); *Burger*, 176 F.R.D. at 156-57. Notably, the portions of the Miller Report addressing issues of whether or not IKE protected the designs of the Keystone® appear to be more in the nature of legal argument more appropriately contained in a brief or memorandum, and testimony consistent with those excerpts are plainly excludable. *See Bausch & Lomb, Inc. v. Alcon Lab., Inc.*, 79 F.Supp.2d 252, 258 (W.D.N.Y. 2000).

Whether IKE's detailed design drawings are trade secrets is a factual determination to be made by the jury. As such, Miller's conclusion that IKE's does not possess any proprietary or unique technology is not helpful to the fact-finder. Indeed, there is no requirement under the Pennsylvania Unfair Trade Secret Act that the technology be "unique" or proprietary." To the contrary, Miller's opinion and testimony would be confusing, misleading and prejudicial and, therefore should not be presented at trial. Accordingly, since Miller's opinions do not meet the

14

threshold reliability requirement of Rule 702 and because such testimony invades the province of the jury in determining the ultimate issues in this case, the opinions contained in Section C of the Miller Report and any testimony thereto should be excluded. *Diet Drugs*, 2000 U.S. Dist. LEXIS 9037 at *29.

V. **MILLER'S OPINION AND TESTIMONY THAT VEO DID NOT MISAPPROPRIATE TRADE SECRETS IS INADMISSIBLE SINCE MILLER'S OPINION AND TESTIMONY ARE MERE FACTUAL CONCLUSIONS THAT TELL THE TRIER OF FACT WHAT CONCLUSIONS TO REACH.**

Section E of the Miller Report is entitled "The Design of VEO's Voyager Boiler In No Way Copies Or Misappropriates Any Proprietary Design Or Technology From The Keystone Boiler." (Miller Report, § E, ¶ 1). Section E of the Miller Report and any testimony related thereto must be excluded on the basis that the opinions contained therein are merely factual conclusions that fail to help the fact finder in rendering its decision.

Expert testimony does not "assist" the trier-of-fact, as required by Fed. R. Evid. 702, if it undermines the judge's power to instruct the law or the trier-of-fact's power to decide the meaning of evidence. The most common reason for excluding such testimony is that it is not helpful to the fact finder. "The testimony supplies [the trier-of-fact] with no information other than the witness's view of how the verdict should read." 97 Harv. L. Rev. 797 (1984). *See also Weinstein's Federal Evidence* (2000), §704.04.

Even though Rule 704 of the Federal Rules of Evidence permits expert testimony that is otherwise inadmissible if "it embraces an ultimate issue to be decided by the trier of fact,"

> [t]he abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rules 701 and 702 [of the Federal Rules of Evidence], opinions must be helpful to the trier of fact, and Rule 403 [of the Federal Rules of Evidence] provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the [trier-of-fact] what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

15

Fed. R. Evid. 704, Advisory Committee Notes (1972). Thus, "the trial judge ought to insist that a proffered expert bring more to the [trier-of-fact] than the lawyer can offer in argument." *In Re Air Crash Disaster at New Orleans, LA.*, 795 F.2d 1230, 1233 (5th Cir. 1986). *See also Scopia Mortgage Corp. v. Fed. Deposit Ins. Corp.*, 184 F.R.D. 526, 531 (D.N.J. 1998) (finding an expert report is not admissible if it merely performs the function of commenting upon the facts and circumstances of a case in much the same way as counsel does in oral summations).

Whether IKE possessed trade secrets and whether VEO misappropriated the same are factual determinations for the jury. Miller does not assist the trier of fact by rendering a decision on complex factual matters - instead, he merely summarizes the facts and circumstances of the case from the VEO's perspective. Moreover, he admitted that he simply looked for differences in the design of the Voyager and whether the general features --- as opposed to detailed designs --- are in the public domain. Thus, the opinions in Section E the Miller Report serve as nothing more than an additional legal brief on behalf of VEO and, therefore, Section E must be excluded.

VI. **DEFENDANT VEO SHOULD BE PRECLUDED FROM OFFERING THE EXPERT REPORT AND TESTIMONY OF PAUL F. MILLER PERTAINING TO CUSTOM AND PRACTICES IN THE BOILER INDUSTRY.**

The Miller Report contains numerous references to the custom and practice in the boiler industry with respect to License Agreements. However, this information is confusing and misleading since Mark White ("White") and John Viskup ("Viskup") were novices in negotiating license agreements in the boiler industry. As such, the portions of the Miller Report and any testimony related to the custom and practice of license agreements in the boiler industry should be precluded at trial since it is not relevant to the drafting and negotiation of the License Agreement at issue in this case and will not be helpful to the jury in determining the interpretation of the parties' intentions. Further, Miller's proffered testimony regarding custom

and practice with respect to License Agreements in the boiler industry will be confusing, misleading and prejudicial.

Notably, it is an indisputable fact that the License Agreement that was drafted by White, as the representative for EPTI, was the very first license agreement that he drafted. Specifically, White testified:

> Q. Had you ever previously drafted a license agreement?
> A. No.
> Q. This is the very first license agreement you ever drafted?
> A. Yes, sir.

(10/14/05 M. White Dep., 43:1-6). Similarly, Viskup, as the representative for VEO, had no experience in the licensing of products in the boiler industry. Specifically, Viskup testified that the License Agreement with EPTI was the first time VEO had licensed technology. (J. Viskup Dep. 66:18-21). As such, Viskup had no more experience in negotiating license agreements within the boiler industry than White. Therefore, the opinions of Miller pertaining to the alleged practices that are customary with respect to license agreements in the boiler industry are irrelevant since White and Viskup had no personal experience with the alleged custom and practices.

Miller reviewed White's deposition testimony and had the opportunity to converse with both White and Viskup and therefore should have been aware that White and Viskup had no knowledge of customary practices with respect to license agreements in the boiler industry. Notwithstanding this fact, Miller states "parties to a license agreement in [the boiler] industry will often structure the parameters of the agreement to allow for flexibility between the parties and give the licensee the best opportunity to be successful in marketing and selling the licensed products to the benefit of both parties." (Miller Report, p. 4, § A, ¶ 1). Further, Miller opines that:

17

> [c]ommercial reality also supports the conclusion that EPTI
> intended to include membrane walls as part of the technology
> licensed to VEO. It would be unreasonable for anyone
> knowledgeable about the boiler industry to expect a company to be
> successful in marketing or selling boilers in 2003 or afterwards that
> were all tangent tube in design.

(Miller Report, p. 5, § A, ¶ 7). Yet, the focus is what these parties intended to license, and what other parties may want to license in irrelevant, misleading and confusing.

Further, in attempting to base a contract term or provision upon an industry custom or practice, VEO has the burden of providing evidence that clearly establishes either that the other party has actual knowledge of the custom or that the custom or practice is so notorious, well established, and reasonable that the other party should have such knowledge. *B.P. Apparel, Inc. v. Hunt*, 1999 U.S. Dist. LEXIS 9632, *15 (E.D. Pa. June 15, 1999) (citing *Jacobson v. Leonard*, 406 F.Supp. 515, 520-21 (E.D. Pa. 1976); *Leslie v. Pennco*, 470 A.2d 110, 113-14 (Pa. Super. Ct. 1983)). Because both White and Viskup have testified that they did not have experience in negotiating license agreements in the boiler industry, VEO can not meet its burden.

## CONCLUSION

For the foregoing reasons, Plaintiff, Indeck Keystone Energy, LLC respectfully request that this Honorable Court grant its Motion and exclude the Section A, Section B, Section C and Section E of Paul F. Miller's expert report and any testimony related thereto.

          Respectfully submitted,

          /s/   John K. Gisleson
          John K. Gisleson (Pa. ID. No. 62511)
          Robert J. Williams (Pa. ID. No. 76139)
          Jennifer A. Callery (Pa. ID. No. 91421)
          SCHNADER HARRISON SEGAL & LEWIS LLP
          Fifth Avenue Place
          120 Fifth Avenue, Suite 2700
          Pittsburgh, PA  15222-3001
          Telephone: 412-577-5200
          Facsimile: 412-765-3858

          *Attorneys for Plaintiff and Counterclaim Defendant,*
          *Indeck Keystone Energy, LLC*

Dated:  April 27, 2007

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law In Support of its Motion In *Limine* To Exclude Certain Portions of Paul F. Miller and Any Testimony Related Thereto** was served upon the following counsel of record by the CM/ECF electronic filing system on the 27th day of April, 2007:

>Christopher T. Sheean, Esquire
>Matthew Garrett, Esquire
>Wildman, Harrold, Allen & Dixon LLP
>225 West Wacker Drive
>Suite 2800
>Chicago, IL 60606


                                            /s/ John K. Gisleson