UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | :<br>:<br>:<br>: CIVIL ACTION<br>:<br>: NO. 04-CV-325 (ERIE)<br>:<br>: Judge Sean J. McLaughlin<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE* NO. 3 BARRING
EVIDENCE THAT DEFENDANT BREACHED THE LICENSE AGREEMENT**

Plaintiff Indeck Keystone Energy LLC ("IKE") submits this memorandum of law in opposition to Defendant's Motion *in Limine* No. 3, which seeks to prevent IKE from introducing evidence that VEO breached the License Agreement during the time that IKE's predecessor-in-interest, Erie Power Technologies, Inc. ("EPTI"), was licensor. Of course, IKE stands in EPTI's shoes for purposes of the License Agreement; therefore, conduct prior to IKE's acquisition of EPTI's assets is relevant. That evidence is directly relevant to a number of factual issues that are central to Plaintiff's claims. The Motion's attempt to exclude probative, admissible evidence should be denied.

## **ARGUMENT**

VEO makes the following simplistic argument: because IKE seeks monetary damages only for the period of time that IKE was licensor, IKE may not introduce evidence that VEO breached the License Agreement during the time that EPTI was licensor. That evidence supposedly "would be grossly prejudicial and totally irrelevant to the claims at issue to allow IKE to introduce evidence that VEO violated the License Agreement where IKE has failed to assert such a claim." (VEO Motion, ¶¶ 3-4) As with its Motions *in Limine* Nos. 1 and 2, VEO again fails to identify specific evidence to support its argument that the evidence is "totally irrelevant," making it difficult to respond with specificity. Nevertheless, evidence of VEO's conduct while EPTI was licensor is relevant in at least the respects set forth below.[1]

First, the Court has found that the License Agreement is ambiguous as to what the licensed product was intended to be. The course of performance between VEO and EPTI is relevant to interpretation of the Agreement. *Atlantic Richfield Co. v. Razumic,* 390 A.2d 736, 741 n.6 (Pa. 1978) ("course of performance is always relevant in interpreting a writing"); *see also Regscan, Inc. v. Con-Way Transp. Servs.,* 875 A.2d 332, 339 (Pa. Super. Ct. 2005) ("any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement"). For example, and without limitation, EPTI sent VEO a letter on March 26, 2004 on the subject of "concerns" that EPTI had with VEO's performance of the Agreement during the prior year. That letter specifically stated that VEO was selling boilers outside the geometry and characteristics of the product covered by the Agreement – basically, that VEO breached the Agreement. VEO responded in a letter dated March 30, 2004 that the Agreement does contain specific geometry and characteristics and that the features identified by

---

[1] The Court can issue a limiting instruction as to this evidence if VEO believes one is appropriate.

EPTI in its March 26 correspondence (including membrane walls) were outside the Agreement. VEO therefore admitted the fundamental point argued by IKE in this lawsuit: Annex I to the Agreement specifically defines the product, and that product does not include membrane walls. VEO made that admission in the context of a claim of breach by the licensor at a time before IKE owned the technology and before there was a lawsuit, making the admission especially probative because VEO was being candid with the original licensor. Moreover, the VEO representatives responsible for the letter were the two people at the center of the discussions during negotiation of the Agreement, making the admission even more probative and relevant to their true understanding of the licensed product.

Second, that evidence demonstrates that VEO began selling boilers outside the scope of the agreement before IKE was licensor and failed to stop after IKE became licensor. Both EPTI and IKE gave express instruction to limit sales to the Standard M-Series boiler, but VEO refused. VEO's conduct is relevant to whether it acted willfully in continuing to use the Keystone® trademark for a product outside the scope of the License Agreement.

Third, the evidence is relevant to VEO being instructed to discontinue use of the custom designs provided for a specific project and for which permission was granted on a case-by-case basis. Misappropriation under the Pennsylvania Uniform Trade Secrets Act includes use under circumstances where VEO knew it had a duty to refrain from use. *See* 12 Pa.C.S.A. § 5302. The evidence will demonstrate that VEO knew it did not have permission to use the custom designs, supporting the trademark, trade secrets, unfair competition, and unjust enrichment claims.

Fourth, the evidence will demonstrate that VEO took advantage of a financially distressed licensor (EPTI) for its own benefit in marketing materials, in sales proposals, and in

failing to include the Keystone® name on boilers. EPTI tried to rein in VEO through the March 26, 2004 correspondence, but VEO refused. VEO then stepped up its improper actions while IKE was licensor, going even farther with its misleading and unfair use of the Keystone® trademark for VEO's benefit, holding itself out as having developed the designs and even as owning those designs. The evidence of VEO's misconduct during both the EPTI and IKE time periods will demonstrate that VEO at all times was acting intentionally – rather than innocently – to further its own interests without regard to any contractual limitations. The evidence will give context to VEO's actions, as well as to show that VEO was not making full disclosure to EPTI. This is directly relevant to the unfair competition and unjust enrichment claims.

Fifth, the evidence concerning VEO's actions while EPTI was licensor will demonstrate that EPTI did not have full knowledge of what VEO was doing, which will counteract VEO's argument that all of its activities were within the scope of the Agreement. For example, VEO has argued that EPTI provided VEO with marketing materials that included non-conforming design features, which VEO argues is evidence of intent as to the meaning of the agreement. Yet when EPTI sought copies of those materials as used by VEO, VEO refused to provide them, claiming they were proprietary, without stating that EPTI somehow had approved them. The evidence will support an inference that VEO refused to provide the materials because it knew its actions were unauthorized and improper.

Finally, the evidence shows that there was nothing improper or unfair about IKE's instruction to VEO to stop selling non-conforming boilers given VEO's actions while EPTI was licensor.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Indeck Keystone Energy LLC asks the Court to deny Defendant's Motion *in Limine* No. 3 Barring Evidence that Defendant Breached the License Agreement.

Respectfully submitted,

   /s/   John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
Jennifer A. Callery (Pa. ID. No. 91421)
SCHNADER HARRISON SEGAL & LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

*Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

Dated:  May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* No. 3 Barring Evidence that Defendant Breached the License Agreement** was served upon the following counsel of record by the CM/ECF electronic filing system on the 2nd day of May, 2007:

        Christopher T. Sheean, Esquire
        Matthew Garrett, Esquire
        Wildman, Harrold, Allen & Dixon LLP
        225 West Wacker Drive
        Suite 2800
        Chicago, IL 60606

                                    /s/    John K. Gisleson
                                  John K. Gisleson