UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INDECK KEYSTONE
ENERGY, LLC, a Delaware limited liability
company,

   Plaintiff,

 v.

VICTORY ENERGY
OPERATIONS, LLC, a Delaware limited
liability company,

   Defendant.

:
:
:
:
:
:  CIVIL ACTION
:
:  NO. 04-CV-325 (ERIE)
:
:  Judge Sean J. McLaughlin
:
:
:
:
:

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE NO. 10 SEEKING
TO BAR REFERENCE TO ANY MISCONDUCT
OCCURRING PRIOR TO SEPTEMBER 8, 2004

  Plaintiff Indeck Keystone Energy LLC ("IKE") submits this memorandum of law in opposition to Defendant's Motion *in Limine* No. 10, which seeks to prevent IKE from introducing evidence of "misconduct" by VEO prior to September 8, 2004, which is when IKE became licensor. VEO again fails to identify the specific evidence that it seeks to exclude, so it is difficult to respond to the Motion. Nevertheless, this Motion is a variation of VEO's Motion *in Limine* Nos. 3 and 11, which sought to prevent evidence that VEO breached the License Agreement during the time that IKE's predecessor-in-interest, Erie Power Technologies, Inc. ("EPTI"), was licensor. Of course, IKE stands in EPTI's shoes for purposes of the License Agreement; therefore, conduct prior to September 8, 2004 is relevant. This evidence is directly

relevant to a number of factual issues that are central to Plaintiff's claims. The Motion's attempt to exclude probative, admissible evidence should be denied.

## ARGUMENT

VEO makes the following argument: "Allowing Plaintiff to reference or seek to introduce evidence of alleged misconduct that occurred before Plaintiff became the Licensor under the Agreement and after Plaintiff's predecessor represented [in an asset sale agreement pertaining to the sale of the Keystone® technology] that there were no known violations of any license agreement would be unduly prejudicial to Defendant while being confusing and misleading to the jury." (VEO Motion at p.2, ¶ 7)[1]

First, the Court has found that the License Agreement is ambiguous as to what the licensed product was intended to be. The course of performance between VEO and EPTI is relevant to interpretation of the Agreement. *Atlantic Richfield Co. v. Razumic,* 390 A.2d 736, 741 n.6 (Pa. 1978) (stating that "course of performance is always relevant in interpreting a writing"); *see also Regscan, Inc. v. Con-Way Transp. Servs.,* 875 A.2d 332, 339 (Pa. Super. Ct. 2005) (finding that "any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement"). For example, and without limitation, EPTI sent VEO a letter on March 26, 2004 on the subject of "concerns" that EPTI had with VEO's performance of the Agreement during the prior year. That letter specifically stated that VEO was selling boilers outside the geometry and characteristics of the product covered by the Agreement – basically, that VEO breached the Agreement and otherwise took actions it was not permitted to take. VEO responded in a letter dated March 30, 2004 that the Agreement does contain specific geometry and characteristics and that the features identified by EPTI in its

---

[1] The Court can issue a limiting instruction as to this evidence if VEO believes one is appropriate.

2

March 26 correspondence (including membrane walls) were outside the Agreement. VEO therefore admitted the fundamental point argued by IKE in this lawsuit: Annex I to the Agreement specifically defines the product, and that product does not include membrane walls. VEO made that admission in the context of a claim of breach by the licensor at a time before IKE owned the technology and before there was a lawsuit, making the admission especially probative because VEO was being candid with the original licensor. Moreover, the VEO representatives responsible for the letter were the two people at the center of the discussions during negotiation of the Agreement, making the admission even more probative and relevant to their true understanding of the licensed product.

Second, that evidence demonstrates that VEO began marketing and selling boilers outside the scope of the agreement before IKE was licensor and failed to stop after IKE became licensor. Both EPTI and IKE gave express instruction to limit marketing and sales to the Standard M-Series boiler, but VEO refused. VEO's conduct is relevant to whether it acted willfully in continuing to use the Keystone® trademark for a product outside the scope of the License Agreement and otherwise engaged in unfair competition.

Third, the evidence is relevant to VEO being instructed to discontinue use of the custom designs provided for a specific project and for which permission was granted on a case-by-case basis. Misappropriation under the Pennsylvania Uniform Trade Secrets Act includes use under circumstances where VEO knew it had a duty to refrain from use. 12 Pa.C.S.A. § 5302. The evidence will demonstrate that VEO knew it did not have permission to use the custom designs and acted contrary to its limited rights, supporting the trademark, trade secrets, unfair competition, and unjust enrichment claims.

Fourth, the evidence will demonstrate that VEO took advantage of a financially distressed licensor (EPTI) for its own benefit in marketing materials, in sales proposals, and in failing to include the Keystone® name on boilers. EPTI tried to rein in VEO through the March 26, 2004 correspondence, but VEO refused. VEO then stepped up its improper actions while IKE was licensor, going even farther with its misleading and unfair use of the Keystone® trademark for VEO's benefit, holding itself out as having developed the designs and even as owning those designs. The evidence of VEO's misconduct during both the EPTI and IKE time periods will demonstrate that VEO at all times was acting intentionally – rather than innocently – to further its own interests without regard to any contractual limitations. It shows a continuum of conduct culminating with the misappropriation of detailed Keystone® designs. This is directly relevant to the unfair competition and unjust enrichment claims.

Fifth, the evidence concerning VEO's actions while EPTI was licensor will demonstrate that EPTI did not have full knowledge of what VEO was doing, which will counteract VEO's argument that all of its activities were within the scope of the Agreement and its argument as to the significance of EPTI's "representation" in the asset sale agreement for the Keystone® assets that there were no violations of a license agreement.[2] For example, VEO has argued that EPTI provided VEO with marketing materials that included non-conforming design features, which VEO claims is evidence of intent as to the meaning of the agreement. Yet when EPTI sought copies of those materials as used by VEO, VEO refused to provide them, stating they were proprietary, without asserting that EPTI somehow had approved them. The evidence

---

[2] That representation did not cover all EPTI employees and was limited to the "actual knowledge" of certain individuals. The representation did not cover, for example, the knowledge or belief of Robert Gdaniec, who wrote the March 26, 2004 letter. In any case, VEO's reliance on that "representation" is a factual issue it can raise that the jury can weigh with the other evidence in the case; it is not a basis for excluding other evidence that is "bad" for VEO.

4

will support an inference that VEO refused to provide the materials because it knew its actions were unauthorized and improper.

Finally, the evidence shows that there was nothing improper or unfair about IKE's instruction to VEO to stop selling non-conforming boilers given VEO's misconduct while EPTI was licensor.

## CONCLUSION

For the foregoing reasons, Plaintiff Indeck Keystone Energy LLC asks the Court to deny Defendant's Motion *in Limine* No. 10 Seeking to Bar Reference to Any Misconduct Occurring Prior to September 8, 2004.

                    Respectfully submitted,

                    /s/   John K. Gisleson
                    John K. Gisleson (Pa. ID. No. 62511)
                    Robert J. Williams (Pa. ID. No. 76139)
                    Jennifer A. Callery (Pa. ID. No. 91421)
                    SCHNADER HARRISON SEGAL & LEWIS LLP
                    Fifth Avenue Place
                    120 Fifth Avenue, Suite 2700
                    Pittsburgh, PA  15222-3001
                    Telephone: 412-577-5200
                    Facsimile: 412-765-3858

                    *Attorneys for Plaintiff and Counterclaim Defendant,*
                    *Indeck Keystone Energy, LLC*

Dated: May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* No. 10 Seeking to Bar Reference to Any Misconduct Occurring Prior to September 8, 2004** was served upon the following counsel of record by the CM/ECF electronic filing system on the 2nd day of May, 2007:

Christopher T. Sheean, Esquire
Matthew Garrett, Esquire
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker Drive
Suite 2800
Chicago, IL 60606

    /s/   John K. Gisleson
John K. Gisleson