UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | CIVIL ACTION<br><br>NO. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION *IN LIMINE* NO. 11 SEEKING TO BAR
REFERENCE TO PROPOSALS ISSUED PRIOR TO SEPTEMBER 8, 2004**

Plaintiff Indeck Keystone Energy LLC ("IKE") submits this memorandum of law in opposition to Defendant's Motion *in Limine* No. 11, which seeks to prevent IKE from introducing evidence of proposals sent by VEO to prospects and customers prior to September 8, 2004, which is when IKE became licensor. VEO does not identify any specific proposals or analyze what it is about the proposals that makes them inadmissible. Nevertheless, this Motion is a variation of VEO's Motions *in Limine* Nos. 3 and 10, which sought to prevent evidence that VEO breached the License Agreement or engaged in "misconduct" during the time that IKE's predecessor-in-interest, Erie Power Technologies, Inc. ("EPTI"), was licensor. Of course, IKE stands in EPTI's shoes for purposes of the License Agreement; therefore, conduct prior to September 8, 2004 is relevant. The proposals are directly relevant to a number of factual issues

that are central to Plaintiff's claims. The Motion's attempt to exclude probative, admissible evidence should be denied.

## ARGUMENT

VEO makes the following argument: "Allowing Plaintiff to reference or seek to introduce evidence of alleged proposals issued before Plaintiff became the Licensor under the Agreement and after Plaintiff's predecessor represented [in an asset sale agreement pertaining to the sale of the Keystone® technology] that there were no known violations of any license agreement would be unduly prejudicial to Defendant while being confusing and misleading to the jury." (VEO Motion at p.2, ¶ 8)[1]

The proposals are relevant for several reasons. First, VEO initially identified itself as EPTI's licensee in the first several proposals, which shows that VEO recognized an obligation to disclose that it was selling the Keystone® boilers pursuant to a license. However, VEO stopped disclosing that it was a licensee, and it never disclosed the license while IKE was licensor. Those initial proposals are relevant to show a change in how VEO held itself out to the public. IKE believes that VEO always should have disclosed that it was a licensee, which is what EPTI expected and wanted.

Second, VEO's proposals further changed over time as to how VEO described the technology. While EPTI was licensor, VEO typically disclosed that it was selling boilers that were (as an illustration) a "Keystone 14M" boiler. VEO, though, started referring to the boilers (as an illustration) as a "VEO 14M" or "Victory 14M." Similarly, VEO went from referring to the boilers as having a "Keystone design" to a "VEO design." Also, VEO changed the description in some proposals from a "Keystone M-Series" to a "Victory O-Series."

---

[1] The Court can issue a limiting instruction as to this evidence if VEO believes one is appropriate.

2

In short, VEO began to aggressively describe the technology as its own, with an escalation in that use while IKE was licensor. The EPTI proposals assist in showing the evolution of VEO's trading on the Keystone® reputation to enhance its own stature in the marketplace without reference to EPTI or the license. That information in the sales proposals is tied to VEO's plagiarizing an EPTI sales brochure, implying that VEO owned the technology and developed design enhancements – without any reference to EPTI. VEO's actions culminated with its unauthorized and improper copying of Keystone® detailed design drawings in order to incorporate designs into the Voyager.

Third, that evidence demonstrates that VEO began marketing and selling boilers outside the scope of the agreement before IKE was licensor and failed to stop after IKE became licensor. Both EPTI and IKE gave express instruction to limit marketing and sales to the Standard M-Series boiler, but VEO refused. VEO's proposals follow substantially the same format and include substantially the same language concerning the custom designs both before and after the instructions to discontinue use of those designs. The proposals are relevant to whether VEO acted willfully in continuing to use the Keystone® trademark for a product outside the scope of the License Agreement and otherwise engaged in unfair competition.

Fourth, the proposals will further demonstrate that VEO took advantage of a financially distressed licensor (EPTI) for its own benefit through the sales proposals. EPTI tried to rein in VEO through the March 26, 2004 correspondence, but VEO refused. VEO then stepped up its improper actions while IKE was licensor, going even farther with its misleading and unfair use of the Keystone® trademark for VEO's benefit, holding itself out as having developed the designs and even as owning those designs. The proposals during both the EPTI and IKE time periods will demonstrate that VEO at all times was acting intentionally – rather

than innocently – to further its own interests without regard to any contractual limitations. It shows a continuum of conduct culminating with the misappropriation of detailed Keystone® designs. This is directly relevant to the unfair competition and unjust enrichment claims.

Fifth, the proposals while EPTI was licensor will demonstrate that EPTI did not have full knowledge of what VEO was doing, which will counteract VEO's argument that all of its activities were within the scope of the Agreement and its argument as to the significance of EPTI's "representation" in the asset sale agreement for the Keystone® assets that there were no violations of a license agreement.[2]  For example, VEO claimed in its March 30 response to EPTI's March 26, 2004 letter that VEO was not selling custom boilers. The EPTI proposals show that VEO lied to EPTI, as well as that it failed to disclose what it was marketing.

Finally, the evidence shows that there was nothing improper or unfair about IKE's instruction to VEO to stop selling non-conforming boilers given VEO's misconduct while EPTI was licensor.

---

[2] That representation did not cover all EPTI employees and was limited to the "actual knowledge" of certain individuals. The representation did not cover, for example, the knowledge or belief of Robert Gdaniec, who wrote the March 26, 2004 letter. In any case, VEO's reliance on that "representation" is a factual issue it can raise that the jury can weigh with the other evidence in the case; it is not a basis for excluding other evidence that is "bad" for VEO.

4

## **CONCLUSION**

For the foregoing reasons, Plaintiff Indeck Keystone Energy LLC asks the Court to deny Defendant's Motion *in Limine* No. 11 Seeking to Bar Reference to Proposals Issued Prior to September 8, 2004.

                          Respectfully submitted,

                          /s/   John K. Gisleson
                          John K. Gisleson (Pa. ID. No. 62511)
                          Robert J. Williams (Pa. ID. No. 76139)
                          Jennifer A. Callery (Pa. ID. No. 91421)
                          SCHNADER HARRISON SEGAL & LEWIS LLP
                          Fifth Avenue Place
                          120 Fifth Avenue, Suite 2700
                          Pittsburgh, PA  15222-3001
                          Telephone: 412-577-5200
                          Facsimile: 412-765-3858

                          *Attorneys for Plaintiff and Counterclaim Defendant,*
                          *Indeck Keystone Energy, LLC*

Dated:  May 2, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion *in Limine* No. 11 Seeking to Bar Reference to Proposals Issued Prior to September 8, 2004** was served upon the following counsel of record by the CM/ECF electronic filing system on the 2nd day of May, 2007:

      Christopher T. Sheean, Esquire
      Matthew Garrett, Esquire
      Wildman, Harrold, Allen & Dixon LLP
      225 West Wacker Drive
      Suite 2800
      Chicago, IL 60606


                                            /s/    John K. Gisleson
                                           John K. Gisleson