UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INDECK KEYSTONE ENERGY LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 04-325 Erie |
| | : | |
| VICTORY ENERGY OPERATIONS LLC, | : | Judge Sean J. McLaughlin |
| | : | |
| Defendant | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |

**DEFENDANT'S RESPONSE TO
IKE'S MOTION *IN LIMINE* TO EXCLUDE PORTIONS OF PAUL F. MILLER'S
EXPERT REPORT AND ANY TESTIMONY RELATED THERETO**

Defendant Victory Energy Operations LLC ("VEO"), by its undersigned counsel, for its Response to Indeck Keystone Energy LLC's ("IKE's") Motion *In Limine* to Exclude Portions of Paul F. Miller's Expert Report and Any Testimony Related Thereto, states as follows:

IKE has moved to bar the opinions expressed by VEO's expert witness, Paul Miller, in Sections A, B, and C of his expert report. VEO does not contest IKE's motion to preclude Mr. Miller from offering opinions expressed in Section B of his expert report, which relate to whether VEO was required to install a placard on boilers that it manufactured under the license to specify that the boilers were produced under a license from IKE. VEO agrees that the License Agreement speaks for itself on this issue. However, Mr. Miller should be permitted to offer his opinion regarding the custom and practice in the industry for licensee' use of a mark. and will not offer expert testimony on this topic.

The opinions expressed in Sections A and C of Mr. Miller's report are entirely appropriate topics for testimony by an expert with Mr. Miller's substantial experience and qualifications. Indeed, in Section A of his report, Mr. Miller explains that based on his extensive experience as both an engineer and senior level manager of a boiler manufacturer, he is aware of the custom and practices related to the manufacture and sale of water tube package boilers, including the sale of boilers under license agreements, and the commercial and engineering realities of the industry. As such, he is qualified to opinions regarding how these customs and practices and commercial realities operate to resolve any ambiguities relating to the scope of the License Agreement. Moreover, these opinions are highly relevant and will clearly aid the jury in determining the "ambiguities" that otherwise exist in the Agreement.

Similarly, in Section C of his expert report, Mr. Miller offers his opinions regarding whether information or technology that IKE has claimed as it trade secrets is generally known in the boiler industry and the public domain so as to be ineligible for trade secret protection. Again, based on his extensive familiarity with boiler technology and the boiler industry, there can be no doubt that Mr. Miller is qualified to offer these opinions. There is likewise no good faith argument that such evidence is not highly relevant and will aid the jury in determining whether any trade secrets exist in this case.

I. **Mr. Miller may offer testimony regarding whether the License Agreement permitted VEO to manufacture and sell watertube package boilers that incorporate membrane wall technology**

As IKE points out in its motion *in limine*, this Court has found the License Agreement to include an inherent ambiguity. 5/10/06 Court Op. Transcp. 118:16-20. Specifically, even though the License Agreement expressly provides that "Products shall

included ***but not be limited*** to the items set forth in Annex I," (emphasis added) the Court found that "one could conclude that the product line was restricted to the M-Series boilers with the older refractory wall technology." *Id.* At 116:13-117:2. Therefore, this Court has recognized that extrinsic evidence may be offered to attempt to resolve the ambiguity. Thus, course of dealing evidence will be proffered by the parties. Additionally, VEO will offer the testimony of Mr. Miller to help the jury fully understand the customs and practices of the boiler industry that gave rise to the Agreement. Mr. Miller's testimony will also assist the jury to fully understand the meaning of the tables and data that is set forth in Annex I of the Agreement so that the jury is better able to understand whether Annex I limited the scope of the parties' Agreement.

Although IKE argues that Mr. Miller's opinions should be excluded because his opinions purportedly determine an ultimate issue to be determined by the jury, Fed. R. Evidence 704 expressly provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Civ. P. 704. Likewise, "opinions of experts on the ultimate issue to be decided by the jury are received constantly in [Pennsylvania state courts]." *L & W Demoliton Co., Inc. v. Rockwood Ins. Co.*, 75 Pa. D. & C.2d 688, 694, 1976 WL 17482 (Pa. Com.Pl. 1976). Where the circumstances giving context to a written instrument cannot fully be understood without special knowledge or training, expert testimony may be received in both federal and state courts. *Rush Presbyterian St. Luke's Medcal Center v. Safeco Ins. Co. of America*, 722 F.Supp. 485 (N.D. Ill. 1989) (finding that it is permissible for experts to testify about customs and usages in industry and to amplify terms of contract if customs and usages shed light on meaning of those terms); *L*

*& W Demolition,* 75 Pa. D. & C.2d at 694 (expert testimony may be received whenever the circumstances [underlying a written agreement] cannot be fully understood without special knowledge or training). Similarly, "[w]here a writing contains signs, characters, or technical terms, the meaning of which is not commonly known, or where it is in cipher or in a foreign language, in all such cases testimony as to its meaning may be received from one conversant therewith." *Purcell v. Metropolitan Life Ins. Co.* 332 Pa. 535, 537-38, 3 A.2d 340, 341 (Pa. 1939); *see also Stewart v. Atlantic Refining Co.*, 240 F.2d 715 (finding that expert testimony is admissible to explain how course recorder markings should be interpreted on board sea going vessel). Here, Mr. Miller's testimony will undoubtedly help the jury fully understand industry customs and practices that will help the jury place the agreement in context so that they are better able to understand the overall Agreement as well as the meaning various technical information described in Annex I.

For example, Mr. Miller will explain that package boilers are not commodity products that can be purchased "off the shelf" with little or no customization. Rather, these boilers must be adapted to meet individual customer specifications and needs. Due to this characteristic of the boiler industry, agreements involving a license of technology to manufacture and sell water tube package boilers are necessarily flexible. Mr. Miller will testify that based on this commercial reality, the custom and practice in the boiler industry is to provide a basic description of the licensed product line as a reference point in a license agreement that can be adapted to meet specific customer needs.

Mr. Miller will also explain that at the time the parties entered into the License Agreement, it was commercially unrealistic to believe that any company could

successfully market and sell boilers with a tangent tube design because it was well established that such boilers could not achieve emission thresholds established by governmental authorities in a cost effective manner.

Mr. Miller will also help the jury understand the complex data set forth in Annex I to the Agreement. A layperson will not understand what a tangent tube design is without the benefit of expert testimony. A layperson will not understand what membrane wall technology is without the benefit of expert testimony. A layperson will not understand the thermal performance data described in Annex I without the benefit of expert testimony. A layperson will not understand the design parameters described in Annex I that are the basis of the thermal performance data. And a layperson will not understand how all of this data, together with industry customs and practices, and the commercial realities of the marketplace for watertube package boilers fit together to define the actual, intended scope of the parties' agreement. Because expert testimony from a person with Mr. Miller's background, experience and knowledge will help the jury understand these issues, Mr. Miller should be able to offer his opinions regarding the scope of the License Agreement.

> II. **Mr. Miller should likewise be allowed to express his opinions regarding whether IKE has not identified any bona fide trade secrets related to the Keystone boiler that was misappropriated by VEO.**

For similar reasons, Mr. Miller should also be permitted to testify to the opinions expressed in Section C of his expert report—namely, that IKE has not identified any bona fide trade secrets related to the Keystone boiler that were misappropriated by VEO.

Again, expert testimony is appropriately received when the testimony will help the jury understand or determine a fact in dispute. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). In this case, IKE is alleging that various design features of its Keystone boiler constitute trade secrets that were allegedly misappropriated by VEO. VEO contests this claim. In order for the jury to determine this factual dispute, it must understand (among other things):

- the design features that VEO is claiming to constitute a trade secret;
- the basic scientific principles underlying those design features;
- whether those design features are well known in the industry;
- whether those design features can be readily ascertained by observation of products sold to the public; and
- whether those design features can be ascertained through reverse engineering.

Expert testimony from a person with Mr. Miller's experience and qualifications will undoubtedly help the jury determine whether IKE possessed any trade secrets that could be misappropriated. Based on his extensive experience as an engineer and senior level manager in the boiler industry, Mr. Miller's testimony regarding industry knowledge of boiler design features, the scientific principles underlying those design features, and the ability for these design features to be ascertained through observation or

1771078-1                                    6

reverse engineering of a boiler that has been sold into the marketplace will help the jury determine a fact in dispute. He should therefore be permitted to testify to these issues.

**WHEREFORE**, Defendant Victory Energy Operations LLC requests that the Court enter an order denying IKE's Motion *In Limine* to Exclude Portions of Paul F. Miller's Expert Report and any Testimony Related Thereto.

Dated: May 2, 2007                                               Respectfully submitted,

/s/ Matthew M. Garrett
One of the Attorneys for Defendant,
VICTORY ENERGY OPERATIONS LLC

Christopher T. Sheean
Brian W. Lewis
Matthew Garrett
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, 28th Floor
Chicago, IL 60606
(312) 201-2997

LOCAL COUNSEL:
G. Jay Habas
Marshall, Dennehey, Warner
Coleman & Goggin
1001 State Street, Suite 1400
Erie, PA 16506
(814) 461-7800
PA ID No. 55581

Counsel for Victory Energy Operations LLC

1771078-1                                                             7

**CERTIFICATE OF SERVICE**

      Matthew M. Garrett, an attorney, certifies that on the 2nd day of May, 2007, he caused a copy of the foregoing ***DEFENDANT'S RESPONSE TO IKE'S MOTION IN LIMINE TO EXCLUDE PORTIONS OF PAUL F. MILLER'S EXPERT REPORT AND ANY TESTIMONY RELATED THERETO*** to be filed electronically, and that the CM/ECF system for the court will e-mail a copy of the foregoing to the following counsel of record:

      John K. Gisleson
      Robert J. Williams
      Schnader Harrison Segal & Lewis LLP
      Fifth Avenue Place, Suite 2700
      120 Fifth Avenue
      Pittsburgh, PA 15222-3001
      Email: JGisleson@Schnader.com
      ATTORNEYS FOR PLAINTIFF INDECK
      KEYSTONE ENERGY LLC


     /s/ Matthew M. Garrett
     Matthew M. Garrett