**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INDECK KEYSTONE ENERGY, LLC, a Delaware limited liability company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>VICTORY ENERGY OPERATIONS, LLC, a Delaware limited liability company,<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>NO. 04-CV-325 (ERIE)<br><br>Judge Sean J. McLaughlin |

**INDECK KEYSTONE ENERGY LLC'S TRIAL BRIEF ON**
**ITS UNFAIR COMPETITION AND UNJUST ENRICHMENT CLAIMS**

Plaintiff Indeck Keystone Energy, LLC ("Plaintiff") respectfully submits this trial brief addressing its unfair competition and unjust enrichment claims.

**I.    Introduction**

This action arises out of the alleged misuse and misappropriation by Victory Energy Operations, LLC ("VEO") of, *inter alia*, certain proprietary detailed design drawings and other technical data (collectively, the "Keystone® Technology") that was licensed to VEO pursuant to a written License Agreement dated as of January 7, 2003.

Plaintiff's unfair competition and unjust enrichment claims are based on the misuse and/or misappropriation with respect to the following categories of information: (a) Keystone® detailed design drawings and information from the Keystone® Design Guide; (b) the Keystone® Trademark; and/or (c) the marketing materials pertaining to the

Keystone® and Voyager boilers.  *See* Compl. ¶¶ 20-22, 49, 52.  In short, during the term of the License Agreement, VEO began to hold itself out as owning and/or having developed the Keystone® designs as its own proprietary designs.  It then used selected Keystone® designs in developing the Voyager, and began marketing the Voyager boiler immediately upon the termination of the License Agreement notwithstanding the fact that the Voyager design was far from complete.  VEO engaged in unfair competition by holding itself out as owning and/or controlling the Keystone® O-type boiler designs as well as holding itself out as having developed the Keystone® designs, and then copying certain Keystone® designs into the Voyager design because VEO did not have the time and/or ability to develop its own designs.  In sum, VEO treated the Keystone® Technology as its own both during the term of the License Agreement and when it developed the Voyager boiler.  Additionally, VEO incorporated into the Voyager certain designs that were within the scope of the License Agreement.  By these acts, VEO engaged in unfair competition and was unjustly enriched.

## II.     VEO Engaged In Unfair Competition.

Unfair competition is a broad doctrine that encompasses any act of competition that is unfair.  In particular, unfair competition exists where a plaintiff's business practices, processes, methods, and ultimately, its capital investment are usurped by a defendant without a license or consent.  *See Pottstown Daily News Publ'g Co. v. Pottstown Broad. Co.*, 192 A.2d 657, 663 (Pa. 1963).  A claim of unfair competition inherently encompasses trademark infringement, but also includes a broader range of unfair practices which includes the misappropriation of the skill, expenditures and labor of another.  *See Murphy Door Bed Co. v. Interior Sleep Sys.*, 874 F.2d 95, 102 (2d Cir.

1989). VEO engaged in unfair competition through trademark infringement, through the unfair marketing of the Keystone® boilers, the use of certain Keystone® designs after consent was withdrawn during the term of the License Agreement and in the Voyager after the License Agreement terminated, and by creating confusion in the marketplace.

      A.    <u>VEO Engaged In Unfair Competition Based On Trademark Infringement</u>

The elements for trademark infringement and unfair competition are the same. *Scott Fetzer Co. v. Gering,* 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003)*; Louis Vuitton Malletier and Oakley, Inc. v. Viet*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002). Accordingly, where the plaintiff establishes trademark infringement, it also establishes unfair competition. The elements are: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods and services is likely to create confusion concerning the origin of the goods or services. *Scott Fetzer Co.*, 288 F. Supp. 2d at 703 (holding that plaintiff established all elements of his trademark infringement claim and therefore established his claim for unfair competition); *Louis Vuitton*, 211 F. Supp. 2d at 580 (finding that defendants' actions constituted unfair competition under the Lanham Act and therefore defendants' actions constituted unfair competition under Pennsylvania law).

In the instant matter, all three elements for trademark infringement and unfair competition claims are present. The mark is valid, legally protectable and Plaintiff owns the Keystone® trademark, which has been registered with the United States Patent and Trademark Office at No. 554,723, and has been continually in use by Plaintiff, EPTI and its predecessors since at least February 12, 1952. The third element, likelihood of confusion, is present as a matter of law because VEO sought to derive profits through the

use of Plaintiff's mark in connection with the sale of Keystone® boilers outside the scope of the License Agreement after EPTI retracted its consent and Indeck refused to consent. There was a likelihood of confusion as a matter of law because VEO used the identical mark on a competing product. *See* Plaintiff's Pretrial Statement at pp. 13-14.

    B.    VEO Engaged In Unfair Competition Through The Wrongful Marketing of Keystone® Boilers and Use of Keystone® Designs.

The Restatement (Third) of Unfair Competition contains a catch-all provision where liability for unfair competition exists "from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public." Restatement (Third) of Unfair Competition § 1(a).[1] This catch-all provision includes claims based on the wrongful use of confidential information that do not rise to the level of a trade secret. *See id.*, cmt. g (recognizing "liability for unfair competition even if the conduct is not specifically actionable under the rules relating to deceptive marketing or the appropriation of trade secrets"); *see also Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 WL 2233441 at *8-9 (E.D. Pa. Sept. 14, 2005) (holding that by stating a claim for defamation, trade libel and tortious interference with contract, plaintiff had pleaded sufficient facts to support a cause of action for unfair competition); *Air Prods. and Chem., Inc. v. Inter-Chem. Ltd.*, No. 03-CV-6140, 2003 WL

---

[1] The Pennsylvania Supreme Court has not specifically adopted the Restatement's definition, but lower state courts and federal courts sitting in diversity have recognized causes of action for unfair competition based on the Restatement categories, and the Eastern District of Pennsylvania has cited the Restatement's catch-all provision as a basis for a cause of action for common law unfair competition. *See ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp.2d 622, 688-89 (E.D. Pa. 2003); *Air Prods. and Chem., Inc. v. Inter-Chem. Ltd.*, No. 03-CV-6140, 2003 WL 22917491 at *12 (E.D. Pa. Dec. 2, 2003); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 953 F. Supp. 617, 667-68 (E.D. Pa. 1997).

22917491 at *12 (E.D. Pa. Dec. 2, 2003) (finding that defendants' actions was the type of conduct envisioned as actionable under the Restatement (Third) of Unfair Competition § 1(a)); *Lakeview Ambulance and Med. Servs., Inc. v. Goldcross Ambulance and Med. Servs., Inc.,* No. 1994-2166, 1995 WL 842000 at *2-3 (Pa. Com. Pl. Oct 18, 1995) (denying demurrer to count for unfair competition); *see generally Pottstown*, 192 A.2d at 663 (finding that unfair competition exists where business practices, processes, methods are usurped without a license or consent.).

As the Seventh Circuit has observed, "it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret." *Hecny Trans., Inc. v. Chu*, 430 F.3d 402, 404-5 (7th Cir. 2005) (addressing preemption under the Illinois version of the Uniform Trade Secrets Act). Following *Hecny*, in *United States Gypsum Co. v. LaFarge North America*, 2007 U.S. Dist. LEXIS 25586, *87-88 (N.D. Ill. April 3, 2007), the Court, considering a preemption argument under the Illinois version of the Uniform Trade Secrets Act, refused to dismiss unfair competition and unjust enrichment claims to the extent they were not based on a trade secret. *Id.* at *28 (holding that "[t]o the extent particular information is a trade secret, the [unfair competition] claim is preempted; to the extent particular information is not a trade secret, the claim is not preempted"). Accordingly, the court recognized that an unfair competition claim could be based on information that does not rise to the level of a trade secret. Plaintiffs have found no case that suggests the law is any different in Pennsylvania.

To the contrary, in the context of a motion in *limine* to exclude evidence of trade secrets, the district court for the Middle District of Pennsylvania recently recognized that

an unfair competition claim is separate and distinct from a claim predicated upon trade secrets. In *Doebler's Pennsylvania Hybrids, Inc. v. Jones*, 2007 U.S. Dist LEXIS 6820, *14 (M.D. Pa. Jan. 31, 2007), the court stated:

> even if there were no other trade secret claims and the Federal Seed Act did require the pedigree information of hybrids to be made public, all evidence that is relevant to the trade secret claim is not necessarily irrelevant to other claims. . . **Even if plaintiff had no trade secret claim, this evidence may be relevant to plaintiff's other claims, such as unfair competition** and breach of fiduciary duty.

*Id.* (emphasis added).

The Restatement of Torts likewise recognizes that Defendant can face liability for wrongfully using information that does not rise to the level of a trade secret. Specifically, Section 759 of the Restatement (First) of Torts, titled "Procuring Information by Improper Means," states:

> [o]ne who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information.

Restatement (First) of Torts, § 759. Commentary to this section states "[t]he rule stated in this Section applies to information about one's business *whether or not it constitutes a trade secret*." *Id.* at cmt. b (emphasis added).

In *Pestco, Inc v. Associated Products, Inc.*, 880 A.2d 700 (Pa. Super. Ct. 2005), the Court held that information on a bill of lading did not rise to the level of a trade secret because it was general in nature and easily obtainable from other sources. *Id.* at 708. However, the Court held the defendant was liable under section 759 of the Restatement (First) of Torts -- even though the information at issue did not rise to the level of a trade

6

secret -- because the defendant wrongfully obtained the bill of lading information from a truck driver that was employed by both the plaintiff and the defendant. *Id.* at 709.

A similar situation to that in *U.S. Gypsum Co.* is presented here. To the extent Plaintiff's information wrongfully obtained by VEO rises to the level of a trade secret, then those wrongful acts by VEO are governed by plaintiff's Pennsylvania Uniform Trade Secrets Act claim. To the extent information wrongfully obtained by VEO does not rise to the level of a trade secret, then VEO's wrongful actions with respect to this non-trade secret information are governed by plaintiff's unfair competition and unjust enrichment claims. Specifically, VEO engaged in the wrongful use of Indeck's information, including Keystone® detailed design drawings, information from the Keystone® Design Guide and the Keystone® Trademark. *See* Compl. ¶¶ 20-22, 49, 52. It further unfairly marketed the Keystone® designs as its own. Equally as important, VEO used this information in developing its Voyager boiler. This wrongful use of Indeck's information -- even if it does not rise to the level of a trade secret -- constitutes unfair competition, and, as discussed below, unjust enrichment.

    C.    VEO Engaged In Unfair Competition Through Misrepresentations That Caused Customer Confusion.

A business entity entering into a field already occupied by a competitor of established reputation must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of a competitor. *See Gamlen Chem. Co. v. Gamlen*, 79 F. Supp. 622, 636 (W.D. Pa. 1948) (stating that "[a]ny conduct, the natural and probable effect of which is to deceive the public, so as to pass off the goods of one person as and for that of another, constitutes unfair competition."); *see also Carl A. Colteryahn Dairy*, 203 A.2d 469 (Pa. 1964) (holding the "making of

false and misleading representations" by former employees so as "to play on sympathies of customers and influence them" so they can be obtained by new employer is unfair competition).

VEO has engaged in acts that created confusion in the marketplace. During the term of the License Agreement, VEO began to hold itself out as owning and/or having developed the Keystone® designs, when in fact this was not true. VEO treated the Keystone® Technology as its own both during the term of the License and then when it developed the Voyager boiler. Through these mispresentations, VEO engaged in unfair competition.

### III.    Unjust Enrichment

####    A.    VEO Has Been Unjustly Enriched By Its Actions.

Unjust enrichment requires a finding that (1) a benefit has been conferred on VEO; (2) appreciation of such benefits by VEO; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for VEO to retain the benefit without payment of value. *Styler v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993). Where unjust enrichment is found, the law implies a contract, which requires that VEO pay to Indeck the value of the benefit conferred. *See Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328-29 (Pa. Super. Ct. 1995). In determining whether unjust enrichment applies, the focus is not on the intention of the parties, but rather on whether VEO has been unjustly enriched. *Schenck*, 666 A.2d at 328.

Plaintiff has established all three of the required elements for unjust enrichment. The benefits conferred on VEO, which it appreciated by using to develop its own boilers include: Keystone® detailed design drawings and information from the Keystone®

8

Design Guide, the Keystone® Trademark, marketing materials pertaining to the Keystone® proposals, and certain designs that were within the scope of the License Agreement. VEO's retention of the benefits – profits associated with the us of these materials – is improper and unjust. VEO wrongfully secured this information by using it after consent was revoked. *See Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (unjust element met by showing defendant "wrongfully secured or passively received a benefit that it would be unconscionable for her to retain").

  B. Plaintiff's Claim for Unjust Enrichment Is Not
    <u>Preempted By The Pennsylvania Uniform Trade Secrets Act</u>.

The Pennsylvania Uniform Trade Secrets Act ("Act") allows for the recovery of damages for actual losses and unjust enrichment resulting from the misappropriation of a trade secret, and provides for an award of exemplary damages in an amount of twice the award of actual and unjust enrichment damages. *See* 12 Pa.C.S. § 5304. VEO contends that the Act preempts common law tort claims such as unjust enrichment. To the contrary, Pennsylvania courts have held that the Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret. *Cenveo Corp. v. Slater*, 2007 U.S. Dist. LEXIS 9966 (E.D. Pa. Feb. 13, 2007); *Roger Dubois N. Am., Inc. v. Thomas*, 2006 U.S Dist. LEXIS (M.D. Pa. Sept. 14, 2006).

In *Roger Dubois*, plaintiff, a luxury watch distributor, alleged that one of its employees had attempted to set up his own luxury watch business by selling watches bearing the company trademark without company approval, and bribing another company employee in order to obtain customer records. *Roger Dubois*, 2006 U.S Dist. LEXIS 65674 at *1. Plaintiff brought suit alleging conversion and misappropriation of

9

confidential business information and trade secrets under the Pennsylvania Trade Secret Act. *Id.* Defendant moved to dismiss the conversion claim as preempted, and the court denied the motion. In denying the motion, the court observed that the "problem" it faced was that there had "been no determination at this juncture as to which confidential and/or proprietary information, if any, can be considered a trade secret as that term is defined in the [Act]." *Id.* at *10.

Similarly, in finding it would be improper to permit the Act to preempt tort claims when it had yet to be determined whether the information at issue constituted a trade secret, the *Cenveo* court stated:

> if the Court were to dismiss plaintiff's conversion claim and later make the finding that, although plaintiff had proved that defendants took its pricing structure and business proposals, such information was not a protected trade secret under the [Act], <u>the Court would be in the difficult position of telling the plaintiff that it had no remedy</u>.

*Cenveo*, 2007 U.S. Dist. LEXIS 9966 at *10 (emphasis added). Thus, the Act does not preempt Plaintiff's unjust enrichment claim unless there is a determination that VEO misappropriated trade secrets.

        Respectfully submitted,

    /s/    John K. Gisleson
John K. Gisleson (Pa. ID. No. 62511)
Robert J. Williams (Pa. ID. No. 76139)
Jennifer A. Callery (Pa. ID. No. 91421)
SCHNADER HARRISON SEGAL &
LEWIS LLP
Fifth Avenue Place
120 Fifth Avenue, Suite 2700
Pittsburgh, PA  15222-3001
Telephone: 412-577-5200
Facsimile: 412-765-3858

*Attorneys for Plaintiff and Counterclaim Defendant, Indeck Keystone Energy, LLC*

Dated:  May 14, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Indeck Keystone Energy, LLC's Trial Brief** was served upon the following counsel of record by the CM/ECF electronic filing system on the 14th day of May, 2007:

>Christopher T. Sheean, Esquire
>Matthew Garrett, Esquire
>Wildman, Harrold, Allen & Dixon LLP
>225 West Wacker Drive
>Suite 2800
>Chicago, IL 60606

/s/   John K. Gisleson