UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

INDECK KEYSTONE ENERGY LLC,              :
                                         :
          Plaintiff,                     :
                                         :        Civil Action No. 04-325 Erie
     v.                                  :        Judge Sean J. McLaughlin
                                         :
VICTORY ENERGY OPERATIONS                :
LLC,                                     :
                                         :
          Defendant.                     :        JURY TRIAL DEMANDED
                                         :

**DEFENDANT'S BENCH MEMORANDUM REGARDING PLAINTIFF'S
UNFAIR COMPETITION AND UNJUST ENRICHMENT CLAIMS**

At the Court's request, Defendant Victory Energy Operations LLC ("VEO"), by

its undersigned counsel, hereby submits its Bench Memorandum Regarding Plaintiff's

Unfair Competition and Unjust Enrichment Claims. For the reasons set forth below, these

claims must be dismissed and the jury instructed to disregard all evidence of alleged

"unfair" competition.

**INTRODUCTION**

In its Complaint, Plaintiff Indeck Keystone Energy ("IKE") has alleged claims of

trademark infringement (Count I), trademark dilution (Counts II and III), violation of the

Pennsylvania Uniform Trade Secrets Act (Count IV), Unfair Competition (Count V) and

Unjust Enrichment (Count VI). IKE has not and cannot bring any claims for patent

infringement, copyright infringement, or breach of contract. As a consequence, it has hit

upon an "omnibus" set of claims that attempt to protect its alleged technology from fair

and public use.

The factual allegations underlying IKE's claims fall into two general categories. First, IKE has alleged that VEO infringed its Keystone trademark by using the mark on products and promotional literature that it claims are beyond the scope of the License Agreement through which IKE granted VEO the right to use the mark and Technical Information pursuant to the terms of that agreement (the "Trademark Allegations"). Second, IKE has alleged that VEO misappropriated IKE's purported trade secrets and incorporated these so-called trade secrets into VEO's Voyager boiler (the "Trade Secret Allegations").

While Counts I-III of the Complaint address IKE's Trademark Allegations and Count IV addresses its Trade Secret Allegations, IKE has also tacked on two additional counts to its Complaint, in which it simply professes that the Trademark Allegations and Trade Secret Allegations also state claims of unfair competition and unjust enrichment. IKE relies on these amorphous equitable claims because it realizes that it cannot prove its other claims.   Thus, IKE, in effect, attempts to lessen the standard of proof for its trademark and trade secret claims by asserting these "equitable" claims. IKE makes no attempt, however, to explain the limited scope of these claims and instead argues that anything and everything can amount to unfair competition if it violates IKE's own undefined and seemingly limitless "rules" of competition. In actuality, however, IKE's unfair competition and unjust enrichment claims are entirely duplicative of the claims asserted in Counts I-IV of its complaint. And to the extent that IKE's claims are broader than the claims asserted in Counts I-IV, they are not recognized by law.

To gain a better understanding of the permissible scope of IKE's unfair competition and unjust enrichment claims and their application to the present lawsuit, the

Court asked the parties to submit memoranda addressing the elements that must be proven to support these claims, the general nature of these claims, and the remedies that may be available if these claims are proven. To that end, VEO submits this bench memorandum.

## I.    IKE'S UNFAIR COMPETITION CLAIM (COUNT V) [1]

At its core, the phrase "unfair competition" involves conduct that is contrary to honest industrial and commercial practices. The doctrine extends to the misappropriation for commercial advantage by one person of a benefit or a property right belonging to another. *O'Brien v. Westinghouse Elec. Corp.*, 293 F.2d 1, 13 (3d Cir. 1961).

The doctrine is not, however, limitless as claimed by IKE. To the contrary, competition in business is jealously protected by the law and the law abhors that which tends to diminish or stifle competition. *Pottstown Daily News Pub. Co. v. Pottstown Broadcasting Co.*, 192 A.2d 657, 663 (Pa. 1963). It is black letter law that a competitor may, subject only to the restraints imposed by patent, copyright, trademark, and trade secret laws, imitate his rival's business practices, processes and methods. *Id.* Such conduct is not actionable and is the lifeblood of our free marketplace. It is only where a competitor acts outside of these bounds and thereby wrongfully usurps a competitor's investment and toil that a claim for unfair competition can be maintained. *Id.* see also, *Pennsylvania Dutch Co. v. Pennsylvania Amish Co.*, 68 Pa. D. & C.2d 379, 387, 1974 WL 15773 (Pa. Com. Pl. 1974); *Jessar Manufacturing Corp. v. Berlin*, 380 Pa. 453 (1955); *Stroehmann Brothers Co. v. Manbeck Baking Co.*, 331 Pa. 96 (1938); *Pennsylvania Central Brewing Co. v. Anthracite Beer Co.*, 258 Pa. 45 (1917); accord

---

[1] For a thorough discussion of Pennsylvania law related to Unfair Competition and Unjust Enrichment, VEO refers the Court to 18A Summ. Pa. Jur. 2d Commercial Law § 19:1 *et seq.*

*Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964).

In this litigation, VEO has alleged that "VEO's misuse and misappropriation of the Keystone Trade Secrets, the Keystone Software, the Keystone trademark and the Keystone Images, as described more fully [in Counts I-IV], constitute unfair competition." Complaint, ¶ 49. IKE has therefore actually alleged two separate variants of unfair competition. First, IKE has alleged that VEO unfairly competed through the alleged misuse or misappropriation of the Keystone trademark. Second, IKE has alleged that VEO unfairly competed through misuse or misappropriation of IKE's trade secrets. But IKE goes even further. It also claims that the alleged copying of material that is in the public domain or not a trade secret is actionable. The elements that must be proven to support these separate variants of unfair competition are different and must be analyzed separately. Upon such analysis, it becomes clear that IKE cannot maintain either variant. And it is likewise clear that the "copying" allegations are not supportable under Pennsylvania law.

A.    **UNFAIR COMPETITON-TRADEMARK VARIANT**

The common law of trademarks is a portion of the broader law of unfair competition. *Pennsylvania State University v. University Orthopedics, Ltd.*, 706 A.2d 863, 870 (Pa. Super. Ct. 1998). "The gist of the action for [this variant of] unfair competition lies in the deception practiced in 'passing off' the goods of one for that of another." *Id.* The underlying principle of law of unfair competition is to prevent substitution by deception. *Id.* (quoting *Vick Chemical Co. v. Vick Medicine Co.*, 8 F.2d 49, 50 (3rd Cir. 1925) and *Winthrop Chemical Co. v. Weinberg*, 60 F.2d 461, 463 (3rd Cir.

1932). Accordingly, a company "must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of the rival." *Id.*

Thus, just like the federal Lanham Act, the common law tort of unfair competition protects against confusion regarding the source of a product. *See e.g., Gum, Inc. v. Gumakers of America, Inc.,* 136 F.2d 957 (3rd Cir. 1943). It is important to emphasize that it is confusion as to the **source** of a product, not the product itself, that is protected by both the trademark variant of unfair competition law and statutory trademark laws. *See Pennsylvania Dutch Co. v. Pennsylvania Amish Co.,* 68 Pa. D. & C.2d 379, 1974 WL 15773 (Pa. Com. Pl. 1974); *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23 (2003).

Because this variant of unfair competition law protects against confusion as to source of a product, it cannot exist unless it is proven that "the conduct and practices of the defendant actually confused or deceived or that it is reasonably likely that the average purchaser will be deceived [as to the source of the product]; possibility that purchasers will be misled is not enough." *Id.,* 68 Pa. D. & C.2d at 387 (citations omitted.) "This standard is predicated on judicial recognition of the balance to be struck between the public interest in free competition and the protectable interests of the individual businessman and of the purchaser who discriminates by product source." *Id.* Thus, while a competitor may, subject to any patent copyright and trademark law, imitate his rival's business, including any unpatented product, protection afforded to competition does not countenance usurpation of a competitor's investment and toil by any representation that the product offered is that of one's rival. *Id.* citing *Jessar Manufacturing Corp. v. Berlin,*

380 Pa. 453 (1955); *Stroehmann Brothers co. v. Manbeck Baking Co.*, 331 Pa. 96 (1938);

*Pennsylvania Central Brewing Co. v. Anthracite Beer Co.*, 258 Pa. 45 (1917); accord

*Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite*

*Lighting, Inc.*, 376 U.S. 234 (1964).

In order to establish a claim of unfair competition based on a likelihood of

confusion as to the source of goods, the plaintiff must prove:

(1)    there is public desire is for a product manufactured by the plaintiff;
(2)    the public desire must be for the manufacturer, not the product; and
(3)    there must be confusion as to the origin of the product, not as to the goods.

*International Election Systems Corp. v. Shoup*, 452 F. Supp. 684, 710 (E.D. Pa. 1978)

(citing *General Radio Co. v. Superior Elec. Co.*, 321 F.2d 857 (3d Cir. 1963). These

elements are identical to those that are necessary to support a claim for trademark

infringement under the federal Lanham Act. *Louis Vuitton v. Veit*, 211 F. Supp. 2d 567,

582 (2002) (citing *Haymond v. Lundy*, No. Civ. A. 99-5048, 2001 WL 15956, at *2 (E.D.

Pa. Jan. 5, 2001); *Gideons Int'l Inc. v. Gideon 300 Ministries, Inc.*, 94 F.Supp.2d 566, 580

(E.D. Pa. 1999). Indeed, the only difference is that there is no requirement that the goods

be sold in interstate commerce to support a state law unfair competition claim. *Louis*

*Vuitton*, 211 F.Supp.2d at 582.

Here, to the extent that plaintiff's unfair competition claim is based on

unauthorized use of the Keystone trademark, it is entirely duplicative of IKE's previously

asserted trademark infringement claims. Moreover, there is <u>absolutely no evidence</u> that

any purchaser has ever been confused as to the origin of any boiler that was ever

manufactured and sold by VEO. Indeed, the evidence is undisputed that all of the boilers

sold by VEO were the result of a sophisticated bid process in which the customer knew

the exact identity of the party who would be manufacturing the boilers to be purchased. No unfair competition claim based on VEO's alleged use of the Keystone trademark can be maintained as a matter of law.

### B.    UNFAIR COMPETITION-TRADE SECRET VARIANT

#### 1)  The Unjust Enrichment Claim is Preempted by the PUTSA

The remaining allegations offered in support of IKE's unfair competition claim all arise from VEO's alleged misappropriation of purported trade secrets. This common law claim, however, was expressly preempted by the enactment of the Pennsylvania Uniform Trade Secret Act ("PUTSA"), 12 Pa. C.S. § 5301, *et seq.*, for alleged misappropriation beginning on or after April 19, 2004. 12 Pa. C.S. § 5308 (a) ("Except as provided in subsection (B), this chapter displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret.").

IKE has admitted throughout the course of this litigation that the purported misappropriation that is the subject of its claims did not begin until after the enactment of the PUTSA. If IKE is correct, any common law claim of unfair competition based on the misappropriation of trade secrets is necessarily pre-empted and cannot be maintained. It is only if IKE is wrong, and this Court finds that any alleged misappropriation began prior to April 19, 2004, that IKE's common law claim for misappropriation of trade secrets can be maintained.

**2) Even if the Court rejects the statutory preemption requirement, IKE cannot state a common law claim for unfair competition in connection with its trade secret allegations.**

A common law unfair competition claim based on alleged trade secret misappropriation requires proof of the same elements as a claim for trade secret misappropriation under Pennsylvania law. *Van Prods. Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 254, 270, 213 A.2d 769 (1965); *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 389 Pa. Super. 219, 239, 566 A.2d 1214 (1989). Under Pennsylvania law, "[p]roving the misappropriation and use of a trade secret is difficult." *Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*, No. 95-2632, 1995 U.S. Dist. LEXIS 13495, *29 (E.D. Pa. Sept. 14, 1995). Plaintiff must prove (1) the existence of a trade secret (2) which was communicated in confidence to defendant and (3) was used by defendant in breach of that confidence (4) to the detriment of the plaintiff. *Camelot Tech. v. Radioshack Corp.*, No. 01-CV-4719, 2003 U.S. Dist. LEXIS 2517, *14 (E.D. Pa. Feb. 13, 2003); *Westcode, Inc. v. Daimler Chrysler Rail Systems (North America) Inc.*, 123 F. Supp. 2d 819 (E.D. Pa. 2000); *SNA, Inc. v. Array*, 51 F. Supp. 2d 554 (E.D. Pa. 1999), judgment aff'd, 259 F.3d 717 (3d Cir. 2001).

Pennsylvania follows the "property view" of trade secret law, under which the court first determines whether a trade secret exists, and secondly whether there was a breach of confidence. *Van Prods.* at 268 ("The starting point in every case of this sort is not whether there was a confidential relationship, but whether, in fact, there was a trade secret to be misappropriated."). There can be no claim of misappropriation unless there is a trade secret. *Id.*; *Den-Tal-Ez*, 389 Pa. Super. at 249 ("the existence of a trade secret is a prerequisite"). Public disclosure of information destroys any trade secret which its owner

8

may have had. *Van Prods.*, 419 Pa. at 265. IKE must therefore prove that it took reasonable measures to maintain the confidentiality of its purported secrets. *National Risk Management, Inc. v. Bramwell*, 819 F. Supp. 417 (E.D. Pa. 1993); *Metter-Toledo, Inc. v. Acker*, 908 F. Supp. 240 (M.D. Pa. 1995). Also, Pennsylvania courts have held that there is no trade secret if allegedly secret information can be ascertained by inspection or reverse engineering. *Camelot*, 2003 U.S. Dist. LEXIS at *18.[2] Finally, it is important to recognize that trade secret protection can only be extended to a particular secret rather than a general secret of the trade. *National Risk Management, Inc. v. Bramwell*, 819 F. Supp. 417 (E.D. Pa. 1993); *Renee Beauty Salons, Inc. v. Blose-Venable*, 652 A.2d 1345 (Pa. Super. 1995). Otherwise, one could, as is being done in this case, effectively prevent competitors from entering an otherwise open industry simply by claiming trade secret protection over purported secrets that are actually well known within the industry.

In *Van Products*, plaintiff sued defendant for unfair competition after an employee left plaintiff and joined defendant. While in plaintiff's employ, the employee had learned "everything there was to know" about plaintiff's drier product. Within days of joining defendant, the employee actively planned the manufacture and sale of a drier that was "practically identical in function and concept" to the one plaintiff manufactured and sold. *Id.* at 253. Plaintiff alleged that the former employee misappropriated confidential material acquired during his employment and damaged plaintiff's business. The trial court agreed and granted a permanent injunction.

---

[2] For further determination of whether information is a trade secret, Pennsylvania courts rely on the RESTATEMENT OF TORTS. The RESTATEMENT's factors include: (1) the extent to which information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which

9

The Pennsylvania Supreme Court reversed, holding that the public sale of the drier destroyed any trade secret that plaintiff might have had. *Id.* at 265-66. As is the case here, the driers were sold on the open market. Also, they were described extensively in trade literature and in plaintiff's advertising media. These facts defeated a finding of a trade secret. Without the initial showing of a trade secret, the arguably confidential relationship between the former employee and his employer was insufficient to establish misappropriation. Simply put, *Van Products* prevents a plaintiff from alleging a breach of "confidentiality" to protect product that are in the public domain.

Here, as in *Van Products*, plaintiff's boilers with membrane walls have been sold on the open market for over fifty years. The fabrication details are there for all to see or determine. Plaintiff's boilers are described extensively in trade literature, marketing materials, and operation and maintenance manuals that are provided to customers who purchase the boilers. The drawings of the M Series boiler are not confidential or proprietary. (Gdaniec Trial Testimony, pp. 121). The evidence, therefore, simply cannot support a finding that any aspect of the plaintiff's boiler, including its overall compilation, is a secret.

In addition, plaintiff's boiler can be reverse engineered by any competent boiler manufacturer. Plaintiff's expert witness, Martin Swabb agrees. (Swabb Trial Testimony, p. 84) ("Q: Would you agree with me, sir, that outside of the drum internals, there's not a single design feature of the Keystone boiler that cannot be reverse engineered? A: This is true."). This is a separate and independent basis for concluding that there is no trade

---

the information could be properly acquired or duplicated by others. *Id.* at *16 (citing RESTATEMENT OF TORTS § 757 cmt. b).

secret to be protected by unfair competition law or otherwise. *Camelot*, 2003 U.S. Dist. LEXIS at *18.

Under Pennsylvania law, there is no trade secret if, at the time of disclosure or use by the defendant, the allegedly secret information could have been ascertained by inspection of sold articles or by reverse engineering." *Camelot*, 2003 U.S. Dist. LEXIS at *18; *S.I. Handling Sys. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir. 1985) (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974)). It is important to emphasize that the relevant inquiry is <u>not</u> whether the purported secrets actually were ascertained through reverse engineering. Rather, Pennsylvania will not provide trade secret protection for trade secrets that <u>could have been determined</u> through reverse engineering. *International Election Systems Corp. v. Shoup*, 595 F.2d 1212 (3d Cir. 1979); *Henry Hope X-Ray Products, Inc. v. Marron Carrel, Inc.*, 674 F.2d 1336 (9th Cir. 1982) (applying Pennsylvania law).

Every single aspect of the Keystone boiler could easily have been reverse engineered. Indeed, plaintiff's own expert, Martin Swabb, has already admitted this fact. Aside from this admission, the evidence is clear the boilers are in fact reverse engineered on a routine basis. The boilers have been in the marketplace for over a half century. There is an entire industry devoted to the operation, maintenance and repair of these boilers. The evidence is undisputed that professionals working in this industry routinely tear apart and rebuild these boilers as part of normal repair and maintenance activities. IKE does too.

Because there is no evidence to support a finding that any trade secret existed that could be misappropriated, IKE's unfair competition claim based on purported trade secret

misappropriation simply cannot be maintained even if the claim is not specifically pre-empted by the PUTSA. It must therefore be dismissed.

## C.    COMPETITION THAT IS **NOT** UNFAIR.

Finally, it is important to recognize there is no such thing as a generalized unfair competition claim that prevents a party from competing within the bounds set by patent, copyright, trademark, and trade secret law. Plaintiff is espousing an unrecognized tort that, if permitted by this Court, will result in error.

It is beyond dispute that the law permits competitors to imitate his rival's business practices, processes and methods subject only to the patent, copyright, trademark, and trade secret laws. *Pottstown Daily News Pub. Co. v. Pottstown Broadcasting Co.*, 192 A.2d 657, 663 (Pa. 1963); *Pennsylvania Dutch Co. v. Pennsylvania Amish Co.*, 68 Pa. D. & C.2d 379, 387, 1974 WL 15773 (Pa. Com. Pl. 1974); *Jessar Manufacturing Corp. v. Berlin*, 380 Pa. 453 (1955); *Stroehmann Brothers co. v. Manbeck Baking Co.*, 331 Pa. 96 (1938); *Pennsylvania Central Brewing Co. v. Anthracite Beer Co.*, 258 Pa. 45 (1917); accord *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964).

The owner of a true trade secret, unlike the owner of a patent, does not have a monopoly over the process or formula that is the subject of its trade secret. *Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806 (E.D. Pa. 1974); *Wexler v. Greenberg*, 160 A.2d 430 (Pa. 1960). Statutory patent law gives protection against copying. Pennsylvania's trade secret law does not. *Wexler v. Greenberg*, 160 A.2 430 (Pa. 1960). It follows that a party that does not hold a patent over a specific process or formula cannot prevent a competitor from copying or using that process unless it can show that the

process or formula qualifies as a bona fide trade secret and was wrongfully misappropriated. Here, the plaintiff's unfair competition claim is not seeking to protect any patented process or formula. Without more, copying an unpatented product cannot be the basis of an unfair competition claim. *Id.*

Similarly, an unfair competition claim cannot be used to protect against the copying of expression contained within proposals or engineering drawings. *Reinke + Associates Architects Inc. v. Cluxton*, 68 U.S.P.Q.2d 1477 (N.D. Ill. 2003). Rather, the federal Copyright Act specifically <u>preempts all legal or equitable rights under state law</u> if theses rights are equivalent to any of the exclusive rights within (or excluded by) the general scope of copyright as specified by 17 U.S.C. §106. 17 U.S.C. § 301(a). A right under state law is "equivalent" to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106 of the Copyright Act. "In other words, if [an unfair competition claim] is [based upon] the mere act of reproduction, performance, distribution or display" of a work that may be copyrighted, then the claim is preempted. *Id.* It is not enough to avoid preemption to simply argue that by copying or distributing the work, the defendant misrepresented the true author of the work. The inherent misrepresentation that accompanies the unauthorized copying and distribution of another's work cannot avoid preemption. *Id.* (citing *Marobie-FL, Inc. v. National Ass'n of Fire and Equipment Distributors of Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997).

Plaintiff's claims-ably and prejudicially presented-that VEO copied language or expression in proposals or engineering drawings cannot be the basis of an unfair competition claim as a matter of law. To the extent that IKE contends that mere copying

of proposals or drawings is a form of unfair competition regardless of whether such proposals or drawings constitute trade secrets, its contention is wrong. IKE can only protect against the alleged copying of these works by bring a copyright claim that it has not brought and now cannot bring in this lawsuit. Because IKE never registered a copyright on these materials (and therefore cannot assert a copyright claim), it has attempted to smuggle a barred copyright claim into this litigation under the guise of an unfair competition claim. Indeed, throughout the course of this trial, plaintiff's counsel has prejudicially argued that his client's claim is based on VEO's alleged copying of expression contained within IKE's proposals and engineering drawings regardless of whether or not this expression was maintained as a trade secret. IKE's "rules" are simply not the correct or fair legal rules that apply in this case. For example, plaintiff's counsel rhetorically asked VEO's president, John Viskup, whether he thought it was fair for VEO to copy the language contained within IKE's sales proposals that were distributed to customers. The answer to counsel's question is that such copying is perfectly fair so long as the item that is copied is not copyrighted, is not patented, is not a trade secret, and will not cause confusion regarding the <u>source</u> of the product. To permit plaintiff's counsel to suggest otherwise to the jury is error.

Finally, an unfair competition claim cannot and will not serve as a substitute for rights and duties that were specifically negotiated and agreed upon through the terms of an express contract. Where such a contract exists, the parties are held to the terms of their agreement and the law will not impose terms different from those agreed upon. Any remedy for an alleged breach of the agreement must therefore be pursued through a breach of contract claim-not an unfair competition claim. But, as we know, IKE did not

14

and cannot bring such a claim because it is preempted by the agreed upon arbitration provisions in the License Agreement.

Here, the parties entered into an express License Agreement that defined the parties' respective rights and duties to one another with regard the permissible use of any trade secrets or other confidential information that was provided to VEO under the License Agreement. That agreement further required that any dispute, claim, or controversy arising out of the Agreement would be subject to arbitration. (License Agreement, Plaintiff's Trial Exhibit #1, Clause 19). In order to avoid the consequence of this arbitration clause, IKE has steadfastly refused to assert a claim for breach of the License Agreement and instead has attempted to characterize its claims as a tort-based unfair competition claim. Plaintiff's remedy for any purported breach of the License Agreement, including its confidentiality provision, is to bring a claim for breach of the License Agreement, that would be subject to the arbitration clause. To borrow a phrase from plaintiff's counsel, plaintiff must "play by the rules" and abide by the terms of the License Agreement that it negotiated with VEO. It cannot avoid application of some of the License Agreement's terms by pulling select clauses from the agreement as the basis of a purported unfair competition claim while ignoring those clauses to which it no longer desires to be bound.

## II.    UNJUST ENRICHMENT CLAIM (COUNT VI)

Plaintiff adopts the same blunderbuss approach in pleading its unjust enrichment claim as it does in pleading its unfair competition claim. Plaintiff alleges that defendant was unjustly enriched through its alleged misappropriation and use of Keystone's trade secrets, software, trademark and images. Complaint ¶ 52.

Plaintiff's entire claim, however, arises entirely from a purported breach of the License Agreement. *Alstom Power, Inc. v. RMF Industrial Contracting, Inc.*, 2006 U.S. Dist. LEXIS 8019 at *36 (W.D. Pa. 2006) (where a contract exists between the parties, unjust enrichment is not available). As noted above, the Licensing Agreement governed VEO's rights and obligations regarding the use of the Keystone mark as well as any confidential trade secrets that may be disclosed to VEO through the course of the Agreement. Consequently, the License Agreement also bars any quasi-contractual remedies such as unjust enrichment claim. *Id.* IKE should not be rewarded with a quasi-contractual remedy because it intentionally refused to assert its contract claim.

Even if this Court were to reject the *Alstom Power* case and the preemption afforded by the arbitration clause, IKE still cannot bring an unjust enrichment claim. If IKE were able to show that the subject of its unjust enrichment claim was somehow outside of the rights and duties agreed upon through the License Agreement (and it cannot), it would have to prove the following elements to support an unjust enrichment claim: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Clarity Software, LLC v. Allianz Life Ins. Co. of N.A.*, No. 2:04-cv-1441, 2006 U.S. Dist. LEXIS 56217, *39 (Aug. 11, 2006). When applying these elements, the court focuses on whether the defendant has been unjustly enriched, and not on the intention of the parties. *Id.* The doctrine "does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Id.*

Here, the evidence will not and cannot show that defendant was unjustly enriched. Even after the License Agreement expired, defendant was not required to commit a "mental purge" and disavow the "general knowledge, skill and experience" it had accumulated about boilers during the License Agreement and previously. *Van Prods.*, 419 Pa. at 261; *S.I. Handling*, 753 F.2d at 1262. Rather, that general knowledge was a "labor asset" under Pennsylvania law. *Van Prods.*, 419 Pa. at 262. The subsequent use of that "labor asset," which defendant duly developed, cannot damage plaintiff and cannot constitute unjust enrichment. *See, e.g., id.; Camelot*, 2003 U.S. Dist. LEXIS at *24 (linking disposition of unfair competition with disposition of unjust enrichment claim). And any claim that is based on VEO's alleged misuse of purportedly confidential trade secrets that may have been disclosed to VEO through the course of the License Agreement cannot be asserted through an unjust enrichment claim. Relief thereupon could only be brought in a breach of contract claim in arbitration.

For all of these reasons, just as plaintiff cannot prevail on its unfair competition claim, it also cannot prevail on its unjust enrichment claim.

Dated: May 14, 2007

Respectfully submitted,

/s/ Matthew M. Garrett
One of the Attorneys for Plaintiff,
VICTORY ENERGY OPERATIONS,
LLC

Christopher T. Sheean
Brian W. Lewis
Matthew M. Garrett
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, 28th Floor
Chicago, IL 60606
(312) 201-2997

LOCAL COUNSEL:
G. Jay Habas
Marshall, Dennehey, Warner
Coleman & Goggin
1001 State Street, Suite 1400
Erie, PA 16506
(814) 461-7800
PA ID No. 55581

Counsel for Victory Energy Operations, LLC

## CERTIFICATE OF SERVICE

Matthew M. Garrett, an attorney, certifies that on the 13th day of May, 2007, he caused a copy of the foregoing **VEO'S BENCH MEMORANDUM REGARDING IKE'S UNFAIR COMPETITION AND UNJUST ENRICHMENT CLAIMS** to be filed electronically, and that the CM/ECF system for the court will e-mail a copy of the foregoing to the following counsel of record:

John K. Gisleson
Robert J. Williams
Schnader Harrison Segal & Lewis LLP
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Email: JGisleson@Schnader.com
ATTORNEYS FOR PLAINTIFF INDECK
KEYSTONE ENERGY LLC

/s/ Matthew M. Garrett
Matthew M. Garrett

18