UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INDECK KEYSTONE ENERGY LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 04-325 Erie |
| VICTORY ENERGY OPERATIONS LLC, | Judge Sean J. McLaughlin |
| Defendant | |

**VEO'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Defendant, Victory Energy Operations, LLC ("VEO"), by and through its undersigned counsel, for its Response Brief In Opposition to Plaintiff's Motion to Enforce Settlement Agreement, states the following:

**Introduction**

As this Court is well aware, the parties engaged in contentious discovery and eight days of a jury trial before reaching a settlement. The terms of the Settlement Agreement were heavily negotiated, with several drafts over many weeks. The final Settlement Agreement was executed on June 28, 2007 (the " Agreement") and provides a simple mechanism for IKE to conduct three annual audits of VEO's drawings to confirm VEO has implemented the agreed upon design changes delineated in the Agreement. In addition, the Agreement allows IKE a one time audit of the source code of VEO's Voyager boiler rating computer program. VEO has agreed to provide IKE's auditors with a controlled copy of the drawings showing the design changes for all of the O-type boilers VEO has sold since the Agreement, along with a complete copy of the source code.

IKE claims VEO's offer is insufficient, despite the fact that it is exactly what is called for in the Agreement. IKE's motion seeks to have this Court rewrite the Settlement Agreement to give IKE protections it did not deem necessary when it signed the Agreement, protections that are frankly unnecessary and would serve only to disrupt VEO's business and force VEO to disclose additional trade secret information to IKE's auditors. IKE's proposed order is not what the parties agreed to in the Settlement, and should not be endorsed by the Court.

## Facts

### 1. The Settlement Agreement

As noted in IKE's motion, the relevant provisions of the settlement agreement are paragraphs 1(I) and 1(J). Paragraph 1(I) provides:

> Indeck Keystone, at its expense, may audit VEO's drawings once per year for three (3) consecutive years to confirm that VEO complies with the design changes set forth in Paragraph 1(D) and the design prohibition set forth in Paragraph 1(F). Indeck Keystone shall provide a minimum of three(3) weeks notice before conducting the audit. The audit shall be conducted by an independent third party who will agree to confidentiality of the review. The audit of drawings will occur in Tulsa, Oklahoma.

> Paragraphs 1(J) provides:

> Indeck Keystone, at its expense, may have Neil Bradwell audit VEO's source code for its rating software for the Voyager to confirm that it does not copy or utilize the KPSC source code. Mr. Bradwell will agree to confidentiality and agree not to utilize the KPSC source code. In the even Mr. Bradwell has determined that specific Keystone (KPSC) calculations or code are present within the VEO program, an independent third party will analyze the determinations raised by Mr. Bradwell and agree to confidentiality. The third party's decision on the concerns (*i.e.* whether the source code may remain the same or need to be changed) will be binding on both parties.

(A copy of the Settlement Agreement will be delivered in an enveloped marked as "Confidential Exhibits" to VEO's Response Brief in Opposition to IKE's Motion to Enforce Settlement Agreement, as Exhibit 1).

2. **VEO's Offer To Resolve The Audit Dispute.**

In response to IKE's audit request, VEO offered to bring drawings evidencing VEO's compliance with the design changes in Paragraph 1(D) and the design prohibition in Paragraph 1(F), to a location of IKE's choosing in the Tulsa, Oklahoma area. VEO also offered to bring a print-out of the source code for its rating software for its Voyager boilers, as required under Paragraph 1(J) of the Settlement Agreement. Given that Mr. Bradwell is a current IKE employee, and the two proposed "independent" auditors are former employees of IKE's predecessor and continue to provide consulting services to IKE, VEO understandably is not willing to host these individuals at its manufacturing facility. (Affidavit of Mark J. White, Exhibit 2, at ¶ 7). VEO manufactures and sells far more than O-style watertube package boilers, and has ongoing research and development at its Collinsville facility. (*Id.* at ¶ 6). In addition, VEO is not set up for hosting outside visitors for an audit, and mandating the audit at VEO's Collinsville facility would be extremely disruptive to VEO's business. (*Id.* at ¶ 8).

3. **IKE's Proposed Order.**

IKE is insisting that its auditors be permitted access to VEO's main manufacturing facility in Collinsville, OK. IKE also demands that VEO provide any and all drawings that IKE's auditor deems necessary. IKE also claims that its software auditor, Mr. Neil Bradwell, be permitted to run calculations and hypotheticals on a computer supplied by VEO with VEO's rating software loaded onto the computer, and that VEO supply a software engineer who can operate the program and answer any questions Mr. Bradwell may have about the software. Finally, IKE demands that VEO provide documents sufficient to establish that the program Mr. Bradwell analyzes is the same program in use at VEO.

## Argument

**1.   The Audit of VEO's Design Change Drawings**

The settlement agreement was a negotiated document between the parties. There were several iterations before the parties agreed to execute the document. A plain reading of the Paragraph 1(I) demonstrates that what VEO has offered to provide completely satisfies its obligations for IKE's audit rights under the agreement. Under the terms of Paragraph 1(I), IKE is entitled to conduct an audit of VEO's drawings. VEO has offered to provide a copy of the drawings of the front wall, rear wall, front wall seal and a side view of the furnace for each of the O-type boilers VEO has sold since November 16, 2007, which will demonstrate unequivocally that VEO has complied with the design changes and not implemented the proscribed design in Paragraph 1(F). (Mark White Aff., Ex. 2, at ¶ 2). There is no logical reason for the auditor to need to see any additional drawings, as the design changes agreed to by the parties will be fully disclosed in those drawings. More importantly, such a process is not contemplated in the settlement agreement. The parties simply agreed that IKE would be able to confirm once per year for three years that VEO has complied with Paragraphs 1(D) and 1(F) in its design of O-type boilers.

An earlier version of the settlement agreement from IKE's counsel provides clear evidence that the parties understood and agreed that that the drawings VEO would be required to provide for the audit would be limited to the drawings directly related to the design changes outlined in Paragraphs 1(D) and 1(F). IKE's counsel had initially proposed in Paragraph 1(I) that for the audit, "the drawings shall include all drawings for every O-type watertube boiler sold on or after February 17, 2007." (A copy of the June 12, 2007 draft settlement agreement and cover email are attached as Ex. 3 to VEO's Confidential Exhibits). VEO refused to agree to this

provision, and it was omitted from the final agreement signed by the parties. The parties understood that the audit would be limited to the drawings showing the design changes.

IKE claims it does not expect VEO to provide "unfettered access to all of its files." In fact, under IKE's proposed order, the auditor would have the right to demand any and all drawings he deems appropriate. There is no reason for IKE's auditor to have the unchecked ability to peruse any and all of VEO's drawings and designs. VEO never would have agreed to such a sweeping requirement at the outset. IKE's request is unnecessary and wholly unsupported by the settlement agreement.

### 2.     The Audit of The Source Code of VEO's Voyager Rating Program.

Paragraph 1(J) could not be more clear. IKE has the one time right to audit "VEO's source code for its rating software for the Voyager boiler to confirm that it does not copy or utilize the KPSC source code." Source code is defined as "any sequence of statements and/or declarations written in some human-readable computer programming language." (Wikipedia, Def. of "source code.") The source code which constitutes a program is usually held in one or more text files, sometimes stored in databases as stored procedures and may also appear as code snippets printed in books or other media. A computer program's *source code* is the collection of files needed to convert from human-readable form to some kind of computer-executable form. (*See* the Affidavit of Darren Stephenson, Exhibit 4 to VEO's Confidential Exhibits, at ¶4).

Source code, being nothing more than lines of human-readable computer language, is kept in text files, not unlike any other type of written document. (*Id.* at ¶ 5). The simplest and least intrusive way to have an auditor review a computer program's source code is to simply print it out or copy it to a compact disc, and provide it to the expert. (*Id.* at ¶ 6). A competent computer engineer could determine whether any of the content of the KPSC rating program was

5

copied into VEO's Voyager rating program by comparing the source codes of both programs. (*Id.* at ¶ 7). This is why the parties agreed to have VEO produce its source code. IKE chose Mr. Bradwell as its computer auditor, and if he is truly qualified to analyze computer source code, he will be able to review the source code to ascertain whether any code or calculations unique to the KPSC program are present in the Voyager rating program. (*Id.* at ¶ 8).

Mr. Darren Stephenson is a computer engineer for E-Tech, Inc. As IKE is aware from the deposition of Mr. Stephenson in the underlying litigation, VEO retained E-Tech to develop the Voyager rating program. Mr. Stephenson was the computer engineer for E-Tech who wrote the Voyager rating program. (*Id.* at ¶ 2). Mr. Stephenson has never had access to any "KPSC software," and developed the Voyager rating program independently. (*Id*. at ¶ 3). In Mr. Stephenson's opinion, an experienced programmer with an engineering background could, in fact, follow the code. *Id.* at ¶ 8). Mr. Stephenson put in tag lines such as liberation calculations to make it easier to look at the source code and understand what function a given line of code performs. *Id.*

No where in the Agreement does it call for or contemplate that VEO would need to give Mr. Bradwell access to a computer that has a functioning copy of VEO's Voyager rating program loaded on it. Nor does it provide that VEO shall provide an engineer to assist Mr. Bradwell in operating the computer and to answer questions. Similarly, the Settlement Agreement does not require that VEO provide documents sufficient to show that the program Mr. Bradwell reviews is the actual program used by VEO to rate Voyager boilers.

IKE's proposed order requires that its auditor be given such documents as are reasonably necessary for him to confirm that the program he is reviewing is the same program in use at VEO. This requirement is not found anywhere in the Settlement Agreement. Moreover, IKE's

6

proposal interjects an unnecessary air of mistrust into what should be an amicable process in furtherance of a negotiated settlement. VEO has nothing to hide, tt spent thousands of dollars to have E-Tech independently develop the Voyager rating program. However, it will not agree to allow IKE's auditor to conduct a fishing expedition. To appease IKE's concerns, VEO will have Mr. Stephenson generate the copy of the source code for IKE's auditor, and sign an affidavit of authenticity. This goes above and beyond what is required by the agreement and should satisfy IKE's unfounded suspicions of misconduct.

### 3. IKE's Demand That The Audit Occur At VEO's Facility.

IKE argues that it must be allowed to conduct its audits at VEO's main manufacturing facility in Collinsville, Oklahoma. Again, IKE's demand is contrary to the terms of the settlement agreement. Paragraph 1(I) requires that the drawings audit occur in Tulsa. VEO has no facility in Tulsa. IKE claims the inspection should occur at VEO so that IKE's auditors can request and receive additional documents and information as they deem necessary. As discussed above, nothing in the Settlement Agreement provides for IKE's auditors to make repeated demands for additional information.

IKE purports that if the parties intended for the audits to be limited to the review of source code and pre-selected drawings, there was no reason for IKE to travel to Tulsa. IKE clearly misses VEO's rationale for insisting that the audit take place in Tulsa. As the owner of the confidential information being reviewed by IKE's auditors, it has the right and to oversee the audit and make sure that its information is not copied or otherwise misused. By requiring that the audit occur in Tulsa, VEO will be able to leave a VEO representative at the audit to safeguard the information and insure that VEO's trade secret information remains confidential.

**Conclusion**

For the foregoing reasons, VEO respectfully requests that the Court deny IKE's Motion to Enforce Settlement Agreement, together with such other and further relief as the Court deems just and proper.

Dated: April 22, 2008                                 Respectfully submitted,

/s/ Christopher T. Sheean
One of the Attorneys for Defendant,
VICTORY ENERGY OPERATIONS LLC

Christopher T. Sheean
Brian W. Lewis
Matthew Garrett
Wildman, Harrold, Allen & Dixon LLP
225 W. Wacker Drive, 28th Floor
Chicago, IL 60606
(312) 201-2997

LOCAL COUNSEL:
G. Jay Habas
Marshall, Dennehey, Warner
Coleman & Goggin
1001 State Street, Suite 1400
Erie, PA 16506
(814) 461-7800
PA ID No. 55581

Counsel for Victory Energy Operations LLC

**CERTIFICATE OF SERVICE**

      Christopher T. Sheean, an attorney, certifies that on the 22nd day of April, 2008, he caused a copy of the foregoing ***Defendant Victory Energy Operations, LLC's Response Brief In Opposition To Plaintiff's Motion to Enforce Settlement Agreement*** to be electronically filed, and thereby sent electronically to the following counsel of record:

      John K. Gisleson
      Robert K. Williams
      Jennifer Callery
      Keith Whitson
      Schnader Harrison Segal & Lewis LLP
      Fifth Avenue Place, Suite 2700
      120 Fifth Avenue
      Pittsburgh, PA 15222-3001


      /s/ Christopher T. Sheean
      Christopher T. Sheean